IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELIZABETH A. BALLY,<br><br>Plaintiff,<br><br>v.<br><br>STATE FARM LIFE INSURANCE COMPANY,<br><br>Defendant. | Case No. 18-cv-04954-CRB<br><br>**ORDER DENYING MOTION FOR SUMMARY JUDGMENT** |

This case involves a dispute about language in a State Farm life insurance policy. Policy at 10 (Dkt. 63-2); Compl. (Dkt. 1). Plaintiff Elizabeth Bally, on behalf of a class, argues that State Farm violated its policy by calculating the Cost of Insurance by considering factors other than those listed in the Policy. Compl. at ¶¶ 37-41. State Farm has now moved for summary judgment as to all claims. Mot. (Dkt. 63). The Court now DENIES State Farm's Motion.

## I. BACKGROUND

The allegations in the Complaint are as follows. Bally purchased a flexible premium adjustable insurance policy, Form 94030, from State Farm on April 8, 1994, on behalf of her daughter. Compl. ¶¶ 11, 47; see also Mot. Exh. A (Dkt. 63-2) ("Policy"). This life insurance policy "provide[s] policy owners a savings, or interest-bearing component that is identified in the Policies and throughout this Complaint as the 'Account Value.' Under the terms of the Policies, the Account Value consists of an interest-bearing account that accumulates over time." Compl. ¶ 19. "The money that makes up the Account Value is the property of the policy owner and is held in trust by Defendant." Id. ¶ 21.

The Account Value on after the effective date of the Policy is:

> [T]he account value on the prior deduction date:
> (1) plus 95% of any premiums received since the prior deduction date,
> (2) less the deduction for the cost of insurance for any increase in the Basic Amount and the monthly charges for any riders that became effective since the prior deduction date,
> (3) less any withdrawals since the prior deduction date,
> (4) less the current monthly deduction,
> (5) plus any dividend paid and added to the account value on the current deduction date, and
> (6) plus any interest accrued since the prior deduction date.

Policy at 9; Compl. ¶ 22.

The Policy also describes a "Monthly Deduction" that State Farm withdraws from the account. Policy at 9; Compl. ¶¶ 25-26. This monthly deduction "is made each month, whether or not premiums are paid, as long as the cash surrender value is enough to cover that monthly deduction. Each deduction includes: (1) the cost of insurance, (2) the monthly charges for any riders, and (3) the monthly expense charge." Policy at 9; see also Compl. ¶ 26. The "expense charge" is $5.00. Policy at 3; Compl. ¶ 27.

The dispute in this case centers on the first component of the Monthly Deduction—the "cost of insurance," or COI. The Policy states:

> Cost of Insurance. This cost is calculated each month. The cost is determined separately for the Initial Basic Amount and each increase in Basic Amount. The cost of insurance is the monthly cost of insurance rate times the difference between (1) and (2), where:
> (1) is the amount of insurance on the deduction date at the start of the month divided by 1.0032737, and
> (2) is the account value on the deduction date at the start of the month before the cost of insurance and the monthly charge for any waiver of monthly deduction benefit rider are deducted.
> Until the account value exceeds the Initial Basic Amount, the account value is part of the Initial Basic Amount. Once the account value exceeds that amount, if there have been any increases in Basic Amount, the excess will be part of the increases in order in which the increases occurred.

Policy at 10; see also Compl. ¶ 28

It then states: "Monthly Cost of Insurance Rates. These rates for each Policy year are based on the Insured's age on the Policy anniversary, sex, and applicable rate class."

2

Id. at 10. The Policy also sets out a maximum monthly COI rate. Id. at 4, 10.

The Complaint alleges that "[a]lthough the Policies authorize Defendant to use only certain, specified factors in determining Monthly Cost of Insurance Rates"—namely, "Insured's age on the Policy anniversary, sex, and applicable rate class," Policy at 10—"Defendant uses other factors, not authorized by the Policies, when determining those rates, including, without limitation: a. Expense experience; b. Persistency; c. Taxes; d. Profit; e. Investment Earnings; f. Capital and reserve requirements, and g. Other unspecified factors." Compl. ¶ 37. In consequence, Plaintiffs urge that State Farm calculates the COI in violation of the Policy, and in doing so takes more money out of the Account Value than is permitted by the Policy. Id. ¶¶ 38-44.[1] State Farm states, and Plaintiffs do not dispute, that State Farm never exceeded the maximum monthly cost of insurance rate. Mot. at 20; see generally Opp. (Dkt. 67).

Bally sued on behalf of a class of "[a]ll persons who own or owned a universal life insurance policy issued by State Farm on Form 94030 in the State of California." Compl. ¶ 47. Bally alleges claims for breach of contract (Counts I and II), Conversion (Count III), and seeks declaratory and injunctive relief (Count IV) under California law. Id. ¶¶ 57-82. State Farm has filed the instant Motion for Summary Judgment because, it argues, the language in the Policy does not require that the listed factors are exhaustive, that the breach of contract claims are time barred, and that the conversion claim is impossible under California law. Mot.; see also Reply (Dkt. 70). Plaintiffs oppose the Motion. Opp. This Court held a hearing on July 26, 2019. Minute Entry (Dkt. 73).

---

[1] State Farm states that it established the additional factors that went into the COI according to a number of different metrics, including the national Actuarial Standards of Practice, its own "proprietary mortality experience," and an "asset share (actuarial model) to incorporate variables arising from its business experience (expenses, mortality, mix of business, premium patterns, persistency, investment returns, reserves, and taxes) to attempt to ensure solvency and profitability targets would be met." Mot. at 6-8.

## II. LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Cattrett, 477 U.S. 317, 323 (1986).

Because this Court sits in diversity, the applicable substantive law is the law of California. See Mot. at 10-11; Opp. at 4; Compl. ¶¶ 8-9; 28 U.S.C. § 1332(d). Under California law, "[i]nterpretation of an insurance policy is a question of law and follows the general rules of contract interpretation." MacKinnon v. Truck Ins. Exch., 31 Cal. 4th 635, 647 (2003), as modified on denial of reh'g (Sept. 17, 2003). The goal of such interpretation is to "give effect to the 'mutual intention' of the parties." Id. (citing Cal. Civ. Code § 1636). A contract's provisions are given their "ordinary and popular sense," unless "used by the parties in a technical sense or a special meaning is given to them by usage." Id. at 648 quoting (Waller v. Truck Ins. Exch., Inc., 11 Cal. 4th 1, 18 (1995), as modified on denial of reh'g (Oct. 26, 1995)); Cal. Civ. Code §§ 1638, 1644. "A policy provision will be considered ambiguous when it is capable of two or more constructions, both of which are reasonable. But language in a contract must be interpreted as a whole, and in the circumstances of the case, and cannot be found to be ambiguous in the abstract." Waller, 11 Cal. 4th at 18 (internal citation omitted). When a policy's language is ambiguous, "the ambiguity is resolved by interpreting the ambiguous provision in the sense in which the promisor (insurer) reasonably believed at the time of making it, that the promisee (insured) understood it." Cooper Companies v. Transcon. Ins. Co., 31 Cal. App. 4th 1094, 1101 (1995). "In most circumstances, the ambiguous language therefore is construed in favor of the insured." Id.

## III. DISCUSSION

State Farm offers three arguments in favor of summary judgment: (A) that Plaintiffs' breach of contract claims are barred by the statute of limitations, (B) that the conversion claim is barred under California law because such a claim cannot be based on an alleged overcharge, and (C) on the merits, the "based on" clause permits State Farm to

4

calculate the COI by considering unlisted factors. Mot. at 12-25.

### A. Breach of Contract: Statute of Limitations

The statute of limitations for breach of contract in California is four years. Cal. Code Civ. Proc. § 337(1). And, under the "discovery rule," "a cause of action . . . accrues when the plaintiff discovers or should have discovered all facts essential to his cause of action . . . ; this has been interpreted under the discovery rule to be when 'plaintiff either (1) actually discovered his injury and its negligent cause or (2) could have discovered injury and cause through the exercise of reasonable diligence.'" Apr. Enterprises, Inc. v. KTTV, 147 Cal. App. 3d 805, 826 (Ct. App. 1983) (quoting Leaf v. City of San Mateo, 104 Cal. App. 3d 398, 407 (Ct. App. 1980)). However, there is an exception to this rule where there has been a "secretive breach," wherein the breach "was fraudulently concealed or misrepresented by defendant." Perez-Encinas v. AmerUs Life Ins. Co., 468 F. Supp. 2d 1127, 1135 (N.D. Cal. 2006) (citing Apr. Enterprises, Inc., 104 Cal. App. 3d at 832).

State Farm argues that Bally's claim for breach of contract is barred by California's statute of limitations because she first entered the Policy in 1994, but only brought suit in 2018. Mot. at 22-24. Policyholders received annual notices about their policy. Id. These "notices encouraged Plaintiff and every policy owner to 'consider requesting more detailed information about your policy to understand how it may perform in the future.'" Id. at 23 (quoting Root Dec'l Exh. 11 (Bally Dep. Exh. 3 (annual notice))). The notices that Bally received beginning in 1994 would have triggered the discovery rule, State Farm continues, because she received no different type of information between 1994 and when she retained an attorney in 2018. Id. at 23-24. So, it urges, if Bally "had a claim in 2018, she should have brought it earlier." Id. at 24.

Bally argues that because State Farm's COI was calculated on the basis of undisclosed factors, and State Farm does not claim that a policyholder could have held found out that the COI was "based on" factors not listed in the Policy, even if she had inquired with State Farm after receiving an annual notice, Bally was not "on notice" in 1994 and the discovery rule does not apply. Opp. at 23-24. Moreover, she argues, "unless

5

there is a duty to inquire because the plaintiff is on notice of the facts, that further inquiry would reveal the underlying facts does not result in constructive knowledge of those facts." Id. at 24; see also Baker v. Beech Aircraft Corp., 39 Cal. App. 3d 315, 321–22 (Ct. App. 1974).

State Farm replies "[a]ny person interested in learning the factors that actuaries need to consider in establishing non-guaranteed charges could discover them by reference to the publicly available Actuarial Standards of Practice." Reply at 12. This, it argues, would have been "second nature to any trained actuary." Id.

Bally is correct. In California, "before a plaintiff may be held chargeable with want of diligence in failing sooner to discover the truth, he must have been under a duty to make the discovery.'" Baker, 39 Cal.App.3d at 321 (quoting 36 Cal. Jur. 2d, Notice, § 4, p. 417). So, "[t]o impute notice, the circumstances must be such that inquiry becomes a duty, and failure to make it is a negligent omission of duty." Id. But, "[w]here no duty is imposed by law to make inquiry, and where, under the circumstances, a prudent man would not be put on inquiry, the mere fact that means of knowledge are open and not availed of does not operate to give constructive notice of the facts.'" Id. at 321-22 (quoting 36 Cal. Jur. 2d, Notice, § 4, p. 417); accord Weatherly v. Universal Music Publ'g Grp., 125 Cal. App. 4th 913, 919 (2004).

Here, there is no basis to conclude that the annual notices put Bally—or any policyholder—on notice that the COI was calculated "based on" unlisted factors. See generally Mot. Nor does State Farm offer any reason to conclude that a policyholder would have been on notice that State Farm was considering unlisted variables in calculation the COI. See generally Mot. And so State Farm's statement that if Bally had hired a certified actuary, or were herself a "trained actuary," Reply at 13, and had investigated the Policy, she would have discovered the basis for this instant suit is irrelevant. There was no duty on her to make an inquiry, and thus she was not on constructive notice of the COI calculation. See Baker, 39 Cal. App. 3d at 322. The claim for breach of contract is thus not barred by the statute of limitations.

6

## B. Conversion Under California Law

State Farm next argues that Bally cannot state a cause of action for conversion because, under California law, a conversion claim may not be based on an overcharge. Mot. at 24-25; see also McKell v. Washington Mut., Inc., 142 Cal. App. 4th 1457, 1492 (2006). Bally's claim amounts to an overcharge, it argues, because "State Farm was authorized to take monthly deductions from her account," and Bally, on State Farm's view, only objects to the amount of the deduction. Mot. at 25.

Bally responds that her claim is not that she was overcharged, but rather that State Farm transferred funds that it should not have, because the account value belonged to the policyholder, Compl. ¶ 21, and so when State Farm transferred funds without authorization, that constituted conversion. Opp. at 25; see ESG Capital Partners, LP v. Stratos, 828 F.3d 1023, 1038 (9th Cir. 2016) (permitting a conversion claim under California law to proceed because "an unauthorized transfer of funds is sufficient to constitute disposal of a plaintiff's funds in a manner inconsistent with the plaintiff's rights.").

Bally is, again, correct. Her claim for conversion is that "[b]y deducting Cost of Insurance Charges and Expense Charges in unauthorized amounts from the Account Values of Plaintiff and the Class," State Farm converted Bally's property. Compl. ¶ 71. That claim—that State Farm took property that belonged to Bally—is distinct from a claim that, as in McKell, a defendant was simply "overcharging for [its] services," McKell, 142 Cal. App. 4th at 1467. While State Farm argues that "[a]ll of State Farm's deductions were authorized by the contract," that is precisely the dispute—Bally argues that the deductions were not authorized by the contract. Reply at 15; Compl. ¶ 71; Opp. at 24-25. Bally's conversion claim, thus, is not barred under California law.

## C. Meaning of "Based On"

Bally alleges that State Farm calculated the COI by considering factors other than "the Insured's age on the Policy anniversary, sex, and applicable rate class," even though the Policy says that "rates for each Policy year are based on the Insured's age on the Policy

7

anniversary, sex, and applicable rate class," Policy at 10, and thus that State Farm violated the Policy. See generally Compl. The crux of the dispute is whether the phrase "based on the Insured's age on the Policy anniversary, sex, and applicable rate class" permits State Farm to consider factors other than those three listed. See Mot. at 12.

To warrant summary judgment, State Farm must demonstrate that the Policy is unambiguous in permitting consideration of unlisted factors, because if the contract is ambiguous, "the ambiguity is resolved by interpreting the ambiguous provision in the sense in which the promisor (insurer) reasonably believed at the time of making it, that the promisee (insured) understood it." Cooper Companies, 31 Cal. App. 4th at 1101. So, only if the Policy unambiguously supports State Farm's view is State Farm entitled to summary judgment.

This Court is not the first to have addressed this question. Last year, the District Court for the Western District of Missouri addressed precisely the same question— whether State Farm's policy form 94030's statement that monthly cost of insurance "rates for each Policy year are based on the Insured's age on the Policy anniversary, sex, and applicable rate class" permits State Farm to calculate the COI based on factors other than the three listed. See Policy at 10. That court denied State Farm summary judgment. Vogt v. State Farm Life Insur. Co., 16-cv-04170-NKL No. 219 (Dkt. 67-4) ("Vogt") (Opp. Exh. 4) (Dkt. 67-4). Bally argues that "the issues already decided in Vogt are on all fours with those here," and so "this Court should follow Vogt." Opp. at 7. The only difference between the cases, for the purposes of the instant motion, is that Vogt applied Missouri law, and here the claims sound in California law. Compare Vogt with Compl.

To interpret a contract under California law, courts "look first to the language of the contract in order to ascertain its plain meaning or the meaning a layperson would ordinarily attach to it." Fireman's Fund Ins. Co. v. Superior Court, 65 Cal. App. 4th 1205, 1212 (1997). However, if the meaning of a term, understood in the context of the policy "as a whole," id., is nevertheless ambiguous, its meaning "is to be resolved by interpreting the ambiguous provision in the sense the insurer believed the insured would have

8

understood it." California Pac. Homes, Inc. v. Scottsdale Ins. Co., 70 Cal. App. 4th 1187, 1192 (1999).

The plain meaning of the key phrase at issue here, "based on," is ambiguous. Some dictionaries, as State Farm points out, define "base" as the "main ingredient." Mot. at 14 (quoting Norem v. Lincoln Ben. Life Co., 737 F.3d 1145, 1149 (7th Cir. 2013)). But this definition is not uniform. Other dictionaries define "based," or "based on," in a way that indicates it may be exhaustive. For instance, Merriam-Webster defines "based" as "having a specified type of base or basis." Based, Merriam-Webster's Dictionary (https://www.merriam-webster.com/dictionary/based); accord The Am. Heritage College Dict. 113 (defining "based" as "[t]o find a basis for; establish"). Further, as the Supreme Court has repeatedly cautioned in the context of statutory interpretation, whether a term is ambiguous "does not turn solely on dictionary definitions of its component words.'" Yates v. United States, 135 S. Ct. 1074 (2015) (quoting Robinson v. Shell Oil Co., 519 U.S. 337, 341 (1997) (alterations in original)). Dictionaries, thus, do not resolve this dispute.

So, too, with the common usage of "based on." As Bally identifies, "based on" is commonly used in a way that denotes that it is exhaustive. See Opp. at 10-11. And that is because, frequently, when the phrase "based on" refers to a non-exhaustive list, it is modified to read "based in part on" or "based primarily on." Id. As Bally urges, if State Farm were correct that "based on" means only "based non-exclusively on," then such additions "would be redundant." Id. at 10. However, as Norem reasoned, "no one would suppose that a cake recipe 'based on' flour, sugar, and eggs must be limited only to those ingredients." Norem, 737 F.3d at 1150; but see Fleisher v. Phoenix Life Ins. Co., 18 F. Supp. 3d 456, 471-73 (S.D.N.Y. 2014) (disagreeing with Norem because "[a] recipe is a list of ingredients that are combined to create something. In the cookbooks I read, recipes are exhaustive lists of all the ingredients needed to bake a cake . . . . The cakes they bake are 'based on' the ingredients listed in the recipe—they include those ingredients and none other."); see also Reply at 10. "Based on," then, can bear both an exclusive and a non-exclusive meaning in ordinary usage.

9

Given that "based on" can bear either the meaning that Bally urges—that State Farm could calculate the COI based only on the listed factors, see Opp. at 4-5—or the one that State Farm urges—that State Farm could calculate the COI by considering other, unlisted, factors, too, see Mot. at 13-15—the Court agrees with Vogt that there is an ambiguity in the Policy's language. See Vogt at 9.[2]

The next question is whether the context of the Policy provides clarity that the words alone do not. Many courts to have considered the phrase "based on" in the context of insurance contracts have held that the phrase precluded the use of non-disclosed factors. Alleman v. State Farm Life Ins. Co., 334 F. App'x 470, 472 (3d Cir. 2009), Yue v. Conseco Life Ins. Co., 2011 WL 210943 at *10 (C.D. Cal. Jan. 19, 2011); Rosenbaum v. Philadelphia Life Ins. Co., 1994 WL 17118392 at *3 (C.D. Cal. Mar. 1, 1994); Jeanes v. Allied Life Ins. Co., 168 F. Supp. 2d 958, 974-75 (S.D. Iowa 2001), aff'd in part, rev'd in part on other grounds, 300 F.3d 938 (8th Cir. 2002); but see Norem v. Lincoln Ben. Life Co., 737 F.3d 1145, 1147 (7th Cir. 2013); Mai Nhia Thao v. Midland Nat. Life Ins. Co., 549 F. App'x 534, 538 (7th Cir. 2013). And others have held that the phrase was at least ambiguous in the context of insurance contracts. McDaniel v. Chevron Corp., 203 F.3d 1099 (9th Cir. 2000); Dean v. United of Omaha Life Ins., 2007 WL 7079558, at *5 (C.D. Cal. Aug. 27, 2007); Fleisher, 18 F. Supp. 3d at 471; Vogt at 9. As these decisions have held, insurance policies that calculate COI "based on" listed factors do not unambiguously permit insurance companies to consider other, unlisted, factors.

Nor is the Court persuaded by State Farm's other arguments that (1) precedent forecloses, as a matter of California law, giving "based on" an exclusive meaning, Reply at 7-11, or (2) it would be unreasonable to give the Policy Bally's reading because it would preclude State Farm from earning a profit, Reply at 12-14.

First, State Farm argues that, under California law, this case is controlled by

---

[2] State Farm contends that because Vogt is on appeal, it has no precedential value and this Court should not consider it. Mot. at 7. But Vogt is not, as a matter of precedent, binding on this Court even were it not on appeal. The Court considers this case for its reasoning, not its precedential value.

10

Scheenstra v. California Dairies, Inc., 213 Cal. App. 4th 370 (2013), a breach of contract action against a dairy cooperative in which the plaintiff argued that the internal milk production quota was too low, in violation of the cooperative's bylaws. Id. at 374-75; see Mot. at 13-15. Not so.

The bylaw at issue in Scheenstra stated that "[i]n determining each member's pro-rata share of net proceeds, the Association shall take into account and treat as lesser value milk delivered by the member in excess of the member's internal production quota assigned by the Association based upon the member's historical production over a representative period of years, if the Association, in its discretion, has implemented an internal production quota system." Id. at 391-92 (emphasis added). The California Court of Appeals for the Fifth District interpreted "based upon" in favor of the defendants. Id. at 401-02. It held that "based upon" "ordinarily does not mean the thing referred to as the base or basis is the exclusive or sole component," and so:

> [T]he phrase is not ambiguous in this regard—a quota can be "based upon" historical production even if the quota takes into account (i.e., makes an adjustment for) other information. In other words, we conclude that the phrase "based upon" is not reasonably susceptible to an interpretation that makes "historical production" the exclusive factor in calculating the quota. If the drafter had intended the quota to be based upon historical production only, then the drafter should have included an additional word or words indicating such a restriction.

Id. at 401.

State Farm argues that under Scheenstra, as a matter of California law, "based on" is nonexhaustive. Mot. at 13-15; Reply at 9-10. But Scheenstra does not compel that conclusion. Crucially, a dairy cooperative contract is not an insurance contract. See Crane v. State Farm Fire & Cas. Co., 5 Cal. 3d 112, 115 (1971) (California law imposes special rules on insurance contracts, including strictly construing insurance policies against insurer and reading policies as a layperson would). And, the specific type of contract at issue in Scheenstra played a central role in that court's analysis. Scheenstra, 213 Cal. App. 4th at 401. Scheenstra reasoned that a "production quota 'based upon the member's historical

11

production over a representative period of years'" could necessarily include other information because "when information about historical production is collected and examined, it contains more data than just the amount of production for a particular unit of time. The data also will reveal changes in the rate of production." Id. at 47. As a result, "[w]hen this raw data about production levels and rates of increase are combined with knowledge of the dairy business and the production life of milk cows, it was possible to make reasonable projections about future production levels." Id. So, "the member's historical production over a representative period of years" necessarily included other, non-listed information. Id. In consequence, consideration of that included information relevant to future production levels could factor into the production quota because the quota was still "based on" the "historical production." Id.

That is not the case here. State Farm does not argue that the "Insured's age on the policy anniversary, sex, and applicable rate class" yield additional information as did the historical production data in Scheenstra. See Policy at 10; see generally Mot.; Reply. Rather, State Farm says that it can consider separate and unrelated information like State Farm's profit, investment earnings, and capital requirements. Compl. ¶ 37. Scheenstra, thus, does not control.[3]

Second, State Farm argues that Bally's interpretation is unreasonable because it would "unreasonably prohibit State Farm from considering actuarially necessary variables in determining the non-guaranteed rates prior to Policy" and thus require State Farm to not make a profit. Mot. at 15-19; see also Reply at 11-12.

But, as Bally points out, State Farm does not explain why a reasonable policyholder would conclude that State Farm must make a profit from the COI, specifically, rather than

---

[3] The Court is also unpersuaded by the cases that State Farm cites that have, in contexts other than insurance policies, interpreted "based on" nonexclusively. Mot. at 13-14; Reply at 4; see also Koons v. United States, 138 S. Ct. 1783, 201 L. Ed. 2d 93 (2018) (criminal sentencing statute); Hughes v. United States, 138 S.Ct. 1765, 1776 (2018) (same); Abbit v. ING USA Annuity & Life Ins. Co., 252 F. Supp. 3d 999, 1019 (S.D. Cal. 2017), aff'd, 2019 WL 1995159 (9th Cir. May 6, 2019) (annuity contract). Context is crucial to contract interpretation, see California Pac. Homes, Inc., 70 Cal. App. 4th at 1192, and so these cases have little bearing on the matter before the Court.

12

the Policy as a whole. Opp. at 20. And, "the policy offers State Farm other ways to make money." Id. Specifically, Bally urges that the Policy permits State Farm to deduct, in addition the COI, 5% of every premium paid as "premium expense charge," as well as a $5.00 "monthly expense charge" and "monthly charges for any riders." Policy at 3, 9; Opp. at 3; see also Witt Dec'l ¶ 16 (Dkt. 67-2); Compl. ¶ 22. Given these other expenses, most notably the 5% premium deduction, it would not be unreasonable for a policyholder to conclude that State Farm was making a profit from the Policy without necessarily concluding that it was also doing so from the COI calculation. See Crane, 5 Cal. 3d at 115 ("The policy should be read as a layman would read it and not as it might be analyzed by an attorney or an insurance expert."). As Vogt concluded, "[w]hile an insurance company would be expected to make a profit, the terms of the insurance policy at issue are so dense, a lay person would not understand that State Farm expected to derive profit from the COI." Vogt at 8. This argument is thus also unpersuasive.

Lastly, State Farm argues that there was no breach of contract because State Farm did not exceed the maximum monthly deduction. Mot. at 20-22. It urges that "[t]he plain language of the Policy does not impose any obligation on State Farm to charge a COI rate lower than the maximum. The Policy specifically accords State Farm discretion to charge lower COI rates: 'We can charge rates lower than those shown.'" Id. at 20 (quoting Policy at 10). Because State Farm did not exceed those maximum COI rates, it argues, "[a]s a matter of law, therefore, there is no breach of the COI rates provision." Id. at 21.

The trouble with this argument is that it would, if accepted, render completely superfluous the COI calculation provision. If the only limit on the COI that State Farm charged were the COI maximum rates, then there would be no reason why the Policy would have included a list of COI factors. See Dean, 2007 WL 7079558, at *5 (rejecting similar argument because that interpretation would "render the provision linking the COI charge to the specified factors superfluous—why would the Policy specify certain factors used to compute the charge if it could be set at [the insurance company's] whim?"); see also United Farmers Agents Assn., Inc. v. Farmers Grp., Inc., 32 Cal. App. 5th 478, 495

(Ct. App. 2019), reh'g denied (Mar. 20, 2019), review denied (May 15, 2019) ("We strive to 'give effect to all of a contract's terms, and to avoid interpretations that render any portion superfluous, void or inexplicable.'" (quoting Brandwein v. Butler, 218 Cal. App. 4th 1485, 1507 (2013))). The Court thus agrees with Bally that the maximum COI rate provision is not the only limit on the COI that State Farm deducts from the Account Value, see Policy at 9, and thus the fact that State Farm did not violate that maximum COI provision does not insulate them from a claim for breach of contract.

Thus, the Policy's language is ambiguous. Under California law, the contract must therefore be construed in the favor of the insured. See Crane, 5 Cal. 3d at 115 (holding that under California law, ambiguities are read in favor of the insured). In consequence, the Court cannot conclude that, as a matter of law, State Farm complied with the terms of the Policy when it calculated the COI it deduced from policyholders' accounts. See Compl. ¶¶ 29-46. State Farm is therefore not entitled to summary judgment.[4]

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment is DENIED.

**IT IS SO ORDERED.**

Dated: August 19, 2019

CHARLES R. BREYER
United States District Judge

---

[4] Bally also argues, albeit briefly, that the instant motion can be denied on issue preclusion grounds. Opp. at 7 n.4. But Bally fails to explain whether Missouri and California law differ such that the issue decided in Vogt was "identical" to the issue here, or whether even, a matter of law, issue preclusion applies when the same contract is interpreted under the laws of two different states. Cf. Daewoo Elecs. Am. Inc. v. Opta Corp., 875 F.3d 1241, 1247 (9th Cir. 2017), cert. denied, 138 S. Ct. 2654 (2018) ("[F]ederal common law requires that we determine the preclusive effect of the prior decision by reference to the law of the state where the rendering federal diversity court sits."). Given the failure to address these key questions, and, as discussed, the Court's ability to resolve the instant motion without reaching this issue, the Court expresses no view on whether issue preclusion has any bearing on this case.

14