1
2
3
4
5
6

**GIRARD SHARP LLP**
Daniel C. Girard (State Bar No. 114826)
dgirard@girardsharp.com
Angelica M. Ornelas (State Bar No. 285929)
aornelas@girardsharp.com
601 California Street, Suite 1400
San Francisco, California 94108
Tel:    415-981-4800
Fax:    415-981-4846

7    [Additional counsel appear on signature page]

8    *Attorneys for Plaintiff Elizabeth A. Bally*

9

10
11

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

12

| | |
|---|---|
| 13  ELIZABETH A. BALLY, Individually and On Behalf Of All Others Similarly Situated, | )  Case No.: 3:18-cv-04954-CRB |
| 14 | )  *Assigned to the Hon. Charles R. Breyer* |
| 15                Plaintiff, | ) |
| 16        vs. | )  **PLAINTIFF ELIZABETH BALLY'S:** |
| 17  STATE FARM LIFE INSURANCE COMPANY, | )  **(1) NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION; AND** |
| 18                Defendant. | )  **(2) MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT** |
| 19 | )  Date:      March 27, 2020 |
| 20 | )  Time:      10:00 a.m. |
| 21 | )  Courtroom:  6 - 17th Floor |

22
23
24
25
26
27
28

## NOTICE OF MOTION AND MOTION

**TO THE HONORABLE COURT, ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that, on March 27, 2020, at 10:00 a.m. in Courtroom 6 of the above-entitled Court, located at 450 Golden Gate Avenue, San Francisco, California, Plaintiff Elizabeth Bally will and hereby does move the Court, pursuant to Federal Rule of Civil Procedure 23, for an order certifying a class (the "Class") defined as:

> All persons who own or owned a universal life insurance policy issued by State Farm on Form 94030 in the State of California whose policy was in-force on or after January 1, 2002 and who was subject to at least one monthly deduction.[1]

Plaintiff satisfies the elements of Rule 23(a) because there are thousands of members of the Class satisfying the numerosity requirement; there are common claims of fact and law among the Class; Ms. Bally's claims are typical of those in the Class; and Ms. Bally, as class representative, and her counsel are adequate to represent the interests of the Class. Plaintiff satisfies the elements of Rule 23(b)(3), in that common issues predominate over any individualized issues and because a class action is the superior procedural mechanism for resolving this dispute; and Plaintiff satisfies Rule 23(b)(2), in that State Farm has acted or refused to act on grounds that apply generally to the Class, making declaratory relief appropriate.

Plaintiff further moves to designate Elizabeth Bally as the class representative and the law firms of Stueve Siegel Hanson LLP; Miller Schirger, LLC; and Girard Sharp LLP as class counsel.

This Motion is based on this Notice of Motion, the attached Memorandum of Points and Authorities, the concurrently filed Declaration of Norman E. Siegel with attached exhibits and Proposed Order, the concurrently filed Motion to Seal, all other pleadings, papers and records on file in

---

[1] Excluded from the Class are: State Farm; any entity in which State Farm has a controlling interest; any of the officers, directors, or employees of State Farm; the legal representatives, heirs, successors, and assigns of State Farm; anyone employed with Plaintiff's counsel's firms; and any Judge to whom this case is assigned, and his or her immediate family.

this action, those matters of which this Court may take judicial notice, and upon the oral argument of counsel made at the hearing on this Motion.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## <u>TABLE OF CONTENTS</u>

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION ...............................................1

INTRODUCTION AND ARGUMENT SUMMARY ....................................................1

STATEMENT OF THE ISSUES TO BE DECIDED..................................................2

STATEMENT OF FACTS ...............................................................................................2

I.      The life insurance contracts between State Farm and the Class. ....................2

II.     The Policy identifies specific charges State Farm is authorized to deduct from Account Values. ...................................................................................................3

        A.      The COI charge is a mortality charge. ...................................................3

        B.      The Expense charge specifies the amount State Farm is permitted to deduct for expenses. ...............................................................................4

        C.      State Farm increases COI charges with undisclosed loads. ...................4

ARGUMENT .....................................................................................................................5

III.    Standard on class certification. .........................................................................6

IV.     The Class is ascertainable. ................................................................................7

V.      The Class meets each of the requirements of Rule 23(a). .................................7

        A.      Numerosity is satisfied. ..........................................................................7

        B.      There are common questions of law and fact. ........................................8

        C.      Plaintiff's claims are typical of those of the Class. ...............................9

        D.      Plaintiff satisfies the adequacy requirement. ......................................10

                1.      That State Farm's actual COI rates are at rare times lower than its mortality rates does not create an intra-class conflict.............................11

                2.      State Farm's contention that it "pooled" its mortality rates does not create an intra-class conflict. .......................................................13

VI.     Plaintiff satisfies the requirements of Rule 23(b)(3)......................................15

        A.      Predominance is satisfied.....................................................................15

i

Plaintiff's Memorandum of Points and Authorities in Support of Motion for Class Certification;
Case No.: 3:18-cv-04954-CRB

1.     Liability is subject to class-wide determination...........................................................15

    a.   Plaintiff's breach of contract claims are subject to common proof. ......................16

    b.   Plaintiff's conversion claim requires the same proof for all class members. ........17

2.     Damages can be determined on a class-wide basis.......................................................17

    a.   State Farm's cross-over defense does not affect the reliability of Plaintiff's damages model...............................................................................................................19

    b.   Calculating damages for policy owners who selected "Death Benefit Option 1" and for whom a death benefit was paid does not affect the reliability of Plaintiff's damages model......................................................19

    c.   Plaintiff's expert's consideration of class members' tobacco use is reasonable...............................................................................................................20

    d.   Class members' subjective understandings of the Policy's terms do not create individualized issues......................................................................................21

    e.   State Farm's statute of limitations defense does not create individualized issues. ............................................................................................23

B.     Superiority is satisfied.......................................................................................................24

VII. Rule 23(b)(2) is satisfied. .........................................................................................................25

CONCLUSION....................................................................................................................................25

Plaintiff's Memorandum of Points and Authorities in Support of Motion for Class Certification;
Case No.: 3:18-cv-04954-CRB

# TABLE OF AUTHORITIES

Cases

*AIU Ins. Co. v. Superior Court*, 51 Cal. 3d 807 (1990) ........................................................23

*Alleman v. State Farm Life Ins. Co.*, 334 F. App'x 470 (3d Cir. 2009) ...............................4

*Bank of the W. v. Superior Court*, 2 Cal. 4th 1254 (1992) ...................................................23

*Blackie v. Barrack*, 524 F.2d 891 (9th Cir. 1975) ................................................................14

*Briseno v. ConAgra*, 844 F.3d 1121 (9th Cir. 2017) ..............................................................7

*Cameron v. E.M. Adams & Co.*, 547 F.2d 473 (9th Cir. 1976) ...........................................23

*Daewoo Elecs. Am. Inc. v. Opta Corp.*, 875 F.3d 1241 (9th Cir. 2017) ..............................15

*DiFelice v. U.S. Airways, Inc.*, 235 F.R.D. 70 (E.D. Va. 2006) ...........................................14

*E.D.C. Techs., Inc. v. Seidel*, 216 F. Supp. 3d 1012 (N.D. Cal. 2016) ................................16

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974) ............................................................24

*Ellena v. Dep't of Ins.*, 230 Cal. App. 4th 198 (2014) .........................................................22

*Ewert v. eBay, Inc.*, Nos. C-07-02198 RMW, C-07-04487 RMW,
2010 WL 4269259 (N.D. Cal. Oct. 25, 2010)..................................................................22

*Feller v. Transamerica Life Ins. Co.*, No. 16-cv-01378,
2017 WL 6496803 (C.D. Cal. Dec. 11, 2017) ..........................................................passim

*Garter v. Cty. of San Diego*, No. 15CV1868-MMA (NLS),
2017 WL 5177028 (S.D. Cal. 2017) ...........................................................................17, 18

*Gooch v. Life Investors Ins. Co. of Am.*, 264 F.R.D. 340 (M.D. Tenn. 2009) .....................25

*Gregurek v. United of Omaha Life Ins. Co.*, No. CV 05-6067-GHK(FMOX),
2009 WL 4723137 (C.D. Cal. Nov. 10, 2009)..................................................................22

*Hanks v. Lincoln Life & Annuity Company of New York*,
330 F.R.D. 374 (S.D.N.Y. 2019) ......................................................................6, 9, 10, 16

*Haynes v. Farmers Ins. Exchange*, 32 Cal. 4th 1198 (2004) ...............................................21

*In re Conseco Life Ins. Co. Cost of Ins. Litig.*, No. ML 04-1610, 2005 WL 5678842 (C.D. Cal. Apr.
26, 2005) ......................................................................................................................6, 25

Plaintiff's Memorandum of Points and Authorities in Support of Motion for Class Certification;
Case No.: 3:18-cv-04954-CRB

*In re Conseco Life Ins. Co. Life Trend Ins. Mktg. & Sales Practice Litig.*,
920 F. Supp. 2d 1050 (N.D. Cal. 2013) ...................................................................4, 5, 22

*In re Conseco Life Ins. Co. LifeTrend Ins. Sales & Mktg. Litig.*,
270 F.R.D. 521 (N.D. Cal. 2010) ................................................................................6, 25

*In re Linerboard Antitrust Litig.*, 305 F.3d 145 (3d Cir. 2002) ......................................24

*In re Nassau County Strip Search Cases*, 461 F.3d 219 (2d Cir. 2006) ........................18

*In re Yahoo Mail Litig.*, 308 F.R.D. 577 (N.D. Cal. 2015) ...........................................6, 9

*James v. Paul*, 49 S.W.3d 678 (Mo. 2001) .....................................................................15

*Krueger v. Ameriprise Fin., Inc.*, 304 F.R.D. 559 (D. Minn. 2014) ...............................14

*Larson v. John Hancock Life Ins. Co.*, No. RG16813803,
2017 WL 4284163 (Cal. Super. Ct. March 23, 2017) ..............................6, 8, 10, 16

*Lee v. Allstate Life Ins. Co.*, 361 Ill. App. 3d 970 (Ill. Ct. App. 2005) ...........................6

*Leszczynski v. Allianz Ins.*, 176 F.R.D. 659 (S.D. Fla. 1997) .......................................25

*Lincoln Nat'l Life Ins. Co. v. Bezich*, 33 N.E.3d 1160 (Ind. Ct. App. 2015) ..................6

*Phoenix Life Ins. Co.*, No. 11-cv-8405, 2013 WL 12224042 (S.D.N.Y. July 12, 2013) ..............6, 8, 16

*Rodriguez v. Hayes*, 591 F.3d 1105 (9th Cir. 2010) .........................................................9

*Schramm v. JPMorgan Chase Bank, N.A.*, No. LA CV09-09442 JAK,
2011 WL 5034663 (C.D. Cal. Oct. 19, 2011) ......................................................23, 24

*Shanghai Automation Instrument Co. v. Kuei*, 194 F. Supp. 2d 995 (N.D. Cal. 2001) .......................17

*Tahoe Nat'l Bank v. Phillips*, 4 Cal. 3d 11 (1971) ........................................................22

*Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466 (C.D. Cal. 2012) .....................19, 24

*Tasion Commc'ns, Inc. v. Ubiquiti Networks, Inc.*, 308 F.R.D. 630 (N.D. Cal. 2015) ..............18

*Torres v. Mercer Canyons Inc.*, 835 F.3d 1125 (9th Cir. 2016) .....................................12

*Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036 (2016) ............................................15

*Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227 (9th Cir. 1996) ...................................18

*Vedachalam v. Tata Consultancy Servs., Ltd.*, No. C, 06-0963 CW,
2012 WL 1110004 (N.D. Cal. Apr. 2, 2012) ..............................................................22

iv

Plaintiff's Memorandum of Points and Authorities in Support of Motion for Class Certification;
Case No.: 3:18-cv-04954-CRB

*Vogt v. State Farm Life Ins. Co.*, 16-4170-CV-C-NKL,
　2018 WL 4937069 (W.D. Mo. Oct. 11, 2018)...............................................................11

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ...................................................8

*Williams v. Sinclair*, 529 F.2d 1383 (9th Cir. 1975).....................................................23

*Wortman v. Air New Zealand*, 326 F.R.D. 549 (N.D. Cal. 2018)............................6, 7, 8, 10

*Yue v. Conseco Life Ins. Co.*, 282 F.R.D. 469 (C.D. Cal. 2012).............................8, 21, 25

*Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180 (9th Cir. 2001) ...................................7

Rules

Federal Rule of Civil Procedure 23 ......................................................................passim

Other Authorities

Newberg on Class Actions § 3:62 (5th ed.) ..........................................................13

Newberg on Class Actions § 4:57 (5th ed.) ..........................................................22

Restatement (Second) of Contracts § 211(2) ........................................................21

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION**

**INTRODUCTION AND ARGUMENT SUMMARY**

Plaintiff Elizabeth Bally ("Ms. Bally" or "Plaintiff") on behalf of herself and the proposed Class of California policy owners, challenges Defendant State Farm Life Insurance Company's ("State Farm" or "Defendant") interpretation and implementation of its form universal life insurance policy. This case is well-suited for class certification because it turns on the interpretation of a form contract under California law, and State Farm's uniform conduct toward all class members. In fact, a nearly identical case brought on behalf of a class of Missouri policy owners was certified and tried to jury verdict just last year. *See Vogt v. State Farm Life Ins. Co.*, 16-4170-CV-C-NKL (W.D. Mo.) ("*Vogt*"). For this reason, Plaintiff's motion affirmatively addresses the issues that State Farm raised in *Vogt* (and Plaintiff expects State Farm to raise here) with the goal of providing the Court context to these previously litigated issues.

State Farm's Form 94030 life insurance policy (the "Policy") is a "universal" life insurance contract. Unlike standard "term" life insurance, universal life insurance is designed to provide a lifetime death benefit to the insured plus an investment feature or savings component, called the "Account Value," that allows policy owners to earn interest on their accumulated premiums over time. The Policy provides for the deduction of certain Policy charges, including a percent of premium expense charge, as well as a "Monthly Deduction" taken from the Account Value each month.

The Policy provides that the "Monthly Deduction" includes a cost of insurance charge (the "COI charge") and an expense charge (the "Expense charge"). Plaintiff contends in her Complaint that State Farm determines these charges improperly. The Policy requires that State Farm calculate the COI charge component of the Monthly Deduction using cost of insurance rates ("COI rates"). State Farm promises its COI rates are, for each policy year, "based on the Insured's age on the policy anniversary, sex, and applicable rate class, and "can be adjusted for projected changes in mortality." Policy year, age, sex, and rate class are factors associated with assessing an insured's mortality risk (the risk the insured will die). But Plaintiff alleges State Farm does not base its COI rates on the mortality factors

identified in the Policy. Instead, State Farm loads its COI rates and corresponding COI charges with unlisted, non-mortality factors, including expenses and profit, in breach of the Policy. This case therefore presents an overarching common question of liability, the answer to which will resolve thousands of claims: whether State Farm breached the Policy by taking funds from policy owners without authorization under the Policy's relevant terms.

Like liability, damages can be readily determined on a class-wide basis by calculating the lost Account Value (with interest at the applicable policy rate) for each policy owner resulting from the COI overcharges. The excess deductions are calculated using the same formula for every class member— simply removing from the COI rates any loads in excess of State Farm's mortality expectations or, in other words, by subtracting the non-mortality component attributable to State Farm's use of impermissible factors in setting COI rates. By way of example, by loading its COI rates with unlisted factors at pricing and repricing, State Farm deprived Ms. Bally of $938.42 in Account Value due to the excessive deductions. These amounts can be similarly and systematically calculated for each class member and aggregated for the entire Class, as Plaintiff's expert did for the Missouri class in *Vogt*.

## STATEMENT OF THE ISSUES TO BE DECIDED

1.  Does Plaintiff satisfy the requirements of Federal Rule of Civil Procedure 23(a) and (b)(3) for certification of a class of current and former owners of State Farm's Form 94030 policy issued in the State of California, for purposes of determining State Farm's liability for breach of contract and conversion and the resulting monetary damage suffered by each class member?

2.  Does Plaintiff satisfy the requirements of Federal Rule of Civil Procedure 23(a) and (b)(2) for certification of a class of current and former owners of State Farm's Form 94030 policy issued in the State of California, for purposes of declaring the meaning of the Policy's COI rates and Expense charge provisions?

## STATEMENT OF FACTS

### I.   The life insurance contracts between State Farm and the Class.

State Farm began selling the Form 94030 universal life insurance policy in California on January 1,

2

Plaintiff's Memorandum of Points and Authorities in Support of Motion for Class Certification;
Case No.: 3:18-cv-04954-CRB

1  1994. Witt Dec.,[2] Ex. I (Holzbauer Dep.), 142:10-20. Ms. Bally purchased her Form 94030 Policy in
2  April 1994. Dkt. 63-1, Ex. 9 (Bally Dep.), 23:26-25:2. Although existing policies remain in force, State
3  Farm ceased issuing new Form 94030 policies as of June 30, 2004. Siegel Dec., Ex. 2 (State Farm
4  Interr. Answers No. 2).

5  The Policy is a valid and enforceable contract between each policy owner and State Farm. Compl. ¶
6  13. Its terms are not subject to individual negotiation and are materially the same for all policy owners,
7  and the Policy cannot be altered by the agent's representations at the time of sale, or by any other
8  discussions or writings. Policy[3] at 11 ("The [P]olicy is the entire contract," and it consists of "the Basic
9  Plan, any amendments, endorsements, and riders, and a copy of the application."). State Farm's
10  obligations (like the policy owner's) cannot be obviated by informal consent, waiver, or some other act
11  because "[o]nly an officer has the right to change this [P]olicy. No agent has the authority to change the
12  [P]olicy or to waive any of its terms." *Id.*

13  The Policy is a "universal" life insurance policy. In contrast to term life insurance, which provides
14  only a death benefit, the Policy includes an Account Value where, much like a savings account,
15  premiums are deposited, after deduction of a premium expense charge, and accumulate interest at a
16  fixed rate of no less than four percent (4%). *Id.*; *see* Witt Dec. ¶ 17.

17
18  **II.   The Policy identifies specific charges State Farm is authorized to deduct from Account
       Values.**

19  The Policy authorizes State Farm to take from the Policy's Account Value a Monthly Deduction
20  comprised of the separately identified: (a) COI charge; (b) charges for any riders; and (c) $5.00
21  Expense charge. Policy at 9.

22  **A.   The COI charge is a mortality charge.**

23  The Policy provides that the COI charge is determined by multiplying the COI rate by the Policy's
24  net amount at risk (the amount by which the death benefit amount exceeds the Account Value; in other
25  words, the net amount State Farm will have to pay the beneficiary if the insured dies). Witt Dec. ¶ 23;
26  Policy at 10. The Policy then states that COI rates "*for each policy year are based on the Insured's age*

27
28  [2]  Mr. Witt's Declaration is attached as Ex. 1 to the Declaration of Mr. Siegel.
    [3]  The Policy is attached as Ex. B to the Declaration of Mr. Witt.

3

Plaintiff's Memorandum of Points and Authorities in Support of Motion for Class Certification;
Case No.: 3:18-cv-04954-CRB

*on the policy anniversary, sex, and applicable rate class*," and that "*[s]uch rates can be adjusted for projected changes in mortality.*" *Id*. The factors identified in the Policy are characteristics commonly used within the life insurance industry to determine the mortality expectations of an insured or group or class of insureds. Witt Dec. ¶ 26, Ex. F (Phipps Dep.), 24:24-25:9, Ex. E (Streily Dep.), 155:19-158:22, 159:6-160:20, 196:6-197:23; *see also* Dkt. 67-4 (*Vogt* summary judgment denial) at 3 ("Age, sex and rating class are factors used to differentiate policyholders in developing mortality tables."); *Alleman v. State Farm Life Ins. Co.*, 334 F. App'x 470, 472 (3d Cir. 2009) (noting that age and sex are mortality factors); *In re Conseco Life Ins. Co. Life Trend Ins. Mktg. & Sales Practice Litig.*, 920 F. Supp. 2d 1050, 1061 (N.D. Cal. 2013), *vacated pursuant to settlement*, 2013 WL 10349975 (N.D. Cal. Nov. 8, 2013) ("Because age and sex are the guiding factors in the lifespan of a person, a layperson would ordinarily attach the rates to mortality."). State Farm does not disclose to policyholders the actual COI rates or factors included therein. Witt Dec., Ex. I (Holzbauer Dep.), 178:21-25, Ex. E (Streily Dep.), 124:13-23, Ex. C (Bally annual statements), Ex. D (Policy illustration).

### B.   The Expense charge specifies the amount State Farm is permitted to deduct for expenses.

The Policy authorizes State Farm to deduct a monthly Expense charge, which is fixed at $5.00 per month. Policy at 3.

### C.   State Farm increases COI charges with undisclosed loads.

Ms. Bally contends the Policy provision requiring that monthly COI rates "for each policy year" be "based on the Insured's age on the Policy anniversary, sex, and applicable rate class" means exactly what it says—that State Farm must determine COI rates using only the listed factors—not undisclosed factors to increase the COI rate. On August 19, 2019, this Court held that the disputed policy language is ambiguous as to whether it means State Farm can include additional unlisted factors, or whether State Farm is permitted to use only the listed factors when determining COI rates. Dkt. 77 at 14. The Court therefore concluded that under California law the ambiguity must be construed in favor of the insured. *Id.* Under this construction, State Farm is not permitted to include unlisted factors in its determination of COI rates.

State Farm can and did develop rates using only the listed factors when it priced the Policy; they are known as the "pricing mortality" rates. *See* Witt Dec. ¶ 11, Ex. E (Streily Dec.), 151:23-152:15, 160:15-20, Ex. I (Holzbauer Dec.), 145:15-19; Dkt. 67-4 (*Vogt* summary judgment denial) at 10. But after developing these pricing mortality rates using only the listed factors, State Farm increased those rates with undisclosed profit and expense loads after considering unlisted factors, including expenses, interest rates, persistency, mix of business by mortality class, average sizes, and tax rates. Dkt. 63-1, Ex. 2 (State Farm Interr. Answers at 24-25); Witt Dec., Ex. G (New Jersey Actuarial Memorandum) at 5, Ex. E (Streily Tr.), 144:20-24; 224:6-18 (admitting that "pricing mortality … was used to determine a cost of insurance rate, and that the cost of insurance rate was then loaded for expenses and profit," and that "expenses and profit" are not considered "to be mortality related"); *see also* Witt Dec. ¶ 11. Inclusion of these undisclosed factors has a substantial impact on the amounts deducted each month from policyholders' Account Values. On the same policy form and identical pricing process (*see* Witt Dec. ¶ 13), a jury found State Farm's overcharges caused over $34 million in lost Account Value for a class of approximately 24,000 Missouri policyholders. *See Vogt*, Dkt. 358.

In this case, the loading of the COI rates was similarly substantial. For instance, in the first ten years after Ms. Bally purchased her Policy, State Farm charged her COI rates nearly five times higher than rates determined using only the listed mortality factors. In other words, COI charges calculated using unloaded COI rates would have been approximately 20% of the COI charges that State Farm deducted, meaning Ms. Bally's actual charges were comprised of nearly 80% undisclosed loads. *See* Witt Dec. ¶ 45. Over the life of Plaintiff's Policy, her COI charges were, on average, substantially more than double what they would have been if State Farm had not included undisclosed factors in the COI rates. *See id.*

Because these Policy overcharges result from State Farm's uniform administration of the Policy, all policy owners are subject to the same set of COI rates. *See* Witt Dec. ¶ 29, Ex. E (Streily Tr.), 140:3-145:10, 146:17-147:5, 171:21-172:11.

## **ARGUMENT**

Plaintiff moves for an order certifying the following class ("the Class"):

All persons who own or owned a universal life insurance policy issued by State Farm on Form 94030 in the State of California whose policy was in-force on or after January 1,

Plaintiff's Memorandum of Points and Authorities in Support of Motion for Class Certification;
Case No.: 3:18-cv-04954-CRB

2002 and who was subject to at least one monthly deduction.[4]

The Western District of Missouri in *Vogt* certified a class of Missouri policy owners making the same allegations on the Form 94030 policy as are asserted in this case. *See* Siegel Dec., Ex. 3 (*Vogt*, Dkt. 229 (hereafter "*Vogt* class cert. order")). Likewise, courts frequently certify class actions, like this one, alleging breaches of the cost of insurance provisions of standardized life insurance policies. *See, e.g., Feller v. Transamerica Life Ins. Co.*, No. 16-cv-01378, 2017 WL 6496803, at *13, *18 (C.D. Cal. Dec. 11, 2017) ("*Transamerica COI*"); *In re Conseco Life Ins. Co. LifeTrend Ins. Sales & Mktg. Litig.*, 270 F.R.D. 521, 533 (N.D. Cal. 2010); *In re Conseco Life Ins. Co. Cost of Ins. Litig.*, No. ML 04-1610, 2005 WL 5678842, at *4, *9 (C.D. Cal. Apr. 26, 2005); *Larson v. John Hancock Life Ins. Co.*, No. RG16813803, 2017 WL 4284163 (Cal. Super. Ct. March 23, 2017) ("*John Hancock COI*"); *Fleisher v. Phoenix Life Ins. Co.*, No. 11-cv-8405, 2013 WL 12224042, at *13, *18 (S.D.N.Y. July 12, 2013) ("*Phoenix COI*"); *Lincoln Nat'l Life Ins. Co. v. Bezich*, 33 N.E.3d 1160, 1173 (Ind. Ct. App. 2015) ("*Lincoln Nat'l COI*");[5] *Hanks v. Lincoln Life & Annuity Company of New York*, 330 F.R.D. 374 (S.D.N.Y. 2019) ("*Lincoln Life COI*"); *Lee v. Allstate Life Ins. Co.*, 361 Ill. App. 3d 970 (Ill. Ct. App. 2005) ("*Allstate COI*"). Class certification here is likewise proper.

## III.   Standard on class certification.

A motion for class certification under Federal Rule of Civil Procedure 23 involves a three-part analysis. "First, plaintiffs must demonstrate that an identifiable and ascertainable class exists." *Wortman v. Air New Zealand*, 326 F.R.D. 549, 554 (N.D. Cal. 2018) (internal quotations omitted). Second, under Rule 23(a), the proposed class must satisfy the requirements of numerosity, commonality, typicality, and fair and adequate representation. *Id.* Third, the proposed class must meet at least one of the three requirements of Rule 23(b). *Id.* "Within the framework of Rule 23, the Court

---

[4] Excluded from the Class are: State Farm; any entity in which State Farm has a controlling interest; any of the officers, directors, or employees of State Farm; the legal representatives, heirs, successors, and assigns of State Farm; anyone employed with Plaintiff's counsel's firms; and any Judge to whom this case is assigned, and his or her immediate family.

[5] Under Indiana Rule of Civil Procedure 58(A), the decision in *Lincoln* was automatically vacated when the Indiana Supreme Court granted Lincoln's petition to hear the case. The parties subsequently settled and jointly dismissed the Supreme Court appeal.

6

Plaintiff's Memorandum of Points and Authorities in Support of Motion for Class Certification;
Case No.: 3:18-cv-04954-CRB

ultimately has broad discretion over whether to certify a class." *In re Yahoo Mail Litig.*, 308 F.R.D. 577, 586 (N.D. Cal. 2015) (citing *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001)).

In this case, the proposed Class meets all the requirements of Rule 23(a) as well as the requirements of Rule 23(b)(2) and (3).

## IV.    The Class is ascertainable.

A class is ascertainable if its "membership can be established by means of objective, verifiable criteria." *Wortman*, 326 F.R.D. at 555.[6] The proposed Class in this case is ascertainable because the Class is defined as consisting of owners of Form 94030 policies issued by State Farm in California and they can be objectively identified through State Farm's policy owner records.

## V.    The Class meets each of the requirements of Rule 23(a).

### A.    Numerosity is satisfied.

Rule 23(a)(1) requires that the class be sufficiently numerous such that joinder of all members would be impracticable. "Although there is no exact number, some courts have held that numerosity may be presumed when the class comprises forty or more members." *Wortman*, 326 F.R.D. at 556. "The plaintiff does not need to allege a precise number of class members, but may make a reasonable estimate." *Id.*

The proposed Class is sufficiently numerous. State Farm's records show there are approximately 86,000 members in the proposed Class. Witt Dec. ¶ 43.[7]

---

[6] *See also id.* at 554 n.3 (citing *Briseno v. ConAgra*, 844 F.3d 1121, 1124 n.3 (9th Cir. 2017)).

[7] On November 19, 2018, and November 30, 2018, Plaintiff Bally served on State Farm document requests and interrogatories, respectively, for policy-level data for members of the California class. State Farm objected to producing policy-level data as not proportional to the needs of the case and unwarranted until after a class is certified. Siegel Dec. ¶ 18. State Farm stood on that objection through multiple meet and confers. *Id.* On October 4, 2019, however, State Farm stated it would not stand on its objection after all, and would explore options for efficient handling and production of the policy-level data. *Id.* On October 29, 2019, State Farm stated for the first time that it intended to rely on the policy level data in opposing class certification even though it would produce it only after Plaintiff's motion was filed. *Id.* On October 31, 2019, State Farm provided data sufficient to identify policies meeting the class definition, and on November 6, 2019, it produced a sample of transactional policy-level data for class policies for the time frame November 17, 2018 to September 30, 2019. *Id.* On the evening of November 14, 2019, the day before Plaintiff's motion for class certification was due, State Farm

7

Plaintiff's Memorandum of Points and Authorities in Support of Motion for Class Certification;
Case No.: 3:18-cv-04954-CRB

**B.** **There are common questions of law and fact.**

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." "Commonality is satisfied where 'claims ... depend upon a common contention .... of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wortman*, 326 F.R.D. at 556 (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)).

State Farm made and continues to make excessive deductions for COI charges. Plaintiff asserts that State Farm has determined COI rates in a manner unauthorized by the Policy, and the resulting deductions from policy Account Values are in excess of amounts permitted by the Policy's terms. Common evidence of State Farm's deductions on a common form Policy will establish whether or not State Farm is liable for breach of contract as a result of failing to determine COI rates using only the listed mortality factors, and therefore inflating the COI charges deducted from policy owners' Account Values with undisclosed loads (Count I). Likewise, common evidence will determine whether State Farm is deducting undisclosed expenses through the COI charge, and whether the Policy limits the amount of expenses State Farm is permitted to deduct on a monthly basis to the fixed amount of the Expense charge (Count II). And common evidence will determine whether State Farm converted policy owners' property by taking more of their money than authorized. Each claim depends on a common course of conduct—State Farm entered into identical contracts and uniformly loaded undisclosed factors onto its COI rates for all policy owners. *See Vogt* class cert. order at 5-6 (finding commonality satisfied because plaintiff's claims all turned on interpretation of the standard form policy and State Farm's uniform incorporation of non-mortality factors into its COI rates); *Yue v. Conseco Life Ins. Co.*, 282 F.R.D. 469, 476 (C.D. Cal. 2012) (whether uniform, standard language contained in all insurance policies permitted insurer's adjustment of COI rates was a common question); *Transamerica COI*, 2017 WL 6496803, at *6 ("the issue of breach . . . is also common to all prospective class members"); *Phoenix COI*, 2013 WL 12224042, at *8 ("[B]reach of contract *is* the central issue in the case brought

---

produced what it stated was a production of full transactional data for all class policies. *Id.* Due to the timing of State Farm's production, as of this filing Plaintiff has been unable to confirm that the production is complete and useable, or perform any calculations using the data. *Id.*

8

Plaintiff's Memorandum of Points and Authorities in Support of Motion for Class Certification;
Case No.: 3:18-cv-04954-CRB

by [plaintiff] on behalf of the [] Class . . . .") (emphasis in original); *John Hancock COI*, 2017 WL 4284163, at *6 (finding that "liability issues are exclusively common issues uniting the class"); *Lincoln Life COI*, 330 F.R.D. at 380 (finding commonality met where claims "turn on common contentions of what factors…Lincoln Life used to calculate the…COI rate increase and whether insurance contracts allow for a rate increase based on those factors").

So, for every putative class member, the following questions of law are common:

- Is State Farm limited to using only the listed mortality factors when setting COI rates?
- Is State Farm permitted to deduct more in expenses than provided by the Policy's Expense charge?
- Is State Farm liable for conversion?

Moreover, proving this case is dependent on similarly common questions of fact because State Farm calculated and took its deductions in the same manner for all policy owners:

- Did State Farm use factors not specified in the Policy to determine its COI rates?
- Did State Farm take more money from policy owners' Account Values than it was authorized to take?

Each of the foregoing questions is common to each policy owner and will be answered the same, one way or the other, for each member of the Class because State Farm's conduct was consistent as to all policy owners. *See* Witt Dec. ¶ 29, Ex. E (Streily Tr.), 166:7-22, 171:21-172:11.

### C.   Plaintiff's claims are typical of those of the Class.

The typicality requirement is satisfied when the claims or defenses of the representative party are typical of those of the class. Rule 23(a)(3). "Typicality is satisfied 'when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendants' liability." *In re Yahoo*, 308 F.R.D. at 593 (quoting *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010)).

The typicality requirement is easily satisfied here because Plaintiff asserts the same claims individually that she asserts on behalf of the Class. Everyone was subject to materially identical policy language and State Farm performed (and allegedly breached) the Policy in the same way for each class member. *See Vogt* class cert. order at 9 (finding plaintiff's claims typical of those of the class because

Plaintiff's Memorandum of Points and Authorities in Support of Motion for Class Certification;
Case No.: 3:18-cv-04954-CRB

the claims arose from and related to the interpretation and application of the policy and the policy language, and State Farm's methodology for determining COI rates was uniform for all class members); *John Hancock COI*, 2017 WL 4284163, at *10 (certifying class of policy owners because the plaintiff's claims were "typical, indeed, substantially identical, to those of the class" because the plaintiff and the class agreed to the same policy language); *Lincoln Life COI*, 330 F.R.D. at 380-381; *Transamerica COI*, 2017 WL 6496803, at *8.

### D.     Plaintiff satisfies the adequacy requirement.

Adequacy requires that the class representative and class counsel "fairly and adequately protect the interests of the class." Rule 23(a)(4). "Courts determine whether the named plaintiffs and counsel will (1) have any conflicts of interest with other class members and (2) prosecute the action vigorously on behalf of the class." *Wortman*, 326 F.R.D. at 557.

Plaintiff satisfies the adequacy requirement. *First*, Plaintiff's claims are consistent with those of the Class. She claims she was overcharged because State Farm failed to keep its promises in the Policy and to act within its authority in making deductions from her Account Value. Because the terms of the Policy are the same for everyone and State Farm priced it uniformly, if State Farm used unauthorized factors to increase COI rates, Plaintiff and all other policy owners suffered excessive COI charges.

*Second*, Plaintiff has sufficient interest in the case to ensure vigorous representation. She has a personal monetary interest in recouping the overcharges. Indeed, Plaintiff's expert's preliminary analysis is that Plaintiff was harmed in the amount of $938.42 (the total lost Account Value resulting from wrongful COI deductions). Witt Dec. ¶ 57.

*Third*, Plaintiff has hired competent, experienced, and qualified counsel with expertise in class actions and cost of insurance cases, who have and will continue to prosecute the class claims vigorously. Norman E. Siegel and the attorneys at Stueve Siegel have significant experience in prosecuting class litigation, including several COI cases. The firm has tried class-action lawsuits to successful verdicts and has achieved significant monetary settlements for class members. In June 2018, Stueve Siegel and Miller Schirger successfully tried the *Vogt* case, a class action on the same Form 94030 policy at issue here, securing a jury verdict of $34,333,495.81 for Missouri policy owners. *See*

10

Plaintiff's Memorandum of Points and Authorities in Support of Motion for Class Certification;
Case No.: 3:18-cv-04954-CRB

*Vogt*, Dkt. 358 & 360. Moreover, Stueve Siegel and Miller Schirger have successfully secured settlements on behalf of policy owners in similar cases against Lincoln National Life Insurance Company, *see Lincoln Nat'l COI*, No. 02C01-0906-PL-73 (Allen Co., Ind.), and John Hancock Life Insurance Company, *see John Hancock COI*, Case No. RG16 813803 (Alameda Co., Cal.).

Mr. Siegel and other lawyers in his firm have been appointed as class counsel in dozens of class actions throughout the country. Siegel Dec., Ex. 4 (Stueve Siegel *curriculum vitae*). Likewise, Miller Schirger has significant experience handling complex insurance contract disputes and brings needed experience in that area to the case. *Id.*, Ex. 5 (Schirger Dec.). Girard Sharp LLP likewise has extensive experience handling class actions in state and federal court, including cases alleging similar cost of insurance overcharges. *Id.*, Ex. 6 (Girard Dec.).

*Fourth*, there are no conflicts among the class representative, the proposed class, or class counsel.

### 1. That State Farm's actual COI rates are at rare times lower than its mortality rates does not create an intra-class conflict.

Based on State Farm's strategy in *Vogt*, Plaintiff anticipates that State Farm will argue there is an intra-class conflict by contending some class members would be worse off if State Farm charged mortality-only rates. *See* Dkt. 84 at 11 n.3. In *Vogt*, Plaintiff's expert's class-wide damages model revealed that there were some months for some class members who had held the policy for many years where State Farm's actual COI rate was not loaded and actually lower than the contractually mandated mortality-only rate. The parties referred to this event as the "cross-over" because State Farm's mortality-only rates crossed-over (became higher than) its charged COI rates. State Farm argued to the jury that State Farm should get a "cross-over credit," or set-off, against damages for these months where State Farm charged some policy owners less than it was permitted to under the Policy.[8]

---

[8] The plaintiffs argued that this issue should not have been submitted to the jury because State Farm had shown no legal basis to recover "undercharges" from its policy owners. In particular, plaintiffs argued that State Farm's decision to *not* breach the Policy in certain months could not serve as the basis for assessing belated charges against policy owners, especially where State Farm had not identified any provision of the Policy that would allow it to retroactively recover amounts it could have but did not charge policy owners through the COI charge, or that would allow it to make larger COI deductions in one month because it made lower COI deductions in another month. *See* Siegel Dec., Ex. 9 (*Vogt*, Dkt. 265 (Plaintiffs' Motion in Limine)) at 8-9.

---

11

Plaintiff's Memorandum of Points and Authorities in Support of Motion for Class Certification;
Case No.: 3:18-cv-04954-CRB

The jury agreed with State Farm and awarded damages that included a set-off.[9] Giving State Farm this cross-over credit lowered total damages to the class by less than 3%. *See* Siegel Dec., Ex. 7 (Transcript of *Vogt* Trial, hereafter "*Vogt* Trial Tr."), 132:21-23, 135:17-137:7, 139:19-140:3. After apply the credit, a mere 29 (out of the nearly 24,000) class members suffered no net loss as a result of the credit, and therefore received a judgment of $0. *See* Siegel Dec., Ex. 8 (*Vogt* Trial Ex. 242); *Vogt* Trial Tr., 417:12-15. This outcome in *Vogt* illustrates two things: 1) the incidence of State Farm undercharging class members is extremely rare, and 2) no class member was made worse off by the litigation—for the 29 individuals who did not suffer a net overcharge because the "cross-over credit" fully offset overcharges from loaded COI rates, they took nothing in the litigation, putting them in the same position economically as they would have been had no case been brought.[10]

State Farm nevertheless argued that this cross-over phenomenon presented the prospect that some current policy owners would be harmed if State Farm *changed its rates* to match its mortality rates. The *Vogt* court rejected that argument because the lawsuit did not set rates going forward. *Vogt*, 2018 WL 4937069, at *3. And, where State Farm had already taken the position that it could set rates up to the maximums, the lawsuit benefited all class members by lowering the ceiling of what State Farm was permitted to charge. *Id.* In addition, State Farm is permitted to adjust rates only for "projected changes in mortality." *See* Policy at 10 Because State Farm's mortality expectations have *improved* since State Farm priced and re-priced the Policy, *see* Witt Dec. ¶ 32, any adjustment by State Farm would have to *lower* COI rates. Thus, the purported "cross-over" does not create an intra-class conflict.

---

[9] Plaintiff's expert prepared a damages calculation that accommodated State Farm's set-off theory, *Vogt* Trial Tr., 132:19-24, which the jury adopted by awarding the exact amount of damages reflected in that calculation.

[10] State Farm also argued that these 29 zero-damage class members were not injured (as it turned out), and therefore did not have standing to sue, requiring decertification of the class. The court rejected this argument, rightly recognizing that these class members had a number of COI charges where they were overcharged, and were found to have no *net* damages only because State Farm prevailed on its set-off defense. The court also recognized that a failure to prove damages is a failure on the merits, not a lack of Article III injury. *See Vogt*, 2018 WL 4937069, at *2 (Oct. 11, 2018). In any event, "fortuitous non-injury to a subset of class members does not necessarily defeat certification of the entire class, particularly as the district court is well situated to winnow out those non-injured members at the damages phase of the litigation, or to refine the class definition." *Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1137 (9th Cir. 2016).

12

Plaintiff's Memorandum of Points and Authorities in Support of Motion for Class Certification;
Case No.: 3:18-cv-04954-CRB

1

2

**2.    State Farm's contention that it "pooled" its mortality rates does not create an intra-class conflict.**

At the *Vogt* trial, a key issue for the jury was determining what rates reflected State Farm's mortality expectations for the class. The plaintiff argued that State Farm should have used rates reflecting those mortality expectations as its actual COI rates because those rates were determined using only the factors listed in the Policy. The plaintiff argued that State Farm identified its mortality rates in the actuarial memoranda for Form 94030. At initial pricing, these rates were identified as a percentage of the SF88-91 mortality rate table[11]—an "unpooled" mortality table—meaning the table assigns a different mortality risk depending on how long it has been since a given policy was issued. Witt Dec. ¶ 34 n.2.[12] State Farm argued to the jury, however, that it had "pooled" the mortality rates shown in the SF88-91 before loading them with expenses and profits, and therefore, that damages should be determined using "pooled" mortality rates. A pooled rate table assigns the same mortality risk to each policy owner of the same age, sex, and rate class, regardless of when they purchased their policy. *Id.* ¶ 34. Using State Farm's litigation-created, pooled mortality estimate[13] to calculate damages would have reduced the overall damages to the class by $10,900,554.88. *Vogt* Trial Tr., 132:21-23, 141:13-16. The jury rejected State Farm's contention that it pooled its mortality rates, and awarded damages using the unpooled mortality rates.[14]

Thus, the theory on which the plaintiff proceeded and prevailed at trial (that State Farm's mortality rates were not "pooled") *maximized* total class damages. However, State Farm argued that some class members' damages would actually have been higher if plaintiff had used pooled mortality rates in the damages model, and therefore, that there was an intra-class conflict between those class members and

---

[11] The SF88-91 mortality rate table is a table containing mortality rates determined by State Farm.

[12] The length of time elapsed since underwriting affects mortality risk because health conditions not present at the time of underwriting can develop.  *See Vogt* class cert. order at 7.

[13] Notably, in *Vogt*, plaintiffs chose not to challenge State Farm's unreliable "pooled" table, as State Farm had provided no evidence (until jury-rejected trial testimony) of its use.

[14] Plaintiff's expert calculated a damages total that accommodated State Farm's pooled mortality rates argument, *Vogt* Trial Tr., 141:5-12, which the jury rejected by awarding the damages plaintiff requested using unpooled mortality rates (but providing State Farm a cross-over credit).

13

Plaintiff's Memorandum of Points and Authorities in Support of Motion for Class Certification;
Case No.: 3:18-cv-04954-CRB

the rest of the class. Plaintiff anticipates State Farm will make the same argument here, and if it does, it should be rejected.

First, as the *Vogt* court found in certifying the class in that case, the question whether State Farm pooled its mortality rates would have a common answer for all class members. *Vogt* class cert. order at 8. Thus, this common factual issue did not affect the propriety of class certification. *Id.*; *cf. Krueger v. Ameriprise Fin., Inc.*, 304 F.R.D. 559, 575 (D. Minn. 2014) (evidence and the law will determine when the breach occurred, "irrespective of the 'preferred' or 'optimal'" date for any single class member). Second, State Farm never produced a mortality table containing pooled rates, and never produced credible evidence that it did in fact pool its mortality rates before loading them with expenses and profits. It would have been detrimental to all class members for the plaintiff to adopt State Farm's unsupported position. *Vogt* Trial Tr., 141:21-142:13. As the *Vogt* court found in later refusing to decertify the class, plaintiff "cannot be faulted for failing to argue a fact that was found untrue." *Vogt*, 2018 WL 4937069, at *3. Third, State Farm is wrong that an intra-class conflict is created simply because class members may have differing preferences for how damages are calculated. *See* Newberg on Class Actions § 3:62 (5th ed.) ("Courts generally reject the argument that an intra-class conflict exists when divergent theories of liability would benefit different groups within the class," including where "different class members desir[e] different methods of calculating damages."); *Blackie v. Barrack*, 524 F.2d 891, 909 (9th Cir. 1975) ("[T]he conflict [over the calculation of damages], if any, is peripheral, and substantially outweighed by the class members' common interests."); *DiFelice v. U.S. Airways, Inc.*, 235 F.R.D. 70, 79 (E.D. Va. 2006) ("To the extent members of the class, including the class representative, have interests with respect to [maximizing damages] that are slightly divergent with each other . . . this slight divergence is greatly outweighed by shared interests in establishing [defendant's] liability.").

Finally, because the jury in *Vogt* found as a matter of fact that State Farm did *not* pool its mortality rates, Plaintiff will argue in this case that State Farm is precluded from arguing that it did. In determining whether issue preclusion applies, the Court considers four factors: "(1) whether the issue decided in the prior adjudication was identical to the issue presented in the present action; (2) whether the prior adjudication resulted in a judgment on the merits; (3) whether the party against whom estoppel

14

Plaintiff's Memorandum of Points and Authorities in Support of Motion for Class Certification;
Case No.: 3:18-cv-04954-CRB

1   is asserted was a party or was in privity with a party to the prior adjudication; and (4) whether the party
2   against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the
3   prior suit." *James v. Paul*, 49 S.W.3d 678, 682 (Mo. 2001).[15] Each of these factors applies here. The
4   issue of whether State Farm is collaterally estopped from arguing it pooled its mortality rates need not
5   be decided now, but it does provide further support for Plaintiff's argument that she is an adequate
6   representative of the Class in supporting a damages model that uses unpooled mortality rates. Thus,
7   Plaintiff meets the adequacy requirement.

8   **VI.     Plaintiff satisfies the requirements of Rule 23(b)(3).**

9         **A.     Predominance is satisfied.**

10      "The predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant
11  adjudication by representation." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016). In
12  assessing predominance, the court considers the "relation between common and individual questions in
13  a case." *Id.* "An individual question is one where members of a proposed class will need to present
14  evidence that varies from member to member, while a common question is one where the same
15  evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to
16  generalized, class-wide proof." *Id.* (internal quotations omitted). "The predominance inquiry asks
17  whether the common, aggregation-enabling, issues in the case are more prevalent or important than the
18  non-common, aggregation-defeating, individual issues." *Id.* (internal quotations omitted). "When one or
19  more of the central issues in the action are common to the class and can be said to predominate, the
20  action may be considered proper under Rule 23(b)(3) even though other important matters will have to
21  be tried separately, such as damages or some affirmative defenses peculiar to some individual class
22  members." *Id.* (internal quotations omitted).

23          **1.     Liability is subject to class-wide determination.**

24      Because the Policy is a standardized, form contract, not subject to individual negotiation, the case is
25  replete with common questions of law and fact that predominate over any individual questions. Courts

26  ───────────────
27  [15] *See Daewoo Elecs. Am. Inc. v. Opta Corp.*, 875 F.3d 1241, 1244 (9th Cir. 2017) ("When it is
    necessary for a federal district court with diversity jurisdiction to determine the preclusive effect of a
28  prior decision by a different federal district court sitting in diversity, the second court must apply
    preclusion principles according to the law of the initial court's state.").

15

Plaintiff's Memorandum of Points and Authorities in Support of Motion for Class Certification;
Case No.: 3:18-cv-04954-CRB

routinely find that common issues predominate under these circumstances. *E.g., Vogt* class cert. order at 12 ("The major portion of the evidence on the claims for breach of contract, conversion, and declaratory judgment is capable of consideration on a class wide basis. The terms of the Policy are the same for all class members. State Farm has not suggested that the determination of COI rates varied on a case-by-case basis. Thus, common questions predominate."); *Phoenix COI*, 2013 WL 12224042, at *13 (predominance was satisfied because "[t]he insurance policies at issue contain provisions regarding how COI rates are set and what Phoenix can consider in making any changes in rates, and these terms are substantively identical for all the policies held by the members of the Classes"); *Transamerica COI*, 2017 WL 6496803, at *13 (predominance satisfied because "Plaintiffs' claims are premised on Transamerica's uniform policy language and uniform conduct"); *John Hancock COI*, 2017 WL 4284163, at *6-7; *Lincoln Life COI*, 330 F.R.D. at 382-383 (predominance satisfied where the "contract language does not vary by individual class member" and there are "no individualized issues with respect to defendants' conduct towards members of the putative class.").

### a. Plaintiff's breach of contract claims are subject to common proof.

The substantive elements of Plaintiff's breach of contract claims require the same proof for each class member. To succeed on a breach of contract claim, the plaintiff must show: "(1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to plaintiff." *E.D.C. Techs., Inc. v. Seidel*, 216 F. Supp. 3d 1012, 1015 (N.D. Cal. 2016). Each of these elements will be proven through the same evidence for each class member. This is precisely what was proven at trial on a class-wide basis in *Vogt*.

Count I requires the same proof for all class members. The Policy authorizes State Farm to use only the listed mortality factors when determining the COI rates used to calculate the COI charges that are deducted from Plaintiff's Account Value each month. Plaintiff's Count I alleges that State Farm breached and continues to breach the Policy by loading COI rates with non-mortality related factors, including without limitation, expense experience and profit considerations. Compl. ¶¶ 37-40, 57-64.

Common proof will be used to calculate COI rates that are, as required by the Policy, based on the mortality factors listed in the Policy, which can then be compared to the COI rates State Farm actually used for each policy owner to determine the amount of the non-mortality loads and resulting damages.

*See* Witt Dec. ¶¶ 45-59. Because the same proof will determine State Farm's liability and class members' damages, common questions predominate over any individual questions.

Count II likewise requires the same proof for all class members. The Policy authorizes State Farm to deduct a fixed amount for expenses each month. Count II alleges that State Farm breaches the Policy's fixed Expense charge by assessing unauthorized expense overcharges in excess of the fixed amount each month by adding expense loads to its expected mortality to determine its COI rates. The same proof will be used for all class members to determine whether State Farm, does, in fact, include unauthorized expense loads in its COI charges. Because the same proof will determine State Farm's liability and class members' damages, common questions predominate over any individual questions.

> **b.    Plaintiff's conversion claim requires the same proof for all class members.**

Because the Policy authorizes State Farm to deduct only certain amounts from policy owners' Account Values, when State Farm takes more than is authorized, it wrongfully converts those funds. *See, e.g., Shanghai Automation Instrument Co. v. Kuei*, 194 F. Supp. 2d 995, 1003 (N.D. Cal. 2001) (the elements of conversion are "[1] ownership or right to possession of property; [2] wrongful disposition of that property right; and [3] monetary damages").

Accordingly, if Plaintiff succeeds on Counts I or II, she will succeed on Count III for the same reasons. *See Vogt* class cert. order at 12. Thus, predominance is satisfied with respect to Count III.

> **2.    Damages can be determined on a class-wide basis.**

"The black letter rule is that individual damage calculations generally do not defeat a finding that common issues predominate." *D.C. by & through Garter v. Cty. of San Diego*, No. 15CV1868-MMA (NLS), 2017 WL 5177028, at *15 (S.D. Cal. Nov. 7, 2017) (internal quotations omitted). "This is particularly true where damages can be computed according to some formula, statistical analysis, or other easy or essentially mechanical methods." *Id.* (internal quotations omitted). Here, Plaintiff's expert can mechanically determine damages for each class member, further supporting certification.

If Plaintiff establishes State Farm breached its standard form Policy under Counts I and II and/or converted class members' money under Count III, each class member's claims would require only

proof of damages.[16] The monetary harm to policy owners of State Farm's practice of loading undisclosed factors into COI rates, under Plaintiff's Counts I-III, can be calculated in a straightforward way for each policy owner by comparing the COI rates State Farm actually used in determining COI charges with rates determined using only the factors listed in the Policy, and recalculating policy values using the rates that do not include the undisclosed loads. Witt Dec. ¶¶ 45-59. This calculation can be performed using the policy-level data from administrative systems in place at State Farm. *Id*. ¶¶ 11, 50, 58. State Farm retains within its administrative systems a record of, and transaction information related to, premium payments, credited interest rates, policy loans, and policy charges, among other policy data. *Id*. Using this data, Account Values can be recalculated using alternate COI rates, while leaving unchanged actual premium payments made, past investment experience, policy loans taken, and other policy charges. *Id*. ¶ 51. This is the same methodology Mr. Witt applied in *Vogt* and testified to at trial.

Because State Farm maintains the data used in this methodology for every class member, this methodology does not require any class member to provide individual evidence. And, although the amount of losses for each policyholder may vary, because the same methodology and formulas are applied for each policyholder using State Farm's own policyholder data, calculating class-wide losses under this methodology is simply an administrative task capable of being performed on a class-wide basis.[17]

---

[16]   In the *Vogt* case, after the district court certified the Missouri class, it granted partial summary judgment in plaintiffs' favor. *See* Siegel Dec., Ex. 10 (*Vogt*, Dkt. 335) at 1. The subsequent trial was limited to the determination of damages. *See id.*

[17] In the event the Court disagrees that damages can be measured class-wide, Plaintiff requests that the Court certify the common legal and factual issues under Rule 23(c)(4). *See Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996) ("Even if the common questions do not predominate over the individual questions so that class certification of the entire action is warranted, Rule 23 authorizes the district court in appropriate cases to isolate the common issues under Rule 23(c)(4)(A) and proceed with class treatment of these particular issues."). "Thus, for example, Rule 23(c)(4) may be used 'to separate the issue of liability from damages.'" *Tasion Commc'ns, Inc. v. Ubiquiti Networks, Inc.*, 308 F.R.D. 630, 632 (N.D. Cal. 2015) (quoting *In re Nassau County Strip Search Cases*, 461 F.3d 219, 226 (2d Cir. 2006)).

---

18

Plaintiff's Memorandum of Points and Authorities in Support of Motion for Class Certification;
Case No.: 3:18-cv-04954-CRB

In the *Vogt* case, State Farm challenged the reliability of Mr. Witt's damages model in its Rule 50(b) motion for judgment as a matter of law. Plaintiff assumes it will make the same arguments here.[18] These arguments should be rejected as a basis to deny class certification, for the reasons explained below.

### a. State Farm's cross-over defense does not affect the reliability of Plaintiff's damages model.

In the *Vogt* case, State Farm argued that the fact that Mr. Witt's model *could* produce an "undercharge" in some months indicates the model does not reliably measure the portion of the COI that was determined using unlisted factors. State Farm is wrong. Instead, the rare occurrence of the cross-over simply indicates that State Farm's COI rates occasionally did not include a load for unlisted factors. State Farm's contention that the cross-over phenomenon is increasing, even if true, is irrelevant to the reliability of Mr. Witt's damages model. It simply reinforces Plaintiff's point that State Farm's actual COI rates are not in step with its mortality rates, which are increasing as each policyholder ages. "[T]hat State Farm recoups profits and expenses in the earlier years of the Policy and refrains from doing so later—when more policies have lapsed or been surrendered, and when actual mortality costs increase—does not indicate a flaw in the damages model; instead, it more likely indicates a calculated business decision." *Vogt*, 2018 WL 4937330, at *5.

### b. Calculating damages for policy owners who selected "Death Benefit Option 1" and for whom a death benefit was paid does not affect the reliability of Plaintiff's damages model.

State Farm also argued in *Vogt* that Mr. Witt's damages model was unreliable because it calculates a lost Account Value for class members who selected Death Benefit Option 1 when they purchased their policies and were subsequently paid a death benefit. Upon death, a policy owner who selected Death Benefit Option 1 is entitled to the face amount of their policy, not the amount in the Account

---

[18] At the class certification stage, only "a tailored *Daubert* analysis" is conducted "to determine the reliability of the expert's testimony *regarding* the Rule 23 requirements, not the merits of this case." *Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466, 498 (C.D. Cal. 2012) (emphasis in original). Plaintiff contends that each of State Farm's challenges to the reliability of Mr. Witt's damages model goes to the merits of whether the model correctly measures damages, not the Rule 23 question of whether it is capable of measuring damages on a class-wide basis. Plaintiff nevertheless addresses these issues here to provide the Court context to these arguments.

19

Plaintiff's Memorandum of Points and Authorities in Support of Motion for Class Certification;
Case No.: 3:18-cv-04954-CRB

Value. State Farm thus argued that these class members should not have been awarded damages. However, as the district court found in *Vogt*, because State Farm deducted COI charges that included undisclosed loads from these policy owners' Account Values during their lives, these Death Benefit Option 1 policy owners for whom a death benefit was paid "might well have been injured." *Vogt* class cert. order at 9. Plaintiff's calculation of these class members' lost Account Value provides a reasonable measure of the harm incurred during their lives. *Vogt* Trial Tr., 168:2-169:11, 207:12-25. Likewise, their presence in the Class does not affect the propriety of class certification. Even if the Court concludes Plaintiff's damages model does not correctly measure their damages, the correct result would be to exclude them from the Class, not to refuse to certify a class. *Cf. Vogt*, 2018 WL 4937330, at *6 (following trial, concluding "[e]ven if State Farm is correct that policyholders who chose Death Benefit Option 1 did not sustain damages, this argument would not justify rejecting Witt's damages model in its entirety. At most, it could justify only a finding that policyholders who selected Death Benefit Option 1 were not damaged—and State Farm has not requested such a remedy").

> **c.      Plaintiff's expert's consideration of class members' tobacco use is reasonable.**

Following the *Vogt* trial, State Farm argued that Mr. Witt's model ignored the effects of class members' tobacco use. That argument should likewise be rejected if made in this case. Mr. Witt's damages methodology factors in tobacco use on a "blended" basis.[19] *Vogt* Trial Tr., 152:19-23, 205:24-206:8. He used mortality rates blended for tobacco/non-tobacco use because State Farm's pricing mortality rates—the rates that State Farm said measured its mortality expectations (*see id.* at 111:10-112:13, 113:16-114:7, 115:3-22, 120:11-121:3, Witt Dec., Ex. G (N.J. Actuarial Memo.) at 5)—accounted for tobacco use on a blended basis. *Vogt* Trial Tr., 153:1-6, 155:4-14, 158:13-159:12. Therefore, Mr. Witt's use of the rates State Farm itself says reflected its mortality expectations properly measures harm to class members caused by State Farm's failure to use mortality-only rates. *See Vogt*, 2018 WL 4937330, at *5 (rejecting State Farm's argument that Mr. Witt's model was deficient because

---

[19] This means the mortality risk related to tobacco use is spread across all policy owners. *Vogt* Trial Tr., 162:15-17, 206:5-8.

20

Plaintiff's Memorandum of Points and Authorities in Support of Motion for Class Certification;
Case No.: 3:18-cv-04954-CRB

1    it factored in tobacco use on a blended basis because there was no dispute State Farm's mortality
2    expectations factored in tobacco use on a blended basis).[20]

3            d.     **Class members' subjective understandings of the Policy's terms do
4                   not create individualized issues.**

5        State Farm also contends that each class member's subjective understanding of the Policy's terms is
6    relevant to its interpretation, and therefore, whether State Farm breached the Policy. *See, e.g.,* Dkt. 63
7    at 18. In other words, it is State Farm's contention that the Policy could have different meanings for
8    different policy owners.[21] Not only would this be an absurd outcome where State Farm has acted
9    uniformly as to all class members in its performance of its form Policy, it is also legally incorrect. First,
10   it is the "*objectively reasonable expectations of the insured*" that control, not the insured's subjective
11   expectations. *Yue*, 282 F.R.D. at 476 (emphasis in original); *see also Transamerica COI*, 2017 WL
12   6496803, at *6-7, 10-13 (concluding that commonality and predominance were satisfied in COI case
13   because plaintiffs' claims were premised on uniform policy language and conduct, and inquiry into
14   individualized circumstances with respect to individual policies was irrelevant).

15       Thus, courts applying California law in the context of determining whether to certify a class for
16   breach of a form contract, including those addressing universal life insurance policies like this one,
17   have concluded that the subjective understanding of individual consumers is not relevant, and therefore,
18   that extrinsic evidence in the form of class members' subjective understandings of the disputed contract
19   language does not create individualized questions. *See, e.g., Yue*, 282 F.R.D. at 476 ("[E]ven assuming
20   that the contractual provision at issue were ambiguous, the subjective expectations of an insured class
21   member would have little if any bearing on the breach of contract analysis.") (citing *Haynes v. Farmers*

---

[20] Were the Court to rule that Plaintiff's damages model must apply different mortality assumptions for
tobacco users and non-users, Plaintiff's expert can adjust the mortality rates in the model accordingly.
Witt Dec. ¶ 33.

[21] On August 26, 2019, Plaintiff served discovery on State Farm requesting documents and information
regarding any statements by State Farm or agents to policyholders informing them how the COI rates
were determined. Despite Plaintiff's repeated requests for production of this information, as of this
filing, State Farm has produced no documents or information responsive to these requests. *See* Siegel
Dec. ¶ 19.

21

Plaintiff's Memorandum of Points and Authorities in Support of Motion for Class Certification;
Case No.: 3:18-cv-04954-CRB

1    *Ins. Exchange*, 32 Cal. 4th 1198, 1214 (2004) ("It is not our role to speculate on the policyholder's

2    abstract expectations, but rather to consider reasonable expectations defined by the insurer's policy

3    language.")); *In re Conseco*, 920 F. Supp. 2d at 1065 (refusing to decertify class of policyholders

4    asserting breach of COI provision because the policies were standard forms and therefore must be

5    interpreted uniformly, stating insurance policies are drafted "precisely in order to avoid the problem

6    that…thousands of policyholders have thousands of different understandings of a standard form"); *see*

7    *also Vedachalam v. Tata Consultancy Servs., Ltd.*, No. C 06-0963 CW, 2012 WL 1110004, at *13

8    (N.D. Cal. Apr. 2, 2012) ("[W]here a form contract of adhesion is at issue, the court will, wherever

9    reasonable, interpret the agreement 'as treating alike all those similarly situated, without regard to their

10   knowledge or understanding of the standard terms of the writing' in order to 'effectuate the reasonable

11   expectations of the average member of the public who accepts it.'") (quoting *Ewert v. eBay, Inc.*, Nos.

12   C-07-02198 RMW, C-07-04487 RMW, 2010 WL 4269259, at *7 (N.D. Cal. Oct. 25, 2010) (quoting

13   Restatement (Second) of Contracts § 211(2) & Comment e)); *Ellena v. Dep't of Ins.*, 230 Cal. App. 4th

14   198, 212-13 & n.7 (2014) ("Because [an insurance] policy is seldom read and almost never

15   understood[,] ... an insurance transaction is a one-sided 'bargain'; if it merits the label 'contract,' it is in

16   a very specialized, not an ordinary sense," applying Restatement (Second) of Contracts § 211); *Tahoe*

17   *Nat'l Bank v. Phillips*, 4 Cal. 3d 11, 20 (1971) ("[T]o permit [the drafter] to choose an allegedly

18   ambiguous form of agreement, and then by extrinsic evidence seek to give it the effect of a different

19   and unambiguous form, would be to disregard totally the rules respecting interpretation of adhesion

20   contracts, and to create an extreme danger of over-reaching on the part of [the party] with superior

21   bargaining positions."). Therefore, this Court's interpretation construing the ambiguous policy language

22   in favor of the insured will apply to all class members without regard to their subjective understandings.

23       State Farm will likely cite *Gregurek v. United of Omaha Life Ins. Co.*, No. CV 05-6067-

24   GHK(FMOX), 2009 WL 4723137 (C.D. Cal. Nov. 10, 2009), where the court decertified a similar COI

25   overcharge case, concluding individual sales presentations were "relevant to determining what [the

26   insurance company] objectively believed was a policyholder's understanding of the COI charge." *Id.* at

27   *2. The Court should find *Gregurek* has no persuasive force here. First, in the context of an insurance

28   policy, the interpretative tool of construing an ambiguity in the sense "the promisor believed … the

promisee understood it," "protects not the subjective beliefs of the insurer but, rather, 'the objectively reasonable expectations of the insured.'" *Bank of the W. v. Superior Court*, 2 Cal. 4th 1254, 1265 (1992) (quoting *AIU Ins. Co. v. Superior Court*, 51 Cal. 3d 807, 822 (1990)). This test is meant to protect the insured from poor drafting by the insurance company, which occupies a superior bargaining position. *See AIU Ins. Co.*, 51 Cal. 3d at 822. It is not meant to allow an insurance agent to determine the meaning of a policy by making statements to the policy owner in accordance with the insurance company's preferred interpretation. Simply put, *Gregurek* is not consistent with the numerous California cases recognizing that the insured's subjective understanding is irrelevant, and that form policies should be interpreted uniformly.

Second, the Policy in this case expressly states that agents' representations have *no effect* on the meaning of the Policy. *See* Policy at 11 ("No agent has the authority to change the policy or to waive any of its terms."). So, what an agent may have told a prospective insured has no bearing on the policy owner's objectively reasonable expectations. Accordingly, class members' subjective understandings of the meaning of the Policy does not create individualized issues of policy interpretation.

> **e.    State Farm's statute of limitations defense does not create individualized issues.**

"Courts have been nearly unanimous ... in holding that possible differences in the application of a statute of limitations to individual class members, including the named plaintiffs, does not preclude certification of a class action so long as the necessary commonality and, in a 23(b)(3) class action, predominance, are otherwise present." *Schramm v. JPMorgan Chase Bank, N.A.*, No. LA CV09-09442 JAK, 2011 WL 5034663, at *10 (C.D. Cal. Oct. 19, 2011) (holding that a statute of limitations defense did not necessitate individual inquiries into when class members had actual or inquiry notice of their claims and noting that defendant's "speculation that some class members' claims may be barred on the basis of actual knowledge is not sufficient to defeat certification") (citing *Cameron v. E.M. Adams & Co.*, 547 F.2d 473 (9th Cir. 1976); *Williams v. Sinclair*, 529 F.2d 1383, 1388 (9th Cir. 1975)); Newberg on Class Actions § 4:57 (5th ed.) ("Statute of limitations defenses—like damage calculations, affirmative defenses, and counterclaims—rarely defeat class certification."). Courts also hold that tolling doctrines like the discovery rule do not defeat predominance when their application depends on

23

Plaintiff's Memorandum of Points and Authorities in Support of Motion for Class Certification;
Case No.: 3:18-cv-04954-CRB

common evidence of the defendant's conduct. *See Schramm*, 2011 WL 5034663, at \*11-12; *Tait*, 289 F.R.D. at 486; *In re Linerboard Antitrust Litig.*, 305 F.3d 145, 163 (3d Cir. 2002).

Bally will demonstrate that the statute of limitations has not run on her claims or those of the Class because no class member had any way of knowing how State Farm determined the Policy's COI rates. Plaintiff's claims for relief and tolling allegations are not premised on any individualized evidence of statements from her insurance agent, State Farm, or anyone else. Instead, her claims are premised on uniform contract language and State Farm's uniform conduct. The same evidence will prove the claims and tolling allegations of the Class as a whole. *See Vogt* class cert. order (rejecting State Farm's argument that its statute of limitations defense precluded class certification because the class-wide evidence indicated no policy owner could have determined that the COI rates included unlisted factors); Dkt. 77 at 5-6 (denying summary judgment for State Farm on its statute of limitations defense finding there was no "reason to conclude that a policyholder would have been on notice that State Farm was considering unlisted variables in calculation [of] the COI"). Thus, State Farm's statute of limitations defense does not undermine the predominance of the common issues.

## B. Superiority is satisfied.

Finally, Rule 23(b)(3) requires that a class action be superior to other methods of adjudication, an analysis that "encompasses the whole range of practical problems that may render the class action format inappropriate for a particular suit." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 164 (1974). In determining whether superiority is met, a court considers: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Rule 23(b)(3).

Because this case involves a form contract and uniform California law governing its interpretation, a class action will be just as manageable as a single plaintiff case. There are no other class actions pending against State Farm making the claims asserted here on behalf of a California class. In addition, because all class members' policies were issued in California, concentrating this litigation in California is desirable. Class certification will greatly benefit the many policy owners, all of whom are in the dark

about how State Farm calculates COI charges because State Farm never discloses its COI rates or the factors it uses to determine them, and have an interest in securing the just adjudication of their rights as against State Farm.

## VII.   Rule 23(b)(2) is satisfied.

With respect to Count IV, the proposed Class satisfies Rule 23(b)(2), because State Farm "has acted or refused to act on grounds that apply generally to the class, so that . . . corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Determination of the merits of Count IV will turn on the same evidence supporting Counts I and II. As such, certification of Count IV under Rule 23(b)(2) is appropriate. *See Vogt* class cert. order at 14-15 (certifying class under 23(b)(2) for purposes of interpreting policy at issue because "the terms of the Policy are the same for all potential class members, [and therefore] the interpretation will result in one declaratory judgment applicable to all class members"); *In re Conseco*, 2005 WL 5678842, at *1, *8-9 (certifying Rule 23(b)(2) class in nearly identical case); *In re Conseco*, 270 F.R.D. at 532 (same); *Yue*, 282 F.R.D. at 480 (same); *see also Gooch v. Life Investors Ins. Co. of Am.*, 264 F.R.D. 340, 350 (M.D. Tenn. 2009), *aff'd* 672 F.3d 402, 427-28 (6th Cir. 2012) (certifying Rule 23(b)(2) class involving construction of rights under health insurance policies); *Leszczynski v. Allianz Ins.*, 176 F.R.D. 659, 673-74 (S.D. Fla. 1997) (certifying Rule 23(b)(2) class that sought declaration of rights under insurance policies).

## <u>CONCLUSION</u>

Because all of the required elements of Rule 23 have been met, Plaintiff's motion for class certification should be granted.

Dated: November 15, 2019

**GIRARD SHARP LLP**

By:  /s/ *Daniel C. Girard*
Daniel C. Girard (State Bar No. 114826)
dgirard@girardsharp.com
Angelica M. Ornelas (State Bar No. 285929)
aornelas@girardsharp.com
601 California Street, Suite 1400
San Francisco, California 94108
Tel:    415-981-4800
Fax:    415-981-4846

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Norman E. Siegel (admitted *pro hac vice*)
siegel@stuevesiegel.com
Ethan M. Lange (admitted *pro hac vice*)
lange@stuevesiegel.com
**STUEVE SIEGEL HANSON LLP**
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Tel: 816-714-7100
Fax: 816-714-7101

John J. Schirger (admitted *pro hac vice*)
jschirger@millerschirger.com
Matthew W. Lytle (admitted *pro hac vice*)
mlytle@millerschirger.com
Joseph M. Feierabend (admitted *pro hac vice*)
jfeierabend@millerschirger.com
**MILLER SCHIRGER, LLC**
4520 Main Street, Suite 1570
Kansas City, Missouri 64111
Tel: 816-561-6500
Fax: 816-561-6501

*Attorneys for Plaintiff Elizabeth A. Bally*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 15, 2019, I electronically filed the foregoing with
the Clerk of the Court using the CM/ECF system, which will send notice of such filing to all
registered users.

*/s/ Daniel C. Girard*
Daniel C. Girard

Plaintiff's Memorandum of Points and Authorities in Support of Motion for Class Certification;
Case No.: 3:18-cv-04954-CRB