1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

ELIZABETH A. BALLY,

　　　　　Plaintiff,

　　v.

STATE FARM LIFE INSURANCE
COMPANY,

　　　　　Defendant.

Case No. 18-cv-04954-CRB

**ORDER DENYING MOTION TO
STRIKE AND GRANTING CLASS
CERTIFICATION**

State Farm Life Insurance Company's cost of insurance ("COI") rates are "based on the Insured's age on the Policy anniversary, sex, and applicable rate class." Elizabeth Bally has brought a putative class action against State Farm, on the theory that it violates this provision by calculating COI rates using factors other than age, sex, and rate class. State Farm's motion for summary judgment argued that the phrase "based on" allows it to consider other factors when calculating COI rates, as long as it also considers the enumerated factors. This Court rejected that argument and denied summary judgment, concluding that the phrase "based on" was ambiguous, and therefore should be construed against State Farm. State Farm requested leave to file an interlocutory appeal on this issue, which the Court granted, but without granting a stay. See Order Granting Leave to Appeal (dkt. 99).

Bally now moves for class certification. See Mot. for Class Certification (dkt. 93) ("Class Motion"). State Farm moves to strike a report, provided by Bally's expert Scott J. Witt, that is integral to Bally's motion. See generally Mot. to Strike (dkt. 110).

State Farm's motion to strike is denied. Recent Ninth Circuit case law indicates that striking expert testimony at the class certification stage is improper, and moreover, State Farm's

attacks on Witt's reliability are unconvincing. Bally meets the requirements of Rule 23, and so her motion for class certification is granted.[1]

## I. BACKGROUND

### A. Form 94030 Life Insurance Policies

Bally purchased a flexible premium adjustable insurance policy, Form 94030, from State Farm on April 8, 1994, on behalf of her daughter. Compl. ¶¶ 11, 47 (dkt. 1); see also Class Mot. Ex. B (dkt. 93-4) ("Policy"). This Policy "provide[s] policy owners a savings, or interest-bearing component that is identified in the Policies . . . as the 'Account Value.' Under the terms of the Policies, the Account Value consists of an interest-bearing account that accumulates over time." Compl. ¶ 19. "The money that makes up the Account Value is the property of the policy owner and is held in trust by [State Farm]." Id. ¶ 21.

The Policy authorizes State Farm to take a "Monthly Deduction" from the Account Value. Policy at 9. The monthly deduction "is made each month, whether or not premiums are paid, as long as the cash surrender value is enough to cover that monthly deduction. Each deduction includes: (1) the cost of insurance, (2) the monthly charges for any riders, and (3) the monthly expense charge." Policy at 9. The "expense charge" is $5.00. Policy at 3.

The dispute in this case centers on the first factor—the COI. The Policy states:

> **Cost of Insurance.** This cost is calculated each month. The cost is determined separately for the Initial Basic Amount and each increase in Basic Amount. The cost of insurance is the monthly cost of insurance rate times the difference between (1) and (2), where:
> (1) is the amount of insurance on the deduction date at the start of the month divided by 1.0032737, and
> (2) is the account value on the deduction date at the start of the month before the cost of insurance and the monthly charge for any waiver of monthly deduction benefit rider are deducted.
> Until the account value exceeds the Initial Basic Amount, the account

---

[1] Both parties have filed various motions to file exhibits under seal. See Mot. to File under Seal (dkt. 107); Mot. to File under Seal (dkt. 109); Mot. to File under Seal (dkt. 111); Mot. to File under Seal (dkt. 118). Those motions are denied insofar as they seek to file under seal material referenced in this order. As to that material, the Court concludes that neither "compelling reasons" nor "good cause" exist to overcome the "public interest in understanding the judicial process." See Kamakana v. City and Cty. of Honolulu, 447 F.3d 1172, 1178–81 (9th Cir. 2006). The motions to file under seal are otherwise granted.

value is part of the Initial Basic Amount. Once the account value exceeds that amount, if there have been any increases in Basic Amount, the excess will be part of the increases in order in which the increases occurred.

Policy at 10.

The Policy goes on to describe the monthly cost of insurance rates:

These rates for each Policy year are based on the Insured's age on the Policy anniversary, sex, and applicable rate class. A rate class will be determined for the Initial Basic Amount and for each increase. The rates shown on page 4 are the maximum monthly cost of insurance rates for the Initial Basic Amount. Maximum monthly cost of insurance rates will be provided for each increase in the Basic Amount. We can charge rates lower than those shown. Such rates can be adjusted for projected changes in mortality but cannot exceed the maximum monthly cost of insurance rates. Such adjustments cannot be made more than once a calendar year.

Id. at 10. Expenses and profits are not mentioned. See id. Proper interpretation of this section— and particularly the phrase "based on"—is the key to this dispute. See Compl. ¶¶ 29–33.

Bally alleges that "[a]lthough the Policies authorize Defendant to use only certain, specified factors in determining Monthly Cost of Insurance Rates"—namely, "Insured's age on the Policy anniversary, sex, and applicable rate class," Policy at 10—"Defendant uses other factors, not authorized by the Policies, when determining those rates." Compl. ¶ 37. In consequence, Bally urges that State Farm violated the Policy when it calculated the COI, and took more money out of the Account Value than it was authorized to. Id. ¶¶ 38–44.

**B.     The Witt Report**

In support of class certification, Bally offers an expert report from actuary Scott J. Witt. See generally Class Mot., Ex. 1 (dkt. 93-2) ("Witt Report"). Witt provides a model that purports to reliably calculate the allegedly improper charges for each Policy using State Farm's own documents and data. See id. at 6. According to Witt, State Farm developed "mortality rates" that were based only on the Policy-enumerated factors of "age, sex, rate class, and policy year," but added expense and profit charges, or "loads," above and beyond the mortality rates to reach the COI it actually charged. Id. Witt's model uses the mortality rates to isolate the excess COI loads and calculate the damages for each policyholder. See id.

3

### C.     Procedural History

Bally filed a class action complaint for breach of contract, conversion, and declaratory and injunctive relief under California law in August 2018.[2]  See generally Compl.  Following discovery, State Farm moved for summary judgment.  Mot. for Summary Judgment (dkt. 63).  It argued, inter alia, that Bally's legal theory was deficient because the language in the Policy did not require that the listed factors be exhaustive.  Id. at 1–2.

This Court denied the motion, holding that the phrase "based on" is ambiguous and therefore must be construed against the insurer.  Order Denying Summary Judgment at 14 (citing Crane v. State Farm Fire & Casualty Co., 5 Cal. 3d 112, 115 (Cal. 1971)) (dkt. 77).  Looking to persuasive precedent, dictionary definitions, and common usage, this Court concluded that "based on" could be read to require exclusive reliance on the listed factors.  Id. at 8–10.  It further held that the "context of the Policy" did not resolve the ambiguity.  Id. at 10.

State Farm then asked the Court to certify for interlocutory appeal under 28 U.S.C. § 1292(b) the order denying summary judgment.  Mot. for Leave to Appeal at 1 (dkt. 81).  State Farm seeks interlocutory review of the following question:

> Whether the cost-of-insurance rates provision in Plaintiff Bally's State Farm life insurance policy, which states that the "rates for each policy year are based on the Insured's age on the policy anniversary, sex, and applicable rate class," allows State Farm to consider factors such as expenses and potential profits in setting the rates, when that language is construed in the context of the provision and the policy as a whole?

Id.  Noting the lack of clear precedent on this issue, the Court granted State Farm's request for leave to appeal but denied State Farm's request for a stay of the litigation pending resolution of the appeal, finding that a stay would not promote judicial efficiency.  See Order Granting Leave to Appeal (dkt. 99).

Bally now moves to certify a proposed class (the "Class") consisting of "[a]ll persons who own or owned a universal life insurance policy issued by State Farm on Form 94030 in the State of California whose policy was in-force on or after January 1, 2002 and who was subject to at least

---

[2]  This Court sits in diversity.  See Compl. ¶¶ 8–9; 28 U.S.C. § 1332(d).

one monthly deduction." Class Mot. at 5–6. The Class excludes "State Farm; any entity in which State Farm has a controlling interest; any of the officers, directors, or employees of State Farm; the legal representatives, heirs, successors, and assigns of State Farm; anyone employed with Plaintiff's counsel's firms; and any Judge to whom this case is assigned, and his or her immediate family" ("Excluded Persons"). Id. at 6 n.4. Meanwhile, State Farm moves to strike the materials comprising the Witt Report (dkt. 93-2, 93-3, 93-4, 93-5, 93-6), arguing that it is inadmissible under Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579 (1993). See Mot. to Strike at ii.

## II.    LEGAL STANDARD

### A.    Motion to Strike

"Inadmissibility alone is not a proper basis to reject evidence submitted in support of class certification." Sali v. Corona Reg'l Med. Ctr., 909 F.3d 996, 1004 (9th Cir. 2018), cert. dismissed, 139 S. Ct. 1651 (2019). Although courts should still evaluate challenged expert testimony in support of class certification under Daubert, that analysis must not be dispositive; rather, the ultimate question of admissibility "should go to the weight that evidence is given at the class certification stage." Sali, 909 F.3d at 1006.

### B.    Class Certification

Plaintiffs bear the burden of proving, by a preponderance of the evidence, that class certification is appropriate. See Hawkins v. Comparet-Cassani, 251 F.3d 1230, 1238 (9th Cir. 2001). Certification is a three-step process.

First, plaintiffs must "demonstrate that an identifiable and ascertainable class exists." Mazur v. eBay Inc., 237 F.R.D. 563, 567 (N.D. Cal. 2009).

Second, plaintiffs must meet the four explicit requirements of Rule 23(a): numerosity, commonality, typicality, and adequacy. Fed. R. Civ. P. 23(a). "Class certification is proper only if the trial court has concluded, after a 'rigorous analysis,' that Rule 23(a) has been satisfied." Wang v. Chinese Daily News, Inc., 737 F.3d 538, 542–43 (9th Cir. 2013) (quoting Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 351 (2011)).

Third, plaintiffs must show that the proposed class meets at least one of the provisions of

5

Rule 23(b).  Fed. R. Civ. P. 23(b); <u>Amchem Prods., Inc. v. Windsor</u>, 521 U.S. 591, 614 (1997).

Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over

any questions affecting only individual members, and [that] a class action is superior to other

available methods for fairly and efficiently adjudicating the controversy."  Rule 23(b)(2) requires

that "the party opposing the class has acted or refused to act on grounds that apply generally to the

class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the

class as a whole."

     When adjudicating a motion for class certification, the court accepts the allegations in the

complaint as true so long as those allegations are sufficiently specific to permit an informed

assessment as to whether the requirements of Rule 23 have been satisfied.  <u>Blackie v. Barrack</u>, 524

F.2d 891, 901 (9th Cir.1975).  The merits of the class members' substantive claims are generally

irrelevant to this inquiry.  <u>Eisen v. Carlisle & Jacquelin</u>, 417 U.S. 156, 178 (1974); <u>see also</u> <u>Moore</u>

<u>v. Hughes Helicopters, Inc.</u>, 708 F.2d 475, 480 (9th Cir.1983).  However, courts may "consider

evidence which goes to the requirements of Rule 23 even though the evidence may also relate to

the underlying merits of the case."  <u>Hanon v. Dataproducts Corp.</u>, 976 F.2d 497, 509 (9th

Cir.1992), (citing <u>In re Unioil Sec. Litig.</u>, 107 F.R.D. 615, 618 (C.D.Cal.1985)); <u>see also</u> <u>Moore</u>,

708 F.2d at 480 ("some inquiry into the substance of a case may be necessary to ascertain

satisfaction of the commonality and typicality requirements of Rule 23(a)").

### III.    MOTION TO STRIKE

     State Farm moves to strike the materials comprising the Witt Report (dkt. 93-2, 93-3, 93-4,

93-5, 93-6), arguing that it is inadmissible under <u>Daubert</u>.  <u>See</u> Mot. to Strike at i.  However,

"[i]nadmissibility alone is not a proper basis to reject evidence submitted in support of class

certification."  <u>Sali</u>, 909 F.3d at 1004.  Although courts should still evaluate challenged expert

testimony in support of class certification under <u>Daubert</u>, that analysis must not be dispositive;

rather, "an inquiry into the evidence's ultimate admissibility should go to the weight that evidence

is given at the class certification stage."  <u>See Sali</u>, 909 F.3d at 1006.  State Farm argues that <u>Ellis</u>

<u>v. Costco Wholesale Corp.</u>, 657 F.3d 970, 982 (9th Cir. 2011) established that courts should strike

expert testimony where it fails a <u>Daubert</u> analysis, <u>see</u> Mot. to Strike at i. But Sali forecloses this interpretation by explicitly instructing that a <u>Daubert</u> analysis alone, while relevant, should not prevent a court from considering expert testimony at the class certification stage. The motion to strike is therefore denied. The Court will nonetheless consider State Farm's arguments regarding the Witt Report's reliability, in order to determine the weight of this evidence as it relates to class certification.

### A. Reliability of the Witt Report

A qualified expert may testify where "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." Fed. R. Evid. 702. <u>Daubert</u> identified four factors that may be relevant to evaluating the reliability of expert testimony: "(1) whether the theory can be and has been tested, (2) whether the theory has been peer reviewed and published, (3) what the theory's known or potential error rate is, and (4) whether the theory enjoys general acceptance in the applicable scientific community." <u>Murray v. S. Route Mar. SA</u>, 870 F.3d 915, 922 (9th Cir. 2017) (citing <u>Daubert</u>, 509 U.S. at 592–93). These factors are not equally applicable in every case, nor are they exhaustive; a court may ignore factors "that are not reasonable measures of reliability in a particular case." Id. The <u>Daubert</u> standard applies to all expert testimony, not just scientific testimony. <u>See</u> <u>Kumho Tire Co. v. Carmichael</u>, 526 U.S. 137, 149 (1999). This analysis is malleable and context-dependent, and district courts are vested with "broad latitude" in deciding how to test an expert's reliability. <u>See</u> <u>Murray</u>, 870 F.3d at 923.

The subject of Witt's testimony is technical, not scientific, and is highly specific to the insurance policy at issue here. This calls for a more particularized analysis of reliability than a rote application of the <u>Daubert</u> factors. The motion to strike reflects this; State Farm levels several direct attacks at the methodology of the Witt Report that do not squarely align with the <u>Daubert</u> factors, but are nonetheless relevant in determining reliability. <u>See</u> Mot. to Strike at 10–16. Thus, this Order addresses each of State Farm's points in turn, rather than the <u>Daubert</u> factors.

### 1. Witt's Qualifications as an Expert

As an initial matter, Rule 702 requires that a testifying expert be "qualified as an expert by knowledge, skill, experience, training, or education." Rule 702 "contemplates a broad conception of expert qualifications." Thomas v. Newton Int'l Enterprises, 42 F.3d 1266, 1269 (9th Cir. 1994). Witt's CV lists, among other qualifications: over twenty-four years of experience in the insurance industry; licensure as an actuary; membership in professional actuarial organizations; degrees in statistics, math, and computer science; and prior experience giving expert testimony on insurance matters. See Class Mot., Ex. A at 1–3 (dkt. 93-3). State Farm does not argue that Witt is unqualified as an expert, and the Court finds that he is indeed qualified.

### 2. Actuarial Judgment

State Farm argues that Witt did not exercise actuarial judgement in rendering his opinion, and did not comply with the Actuarial Standards of Practice ("ASOP"). See Mot. to Strike at 6–9. These arguments are unconvincing.

### a. Witt Used His Actuarial Judgment

According to State Farm, certain of Witt's statements at deposition amount to an admission that he did not use actuarial judgment in fashioning his report. See id. First, Witt said that when he created his report, "[n]ot much actuarial judgment was required. Perhaps the most amount of actuarial judgment that was required was being able to sift through the information and recognize that not a lot of actuarial judgment was required." Mot. to Strike at 7 (citing Root Decl., Ex. 1 (Witt Dep.) at 17:2–7) (alteration in original). State Farm posits that this shows that "in [Witt's] judgment, his declaration is not 'actuarial services.'" See Mot. to Strike at 7.

This is an unfair characterization of Witt's statement. Witt did not say that his report required no actuarial judgment; he said "not much." That alone is enough to end the argument, but Bally also offers a far more plausible explanation for the statement: Witt relied on State Farm's own pricing documents and witness testimony, so he did not have to formulate his own pricing assumptions for the Policy, thus significantly reducing the amount of actuarial judgment he might otherwise need to exercise to draw his conclusions. See Strike Opp'n at 5–6. State Farm

asks the Court to adopt an unreasonable interpretation of Witt's statement.

### b. Witt's Analysis Does Not Run Afoul of ASOP

State Farm argues Witt failed to comply with ASOP when creating his report. <u>See</u> Mot. to Strike at 6–9. State Farm cites ASOP 41, Section 4.3, <u>see</u> Mot. to Strike at 7, which dictates that when relying on assumptions made by other parties, actuaries should disclose (1) that the assumption was set by another party, (2) the party who set the assumption, (3) why that party, rather than the actuary, has set the assumption, and (4) if the assumption is unreasonable in the actuary's judgment, or if the actuary could not judge the reasonableness of the assumption without substantial additional work beyond the scope of the assignment. <u>See</u> ASOP 41, § 4.3. State Farm contends that Witt simply adopted Bally's theory for the replacement COI rates used in his model rather than using his own actuarial judgment, and thus failed to comply with Section 4.3 by omitting the disclosures discussed above as well as failing to use actuarial judgment at all. <u>See</u> Mot. to Strike at 7–8.

State Farm's argument fails on two fronts. First, the supposed ASOP violation has only a tenuous connection to the underlying question of reliability that the Court is concerned with here. Section 4.3 deals with prudential disclosures rather than developing reliable methodology, and State Farm provides no authority to suggest that courts have deferred to ASOPs when evaluating expert reliability. Second, State Farm has not established that Witt failed to comply with Section 4.3 in the first instance; certainly, not in a way that renders his "opinion 'divorced from the . . . expert basis that qualified the witness in the first place.'" <u>See</u> Mot. to Strike at 7 (citing <u>United States v. Hall</u>, 93 F.3d 1337, 1344 (7th Cir. 1996)). Contrary to State Farm's assertions, <u>see</u> Mot. to Strike at 8, Witt did not simply adopt replacement rates supplied by Bally's counsel. Rather, Witt took his replacement rates from State Farm's own mortality assumptions, and has explained why he judged these rates to be reasonable. Summary Judgement Opp'n, Ex. 1 at ¶ 25 (dkt. 67-2). State Farm fails to establish that Witt did not comply with ASOP in producing his report, or at least, not in a way that meaningfully bears on the reliability of Witt's methodology.

### 3. The Connection Between the Damages Model and the Theory of Liability

State Farm argues that Witt's model has several flaws that untether it from Bally's theory of liability: first, that Witt failed to differentiate rates between tobacco users and non-users; second, that Witt improperly factored the ages of policies into his replacement rates; and third, that Witt's model would charge certain Class members more than State Farm actually charged them in real life. See Mot. to Strike at 9–10. State Farm also contends that Witt's model creates incurable intra-class conflicts, and improperly awards damages to beneficiaries who received a death benefit. See id. at 14–15. These arguments largely turn on factual disputes over which inputs Witt should use in his model, rather than flaws in the model itself, and thus do little to undermine the reliability of the model at this stage.

#### a. Differentiation Based on Tobacco Use

State Farm argues that Witt incorrectly used State Farm's "blended" mortality rates in his model, which do not differentiate pricing between tobacco users and non-users. According to State Farm, Witt should have used the "non-blended" (tobacco-differentiated) rates that State Farm ultimately used to calculate COI rates. See id. at 10–12. State Farm raised an identical argument regarding Form 94030 in Vogt v. State Farm Life Ins. Co., No. 2:16-CV-04170-NKL, 2018 WL 4937330, at *5 (W.D. Mo. Oct. 11, 2018), appeal docketed, 18-3419 (8th Cir. November 13, 2018). Judge Laughrey rejected this theory. She held that because the State-Farm-produced mortality rates that Witt used "undisputedly did not distinguish between tobacco users and those who did not use tobacco, and tobacco use was not one of the enumerated factors in the Policy on which COI rates were supposed to be based," Witt's use of the blended rates did not diminish the reliability of his model. Id. Witt's model and the underlying terms of Form 94030 are the same in this case as in Vogt. See Witt Report at ¶ 33. Just as in Vogt, the blended rates that Witt used reflect the terms of Form 94030, and his use of those rates comports with plaintiff's damages theory of COI charges beyond the terms of the Policy. Thus, Witt's failure to differentiate rates based on tobacco use does not impact the reliability of his model.

### b. Pooled vs. Unpooled Mortality Rates

State Farm also contends that Witt's model inappropriately uses "unpooled" rates, which differ based on the age of a given Policy (the "Policy year"), and instead should use "pooled" rates that make no such distinction.  See Motion to Strike at 12–13.  Bally acknowledges that State Farm ultimately charged pooled COI rates (i.e., the actual COI charges did not vary based on Policy year), but argues that State Farm used the <u>unpooled</u> mortality rates discussed above to calculate the COI rates they ultimately charged, which makes Witt's use of the unpooled mortality rates appropriate.  See Strike Opp'n at 12.  When faced with this question of fact in <u>Vogt</u>, the jury found that State Farm used the unpooled mortality rates to calculate the ultimate COI charges.[3] <u>Vogt v. State Farm Life Ins. Co.</u>, No. 2:16-CV-04170-NKL, 2018 WL 4937069, at *3 (W.D. Mo. Oct. 11, 2018).  Further, Form 94030 references "policy year" in the provision describing the factors that go into the monthly COI charges, suggesting that Policy year was incorporated into the pricing scheme.  Policy at 10.  State Farm's argument amounts to a factual dispute over the correct input that Witt should have used in his model, rather than a criticism of the model itself, and thus does not go against Witt's reliability as an expert.

### c. Unharmed Class Members

State Farm argues that Witt's model is deficient because in certain instances, it would charge a higher rate than the policyholder was actually charged, and thus fails to separate harmed from unharmed Class members.  See Mot. to Strike at 13–14.  Bally points out that this is a relatively rare phenomenon that occurs with policies that have been held for a long time, which increases the underlying mortality rate to the point that the ultimate COI charged was uninflated or even discounted relative to the mortality rate.  See Strike Opp'n at 13–14.  Bally does not dispute the possibility that some Class members were actually undercharged, but offers that those Class members can be identified using Witt's methodology.  See id.

Judge Laughley addressed the deficiency in State Farm's argument in <u>Vogt</u>.  She

---

[3] Bally asserts that she will eventually invoke the <u>Vogt</u> verdict to collaterally estop State Farm from relitigating this issue, but acknowledges that the Court need not rule on this issue here.  See Class Mot. at 14–15.

recognized that "[t]he fact that the rates that State Farm actually charged were not always higher than the mortality rates that Plaintiffs' expert calculated does not mean that Plaintiff's model does not adequately capture the non-mortality component of the charge." <u>Vogt</u>, 2018 WL 4937330 at *4. She explained that the relative overcharging in Witt's model was not problematic, saying that "[a]n inference that State Farm recoups profits and expenses in the earlier years of the Policy and refrains from doing so later—when more policies have lapsed or been surrendered, and when actual mortality costs increase—does not indicate a flaw in the damages model; instead, it more likely indicates a calculated business decision." <u>Id.</u> at *5. The possibility that certain Class members may have been undercharged at certain points according to Witt's model does not negatively impact its reliability.

### d. Intra-class Conflicts

State Farm argues that Witt's model creates incurable intra-class conflicts between tobacco users and non-users, and between policyholders who would benefit more under pooled rather than unpooled rates. <u>See</u> Mot. to Strike at 14. Bally responds that there is no conflict, because these distinctions should be resolved as a matter of fact, not on the basis of what is or is not favorable to certain subsets of the Class. <u>See</u> Strike Opp'n at 14. Indeed, as in <u>Vogt</u>, this amounts to a factual dispute that does not create an intra-class conflict. <u>See</u> 2018 WL 4937069 at *3 ("State Farm does not explain how arguing a fact . . . creates an intra-party conflict."). This argument fails to undermine the reliability of Witt's methodology.

### e. Class Members Who Received a Death Benefit

Finally, State Farm asserts that Witt's model fails because it does not account for policies in the Class that terminated with the death of the insured and full benefits paid to the beneficiaries. State Farm asserts that this scenario results in no damages for those Class members. <u>See</u> Mot. to Strike at 15. Class members had the choice of several different benefit options that would accrue upon termination of their policy. Those that chose "Death Benefit Option 1" received the face value of their policy, an amount that was consistent regardless of account value in almost all circumstances. Root Decl., Ex. 2 (Stiroh Decl.) at ¶ 24 (dkt. 109-4). This does not necessarily

mean, however, that those Class members suffered no damages. As Judge Laughrey noted, Option 1 policies that paid out in full may still have suffered damage to their account values by paying out loaded COI charges in excess of what the Policy authorized. See Vogt v. State Farm Life Ins. Co., No. 2:16-CV-04170-NKL, 2018 WL 1955425, at *4 (W.D. Mo. Apr. 24, 2018). Regardless, Bally correctly points out that even if these particular Class members (who make up a small fraction of the Class) suffered no damages, that does not meaningfully impact the reliability of Witt's model; rather, it would simply support a finding of no damages for those particular policies. See Strike Opp'n at 15.

In sum, the Court finds that State Farm's arguments do not meaningfully undercut the reliability of Witt's model.

## IV. MOTION FOR CLASS CERTIFICATION

### A. The Class is Ascertainable

A class is ascertainable if its "membership can be established by means of objective, verifiable criteria." Wortman v. Air New Zealand, 326 F.R.D. 549, 555 (N.D. Cal. 2018). Here, the proposed Class is ascertainable because it consists of owners of Form 94030 policies issued by State Farm in California who can be objectively identified through State Farm's records. State Farm does not address this issue in its opposition, implying that they do not dispute that the Class is ascertainable. See generally Opp'n.

### B. The Rule 23(a) Requirements

Bally must show that the proposed Class meets all four of the explicit requirements of Rule 23(a): numerosity, commonality, typicality, and adequacy.

#### 1. Numerosity

The class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "Although there is no exact number, some courts have held that numerosity may be presumed when the class comprises forty or more members." Krzesniak v. Cendant Corp., No. C 05-05156 MEJ, 2007 WL 1795703 at *7 (N.D. Cal. June 20, 2007). The plaintiff does not need to allege a precise number of class members, but may make a reasonable estimate. See Whiteway

v. FedEx Kinko's Office & Print Servs., No. C 05-2320 SBA, 2006 WL 2642528 at *3–4 (N.D. Cal. Sept. 13, 2006). State Farm's records indicate that there are approximately 86,000 members in the Class, Witt Report ¶ 43, which satisfies the numerosity requirement.

## 2. Commonality

The commonality requirement demands that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality is satisfied where "claims . . . depend upon a common contention . . . . of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Dukes, 564 U.S. at 350.

Judge Laughley's holding that the class in Vogt satisfied the commonality requirement is instructive: "Plaintiff's claims—for breach of the COI provision, for breach of the expense charge provision, for conversion, and for a declaratory judgment—all turn on interpretation of the Policy, which is a standard form contract to which each putative class member was a party." 2018 WL 1955425 at *3. The Class and claims here are identical to those in Vogt. Judge Laughley identified several questions, among others, common to the class:

- Is State Farm limited to using only those factors disclosed in the Policy when determining COI rates?
- Did State Farm use only the factors disclosed in the Policy when determining COI rates?
- Does loading expenses into COI rates violate the Policy's cap of $5.00 per month on expense charges?
- Did State Farm convert the property of Policy owners by deducting COI charges in excess of those amounts authorized by the Policy?
- Is the class entitled to damages as a remedy for State Farm's breaches?

Id. at *3. Substantially the same questions arise here, satisfying the commonality requirement. See Class Mot. at 9 (proposing common questions of fact and law).

State Farm contends that under California law, the Policy must be interpreted based on each individual policyholder's interpretation of the Policy, which will depend on the context of the sales pitch each policyholder received from a State Farm agent. See Certification Opp'n at 9–17 (dkt. 108). If State Farm is correct, the Court would have to examine and perform individualized

1   evidence and analysis for each class member, thus defeating the commonality requirement. Under

2   California law, "[i]f the terms of a promise are in any respect ambiguous or uncertain, it must be

3   interpreted in the sense in which the promisor believed, at the time of making it, that the promisee

4   understood it." Cal. Civ. Code § 1649. This rule protects the "objectively reasonable expectations

5   of the insured," not the subjective beliefs of the insurer. Bank of the W. v. Superior Court, 2 Cal.

6   4th 1254, 1265 (1992). If this rule does not resolve the ambiguity, the court resolves it against the

7   insurer. Id.

8

9       District courts in California have split in resolving this issue. Compare Gregurek v. United

10  of Omaha Life Ins. Co., No. CV 05-6067-GHK(FMOX), 2009 WL 4723137, at *7 (C.D. Cal.

11  Nov. 10, 2009) (decertifying class because individualized sales representations defeated

12  commonality), with In re Conseco Life Ins. Co. Life Trend Ins. Mktg. & Sales Practice Litig., 920

13  F. Supp. 2d 1050, 1065 (N.D. Cal. 2013), vacated sub nom. In re Conseco Life Ins. Co. Lifetrend

14  Ins. Sales & Mktg. Litig., No. 3:10-MD-02124-SI, 2013 WL 10349975 (N.D. Cal. Nov. 8, 2013).

15      The holding in Gregurek squarely reflects State Farm's position. The court held that

16  "[e]xtrinsic evidence relating to the details of individual sales presentations are relevant to our

17  determination of what [the insurer] objectively believed a policyholder's understanding of the COI

18  charge to be." Gregurek, 2009 WL 4723137, at *7. Accordingly, the court decertified the class

19  for lack of commonality. See id. at *9.

20      Judge Illston held differently in In re Conseco. 920 F. Supp. 2d at 1065. She rejected an

21  individualized analysis of each sales representation, reasoning that standard forms, like the

22  insurance contract in question, are "drafted as such precisely in order to avoid the problem [the

23  insurer] now invites—that thousands of policyholders have thousands of different understandings

24  of a standard form." Id. She concluded that "[a]llowing [the insurer's] assertion that its agents

25  had multiple and inconsistent understandings of a *standard form*, to defeat class certification here

26  would up-end Rule 23's commonality requirement." Id. (emphasis in original).

27

28

The Court concludes that Judge Illston has the more persuasive analysis. State Farm asks the Court to accept that its agents bind it to thousands of individual contracts that, despite the use of a standard form, all consist of materially different terms based on unwritten representations that each agent makes to a purchaser.[4] This runs counter to an axiom of contract law, that when there is a standardized agreement like the form contract at issue in this case, the agreement "is interpreted wherever reasonable as treating alike all those similarly situated, without regard to their knowledge or understanding of the standard terms of the writing." Restatement (Second) of Contracts § 211(2); see also Ellsworth v. U.S. Bank, N.A., No. C 12-02506 LB, 2014 WL 2734953, at *22 (N.D. Cal. June 13, 2014) ("when a form contract is at issue, courts in this district have held that a breach can be determined on a class-wide basis when the harm is the same and the contract terms are the same"); Haynes v. Farmers Ins. Exch., 32 Cal. 4th 1198, 1214 (2004) ("It is not our role to speculate on the policyholder's abstract expectations, but rather to consider reasonable expectations defined by the insurer's policy language."). The Court finds that the putative Class meets the commonality requirement.

### 3.      Typicality

The typicality requirement is met if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Representative claims need only be "reasonably co-extensive with those of absent class members; they need not be substantially identical." See Hanlon v. Chrysler Corp., 150 F.3d 1011, 1020 (9th Cir. 1998).

Bally's claims and the claims of the putative Class members all arise out of the interpretation and application of the Form 94030 Policy, satisfying the typicality requirement.

---

[4]  An assertion which, Bally points out, Certification Reply at 11 (dkt. 119), runs counter to language in the Policy stating that "[o]nly an officer has the right to change this policy. No agent has the authority to change the policy or waive any of its terms." Policy at 11.

16

### 4. Adequacy

The adequacy requirement asks whether the class representatives "will fairly and adequately protect the interests of the class." See Fed. R. Civ. P. 23(a)(4). Courts determine whether the named plaintiffs and counsel will (1) have any conflicts of interest with other class members and (2) prosecute the action vigorously on behalf of the class. See Hanlon, 150 F.3d at 1020. The requirement of adequacy "serves to uncover conflicts of interest between named parties and the class they seek to represent." Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 625 (1997).

As discussed above, the Policy terms and the methodology used to determine the COI rates that were charged were the same for every Class member, so Bally's interests are substantively identical to the other Class members. See Dukes, 564 U.S. at 349 n. 5 ("[t]he commonality and typicality requirements of Rule 23(a) tend to merge"). Bally's attorneys have extensive experience litigating cases of this type, see Class Mot. at 10–11, and State Farm does not dispute their qualifications.

As they did in Vogt, State Farm contends that Witt's use of unpooled mortality rates[5] creates an intra-class conflict that renders Bally inadequate as a class representative. See Certification Opp'n at 24–25. The supposed conflict arises in that under Witt's model, using the unpooled mortality rates, certain policies would, in certain months, generate higher COI charges than those policies were actually charged. State Farm argues that this places Bally's interests in direct contradiction with those Class members, because those Class members would be better off using pooled mortality rates. See id. As explained in the Court's analysis of the Witt Report's reliability, see supra Part III.B.3.b, there is no such conflict. First, whether State Farm used pooled or unpooled mortality rates in setting its COI charges is a question of disputed fact that, like in Vogt, may very well be resolved against State Farm at trial. Second, to the extent that Witt's model generates higher COI charges than were actually charged for certain months, that would affect calculation of damages, not determination of liability. If some Class members are found to have suffered no damages at all—and it appears likely that those members are

---

[5] That is, mortality rates that vary based on the age of a given Policy.

17

vanishingly rare—that justifies excluding said members from the Class, not refusing class certification <u>ab initio</u>. Bally and her counsel can adequately represent the Class, and the putative Class satisfies the requirements of Rule 23(a).

## C.     The Rule 23(b) Requirements

Bally seeks certification under Rule 23(b)(3), <u>see</u> Class Mot. at 15–25, or alternatively, Rule 23(b)(2), <u>see</u> <u>id.</u> at 25.

### 1.     Rule 23(b)(3)

Plaintiffs must satisfy Rule 23(b)(3)'s predominance and superiority requirements by showing that common questions "predominate over any questions affecting only individual members; and class resolution must be superior to other available methods for the fair and efficient adjudication of the controversy." <u>See</u> <u>Amchem</u>, 521 U.S. at 615 (internal quotations omitted).

#### a.     Predominance

Rule 23(b)(3)'s first test, predominance, itself consists of two parts. First, a plaintiff must show that common questions of law and fact predominate over individual questions. Second, a plaintiff must present a model of damages that (1) identifies damages that stem from the defendant's alleged wrongdoing and (2) is "susceptible of measurement across the entire class." <u>Comcast Corp. v. Behrend</u>, 569 U.S. 27, 34-38 (2013).

##### i.     Individual Determinations

Rule 23(b)(3)'s predominance requirement is more stringent than Rule 23(a)(2)'s commonality requirement, and "tests whether the proposed classes are sufficiently cohesive to warrant adjudication by representation." <u>Amchem</u>, 521 U.S. at 623. In assessing predominance, the court considers the "relation between common and individual questions in a case." <u>Tyson Foods, Inc. v. Bouaphakeo</u>, 136 S. Ct. 1036, 1045 (2016). "An individual question is one where members of a proposed class will need to present evidence that varies from member to member, while a common question is one where the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof." <u>Id.</u> (internal

quotations omitted). "The predominance inquiry asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." Id. (internal quotations omitted). "When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." Id. (internal quotations omitted).

Judge Laughley proves instructive once again: "The major portion of the evidence on the claims for breach of contract, conversion, and declaratory judgment is capable of consideration on a class wide basis. The terms of the Policy are the same for all class members. State Farm has not suggested that the determination of COI rates varied on a case-by-case basis. Thus, common questions predominate." Vogt, 2018 WL 1955425, at *6. This case is much the same.

As it did in Vogt, State Farm argues that individualized inquiries relating to the statute of limitations will predominate. See Certification Opp'n at 17. "The existence of a statute of limitations issue does not compel a finding that individual issues predominate over common ones." Williams v. Sinclair, 529 F.2d 1383, 1388 (9th Cir. 1975).

State Farm raised its statute of limitations defense at summary judgment, arguing that the annual notices it sent to policyholders triggered the limitations period. See Order Denying Summary Judgment at 5–6. But the Court rejected this argument, agreeing with Bally that "there is no basis to conclude that the annual notices put Bally—or any policyholder—on notice that the COI was calculated 'based on' unlisted factors" nor "any reason to conclude that a policyholder would have been on notice that State Farm was considering unlisted variables in calculat[ing] the COI." See id. at 6. State Farm raises essentially the same argument here, contending that questions of each individual policyholder's knowledge, education, and experience with the Policy will predominate. See Certification Opp'n at 18. Like at summary judgment, however, State Farm does not adduce any evidence to show that "policyholder[s] would have been on notice that State Farm was considering unlisted variables in calculation [of] the COI." Order Denying Summary Judgment at 6. When confronted with this same question, Judge Laughley held that

"there is nothing to indicate that individual statute-of-limitations issues would predominate so as to make class certification impractical or inappropriate." <u>Vogt</u>, 2018 WL 1955425, at *6. The Court concludes that is also the case here.

### ii.    The Damages Model

To satisfy the second part of the predominance inquiry, a plaintiff must present a damages model that identifies damages that stem from the defendant's alleged wrongdoing and that is "susceptible of measurement across the entire class." <u>Comcast</u>, 569 U.S. at 34-38. State Farm's attacks on Witt's model in its opposition to class certification mirror those in its motion to strike the Witt Report. <u>See</u> Certification Opp'n at 18–24; <u>see generally</u> Mot. to Strike. These arguments are addressed above in discussion of the motion to strike. <u>See</u> <u>supra</u> Part III.A. For the same reasons outlined in that analysis, the Court finds that Bally's proffered damages model suffices for class certification.

### b.    Superiority

To fulfill Rule 23(b)(3)'s superiority requirement, Plaintiffs must show "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." A court must consider Rule 23(b)(3)'s four factors. <u>See</u> <u>Zinser v. Accufix Research Institute, Inc.</u>, 253 F.3d 1180, 1190 (9th Cir. 2001). These factors are: "(a) the class members' interests in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already begun by or against class members; (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (d) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3)(A–D).

As it involves interpretation and application of thousands of identical form contracts, this case is amenable to resolution through a class action, and there is nothing to indicate that individual Class members have a significant interest in litigating their claims separately. There is no evidence of pre-existing litigation in California competing with this suit. The Class members are in California, and this District is no more or less suited to adjudicating this suit than any other jurisdiction in California. Although State Farm vigorously disagrees, there are no glaring

difficulties in managing this suit that would militate against certifying the Class. Bally satisfies the superiority requirement, and the Court grants the motion to certify the Class under Rule 23(b)(3).

### 2. Rule 23(b)(2)

Bally also argues that Count IV, her request for declaratory and injunctive relief, satisfies Rule 23(b)(2). Rule 23(b)(2) permits class certification where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23. However, "it does not authorize class certification when each class member would be entitled to an individualized award of monetary damages" and where "the monetary relief is not incidental to the injunctive or declaratory relief." Dukes, 564 U.S. at 360–61.

The Class satisfies Rule 23(b)(2) with respect to Count IV, and Count IV alone. The terms of Form 94030 are the same for all prospective Class members, so an injunction or declaration relating to the contract terms will be uniform. The Court grants the motion for class certification under Rule 23(b)(2), but only as to Count IV.

## V. CONCLUSION

For the foregoing reasons, the Court certifies a class under Rule 23(b)(3) comprising all persons who own or owned a universal life insurance policy issued by State Farm on Form 94030 in the State of California whose policy was in-force on or after January 1, 2002 and who were subject to at least one monthly deduction, excepting the Excluded Persons. The Court certifies a class for Count IV only under Rule 23(b)(2) comprising all persons who own or owned a universal life insurance policy issued by State Farm on Form 94030 in the State of California whose policy was in-force on or after January 1, 2002 and who were subject to at least one monthly deduction, excepting the Excluded Persons.

**IT IS SO ORDERED.**

Dated: April 2, 2020

_____
CHARLES R. BREYER
United States District Judge