IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELIZABETH A. BALLY,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>STATE FARM LIFE INSURANCE COMPANY,<br><br>　　　　Defendant. | Case No. 18-cv-04954-CRB<br><br>**ORDER APPROVING PLAN OF NOTICE AND STAYING DISSEMINATION OF CLASS NOTICE** |

In April, this Court granted class certification in this case. Now, Plaintiff Elizabeth Bally moves for approval of her plan of notice, while Defendant State Farm Life Insurance Co. requests a stay pending its petition for interlocutory review of the certification order. The Court will stay dissemination of class notice to avoid potential harm to class members, but otherwise denies State Farm's motion and approves Bally's plan.

## I.   BACKGROUND

Bally purchased a flexible premium adjustable insurance policy, Form 94030, from State Farm on April 8, 1994, on behalf of her daughter. Compl. (dkt. 1) ¶ 11; see also Class Mot. Ex. B (dkt. 93-4) ("Policy"). This Policy "provide[s] policy owners a savings, or interest-bearing component that is identified in the Policies . . . as the 'Account Value.' Under the terms of the Policies, the Account Value consists of an interest-bearing account that accumulates over time." Compl. ¶ 19. "The money that makes up the Account Value is the property of the policy owner and is held in trust by [State Farm]." Id. ¶ 21.

The Policy authorizes State Farm to take a "Monthly Deduction" from the Account Value. Policy at 9. The monthly deduction "is made each month, whether or not premiums are paid, as

long as the cash surrender value is enough to cover that monthly deduction. Each deduction includes: (1) the cost of insurance, (2) the monthly charges for any riders, and (3) the monthly expense charge." Id.

The dispute in this case centers on the first factor—the COI. The Policy states:

> The cost of insurance is the monthly cost of insurance rate times the difference between (1) and (2), where:
> (1) is the amount of insurance on the deduction date at the start of the month divided by 1.0032737, and
> (2) is the account value on the deduction date at the start of the month before the cost of insurance and the monthly charge for any waiver of monthly deduction benefit rider are deducted.

Id. at 10.

The Policy goes on to describe the monthly cost of insurance rates:

> These rates for each Policy year are based on the Insured's age on the Policy anniversary, sex, and applicable rate class. A rate class will be determined for the Initial Basic Amount and for each increase. The rates shown on page 4 are the maximum monthly cost of insurance rates for the Initial Basic Amount. Maximum monthly cost of insurance rates will be provided for each increase in the Basic Amount. We can charge rates lower than those shown. Such rates can be adjusted for projected changes in mortality but cannot exceed the maximum monthly cost of insurance rates. Such adjustments cannot be made more than once a calendar year.

Id. at 10. Expenses and profits are not mentioned. See id. Proper interpretation of this section—and particularly the phrase "based on"—is the key to this dispute. See Compl. ¶¶ 29–34.

Bally alleges that "[a]lthough the Policies authorize Defendant to use only certain, specified factors in determining Monthly Cost of Insurance Rates"—namely, "Insured's age on the Policy anniversary, sex, and applicable rate class," Policy at 10—"Defendant uses other factors, not authorized by the Policies, when determining those rates." Compl. ¶ 37. In consequence, Bally urges that State Farm violated the Policy when it calculated the COI and took more money out of the Account Value than it was authorized to. Id. ¶¶ 38–44.

Bally filed a class action complaint for breach of contract, conversion, and declaratory and injunctive relief under California law in August 2018.[1] See generally Compl. Following

---

[1] This Court sits in diversity. See Compl. ¶ 8; 28 U.S.C. § 1332(d).

2

1  discovery, State Farm moved for summary judgment. Mot. for Summary Judgment (dkt. 63). It
2  argued, inter alia, that Bally's legal theory was deficient because the language in the Policy did not
3  require that the listed factors be exhaustive. Id. at 1–2. This Court denied the motion, holding that
4  the phrase "based on" is ambiguous and therefore must be construed against the insurer. Order
5  Denying Summary Judgment (dkt. 77) at 14 (citing Crane v. State Farm Fire & Cas. Co., 5 Cal. 3d
6  112, 115 (Cal. 1971)).
7  State Farm then asked the Court to certify for interlocutory appeal under 28 U.S.C.
8  § 1292(b) the order denying summary judgment. Mot. for Leave to Appeal (dkt. 81) at 1. The
9  Court granted State Farm's request for leave to appeal but denied State Farm's accompanying
10 request for a stay, finding that staying the litigation would not promote judicial efficiency. See
11 Order Granting Leave to Appeal (dkt. 99). The Ninth Circuit denied both State Farm's petition
12 and its subsequent motion for reconsideration. See Order of USCA (dkt. 130).
13 Bally moved to certify a class consisting of "[a]ll persons who own or owned a universal
14 life insurance policy issued by State Farm on Form 94030 in the State of California whose policy
15 was in-force on or after January 1, 2002 and who was subject to at least one monthly deduction."
16 Class Mot. (dkt. 93) at 5–6. The Class excludes "State Farm; any entity in which State Farm has a
17 controlling interest; any of the officers, directors, or employees of State Farm; the legal
18 representatives, heirs, successors, and assigns of State Farm; anyone employed with Plaintiff's
19 counsel's firms; and any Judge to whom this case is assigned, and his or her immediate family."
20 Id. at 6 n.4.
21 In support of class certification, Bally offered an expert report from actuary Scott J. Witt.
22 See generally Siegel Decl. Ex. 1 (dkt. 93-2) ("Witt Report"). Witt provided a model that
23 purported to reliably calculate the allegedly improper charges for each Policy using State Farm's
24 own documents and data. See id. at 6. State Farm moved to strike the materials comprising the
25 Witt Report, arguing it was inadmissible under Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579
26 (1993). See Mot. to Strike (dkt. 110) at 2.
27 This Court denied the motion to strike and granted class certification. Order Granting
28 Class Certification (dkt. 122) at 1–2. It denied the motion to strike based on Ninth Circuit case

3

law holding that "[i]nadmissibility alone is not a proper basis to reject evidence submitted in support of class certification." Id. at 6–7 (quoting Sali v. Corona Reg'l Med. Ctr., 909 F.3d 996, 1004 (9th Cir. 2018)). The Court then conducted a Daubert analysis and assessed State Farm's arguments to determine what weight to give the Witt Report. Order Granting Class Certification at 7. The Court found that the Witt Report was reliable. Id. at 13.

The Court also found that Bally's proposed class satisfied the requirements of Federal Rule of Civil Procedure 23. In doing so, it rejected State Farm's argument that commonality and superiority were not satisfied because "the Policy must be interpreted based on each individual policyholder's interpretation of the Policy, which will depend on the context of the sales pitch each policyholder received from a State Farm agent." Id. at 14–16. The Court acknowledged that "[d]istrict courts in California have split in resolving this issue." Id. at 15. Some decisions held that extrinsic evidence of individual sales pitches was relevant to the meaning of accompanying standard form contracts, and thus precluded class certification. Id. (citing Gregurek v. United of Omaha Life Ins. Co., No. CV 05-6067-GHK (FMOX), 2009 WL 4723137, at *7 (C.D. Cal. Nov. 10, 2009)). But the Court found more persuasive decisions rejecting "individualized analysis of each sales presentation," because "standard forms . . . are drafted as such precisely in order to avoid the problem the insurer now invites—that thousands of policyholders have thousands of different understandings of a standard form." Id. (quoting In re Conseco Life Ins. Co. Lifetrend Ins. Mktg. & Sales Practice Litig., 920 F. Supp. 2d 1050, 1065 (N.D. Cal. 2013) (internal quotation marks and alterations omitted)). The Court noted that State Farm's argument "runs counter to an axiom of contract law, that when there is a standardized agreement like the form contract at issue in this case, the agreement 'is interpreted wherever reasonable as treating alike all those similarly situated, without regard to their knowledge or understanding of the terms of the writing.'" Id. at 16 (quoting Restatement (Second) of Contracts § 211(2)).

State Farm has petitioned the Ninth Circuit for interlocutory review under Federal Rule of Civil Procedure 23(f) of the class certification order. Rule 23(f) Petition, Bally v. State Farm Life Ins. Co., No. 20-80070 (9th Cir. Apr. 16, 2020), ECF No. 1. The petition presents two questions: Whether this Court "manifestly erred in holding that: (I) extrinsic evidence . . . is not proper under

4

1  California law in determining liability under Plaintiff's theory and should not be considered on
2  class certification; and (II) the damages model of a purported expert may satisfy the Rule 23(b)(3)
3  predominance requirement despite a methodology that introduces arbitrary variables that do not
4  correspond to Plaintiff's theory of liability, thus preventing an accurate measurement of damages."
5  Id. at 5–6.  The petition remains pending.

6  Bally has moved for approval of her plan of notice to the Class.  See generally Mot. to
7  Approve Class Notice (dkt. 123).  State Farm opposes Bally's plan of notice on various grounds,
8  including that notice should be stayed pending its Rule 23(f) petition.  See generally Opp'n to Plan
9  of Notice (dkt. 126).  State Farm has also moved to stay this action in its entirety pending the
10 petition for interlocutory review.  See generally Mot. for Stay (dkt. 125).

## II.   LEGAL STANDARD

### A.   Motion to Stay

Courts consider four factors when deciding whether to issue a stay: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies."  Leiva-Perez v. Holder, 640 F.3d 962, 964 (9th Cir. 2011) (quoting Nken v. Holder, 556 U.S. 418, 426 (2009)).  "The first two factors . . . are the most critical."  Nken, 556 U.S. at 434. "'[S]erious questions going to the merits" and a hardship balance that tips sharply toward" the proponent of a stay may support issuance of a stay.  Leiva-Perez, 640 F.3d at 966 (quoting Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1132 (9th Cir. 2011)).

### B.   Motion to Approve and Disseminate Class Notice

"For any class certified under Rule 23(b)(3) . . . the court must direct to class members the best notice that is practicable under the circumstances."  Fed. R. Civ. P. 23(c)(2)(B).  "[N]otice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court

5

will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." Id. Notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." See Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950).

### III. DISCUSSION

This Order first considers State Farm's request to stay this action in its entirety. Concluding that a stay of the entire litigation is unwarranted, it next turns to the parties' disagreements regarding class notice.

#### A. Motion to Stay

State Farm has demonstrated, at most, that its Rule 23(f) petition presents "serious questions going to the merits." See Leiva-Perez, 640 F.3d at 966. But it fails to demonstrate that staying this litigation in its entirety is necessary to prevent irreparable injury. To the extent State Farm has shown that the balance of hardships "tips sharply" in its favor, that injury can be addressed by a targeted stay of dissemination of class notice.

##### 1. Likelihood of Success on the Merits

The Ninth Circuit has defined a "likelihood of success on the merits" as requiring a showing that "serious legal questions are raised" or there is a "reasonable probability" of success. Leiva-Perez, 640 F.3d at 967–68 (internal citations omitted). At a minimum, the proponent of a stay must show "that she has a substantial case for relief on the merits." Id. at 968.

Because State Farm seeks a stay pending a Rule 23(f) petition, "the Court must consider both the likelihood that the Ninth Circuit will grant Defendant's Rule 23(f) petition, and the likelihood that the Ninth Circuit will agree with Defendants on the substantive merits." Gray v. Golden Gate Nat. Recreational Area, No. C 08-00722 EDL, 2011 WL 6934433, at *1 (N.D. Cal. Dec. 29, 2011). The Ninth Circuit will grant such a petition only if "(1) there is a death-knell situation for either the plaintiff or defendant that is independent of the merits of the underlying claims, coupled with a class certification decision by the district court that is questionable; (2) the

6

certification decision presents an unsettled and fundamental issue of law relating to class actions, important both to the specific litigation and generally, that is likely to evade end-of-the-case review; or (3) the district court's class certification decision is manifestly erroneous." Id.  The Ninth Circuit has cautioned that "petitions for Rule 23(f) review should be granted sparingly" and "interlocutory appeal [should] be the exception rather than the rule." Id.

State Farm's Rule 23(f) petition argues only that this Court's class certification decision was "manifestly erroneous." Rule 23(f) Petition at 5–6, Bally, No. 20-80070, ECF No. 1.  To succeed on these grounds, State Farm must show that the claimed error was "significant; bare assertions of error will not suffice." Chamberlan, 402 F.3d at 959.  And "[a]ny error must be truly 'manifest,' meaning easily ascertainable from the petition itself." Id.  "The kind of error most likely to warrant interlocutory review will be one of law, as opposed to an incorrect application of law to facts." Id.  This is because such an error is more "susceptible to review at an early stage than an error that must be evaluated based on a well developed factual record." Id.

The Court rejects State Farm's arguments that it is likely to succeed on its Rule23(f) petition or any subsequent appeal, for the same reasons it rejected those arguments in the order granting class certification.  However, it agrees that State Farm's petition necessarily raises "serious questions going to the merits," because district courts in California have split over the extent to which extrinsic evidence of individual sales pitches precludes class certification in litigation involving a standard form contract. Mot. for Stay at 7–8; see also Brown v. Wal-Mart Stores, Inc., No. 5:09-CV-03339-EJD, 2012 WL 5818300, at *3 (N.D. Cal. Nov. 15, 2012) (intra-circuit split of authority presented a "serious legal question").  The Court will therefore consider whether State Farm has shown that the balance of hardships "tips sharply" in its favor. Leiva-Perez, 640 F.3d at 966.

### 2. Irreparable Injury

State Farm relies mainly on litigation expenses to demonstrate a threat of irreparable harm.  It contends that if no stay issues, and the Ninth Circuit decertifies the Class on interlocutory review, it will incur unnecessary expense in completing class and expert discovery, preparing for

trial, and compiling information necessary to provide class notice. Mot. for Stay at 10. It suggests that given the class size, these expenses will be "significant." Id.

Generally, litigation expenses are insufficient to demonstrate irreparable harm. Monaco, 2012 WL 12506860, at *4 ("[L]itigation costs in and themselves generally do not constitute irreparable injury."). But some decisions in this district have held that the cost of "expert discovery, dispositive motions, and trial preparation on class claims" constitutes "substantial harm." Gray, 2011 WL 6934433, at *3. Given the usual rule that litigation expenses do not establish irreparable injury, and the fact that, as Bally points out, Opp'n to Stay (dkt. 129) at 8–9, most discovery has already been completed, the Court finds that State Farm's expenses in defending this action do not show that the balance of hardships tips sharply in its favor.

However, State Farm also points to potential confusion among class members if notice is issued before a successful interlocutory appeal.[2] Mot. for Stay at 10. The Court agrees that premature notice risks harm to class members who are likely to be confused if certification is reversed. Indeed, the Court is concerned that lay class members will be confused by the posture of the case even if, as Bally proposes, any notice explains that certification is potentially subject to appeal. See Reply in Support of Class Notice (dkt. 128) at 3–4. The balance of hardships "tips sharply" in favor of a stay vis a vis this potential injury.

### 3. Harm to Other Parties

State Farm argues the Class faces no threat of harm from a stay, since "they primarily seek monetary relief," which will remain available "if and when they prevail on the merits." Mot. for Stay at 10–11. Bally responds that a stay will irreparably harm some class members because the longer State Farm overcharges for its policies, the more policyholders will no longer be able to afford the charges and be "forced to let their policies lapse or surrender them." Opp'n to Stay at 13–14. Loss of the policy will in turn deprive the policyholder's dependents of support should the

---

[2] State Farm also argues it will suffer reputational harm if policyholders are informed of the pending suit. Mot. for Stay at 10. The Court rejects this theory, which is unsupported by any citation and would seem to demonstrate irreparable harm for any corporate defendant confronted with consumer claims in a class action.

8

policyholder die.  Id.  The Court agrees that this scenario would constitute substantial harm, but it is difficult to know (and Bally provides no evidence), how many policyholders would lose their policies as a result of a stay.  The Court therefore concludes that this factor weighs only slightly against a stay.

### 4. Public Interest

This factor weighs in favor of a targeted stay.  The Court finds that there is a public interest in avoiding confusion among class members.  However, there is a countervailing public interest weighs in the timely resolution of the class's claims.  See Bradberry v. T-Mobile USA, Inc., No. C 06-6567, 2007 WL 2221076, at *4–5 (N.D. Cal. Aug. 2, 2007) (recognizing a public interest in preventing harm to plaintiffs weighs against a stay).  Staying the dissemination of class notice, but not the rest of the litigation, is the best way to balance these competing interests.

The above analysis demonstrates that a stay of the entire litigation is not justified.  That being said, staying dissemination of class notice would address the most significant risks posed by proceeding despite State Farm's request for interlocutory review.  Other courts have stayed class notice while allowing the rest of the litigation to proceed because of the specific risks posed by premature notice.  See, e.g. Reyes v. Educ. Credit Mgmt. Corp., No. 15-cv-00628-BAS-AGS, 2017 WL 4640418, at *4 (S.D. Cal. Oct. 17, 2017).  Because "the potential irreparable harm concerns a specific aspect of the proceedings," these "courts have developed tailored stay procedures to address that harm rather than permitting a full stay."  Id.  The Court finds this approach to be appropriate for this litigation and will therefore stay dissemination of class notice pending State Farm's Rule 23(f) petition.  No other aspect of the proceedings (including those related to developing and implementing Bally's notice plan) will be stayed.

### B. Motion to Approve and Disseminate Class Notice

The parties dispute just a few other aspects of Bally's proposed plan of notice.  Because there are not other obvious deficiencies in the proposed plan, the Court focuses on those disagreements.

9

1.   **Form of notice.**

The parties now agree on the proper form of notice. Reply in Support of Class Notice at 7.[3] Given that and the fact that the proposed notice satisfies the requirements of Federal Rule of Civil Procedure 23(c)(2)(B), the Court approves the form of notice.

2.   **Plan of notice for deceased policyholders.**

State Farm complains that Bally has no plan for notifying the legal representatives of deceased policyholders. Opp'n to Plan for Class Notice (dkt. 126) at 4. It also questions whether the legal representatives of deceased policyholders may serve as class members. Id. Bally explains in reply that the legal representatives of deceased policyholders will not serve as class members, but will exercise the legal rights of deceased policyholders in a representative capacity. Reply in Support of Class Notice at 6–7. In such a case, notice will be sent in the same manner as for every other class member: first-class mail, addressed to the policyholder at the address provided by State Farm. Id. at 6; Mot. for Approval of Notice at 6. If notice is returned as undeliverable, Epiq Systems, Inc. will make reasonable efforts (including a "skip trace" search) to find a current address. Mot. for Approval of Notice at 6. The Court approves this approach for providing notice to the legal representatives of deceased policyholders.

3.   **Time for notice.**

The parties' most serious dispute besides the propriety of a stay also relates to timing: how long should the opt-out period be? Bally proposes a forty-five day notice period. Mot. for Approval of Notice at 5. State Farm contends that is insufficient and suggests ninety days instead. Opp'n to Plan of Notice at 2–3.

Bally's position is better supported by case law. As she correctly points out, State Farm relies on cases involving opt-in class actions, where the default notice period is in fact sixty to

---

[3] Bally notes that State Farm's proposed changes do not reflect State Farm's suggestion that notice should indicate that its independent contractor-agents are also excluded from the Class. Reply in Support of Class Notice at 7 n.6. Bally's proposed notice now includes language to that effect (it also accepts State Farm's proposed revisions, and corrects a typographical error). Id. The Court approves the form of notice that notes the exclusion of State Farm independent contractor-agents from the Class.

10

ninety days. Reply in Support of Plan of Notice at 4–5; see also, e.g. Sanchez v. Sephora USA, Inc., No. 11-03396 SBA, 2012 WL 2945753, at *6 (N.D. Cal. July 18, 2012). On the other hand, Bally cites Ninth Circuit cases approving shorter notice periods for opt-out class actions. See, e.g. Torrisi v. Tucson Elec. Power Co., 8 F.3d 1370, 1375 (9th Cir. 1993).

State Farm also worries that the pandemic will delay mailed notice. Opp'n to Plan of Notice at 3. But Bally points out that the United States Postal Service has stated that impacts to its operations are "minimal." Reply in Support of Stay at 5–6; see also United States Postal Service, Service Alerts, USPS.COM (12:00 PM, June 4, 2020), http://about.usps.com/newsroom/service-alerts/.

Next, State Farm argues that the large number of terminated policies implicated by this action and the fact that notice will precede a trial rather than a settlement necessitates additional time. Opp'n to Plan of Notice at 2–3. Bally responds that the court in Vogt v. State Farm Life Insurance Co., No. 2:16-cv-04170-NKL, approved a shorter opt-out period despite these concerns.[4] Reply in Support of Notice Plan at 5. State Farm avers that the short timeframe led to various logistical issues, including failure to adequately process opt outs and to exclude State Farm employees. Reply in Support of Stay at 8. Similarly, State Farm complains that Bally's plan does not afford it enough time (three days) to compile and deliver a class notice list, Opp'n to Plan of Notice at 3, while Bally points out that State Farm managed the same task in three days during the Vogt litigation, Reply in Support of Notice Plan at 6.

The experience in Vogt demonstrates that Bally's plan of notice gives State Farm sufficient time to compile and deliver a notice list.[5] It also suggests that thirty days (the notice period in that case) was sufficient for class members to opt out, though perhaps not to thoroughly process those opt outs. That being said, forty-five days is enough additional time to avoid the problems State Farm claims arose in the Missouri litigation.

The proposed notice period is approved.

---

[4] The Vogt litigation involved basically identical claims brought under Missouri law. See generally Complaint, Vogt, No. 2:16-cv-04170-NKL (W.D. Mo. June 15, 2016), ECF No. 1.
[5] This is especially true because the Court is staying dissemination of class notice, giving State Farm even more time to compile and deliver the notice list.

11

## IV. CONCLUSION

For the foregoing reasons, dissemination of class notice is stayed pending State Farm's Rule 23(f) petition. No other aspect of this litigation is stayed. The parties are directed to inform the Court immediately once State Farm's Rule 23(f) petition is granted or denied. State Farm's request for a stay is otherwise denied, and Bally's proposed plan of notice is otherwise approved.

**IT IS SO ORDERED.**

Dated: June 5, 2020



CHARLES R. BREYER
United States District Judge