1
2
3
4
5
6

**GIRARD SHARP LLP**
Daniel C. Girard (State Bar No. 114826)
dgirard@girardsharp.com
Jordan Elias (State Bar No. 228731)
jelias@girardsharp.com
601 California Street, Suite 1400
San Francisco, California 94108
Tel:    415-981-4800
Fax:    415-981-4846

7

[Additional counsel appear on signature page]

8

*Attorneys for Plaintiff Elizabeth A. Bally*

9
10
11

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

12
13
14
15
16
17
18
19
20
21

| | |
|---|---|
| ELIZABETH A. BALLY, Individually and On Behalf Of All Others Similarly Situated,<br><br>         Plaintiff,<br><br>    vs.<br><br>STATE FARM LIFE INSURANCE COMPANY,<br><br>        Defendant. | Case No.: 3:18-cv-04954-CRB<br><br>*Assigned to the Hon. Charles R. Breyer*<br><br>**PLAINTIFF ELIZABETH BALLY'S MEMORANDUM IN OPPOSITION TO STATE FARM'S MOTION FOR SUMMARY JUDGMENT**<br><br>Date:        April 1, 2021<br>Time:        10:00 a.m.<br>Courtroom:  6 – 17th Floor |

22
23
24
25
26
27
28

**REDACTED - FILED UNDER SEAL**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................... ii

INTRODUCTION AND SUMMARY OF THE ARGUMENT ......................................1

STATEMENT OF THE ISSUES TO BE DECIDED.................................................3

STATEMENT OF RELEVANT FACTS .....................................................................4

RELEVANT PROCEDURAL HISTORY ...................................................................7

ARGUMENT .................................................................................................................10

I.   State Farm Is Not Entitled to Summary Judgment Against the Class for Breach of the
     Policy's COI Rates Provision (Count I)........................................................................10

     A.   This Court already rejected the arguments State Farm makes now when it previously
          denied State Farm's motion for summary judgment..........................................11

     B.   The Court should again reject State Farm's proposed interpretations of the Policy. ...........14

          1.   State Farm's assigned-by interpretation is inconsistent with the plain
               language of the Policy....................................................................................14

          2.   State Farm's proffered extrinsic evidence should be rejected as a basis for
               adopting State Farm's interpretations of the Policy because it is irrelevant to
               how a layperson would read the Policy. ...................................................20

II.  State Farm Is Not Entitled to Summary Judgment Against the Class for Breach of the
     Expense Charge Provision (Count II). ........................................................................26

III. State Farm Is Not Entitled to Summary Judgment on the Class's Claim for Conversion
     (Count III). ..................................................................................................................27

IV.  State Farm Is Not Entitled to Summary Judgment on the Class's Request for Punitive
     Damages........................................................................................................................29

CONCLUSION.............................................................................................................35

# **TABLE OF AUTHORITIES**

Cases

*AIU Ins. Co. v. Superior Court*,
    51 Cal. 3d 807 (1990) .........................................................................................................14, 21

*Am. Star Ins. Co. v. Ins. Co. of the W.*,
    232 Cal. App. 3d 1320 (1991) ...........................................................................................21, 25

*Bank of the W. v. Superior Court*,
    2 Cal. 4th 1254 (1992) ..............................................................................................................21

*Bareno v. Employers Life Ins. Co.*,
    7 Cal. 3d 875 (1972) .................................................................................................................16

*Brighton Trs. v. Transamerica Life Ins. Co.*,
    No. 19-cv-04210-CAS(GJSx), 2019 WL 5784925 (C.D. Cal. Nov. 4, 2019) ...................10

*Bruce Foods Corp. v. Texas Gas Serv.*,
    No. EP-13-CV-231-KC, 2014 WL 652312 (W.D. Tex. Feb. 19, 2014)...........................20

*Bullock v. Philip Morris USA, Inc.*,
    198 Cal. App. 4th 543 (2011) ..................................................................................................34

*Cook v. John Hancock Life Ins. Co. (U.S.A.)*,
    No. 7:12-CV-00455, 2015 WL 178108 (W.D. Va. Jan. 14, 2015).....................................28

*Cooper Cos. v. Transcon. Ins. Co.*,
    31 Cal. App. 4th 1094 (1995) ..................................................................................................20

*Crane v. State Farm Fire & Cas. Co.*,
    5 Cal. 3d 112 (1971) .................................................................................................................20

*Cyrus v. Haveson*,
    65 Cal. App. 3d 306 (1976) .....................................................................................................29

*Dean v. United of Omaha Life Ins. Co.*,
    No. CV 05-6067-GHK (FMOx), 2007 WL 7079558 (C.D. Cal. Aug. 27, 2007)..............17

*Durrett v. John Deere Co.*,
    150 F.R.D. 555 (N.D. Tex. 1993) ...........................................................................................35

*Expedited Packages, LLC v. Beavex Inc.*,
    No. CV 15–00721 MMM (AGRx), 2015 WL 13357436 (C.D. Cal. Sept. 10, 2015) .................27, 28

*Ferraro v. Pacific Fin. Corp.*,
    8 Cal. App. 3d 339 (1970) .......................................................................................................29

*Fireguard Sprinkler Systems Inc. v. Scottsdale Ins. Co.*,
   864 F.2d 648 (9th Cir. 1988) ......................................................................................20

*Frenzer v. Mut. Ben. Health & Acc. Ass'n*,
   27 Cal. App. 2d 406 (1938) ........................................................................................23

*Garamendi v. Mission Ins. Co.*,
   131 Cal. App. 4th 30 (2005) ......................................................................................19

*Grange Ins. Ass'n v. Sran*,
   184 F. Supp. 3d 799 (E.D. Cal. 2016)........................................................................27

*Grow Grp., Inc. v. N. River Ins. Co.*,
   No. C 92-2328 SC (ENE), 1992 WL 672265 (N.D. Cal. Aug. 14, 1992) ...................20

*Haigler v. Donnelly*,
   18 Cal. 2d 674 (1941) ................................................................................................29

*Hammon Plating Corp. v. Wooten*,
   No. 16-CV-03951-LHK, 2017 WL 2986260 (N.D. Cal. July 13, 2017)......................20

*Heppler v. J.M. Peters Co.*,
   73 Cal. App. 4th 1265 (1999) ....................................................................................20

*Holmes v. Cont'l Can Co.*,
   706 F.2d 1144 (11th Cir. 1983) .................................................................................35

*Iorio v. Allianz Life Ins. Co. of N. Am.*,
   No. 05 CV 633 JLS (CAB), 2009 WL 3415703 (S.D. Cal. Oct. 21, 2009)................34

*Johnson v. Nextel Commc'ns Inc.*,
   780 F.3d 128 (2d Cir. 2015).......................................................................................35

*Krusi v. Bear, Stearns & Co.*,
   144 Cal. App. 3d 664 (1983) .....................................................................................29

*Myers v. Stephens*,
   233 Cal. App. 2d 104 (1965) .....................................................................................29

*Nat'l Auto. & Cas. Ins. Co. v. Stewart*,
   223 Cal. App. 3d 452 (1990) .....................................................................................20

*Norem v. Lincoln Ben. Life Co.*,
   737 F.3d 1145 (7th Cir. 2013) ..............................................................................15, 23

*Ohio Six Ltd. v. Motel 6 Operating L.P.*,
   No. CV 11-8102 MMM (EX), 2012 WL 12886208 (C.D. Cal. Nov. 16, 2012) .............20

*Pac. Gas & Elec. Co. v. G. W. Thomas Drayage & Rigging Co.*,
   69 Cal. 2d 33 (1968) ...........................................................................................20

*Paul Revere Variable Annuity Ins. Co. v. Kirschhofer*,
   226 F.3d 15 (1st Cir. 2000) ................................................................................20

*Phillip Morris USA v. Williams*,
   549 U.S. 346 (2007) ...........................................................................................34

*Rand v. Am. Nat'l Ins. Co.*,
   717 F. Supp. 2d 948 (N.D. Cal. 2010) ..............................................................23

*Reichardt v. Life Ins. Co. of N. Am.*,
   485 F. Supp. 56 (N.D. Cal. 1979) ......................................................................23

*Rosenbaum v. Philadelphia Life Ins. Co.*,
   No. CV 93-0834 MRP, 1994 WL 17118392 (C.D. Cal. Mar. 1, 1994).................31, 32

*Schneider v. Bank of Am. N.A.*,
   No. CIV. S-11-2953 LKK, 2014 WL 2118327 (E.D. Cal. May 21, 2014)...........28

*Schroeder v. Auto Driveaway Co.*,
   11 Cal. 3d 908 (1974) .........................................................................................30

*Schulz v. Cisco Webex, LLC*,
   No. 13-cv-04987-BLF, 2014 WL 2115168 (N.D. Cal. May 20, 2014) ...............27

*St. Paul Mercury Ins. Co. v. Frontier Pac. Ins. Co.*,
   111 Cal. App. 4th 1234 (2003) ..........................................................................25

*Taylor v. Forte Hotels Int'l*,
   235 Cal. App. 3d 1119 (1991) ...........................................................................28

*Taylor v. Midland Nat'l Life Ins. Co.*,
   No. 16-cv-00140-SMR-HCA, 2016 WL 9454075 (S.D. Iowa July 29, 2016)...................28

*Textainer Equip. Mgmt. (U.S.) Ltd. v. TRS Inc.*, No. C,
   No. C 07-01519 WHA, 2007 WL 1795695 (N.D. Cal. June 20, 2007).............28

*Thao v. Midland Nat'l Life Ins. Co.*,
   2013 WL 119871 (E.D. Wis. Jan. 9, 2013).......................................................15

*Vogt v. State Farm Life Ins. Co.*,
   No. 16-cv-04170-NKL, 2018 WL 1747336 (W.D. Mo. Apr. 10, 2018) ................... passim

*Vogt v. State Farm Life Ins. Co.*,
   No. 16-cv-04170-NKL, 2018 WL 4937330 (W.D. Mo. Oct. 11, 2018)................17, 29, 33

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO STATE FARM'S
MOTION FOR SUMMARY JUDGMENT
Case No. 3:18-cv-04954-CRB

*Vogt v. State Farm Life Ins. Co.*,
   963 F.3d 753 (8th Cir. 2020) ...................................................................................8, 17, 30

*Voris v. Lampert*,
   7 Cal. 5th 1141 (2019) ...........................................................................................10, 28

*Weiss v. Marcus*,
   51 Cal. App. 3d 590 (1975) ...........................................................................................28

*Wolf v. Superior Court*,
   114 Cal. App. 4th 1343 (2004) ......................................................................................20

*Yue v. Conseco Life Ins. Co.*,
   282 F.R.D. 469 (C.D. Cal. 2012) ..................................................................................25


<u>Statutes</u>

Cal. Civ. Code § 3294..........................................................................................................30


<u>Other Authorities</u>

4 Newberg on Class Actions § 12:3 (5th ed.) .....................................................................34

Restatement (Second) of Contracts § 211(2) ......................................................................25

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## INTRODUCTION AND SUMMARY OF THE ARGUMENT

State Farm's second motion for summary judgment—like its first—asks this Court to adopt an interpretation of State Farm's standardized universal life insurance policy, Form 94030 (the "Policy"), that this Court rejected when it denied State Farm's first motion for summary judgment in 2019. State Farm persists in pressing its argument that the Policy's cost of insurance ("COI") rates provision must be read as merely identifying the factors State Farm uses to assign predetermined, loaded COI rates to the insured, and that it unambiguously does not identify the only factors State Farm uses to determine the COI rates themselves. State Farm's argument and extrinsic evidence it claims supports this argument were previously raised in its failed motion for summary judgment on Plaintiff's individual claims. Specifically, it relies on the same, previously rejected "assigned-by" interpretation to seek summary judgment against the certified Class of approximately 86,000 California owners of policies issued on Form 94030. The Court should again reject this interpretation for at least three reasons.

*First*, the Court necessarily rejected the notion that State Farm's assigned-by interpretation is *the only* reasonable reading of the COI rates provision when it ruled Plaintiff's interpretation—that State Farm is not authorized to use unlisted factors to determine the COI rates—is itself reasonable. State Farm's offer of extrinsic evidence in support of its competing interpretation, evidence comprised of industry rules and declarations from insurance industry insiders and from its own employees and sales agents, is cumulative of evidence this Court already rejected because it fails to address the relevant inquiry here: how a reasonable layperson, *not an insurance expert*, would understand State Farm's standardized Policy.

*Second*, State Farm previously acknowledged that the Policy's COI rates provision *is* reasonably read as referring to how State Farm determines the COI rates themselves, not merely how the rates are assigned, when it argued that "based on" means the listed mortality factors would be the foundation of the COI rates. The Court should not entertain State Farm's contradictory position now simply because its first interpretation was rejected. At a minimum, State Farm's shifting position supports the Court's conclusion that the Policy does *not* unambiguously support State Farm's reading. Moreover, the Policy provision stating that the COI rates for each policy year are based on age, sex, and rate class—factors State Farm admits are determinative of mortality risk—and that the "rates can be adjusted for projected changes in mortality," indicates that the rates will be determined by State Farm's mortality expectations.

*Third*, State Farm's assertion that it assigned its COI rates to insureds by the identified factors is consistent with Plaintiff's interpretation that State Farm is obligated to use those factors, and only those factors, to determine the rates. It is reasonable to expect that the factors used to determine a rate would be the same factors used to organize a table of rates. In contrast, State Farm offers no coherent explanation for how a reasonable layperson would read the Policy's statement that the COI rates would be based on a discrete list of mortality factors and understand he or she was authorizing State Farm to first determine rates using the listed factors, and then further inflate them (*quadrupling* them in Plaintiff's case) with undisclosed profit and expense loads, thus resulting in COI charges substantially higher than charges determined from only the listed factors.

For each of these reasons, this Court should again decline to accept State Farm's assigned-by interpretation as a reasonable reading of the COI rates provision of the Policy, let alone *the only* reasonable reading of it, and therefore deny State Farm's motion for summary judgment on the Class's claim for breach of the Policy's COI rates provision (Count I).

State Farm also moves for summary judgment on the Class's claim that State Farm breaches the Policy's $5.00 expense charge ("Expense Charge") provision by loading additional expenses into the COI charge (Count II)—but State Farm provides no argument for why it is entitled to judgment on this claim. State Farm appears to assume that if its interpretation of the COI rates provision were to prevail, it would necessarily be entitled to judgment on Count II. Plaintiff has consistently argued, however, that the Policy's Expense Charge provision provides an *independent limit* on State Farm's authority to make deductions for expenses from policy owners' Account Values. In other words, even if the COI rates provision did not itself limit the factors State Farm may consider in determining COI rates, the Policy's Expense Charge limits the amount of expenses State Farm may charge policy owners. State Farm's implicit argument that the Expense Charge is superfluous does not withstand scrutiny. Accordingly, summary judgment should be denied on Count II.

State Farm's motion for summary judgment on the Class's conversion claim (Count III) also should be denied because, contrary to State Farm's arguments, Plaintiff's expert has identified a specific sum converted, and State Farm had an independent duty in tort not to take more of policy owners' money than it was authorized to take. Therefore, the Class can recover under tort principles, in addition to contract.

Finally, State Farm's motion for summary judgment on the Class's request for punitive damages lacks merit. State Farm has known for years that it was acting in violation of the Policy and, thus, taking more money from policy owners' accounts than authorized. It nonetheless continued its unlawful conduct while actively concealing it from policy owners. State Farm also knew that its unauthorized deductions would result in many policy owners not being able to afford their policies, such that State Farm would never have to pay a death benefit but would retain its ill-gotten gains. This left many policy owners without life insurance after paying in for years, and those owners likely now find themselves uninsurable, or insurable only at excessive cost, due to intervening health issues and advancing age. A reasonable jury could conclude State Farm's conscious disregard of the rights of its policy owners and concealment of its conduct from them warrants the imposition of punitive damages.

## STATEMENT OF THE ISSUES TO BE DECIDED

1.   Should the Court deny State Farm's motion for summary judgment against the Class on its claim that State Farm breaches the Policy's COI rates provision by including unlisted, non-mortality loads in the COI rates used to determine COI charges deducted from policy owners' Account Values (Count I), where the Court has already construed the COI rates provision against State Farm and in favor of the insured, and State Farm admits it includes such loads in COI rates, thus resulting in rates that are higher than they would have been if State Farm had not added the unauthorized loads?

2.   Should the Court deny State Farm's motion for summary judgment against the Class on its claim that State Farm breaches the Policy's $5.00 Expense Charge provision by charging policy owners undisclosed expenses through its COI charges resulting in expense charges in excess of the fixed $5.00 monthly amount (Count II), where the Expense Charge creates an independent cap on what State Farm may deduct for expenses, State Farm admits it deducts additional expenses through the monthly COI charge, and the Court has already construed the COI rates provision to prohibit State Farm from including unlisted factors, including expenses, in the COI rates?

3.   Should the Court deny State Farm's motion for summary judgment against the Class on its claim that State Farm converts money belonging to policy owners (Count III), where State Farm took without consent more money from Class Members' Account Values than it was authorized to take, State Farm

had an independent duty in tort not to take this property, and Plaintiff's expert has identified the specific sum of damages for each Class Member to the penny?

4.   Should the Court deny State Farm's motion for summary judgment on the Class's request for punitive damages where a reasonable jury could conclude State Farm acted with malice, fraud, or oppression by knowingly and intentionally taking more money from policy owners' Account Values than authorized, while knowing its conduct could result in the lapse or surrender of the policies such that State Farm could keep its ill-gotten gains without ever having to pay the death benefits, and knowing its conduct could leave policy owners without insurance and potentially uninsurable, or insurable only at increased cost due to advancing age and deteriorated health?

## STATEMENT OF RELEVANT FACTS

The material facts of this case are not in dispute and have been stated several times.[1] Plaintiff purchased from State Farm a Form 94030 universal life insurance policy with a "Policy Date" of April 8, 1994. Dkt. 63 at 8; Ex. 1 (November 12, 2020 Declaration and Report of Scott J. Witt ("Witt Dec.")), Ex. B (Policy) at 3. The Policy is a "universal life" policy, which is a permanent life insurance product providing "both a death benefit and an investment feature that allows the owner to pay premiums" into a policy account. Witt Dec., ¶ 17; *see also* Dkt. 108-3, Report of David J. Weinsier ("Weinsier Dec."), ¶¶ 13.B, 28-29. The monthly calculation of the "Account Value" is set forth in the Policy. Witt Dec., Ex. B (Policy) at 9-10. The Account Value can grow over time with additional premium payments and applicable interest as identified in the Policy. *Id.*; Witt Dec., ¶ 17.

The Policy describes the formula for calculation of the Account Value each month:

The account value on any deduction date after the policy date is the account value on the prior deduction date:
  (1) plus 95% of any premiums received since the prior deduction date,
  (2) less the deduction for the cost of insurance for any increase in Basic Amount and the monthly charges for any riders that became effective since the prior deduction date,
  (3) less any withdrawals since the prior deduction date,
  (4) *less the current monthly deduction*,
  (5) plus any dividend paid and added to the account value on the current deduction date, and

---

[1] *See, e.g.*, Dkts. 63, 67, 70, 77 (briefing on State Farm's first motion for summary judgment and order denying same); Dkts. 93, 108, 119, 122 (briefing on Plaintiff's motion for class certification and order granting same); Dkts. 142, 170, 173, 183 (briefing on Plaintiff's motion for partial summary judgment).

(6) plus any interest accrued since the prior deduction date.

Witt Dec., Ex. B (Policy) at 9 (emphasis added).

The Monthly Deduction is comprised of two distinct component charges: a "monthly expense charge" equal to $5 a month and a COI charge.[2] *Id.* at 3, 9-10; Witt Dec., ¶ 23. The Policy provides that the COI charge is determined by multiplying the COI rate by the Policy's net amount at risk (the amount by which the death benefit amount exceeds the Account Value, i.e., the amount of its own funds State Farm must pay if the insured dies). Witt Dec., Ex. B (Policy) at 10; *id.*, ¶ 26. The Policy states that the COI "rates for each policy year are based on the Insured's age on the policy anniversary, sex, and applicable rate class," and "[s]uch rates can be adjusted for projected changes in mortality but cannot exceed the maximum monthly cost of insurance rates." Witt Dec., Ex. B (Policy) at 10. Policy year, age, sex, and rate class are characteristics known to define an insured's mortality risk.[3] *See* Witt Dec., ¶¶ 30; *id.* at Ex. E (Streily Tr.), 64:14-65:4, 155:19-157:20, 159:14-160:20, 196:6-197:23; *id.* at Ex. F (Phipps Tr.), 24:24-25:14. State Farm does not disclose its mortality assumptions or its actual COI rates to policy owners. *See id.* at Ex. C (annual statements); Ex. 2 (policy illustration); Witt Dec., Ex. E (Streily Tr.), 124:13-23; *id.* at Ex. I (Holzbauer Tr.), 178:21-25; *see also* Witt Dec., Ex. B (Policy).

State Farm can and did develop rates using only the listed factors when it priced the Policy; these are known as the "pricing mortality" rates. *See* Witt Dec., ¶¶ 10, 30-37, *id.* at Ex. E (Streily Tr.), 87:19-88:7, 149:7-152:2, 160:15-20; *id.* at Ex. I (Holzbauer Tr.),[4] 73:24-77:13, 89:18-93:10, 145:15-19; *id.* at Ex. G (New Jersey Actuarial Memorandum for Form 94030), p. 5; *id.* at Ex. H (South Carolina Actuarial Memorandum for Form 94030), p. 7; *id.* at Ex. K (memorandum regarding 2002 "Change in Current Monthly Cost of Insurance Rates" for Form 94030); Dkt. 67-4 (*Vogt* summary judgment denial) at 10. After developing these pricing mortality rates using the listed factors, State Farm increased those

[2] If applicable, monthly charges for any riders make up a third component of the Monthly Deduction. Witt Dec., ¶ 23.

[3] Duration, or "policy year," matters for purposes of determining an insured's mortality expectation because, all things being equal, an insured who has more recently gone through underwriting will have a lower mortality risk than one who has gone through underwriting less recently. *See* Witt Dec., ¶ 30 n.3; *id.* at Ex. E (Streily Tr.), 197:6-23.

[4] Mr. Holzbauer testified for State Farm as its Rule 30(b)(6) witness as to State Farm's pricing of Form 94030. Witt Dec., Ex. I (Holzbauer Tr.), 24:6-13.

rates with undisclosed loads after considering unlisted and undisclosed profit and expense factors. Dkt. 63-3 (State Farm Amended Interrog. Answers at 24-25); *see also* Dkt. 63 (State Farm's Mem. in Supp. of Summary Judgment) at 7-8; Witt Dec., ¶¶ 41-45; *id.* at Ex. G (New Jersey Actuarial Memorandum), p. 5; *id.* at Ex. H (South Carolina Actuarial Memorandum), p. 7; *id.* at Ex. E (Streily Tr.), 144:20-24, 224:6-18 (admitting that "pricing mortality … was used to determine a cost of insurance rate, and that the cost of insurance rate was then loaded for expenses and profit," and that "expenses and profit" are not considered "to be mortality related").

In the first ten years after inception of Plaintiff's Policy, State Farm's loading of unlisted factors into the COI rates caused the COI rates to be more than four times higher than rates determined using only the listed mortality factors. In other words, COI charges calculated using unloaded COI rates would have been approximately 20% of the COI charges that State Farm deducted, meaning Plaintiff's actual charges in those years consisted of nearly 80% undisclosed factors. Witt Dec., ¶ 48. Over the life of Plaintiff's Policy, her COI charges were, on average, substantially more than double what they would have been had State Farm not included unlisted factors in the COI rates. *Id.*

State Farm has produced policy-level data, including transactional data used to determine the Account Value of each Class Member. Witt Dec., ¶¶ 46-47. All policy owners were subject to the same sets of COI rates, and to State Farm's uniform administration and determination of those COI rates. *See* Witt Dec., ¶ 33; *id.* at Ex. E (Streily Tr.), 140:3-145:10, 146:17-147:5, 171:21-172:11; *id.* at Ex. I (Holzbauer Tr.), 65:6-24; Dkt. 108-3 (Weinsier Dec.), ¶ 56 ("The New Jersey Actuarial Memorandum … describes State Farm's pricing approach. The pricing approach described in the New Jersey Actuarial Memorandum is the same approach used for any state, i.e., State Farm used a single approach to pricing, regardless of where a policy was sold.") (emphasis in original).

Using this policy-level data and State Farm's pricing mortality and COI rates, Mr. Witt has calculated the lost Account Value for every policy owner in the Class resulting from State Farm's inclusion of undisclosed, non-mortality loads in the COI rates. Witt Dec., ¶¶ 48-58. The aggregate lost Account Value for the Class calculated by Mr. Witt is $123,475,422.33. *Id.*, ¶ 59.

1

## RELEVANT PROCEDURAL HISTORY

2

3       On August 15, 2018, Plaintiff filed this lawsuit on behalf of herself and a class of similarly situated

4       Form 94030 owners in the state of California. In Count I of her Complaint, Plaintiff alleges State Farm

5       has been breaching the Policy's COI rates provision by including loads for unlisted factors when

6       determining the Policy's monthly COI rates used to calculate COI charges. In Count II, Plaintiff alleges

7       that State Farm has been separately breaching the Policy's Expense Charge provision authorizing State

8       Farm to deduct $5.00 each month by including extra expense loads in the COI charge. In Count III,

9       Plaintiff alleges State Farm is liable for conversion for these unauthorized deductions from Class

        Members' Account Values. In Count IV, Plaintiff seeks declaratory and injunctive relief. Dkt. 1.

10      Following discovery, on May 21, 2019, State Farm moved for summary judgment on each of

11      Plaintiff's claims, arguing that the Policy permits State Farm to use factors in addition to those identified

12      in the Policy when determining COI rates, and also that the COI rates provision merely identifies the

13      factors State Farm uses to assign rates to a particular insured. In support of these interpretations, State

14      Farm presented evidence of its pricing process, the Actuarial Standards of Practice ("ASOPs"), model

15      regulations governing universal life policies issued by the National Association of Insurance

16      Commissioners ("NAIC"), the declaration of an insurance expert, David Weinsier, and deposition

17      testimony of Plaintiff. State Farm also argued that, even if Plaintiff is correct about the Policy breaches,

18      she could not state a claim for conversion on an overcharge theory under California law. State Farm

19      further argued that Plaintiff's claims are barred by the statute of limitations. *See* Dkt. 63.

20      Pursuant to California law, the Court reviewed the "language of the [Policy] . . . as a layman would

21      read it and not as it might be analyzed by an attorney or an insurance expert" (Dkt. 77 at 8, 13) and

22      concluded that the Policy's COI rates provision is ambiguous as to whether it permits State Farm to use

23      unidentified factors to determine the Policy's COI rates. Dkt. 77 at 14. The Court thus construed the

24      Policy's ambiguity "in favor of the insured" pursuant to California law and denied State Farm's motion

25      for summary judgment. *Id.* The Court also rejected State Farm's contention that Plaintiff's conversion

26      claim was premised simply on State Farm overcharging for its services. Instead, the Court concluded

27      that Plaintiff's claim was that State Farm transferred funds that were the property of the policy owners

28      without authorization, and this claim satisfied the requirements for conversion. *Id.* at 7. The Court further

found there is no basis to conclude that any policy owner was on notice of State Farm's improper deductions, and therefore, under the discovery rule, the statute of limitations has not run on policy owners' claims. *Id.* at 6. State Farm asked this Court to certify its interpretation of the Policy for interlocutory appeal. Dkt. 81. After the Court granted State Farm's request (Dkt. 99), the Ninth Circuit denied State Farm's petition. *See* Case No. 19-80160, Dkt. 12.

Following the Court's order construing the Policy in favor of the insured, the Eighth Circuit Court of Appeals in *Vogt v. State Farm Life Insurance Company* also concluded the Policy's COI rates provision is "at least ambiguous and thus must be construed against State Farm," affirming Western District of Missouri Judge Nanette K. Laughrey's order granting summary judgment in favor of the Missouri class for State Farm's liability for breaching the Policy's COI rates provision. 963 F.3d 753, 764 (8th Cir. 2020).

On November 15, 2019, Plaintiff moved for class certification. Dkt. 93. After full briefing (Dkts. 108, 119), the Court granted Plaintiff's motion on April 2, 2020, and certified Plaintiff's breach of contract and conversion claims under Rule 23(b)(3) and her request for declaratory and injunctive relief under Rule 23(b)(2). Dkt. 122 at 21. As relevant here, the Court rejected State Farm's contention that agents' sales presentations could result in the Policy having different meanings for different policy owners. Instead, the Court concluded that, as a standardized contract, the Policy must be interpreted the same for every Class Member regardless of their subjective understandings of the Policy. *Id.* at 16. The Court also denied State Farm's motion to strike the report and methodology for calculating class-wide damages offered by Plaintiff's expert, Scott Witt. *Id.* at 13. State Farm filed a petition to appeal under Rule 23(f), which the Ninth Circuit denied on July 22, 2020. Dkt. 135. Notice of class certification then issued to the Class. Dkt. 138.

Relying on the Court's rulings that the Policy must be interpreted in favor of the insured and interpreted the same way for all Class Members, and because there are no material facts in dispute, Plaintiff moved for summary judgment in favor of the Class as to State Farm's liability for breach of the Policy's COI rates provision (Count I), for conversion (Count III), and for declaratory relief (Count IV) on October 26, 2020. Plaintiff also moved for summary judgment on the methodology for calculating damages. Dkt. 142.

State Farm has never sought reconsideration of the Court's rejection of its proposed interpretations of the Policy's COI rates provision as the only reasonable ones (*see* Civ. L.R. 7-9). Nevertheless, contrary to the Court's conclusion that the Policy could reasonably be read as prohibiting State Farm from using unlisted factors in determining COI rates, State Farm opposed Plaintiff's motion for summary judgment by claiming that its rejected assigned-by interpretation is the only reasonable interpretation of the Policy's COI rates provision (Dkt. 170 at 17-26). State Farm also alternatively argued that even if the COI rates provision could be read as referring to how State Farm determines the rates themselves, the only reasonable reading of "based on" is that the listed factors are not the exclusive basis of the rates (*id.* at 26-29). Even though the Court's interpretation relied on California law requiring the Policy "to be read as a layman would read it and not as it might be analyzed by an attorney or an insurance expert," State Farm again relied on expert declarations from insurance-insiders and purported industry rules for its interpretations. *See id.* at 11-12, 22-23.

As with its failure to seek reconsideration of the Court's contract interpretation, State Farm never sought reconsideration of this Court's ruling that the Policy must be interpreted the same way for all Class Members regardless of their subjective understandings of the Policy. Still, in opposing Plaintiff's summary judgment motion, State Farm again relied on declarations from its employees, sales agents, and a "consumer expectations" expert. State Farm argued this evidence shows that some policy owners subjectively understand that State Farm assigns its COI rates by age, sex, and rate class (*id.* at 8-9, 21-22), and that they do not understand the Policy as providing that State Farm must determine the COI rates using only the identified factors. The Court rejected this same evidence at class certification when it held that policy owners' subjective understandings would not result in different interpretations of State Farm's standardized Policy.

State Farm now moves for summary judgment on policy interpretation for a second time, again reasserting its assigned-by interpretation of the Policy as the only reasonable reading (Dkt. 191 at 14-26), and again arguing that, even if the COI rates provision could be read as referring to how State Farm determines the actual rates, the only reasonable reading of "based on" is that it does not imply exclusivity (*see id.* at 26 n.5). State Farm thus contends it is entitled to summary judgment on the Class's claim for breach of the Policy's COI rates provision (Count I). And, even though State Farm makes no attempt to

separately analyze the Class's claim for violation of the Policy's Expense Charge provision (Count II), State Farm seeks summary judgment on this claim as well.

State Farm also seeks summary judgment on the Class's claim for conversion (Count III). It contends relief on the claim does not lie because of the parallel claim for breach of contract (*id.* at 26-28) and argues that Plaintiff has not identified a converted sum certain (*id.* at 28-30). Although State Farm justified its request to file a second summary judgment motion as to conversion over Plaintiff's objection on the premise that after its first motion, the California Supreme Court issued an opinion supporting the argument that conversion requires the plaintiff's "immediate right of possession" of the property, and that Plaintiff could not establish that policy owners had an immediate right to possess their Account Values, *see* Dkt. 185 at 4 (citing *Voris v. Lampert*, 7 Cal. 5th 1141 (2019) and *Brighton Trs. v. Transamerica Life Ins. Co.*, 2019 WL 5784925, at *10 (C.D. Cal. Nov. 4, 2019)), State Farm has apparently abandoned that argument. *See* Dkt. 191 at 26-30. Finally, State Farm moves for summary judgment on the issue of the Class's entitlement to punitive damages. *Id.* at 30-35.

## ARGUMENT

### I.   State Farm Is Not Entitled to Summary Judgment Against the Class for Breach of the Policy's COI Rates Provision (Count I).

Relying on the same rejected arguments from its first summary judgment motion, State Farm again argues that the Policy authorizes it to use unlisted factors to inflate COI rates, and therefore, that it is entitled to summary judgment against the Class on Count I of the Complaint. Dkt. 191 at 14-26. State Farm contends the *only* reasonable interpretation of the Policy is that the identified mortality factors are merely characteristics it uses to assign predetermined, loaded COI rates to each insured, rather than identifying the limited factors State Farm uses to determine the COI rates. State Farm also reasserts that even if the COI rates provision refers to how State Farm determines the COI rates, "based on" cannot reasonably be read as prohibiting State Farm from considering unlisted factors.

These arguments have not improved with age. State Farm ignores the reading a reasonable layperson would give to the provisions of the Policy and instead points to extrinsic evidence of its confidential pricing process and from industry experts. The Court previously rejected this same evidence as a basis for adopting State Farm's interpretations when State Farm presented its first motion for summary judgment and opposition to class certification. Instead, consistent with other courts that have considered

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO STATE FARM'S
MOTION FOR SUMMARY JUDGMENT
Case No. 3:18-cv-04954-CRB

the issue, including now the Eighth Circuit in *Vogt*, the Court concluded that a layperson could reasonably read the Policy's COI rates provision as prohibiting State Farm from using unlisted factors to inflate its COI rates.

The Court's interpretation of the Policy was a legal ruling on undisputed material facts. The material facts remain undisputed, and thus, the Court should again reject State Farm's proffered interpretations of the Policy as the only reasonable ones.

**A.    This Court already rejected the arguments State Farm makes now when it previously denied State Farm's motion for summary judgment.**

On May 21, 2019, "following discovery" (Dkt. 122 at 4), State Farm filed a motion for summary judgment making the same arguments it now makes for why the Policy must be interpreted as allowing use of unlisted factors to determine COI rates. Dkt. 63. In particular, State Farm argued that its COI rates tables were organized by the Policy-identified factors of age, sex, and rate class, and that it assigns COI rates to insureds by their age, sex, and rate class. *See id.* at 1-3, 19. State Farm thus argued that the COI rates provision should be read as merely identifying the factors State Farm uses to assign COI rates to insureds, but not that the provision served to limit State Farm in what it was authorized to use in determining the rates themselves. State Farm also proposed another, contradictory interpretation of the Policy with its first motion—that the identified factors must be the foundation of the COI rates; in other words, that while it was required to use the identified factors in determining the COI rates themselves, those factors need only be the principal, but not the exclusive, components used to determine the rates. *E.g.*, *id.* at 13. Under either interpretation, State Farm argued that the Policy's maximum rates were the only limit on the COI rates it could charge. *Id.* at 15-18, 20-21. State Farm further argued that interpreting the Policy as limiting it to using only the listed mortality factors to determine COI rates was unreasonable because prohibiting State Farm from including unlisted, but purportedly "actuarially necessary" variables in the COI rates (i.e., Plaintiff's interpretation), would prevent it from earning a profit on the Policy. *Id.* at 2-4, 13-19.

State Farm also argued that its proffered interpretations of the Policy were supported by extrinsic evidence. First, State Farm argued that its pricing process was consistent with the ASOPs, which it contended "are publicly available" and "require consideration of solvency, operating expenses, profitability, and other business assumptions in pricing." *Id.* at 2-3, 5-6. Second, State Farm argued that

it obtained regulatory approval from California's Insurance Commissioner before issuing the Policy, and that insurance regulators "expect and require insurers to charge amounts for insurance that return a profit . . . [to] assure[] that the insurer is able to build and maintain statutorily required reserves to remain solvent for payment of future benefit claims." *Id.* at 5. Thus, State Farm argued its COI rates complied with the Policy because, prior to its sale in California, "State Farm had already developed and obtained regulatory approval for COI rate tables organized according to the Policy factors." *Id.* at 20. Relying on the declaration of its proffered insurance industry expert, David Weinsier, State Farm argued that the ASOPs and California's regulatory requirements "protect consumers by seeking to assure that the insurer will remain solvent to pay benefits whenever such requirement may arise." *Id.* at 5. State Farm also asserted that the ASOPs were consistent with model regulations governing universal life policies issued by the NAIC. *Id.* Third, pointing to Plaintiff's deposition testimony, State Farm asserted that Plaintiff herself understood the COI rates provision entitled State Farm to consider its profitability. *Id.* at 16.

In opposing State Farm's motion, Plaintiff argued, among other things, that where State Farm had promised its policy owners that COI rates would be "based on" specific factors commonly understood to reflect an insured's mortality risk, the Policy is reasonably interpreted as prohibiting State Farm from loading other, unlisted non-mortality factors into the COI rates. Dkt. 67. Plaintiff also addressed State Farm's extrinsic evidence submitted in support of its proposed interpretations. She argued that none of State Farm's extrinsic evidence, including its internal pricing process (undisclosed to policy owners), the technical ASOPs, and its insurance expert's opinion as to how the Policy should be interpreted, had any bearing on how a layperson would understand the Policy, and thus were irrelevant to its proper interpretation. *Id.* at 19-20. Likewise, Plaintiff argued that her own subjective understanding of the Policy was not only mischaracterized by State Farm but also irrelevant to the Policy's interpretation. *Id.* at 20 n.16.

The Court denied State Farm's motion for summary judgment, recognizing that "interpretation of an insurance policy is a question of law," and that the Policy must be interpreted "as a layman would read it and not as it might be analyzed by an attorney or insurance expert." Dkt. 77 at 4, 13. The Court rejected State Farm's argument that Plaintiff's interpretation was unreasonable on the purported grounds that it would "prohibit State Farm from considering actuarially necessary variables in determining" COI rates

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO STATE FARM'S
MOTION FOR SUMMARY JUDGMENT
Case No. 3:18-cv-04954-CRB

and "thus require State Farm to not make a profit." *Id.* at 12. Instead, the Court agreed with Plaintiff (and the court in *Vogt*) that the Policy did not provide a reasonable policy owner any basis to "conclude that State Farm must make a profit from the COI, specifically, rather than the Policy as a whole," because "the policy offers State Farm other ways to make money." *Id.* at 12-13. The Court also rejected State Farm's argument that the Policy's maximum rates provided the only limit on what State Farm was authorized to charge, *id.* at 13-14, noting that State Farm's interpretation that the COI rates provision provided no limit on State Farm's rate-setting authority so long as it did not exceed the maximum rates would "render completely superfluous the COI calculation provision," *id.* at 13. Because the Court concluded that the key term "based on" could both connote exclusivity and non-exclusivity, however, the Court held the COI rates provision is ambiguous and thus must be construed in favor of the insured. *Id.* at 9, 14.

After the Court denied State Farm's motion for summary judgment, Plaintiff moved for certification of a class of California Form 94030 policy owners. Dkt. 93. In granting Plaintiff's motion, the Court rejected State Farm's argument—relying on declarations from its sales agents and a "consumer expectations" expert—that policy owners' subjective understandings of the Policy could result in different interpretations for different Class Members, concluding instead that because the Policy is a standardized contract, it would have the same interpretation for every Class Member regardless of their subjective understandings of the Policy. Dkt. 122 at 16.

State Farm's present motion repeats the argument that its assigned-by interpretation is the only reasonable reading, and that, even if the COI rates provision refers to how State Farm determines the COI rates, it would be unreasonable to read "based on" to mean the listed factors must be the only ones State Farm may use. Dkt. 191 at 14-26 & n.5. State Farm retreads the same arguments and the same types of extrinsic evidence that it relied on in seeking summary judgment the first time. All of the evidence State Farm presents now was available to it when it filed its first summary judgment motion, and the Court has already rejected these arguments and evidence as a basis for interpreting the Policy in favor of State Farm. Moreover, as explained below, State Farm's assigned-by interpretation is not reasonable. And even if it were, the Court has already found Plaintiff's interpretation reasonable as well, and therefore, as the drafter of an ambiguous Policy, State Farm is not entitled to summary judgment against the Class. Instead,

for the reasons explained in Plaintiff's motion for partial summary judgment, the Court should grant summary judgment in favor of the Class on Count I of the Complaint.

**B.     The Court should again reject State Farm's proposed interpretations of the Policy.**

**1.     State Farm's assigned-by interpretation is inconsistent with the plain language of the Policy.**

Under California law, "courts look first to the language of the contract in order to ascertain its plain meaning or the meaning a layperson would ordinarily attach to it." Dkt. 77 at 8 (internal quotations omitted); *see also AIU Ins. Co. v. Superior Court*, 51 Cal. 3d 807, 821-22 (1990) (stating the interpretation of a contract should be determined, "if possible, solely from the written provisions of the contract"). The Court should reject State Farm's contention that its "assigned-by" reading is a reasonable interpretation of the Policy, let alone *the only* reasonable interpretation, entitling State Farm to summary judgment against the Class. Instead, State Farm's assigned-by interpretation is inconsistent with the plain language as a layperson would understand it.

As Plaintiff explained in opposition to State Farm's first motion for summary judgment, the COI rates provision does not say the identified factors are merely used to select predetermined, loaded COI rates for the insured, such that the provision's only purpose is to obligate State Farm to assign the same rates to all insureds of the same age, sex, and rate class. Certainly, as the drafter of this boilerplate, adhesive contract, State Farm could have provided itself unfettered discretion to charge COI rates up to the maximums, using the identified factors only as differentiators amongst insureds. For instance, State Farm could have plainly said: "These rates will be determined by State Farm. Insureds of the same age on the Policy anniversary, sex, and applicable rate class will be charged the same rates." But it chose language offering no such flexibility.

In fact, State Farm drafted and sold *a different* universal life insurance policy that not only explicitly provides that the COI rates will be determined "based on" factors *in addition to* mortality, but also that those rates will "vary by" age, sex, and rate class. *See* Ex. 3 (Witt Reb. Dec.), ¶ 10 (identifying State Farm policy stating the monthly COI rates "are set by Us based on investment earnings, mortality, expenses, persistency, capital and reserve requirements, taxes and profits. The Monthly Cost of Insurance Rates for each Policy Year *vary by* the Insured's age on the Policy Anniversary, sex, and the applicable Class of Risk.") (emphasis added); *id.*, at Ex. O at pp. 7, 13. While the Court need not consider this other

policy by State Farm to reject its assigned-by interpretation of the Policy in this case, State Farm's other policy directly demonstrates that a *layperson* would not understand the *plain language* of the Policy stating the COI rates for each policy year are based on age, sex, and rate class, without mention of any other factors, as authorizing State Farm to determine the COI rates using unlisted factors, or as merely identifying factors State Farm would use to assign or "vary" the COI rates.[5]

Tellingly, State Farm does not suggest that any dictionary defines "based on" as "assigned by," "varied by," "organized by," or "differentiated by" such that these are all merely synonyms for one another or are used interchangeably. Nor does State Farm suggest that people using "based on" in everyday speech mean "assigned by," "varied by," "organized by," or "differentiated by." And State Farm's motion does not even mention the operative standard for interpreting an insurance policy—how a layperson would read it.

When State Farm argued for the same assigned-by interpretation of the Policy to the *Vogt* court in seeking summary judgment in that case, the court squarely rejected it:

> State Farm insists that "the only plausible reading of the sentence at issue is that age, sex and rate class are the only individual-specific factors used to place Policyholders into different risk groups, not that age, sex and rate class are the only factors that State Farm may use to determine COI rates." But the sentence does not even mention risk groups. To the contrary, it mentions only "[t]hese rates for each Policy year," referring to the "Monthly Cost of Insurance Rates" subheading, and the specified factors that form the "bas[is]" thereof.

*Vogt*, 2018 WL 1747336, at *5 n.1. Moreover, contrary to State Farm's contention that the Eighth Circuit did not reject the assigned-by interpretation of the Policy (Dkt. 191 at 20 n.4), State Farm urged the Eighth Circuit to adopt *this very interpretation*, contending that the "'based on' sentence is directed at the factors that are individual to the insured," so the Eighth Circuit should hold that the identified mortality factors "demonstrate how a COI rate is likely to vary from one individual policyholder to the next." *See Vogt v. State Farm Life Ins. Co.*, State Farm Opening Br. on Appeal, 2019 WL 413071, at 18-19 (quoting *Norem v. Lincoln Ben. Life Co.*, 737 F.3d 1145, 1150 (7th Cir. 2013) and citing *Thao v. Midland Nat'l Life Ins. Co.*, 2013 WL 119871, at *2 (E.D. Wis. Jan. 9, 2013), *aff'd*, 549 F. App'x 534

---

[5] Plaintiff also intends to present this other policy form as evidence that State Farm's overcharges are intentional, in support of Plaintiff's request for punitive damages. *See* Part IV, *infra*.

(7th Cir. 2013)); *see also* Dkt. 191 at 20-21 (making same argument now). The Eighth Circuit, like this Court, necessarily rejected this interpretation in concluding the COI rates provision could reasonably be read as prohibiting State Farm from using unlisted factors when determining the COI rates, as Plaintiff contends the provision should be interpreted. That this Court and the Eighth Circuit did not directly address this interpretation demonstrates it is not even in the running as *a* reasonable reading of the Policy—and it certainly is not, as State Farm contends, *the only* reasonable interpretation.

State Farm's assigned-by interpretation should also be rejected because State Farm has already acknowledged that the COI rates provision requires the listed factors to be at least a component—indeed the primary component—in determination of the COI rates. Dkt. 63 at 13-19; *see also* Dkt. 122 (Order granting class cert.) at 1 ("State Farm's motion for summary judgment argued that the phrase 'based on' allows it to consider other factors when calculating COI rates, *as long as it also considers the enumerated factors*.") (emphasis added). Having previously argued that reading the provision as referring to components of the COI rates' determination was reasonable, State Farm cannot now contend such a reading is unreasonable, especially where State Farm provides no new or different argument supporting its interpretation that the provision does not refer to how State Farm must determine the rates at all. At a minimum, State Farm's shifting position supports the Court's conclusion that the Policy does *not* unambiguously support the insurer's reading, and thus it must be construed in favor of the insured. *See, e.g.*, *Bareno v. Employers Life Ins. Co.*, 7 Cal. 3d 875, 878 (1972) ("We think that the responsibility for writing clear and simple policies lies with the insurance industry.").

Moreover, as Judge Laughrey recognized in *Vogt*, where the COI rates provision states "that the rates can be 'adjusted for projected changes in mortality' . . . the Policy expressly recognizes mortality considerations as a factor in setting the COI rates." *Vogt*, 2018 WL 1747336, at *5 (W.D. Mo. Apr. 10, 2018). State Farm has never disputed that policy year, age, sex, and rate class are mortality factors commonly understood as determinative of the mortality risk or expectation for an insured. Its own witnesses admit that the listed factors are mortality factors used to determine an insured's mortality risk, and that State Farm in fact used these factors to develop its pricing mortality rates before loading them for expenses and profits. *See* Dkt. 142 at 4-5; Statement of Relevant Facts, *supra*. That State Farm used the listed factors—and only those factors—to develop its pricing mortality rates (rates to which it added

loads to determine the final COI rates) disproves State Farm's assertion that it would be "impossible" to generate COI rates exclusively using the listed factors (Dkt. 170 at 27; Dkt. 63 at 17; *see also* Dkt. 191 at 22-23). *See Vogt*, 2018 WL 1747336, at *5 (concluding that "based on" is "best understood here as simply indicating that a calculation will be performed using the listed factors—not that the COI charge will be determined using additional, unmentioned factors," though the insurance company "obviously uses some computation to derive the cost of insurance charge from the" identified factors) (quoting *Dean v. United of Omaha Life Ins. Co.*, No. CV 05-6067-GHK (FMOx), 2007 WL 7079558, at *5 (C.D. Cal. Aug. 27, 2007)).

State Farm's further claim that the Policy does not dictate how it determines COI rates because "State Farm's underlying rate structure was generated well before the company had any particular Insured's age, sex, and rate class information" (Dkt. 191 at 21; Dkt. 170 at 24), should likewise be rejected. State Farm used policy year (duration), age, sex, and rate class—either standard or substandard (*see* Witt Dec., ¶ 55 n.11; Dkt. 192 (Dahlen Dec.), ¶ 15)[6]—to determine its pricing mortality rates for the Policy, and State Farm's determination of those rates before issuing the Policy is irrelevant to its contractual obligations. After the policy owner's rate class was determined—again, as either standard or substandard—State Farm's applicable mortality rates by policy year for that Insured's age, sex, and rate class *are* the Policy-compliant rates. Thus, to the extent State Farm's pricing process is relevant to Policy interpretation at all, it supports Plaintiff's interpretation that the Policy-identified factors are mortality factors, and that State Farm is limited to using only those factors to determine the COI rates charged to policy owners.[7]

---

[6] State Farm's continued insistence that "tobacco use is a critical determinant for an Insured's rate class" (Dkt. 191 at 18), while irrelevant to the issue here of whether State Farm's assigned-by interpretation is the only reasonable interpretation of the Policy, is contrary to this Court's recognition that "tobacco use [is] not one of the enumerated factors in the Policy on which COI rates were supposed to be based." Dkt. 122 at 10 (quoting *Vogt*, 2018 WL 4937330, at *5); *Vogt*, 963 F.3d at 769 (finding tobacco use is "not a mortality factor listed in the policy"); *see also* Witt Dec., ¶ 38 (stating State Farm's pricing mortality rates are not "tobacco distinct," rather, they are tobacco/nontobacco "blended").

[7] As Plaintiff explained in opposition to State Farm's first motion for summary judgment (Dkt. 67 at 19 n.14), State Farm improperly attempts to use its internal pricing exercise as both sword and shield. State Farm contends the pricing process is relevant to its intent, and therefore bears on the interpretation of the Policy, but also that its internal pricing process was undertaken before the Policy was entered into, and

Finally, State Farm's continued insistence that the Policy's maximum rates are essentially co-extensive with the Policy's monthly COI rates (Dkt. 191 at 12, 17-18) is also wrong. The Court already concluded such an interpretation would render language in the COI rates provision superfluous. Dkt. 77 at 13-14. In addition, State Farm's contention that both the COI rates and the maximum rates are dependent on the same listed factors (Dkt. 191 at 17-18) is incorrect. As the *Vogt* court concluded in rejecting this contention, the maximum cost of insurance rates "are defined in the Policy as being 'based on' a more limited range of factors"—age and sex—"than the monthly COI rates"—policy year, age, sex, and rate class. *Vogt*, 2018 WL 1747336, at *6 (comparing the Policy's maximum cost of insurance rates provision at page 11 of the Policy with the Policy's COI rates provision on page 10). The *Vogt* court concluded that "[b]y referencing both the 'policy year' and the 'policy anniversary' in describing the monthly COI rates, the Policy incorporates the duration of the policy as a factor affecting those rates." *Id.* "In contrast, the Policy does not incorporate a duration factor in describing the maximum COI rates, and the 1980 CSO Tables do not consider policy year." *Id.* This Court likewise found that the Policy's reference to "'policy year' in the provision describing factors that go into the monthly COI charges, suggest[s] that Policy year was incorporated into the pricing scheme." Dkt. 122 at 11. State Farm's renewed arguments conflict with the Court's conclusion in this regard, and State Farm's contention that the Policy's maximum rates provide the only limit on the COI rates it could charge must be rejected.

Consequently, State Farm cannot show that a reasonable layperson would understand the Policy's plain language as granting State Farm unfettered discretion on what it could consider in determining COI rates, such that COI rates could be untethered from State Farm's mortality expectations. Nor can State Farm show that a reasonable layperson would understand that the COI rates provision's sole purpose is to inform insureds of the factors State Farm would use to assign their rates. State Farm's own experts explain why a reasonable layperson would expect State Farm to identify explicitly the factors it would use to determine COI rates: insurers offer better rates for universal life products "because they have shifted some of the risk of adverse trends in mortality rates, investment returns, or other anticipated

therefore, is not part of the Policy. Under California law, the latter is correct. State Farm's confidential pricing process could have no bearing on how a layperson would understand the Policy. And to be clear, Plaintiff's claims do not arise from State Farm's pricing process. They arise from State Farm's assessment of COI rates and charges in excess of what the Policy permits.

experience factors to the policyowner." Dkt. 196-1 at 15. A reasonable policy owner would thus understand they have assumed risks related to State Farm's "projected changes in mortality," but there is no indication in the Policy's plain language that the policy owner is assuming risks stemming from State Farm's expenses, profitability, or any other unlisted factors included in the COI rates.

Moreover, a reasonable person would expect an insurance policy with separately identified charges to be a full disclosure of those charges the insurer will assess without the policy owner's further consent. After all, charges much smaller than the COI charge, which is typically the largest monthly charge, are expressly delineated. *See, e.g.*, *Garamendi v. Mission Ins. Co.*, 131 Cal. App. 4th 30, 42 (2005) (policy term must be read "in context and with regard to its intended function and the structure of the policy as a whole" and the surrounding circumstances); *see also* Witt Dec., ¶¶ 17-18 ("universal life policies are designed to offer more transparency to the policy owner" than traditional insurance by breaking down the monthly deductions into "separately identified charges"); Witt Reb. Dec., ¶ 8 ("disclosure of the factors used in determining COI rates is consistent with the 'unbundled' nature of universal life insurance"). Considered in its context, within a section laying out the precise formulas and values applied to the Account Value (including providing certain values to seven decimal places), the COI rates provision would be reasonably understood to identify just how the COI rates are determined. And, while State Farm plainly knew it intended to rely on unlisted factors, it has never explained why it did not list all the factors it intended to use.

Thus, because the plain language of the Policy requires rejection of State Farm's assigned-by interpretation, State Farm's motion for summary judgment must be denied. At a minimum, even if State Farm has presented another reasonable interpretation, the Court already found Plaintiff's interpretation reasonable. Thus, even if State Farm's assigned-by interpretation were reasonable, the COI rates provision would still be ambiguous, and that ambiguity must be resolved against State Farm. Dkt. 77 at 4, 14. In addition, for these same reasons and those set forth in Plaintiff's opposition to State Farm's first motion for summary judgment (Dkt. 67), the Court should again reject State Farm's contention that "based on" cannot reasonably be read as prohibiting State Farm from considering other unlisted factors in its determination of the Policy's COI rates. *See* Dkt. 191 at 26 n.5.

2.      **State Farm's proffered extrinsic evidence should be rejected as a basis for adopting State Farm's interpretations of the Policy because it is irrelevant to how a layperson would read the Policy.**

Extrinsic evidence plays no role where the plain language of the Policy is inconsistent with State Farm's assigned-by interpretation, *see Pac. Gas & Elec. Co. v. G. W. Thomas Drayage & Rigging Co*., 69 Cal. 2d 33, 39 (1968) ("extrinsic evidence is not admissible to add to, detract from, or vary the terms of a written contract"), and, moreover, State Farm's proffered extrinsic evidence in support of its interpretation is irrelevant to how a layperson would understand the Policy.[8]

*First*, as it did in moving for summary judgment the first time, State Farm contends that its assigned-by interpretation is consistent with how insurance industry and regulatory experts understand it. But as this Court recognized in denying State Farm's first motion for summary judgment, an industry expert's understanding of an insurance policy is not a relevant consideration because an insurance "'policy should be read as a layman would read it and not as it might be analyzed by . . . an insurance expert.'" Dkt. 77 at 13 (quoting *Crane v. State Farm Fire & Cas. Co.*, 5 Cal. 3d 112, 115 (1971)); *see also Cooper Cos. v. Transcon. Ins. Co.*, 31 Cal. App. 4th 1094, 1100 (1995) ("[T]he meaning of the policy is a question of law about which expert opinion testimony is inappropriate."); *Nat'l Auto. & Cas. Ins. Co. v. Stewart*, 223 Cal. App. 3d 452, 458-59 (1990) ("The opinion of a linguist or other expert as to the meaning of the

---

[8] State Farm acknowledges that only *relevant* extrinsic evidence is admissible to interpret the Policy. *See* Dkt. 191 at 15. State Farm's reliance on cases that involve sophisticated business entities, apply inapposite case law, or do not involve the interpretation of an insurance policy, for its contention that the extrinsic evidence it offers here bears on Policy interpretation, is thus misplaced. *See* Dkt. 191 at 14 (citing *Hammon Plating Corp. v. Wooten*, No. 16-CV-03951-LHK, 2017 WL 2986260, at *1 (N.D. Cal. July 13, 2017) (alleging breach of stock purchase agreement between two corporations); *id.* at 16-17 (citing *Grow Grp., Inc. v. N. River Ins. Co.*, No. C 92-2328 SC (ENE), 1992 WL 672265, at *1 (N.D. Cal. Aug. 14, 1992) (involving negotiated, commercial umbrella liability policy, relying on *Fireguard Sprinkler Systems Inc. v. Scottsdale Ins. Co.*, 864 F.2d 648, 652 (9th Cir. 1988), a case applying Oregon law, to hold, contrary to California law, that treatises and documents that reflect industry understanding are admissible); *Wolf v. Superior Court*, 114 Cal. App. 4th 1343, 1350 (2004) (interpreting term "gross receipts" in royalties agreement between author and movie and television company); *Ohio Six Ltd. v. Motel 6 Operating L.P.*, No. CV 11-8102 MMM (EX), 2012 WL 12886208, at *2 (C.D. Cal. Nov. 16, 2012) (alleging breach of commercial lease agreements and termination of lease agreements between two corporations); *Paul Revere Variable Annuity Ins. Co. v. Kirschhofer*, 226 F.3d 15, 23 (1st Cir. 2000) (general manager agreement); *Bruce Foods Corp. v. Texas Gas Serv.*, No. EP-13-CV-231-KC, 2014 WL 652312, at *21 (W.D. Tex. Feb. 19, 2014) (negotiated natural gas contract); *Heppler v. J.M. Peters Co.*, 73 Cal. App. 4th 1265, 1278 (1999) (indemnity provision in subcontractor contract).

policy is irrelevant to the court's task of interpreting the policy as read and understood by a reasonable lay person.").

State Farm's reliance on the technical ASOPs and NAIC model rules for its interpretation is likewise misplaced for purposes of determining how a layperson would understand the Policy where there is no indication policy owners are furnished with or otherwise made aware of these rules. *See Am. Star Ins. Co. v. Ins. Co. of the W.*, 232 Cal. App. 3d 1320, 1329-31 (1991) (rejecting use of an industry publication regarding insurer's understanding of a policy term to interpret insurance policy, stating the meaning of the policy "cannot depend on an industry publication which the policyholder might never see"). In any event, these standards actually support Plaintiff's interpretation because they do not require insurance companies to derive profit from COI charges, and they explicitly require insurance companies to comply with their policies as written. *See* Dkt. 67 at 19 n.15 (citing Ex. 1 (Witt Dec.), ¶¶ 25-30).

In fact, State Farm does not even argue its industry evidence is relevant to how a layperson would understand the Policy. Instead, State Farm contends this evidence shows that "*State Farm* reasonably believed policyholders" understood how State Farm was determining the COI rates. Dkt. 191 at 19. But what State Farm believed policy owners understood is not the relevant inquiry. Rather, interpreting a policy "in the sense in which the promisor believed, at the time of making it, that the promisee understood it . . . protects *not the subjective beliefs of the insurer* but, rather, 'the objectively reasonable expectations of the insured.'" *Bank of the W. v. Superior Court*, 2 Cal. 4th 1254, 1264–65 (1992) (quoting *AIU*, 51 Cal.3d at 822) (emphasis added). This Court has already determined that Plaintiff's reading of the Policy is objectively reasonable.

Moreover, contrary to State Farm's contention that it reasonably believed policy owners understood that the COI rates provision merely identifies the factors by which the COI rates would be assigned, and says nothing about the identified mortality factors as being the basis of the rates, State Farm itself referred to the COI charges as ▮▮▮▮▮▮▮▮ in its policy illustrations provided to policy owners. *See* Ex. 2 at SFLIC-000078759 (emphasis added); *id.* at 78762 (calling the maximum rates ▮▮▮▮▮▮ and the COI rates ▮▮▮▮▮▮▮▮); *see also* Dkt. 194 (Lopez Dec.), ¶¶ 5-6, 10; Dkt. 195 (Prestegaard

Dec.), ¶ 6; Dkt. 192 (Dahlen Dec.), ¶¶ 9-10, 15.[9] Thus, State Farm's contention that it could not have reasonably believed that policy owners understood the COI rates provision as stating that State Farm would determine the COI rates based on its mortality expectations is at odds with its own description of the COI charges.

In any event, the interpretative device of construing policy language as the promisor believed the promisee understood it at the time of contracting only comes into play if there is ambiguity. While the Court concluded the Policy's "based on" phrase is ambiguous as to whether it permits State Farm to consider unlisted factors in its determination of COI rates, it never concluded State Farm's assigned-by interpretation is a reasonable reading of the Policy. As discussed, it is not a reasonable reading. Therefore, State Farm's claim that industry rules and expert opinions show it believed policy owners understood the COI rates would *not* be determined from the listed factors at all, and that instead, the listed factors were merely what State Farm used to assign predetermined, loaded COI rates, is irrelevant.

Moreover, State Farm's insurance experts' opinions as to how they would expect an insurance company to calculate COI rates—that is, with consideration of profit and expense factors in mind—and that they would understand that the predetermined, loaded rates would be assigned to insureds according to their characteristics, are divorced from the plain language of *this* Policy. Dkt. 170 at 22-23. As Plaintiff demonstrated in opposing State Farm's first motion for summary judgment, insurance companies— *including State Farm itself*—customarily set forth explicitly in their policies all the factors on which they intend to rely in determining COI rates or otherwise explicitly state that the listed factors are not exhaustive, and/or clearly state that rates will be assigned or vary by certain characteristics of the insured. *See* Dkt. 67 at 15 (citing Ex. 1 (Witt Dec.), ¶¶ 32-35); *see also* Witt Reb. Dec., ¶¶ 9-14. Thus, that State Farm's insurance experts understand State Farm's practices to be consistent with how insurance companies *typically* calculate and charge COI rates is irrelevant where other insurance companies word their policies to allow for greater rate-setting authority than State Farm did in this Policy. *See* Witt Reb. Dec., ¶ 8 (stating State Farm's insurance industry experts "fail to acknowledge that it is also common practice in the industry to either: 1) specifically disclose all factors considered and used in determining

---

[9] Furthermore, as demonstrated in Part IV, n.15, *infra*, State Farm employees recognized internally that the Policy's COI rates provision limited State Farm to charging mortality-only rates.

COI rates, or 2) include qualifying language, not present in Form 94030, to indicate that the identified list of factors is not exhaustive").[10]

Therefore, State Farm's position that because insurance companies customarily include profits and expenses in COI rates for policies with far more discretionary language, this Policy should be interpreted to permit the same, finds no support in contract law. Under State Farm's logic, policy language is irrelevant and any universal life insurance policy should be interpreted to permit the consideration of unlisted factors.[11] But the contract language here controls—not what other contracts provide, what other companies in the industry do, or how insurance experts opine.

Nor do opinions that State Farm's inability to earn a profit would have resulted in the Policy not being authorized for sale (*e.g.*, Dkt. 191 at 23-24) provide any basis to interpret the Policy to mean something different than what it says. Moreover, State Farm offers no evidence of California's regulation of COI rates, if any, or its approval of the COI rates at issue here. In fact, State Farm's Assistant Vice President, Alan Hendren, admits that California regulators did "not review or approve" the COI rates, "which [we]re not filed with regulators." *See* Dkt. 193, ¶ 12. Regardless, an insurance commissioner's approval of the Policy's form or rate tables would have no bearing on whether State Farm's COI rates complied with the terms of the Policy. *E.g.*, *Frenzer v. Mut. Ben. Health & Acc. Ass'n*, 27 Cal. App. 2d 406, 414 (1938) (approval of policy form by state insurance department did not displace court's judicial function of determining whether the policy violated the law); *Rand v. Am. Nat'l Ins. Co.*, 717 F. Supp. 2d 948, 955 (N.D. Cal. 2010) (same, citing cases); *Reichardt v. Life Ins. Co. of N. Am.*, 485 F. Supp. 56, 64 (N.D. Cal. 1979) (same).

---

[10] Likewise, that Mr. Witt testified that he personally had not priced a universal life insurance policy with reference to only the insurance company's mortality expectations (Dkt. 191 at 23 (citing Witt Tr. at 53:15-19)) is irrelevant. State Farm did not even ask Mr. Witt what the policies he priced provided for as to the insurance company's authorization to consider other factors.

[11] The *Norem* court made a similar error, concluding that because it was common industry practice to consider numerous factors when setting COI rates that the insurance company in that case had complied with the policy language at issue in doing so. *Norem*, 737 F.3d at 1150; *see also* Dkt. 67 at 17-18 (explaining additional reasons why *Norem* and *Thao* are inapposite, incorrectly decided, and should not be followed here).

If rates compliant with State Farm's contractual language would not have passed regulatory muster,
the problem is with State Farm's drafting. It is not a basis to re-write the Policy or charge policy owners
higher COI charges than the Policy authorizes so that State Farm can earn larger profits through the
COI.[12] The Court already rejected State Farm's argument that Plaintiff's interpretation of the Policy is
unreasonable because it would not allow State Farm to earn sufficient profit. The Court instead concluded
that, given the Policy's other identified charges, "it would not be unreasonable for a policyholder to
conclude that State Farm was making a profit from the Policy without necessarily concluding that it was
doing so from the COI calculation." Dkt. 77 at 12-13; *see also* Dkt. 196-1 (Reynolds Dec.) at 16
(identifying the many sources of revenue on universal life policies, including 5% of all premiums paid,
the $5 monthly expense charge, the COI charges, surrender charges, and "investment income on the
account value and other assets that [the company] has invested"); Dkt. 197-4 (Witt Tr.) at 80:6-18 (stating
the COI charge is not the only "lever" at the insurance company's disposal to earn money on a block of
universal life insurance policies). State Farm also has never even attempted to demonstrate the Policy
would not be profitable if it were limited to charging COI rates that covered only mortality risk. Of the
approximately 86,000 policies within this California Class, State Farm has paid a death benefit on just
▮ of them, only ▮ of the policies remain in force, and ▮ of all terminated policies terminated
by lapse, meaning the policy owners paid in for years with nothing to show for it because deductions
fully drained their Account Values. Witt Dec., ¶ 21. Given these objective metrics, State Farm is not
entitled to any presumption that the Policy would not be solvent under Plaintiff's interpretation. And
even if State Farm had made a poor choice in guaranteeing 4% interest or certain commission payments,
there is no reason to relieve State Farm of responsibility for its own business decisions.

*Second*, State Farm also contends that Plaintiff subjectively understood State Farm would earn a profit
on the Policy and that this supports State Farm's interpretation. Dkt. 191 at 23. But this contention is
incorrect; Plaintiff merely testified that she assumed State Farm would make a profit unless her then 5-
year-old daughter were to die. Dkt. 197-5 at 35:2-11. Regardless, State Farm made this same argument
in its first motion for summary judgment (Dkt. 63 at 16 & n.49), but the argument did not lead the Court

---

[12] For this same reason, State Farm's contention that Mr. Witt did not know whether State Farm's pricing
mortality rates would satisfy regulatory requirements (Dkt. 191 at 24) is irrelevant.

to interpret the Policy as State Farm advocated. Instead, the Court concluded the Policy must be interpreted without regard to policy owners' subjective understandings of it. Dkt. 122 at 16; *see also* Dkt. 67 at 20 n.16, 21 n.17 (citing *St. Paul Mercury Ins. Co. v. Frontier Pac. Ins. Co.*, 111 Cal. App. 4th 1234, 1247 n.8 (2003); *Yue v. Conseco Life Ins. Co.*, 282 F.R.D. 469, 476 (C.D. Cal. 2012) (subjective expectations of the insured "would have little if any bearing" in determining "the objectively reasonable expectations of the insured"); *Am. Star Ins.*, 232 Cal. App. 3d at 1331-32). And, as explained above, Plaintiff's understanding that State Farm would be generally profitable is fully consistent with Plaintiff's interpretation of the Policy because, as the Court already found, the Policy's other identified charges make it reasonable "for a policyholder to conclude that State Farm was making a profit from the Policy without necessarily concluding that it was doing so from the COI calculation." Dkt. 77 at 12-13.

*Third*, State Farm's continued reliance on declarations from its sales agents and employees and a "consumer expectations" expert to argue that through the sales process, Class Members would have come to understand that State Farm was assigning COI rates by age, sex, and rate class (Dkt. 191 at 18-19), ignores this Court's determination on class certification that individualized discussions with sales agents would have no bearing on the meaning of the Policy, and that the form, standardized Policy would be interpreted the same for all Class Members "without regard to their knowledge or understanding of the standard terms of the writing." Dkt. 122 at 16 (quoting Restatement (Second) of Contracts § 211(2)). Further, regardless of whether certain Class Members may have known that State Farm assigned its COI rates according to insureds' age, sex, and rate class, that would neither affect nor negate State Farm's obligation under the Policy to base its COI rates on the listed factors. One would expect rates to be organized according to the same factors that are used to actually determine them. In other words, that State Farm in fact assigned COI rates according to policy owners' age, sex, and rate class, is not inconsistent with Plaintiff's interpretation of the Policy—an interpretation the Court already concluded is reasonable—that unlisted factors cannot be included in the determination of the COI rates.

*            *            *

Thus, for all these reasons, the Court should again reject State Farm's interpretations of the Policy and therefore deny its motion for summary judgment. And, for these reasons and those stated in Plaintiff's

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO STATE FARM'S
MOTION FOR SUMMARY JUDGMENT
Case No. 3:18-cv-04954-CRB

motion for partial summary judgment, the Court should grant summary judgment in favor of the Class on State Farm's liability for breach of the Policy's COI rates provision (Count I).

## II. State Farm Is Not Entitled to Summary Judgment Against the Class for Breach of the Expense Charge Provision (Count II).

State Farm also seeks summary judgment on the Class's claim for State Farm's breaches of the Policy's $5 Expense Charge provision (Count II) but provides no argument as to why summary judgment is appropriate as to this claim. Instead, State Farm appears to assume that if its interpretation of the Policy's COI rates provision prevails, it is necessarily also entitled to judgment on the Expense Charge claim. State Farm's assumption is incorrect. As explained below, and as Plaintiff has consistently argued (*see* Dkt. 67 at 22 n.18; Dkt. 83 at 10-11; Dkt. 129 at 9-10 & n.9), the Policy's Expense Charge provides an independent limit on the amount State Farm may deduct from policy owners' Account Values for expenses, such that *even if* the COI rates provision did not itself limit the factors State Farm may consider in determining the COI rates, the Expense Charge limits the expenses State Farm may deduct.

The Policy states that State Farm will take a "Monthly Deduction" that includes, as relevant here, the COI charge and the monthly Expense Charge, and that "[t]he monthly expense charge is $5.00." Witt Dec., Ex. B (Policy) at 3, 9. Plaintiff contends that the only reasonable reading of these policy provisions is that State Farm is not authorized to deduct more than $5.00 for expenses in each Monthly Deduction, and that State Farm cannot therefore deduct a $5.00 Expense Charge every month and also deduct undisclosed expenses through the Monthly Deduction's COI charge. State Farm does not dispute that it does both.

On these undisputed facts, the *Vogt* court held that State Farm breached the Expense Charge provision as a matter of law. *See Vogt*, Dkt. 335 ("State Farm does not deny that it charged policyholders not only $5.00 a month, but also additional, unspecified expenses that were factored into the COI rates. As a matter of law, this violated the language in the Policy stating that the expense charge would be $5.00 each month."); *see also Bezich v. The Lincoln Nat'l Life Ins. Co.*, No. 02C01-0906-PL-73 (Ind. Cir. Ct. Jan. 14, 2013) at ¶ 13 (rejecting insurer's argument that expense charge provision stating the monthly administrative charge "is equal to $6.00 per month" allowed it to charge administrative expenses greater than $6.00 per month by recovering expenses through the COI charge, stating "[g]iving this provision its plain and ordinary meaning, an ordinary policyholder of average intelligence would not interpret this

provision to mean that administrative fees can exceed $6.00/month or that these administrative fees can be tacked on to the COI rate") (attached as Ex. 4 to Dkt. 67-1).[13] For this reason, State Farm charging extra expenses to policy owners through the COI charge breaches the Expense Charge provision.

State Farm's failure to even address this independent provision of the Policy requires denial of its motion for summary judgment on Count II, and it should not be permitted to advance arguments regarding the Expense Charge provision for the first time on reply. *E.g.*, *Grange Ins. Ass'n v. Sran*, 184 F. Supp. 3d 799, 819 (E.D. Cal. 2016).

## III. State Farm Is Not Entitled to Summary Judgment on the Class's Claim for Conversion (Count III).

State Farm contends it is entitled to summary judgment against the Class on the conversion claim for three reasons: (1) the Policy authorized the amount of the COI charges, so there was no conversion (Dkt. 191 at 26); (2) Plaintiff's conversion claim is duplicative of her contract claim and does not allege violation of an independent tort duty (*id.* at 26-28); and (3) Plaintiff has not established an "identifiable sum of money" converted (*id.* at 26-28). Each of these arguments should be rejected.

*First*, as explained at Part I, *supra*, State Farm's COI charges were in greater amounts than the Policy authorized, and therefore, State Farm's "unauthorized transfer" of policy owners' money from their Account Values "is sufficient to constitute disposal of [their] funds in a manner inconsistent with [their] rights" to establish a claim for conversion under California law. *See* Dkt. 77 at 7.

*Second*, State Farm's contention that Plaintiff's conversion claim is precluded because she has not shown State Farm violated a duty independent of the Policy lacks merit. State Farm had an independent duty in tort not to take more of policy owners' money than it was authorized to take, and therefore, the Class can recover in tort. *See Expedited Packages, LLC v. Beavex Inc.*, No. CV 15–00721 MMM (AGRx), 2015 WL 13357436, at *3 (C.D. Cal. Sept. 10, 2015) (citing, among other cases, *Schulz v. Cisco Webex, LLC*, No. 13-cv-04987-BLF, 2014 WL 2115168, at *6 (N.D. Cal. May 20, 2014) (characterizing a "traditional common law tort, such as fraud or conversion" as one of the "exceptions to the general rule

---

[13] State Farm has previously and erroneously argued that this order from *Bezich* is no longer good law. *See* Dkt. 84 at 12 n.5. To the contrary, while the appellate court opinion reviewing the trial court's *class certification order* was vacated by rule, no appellate court reviewed or disturbed the trial court's order denying the defendant's *motion to dismiss*, which is the order Plaintiff relies on here.

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO STATE FARM'S
MOTION FOR SUMMARY JUDGMENT
Case No. 3:18-cv-04954-CRB

against tortious breach of contract claims")); *Textainer Equip. Mgmt. (U.S.) Ltd. v. TRS Inc.*, No. C 07-01519 WHA, 2007 WL 1795695, at *3 (N.D. Cal. June 20, 2007) (concluding plaintiff stated a distinct claim for conversion because defendant "had an independent duty not to misappropriate the containers. This duty existed *outside the contract*.") (emphasis added). In short, because policy owners have "a property interest" in the money they deposit into their Account Values that exists "independent of" their contracts with State Farm, the breach of contract claim is no bar to the Class recovering for State Farm's wrongful conversion of their funds. *See Expedited Packages*, 2015 WL 13357436, at *4; *see also Schneider v. Bank of Am. N.A.*, No. CIV. S-11-2953 LKK, 2014 WL 2118327, at *13 (E.D. Cal. May 21, 2014) (concluding the plaintiff stated a claim for conversion independent from the contract by asserting "that pursuant to the contract, he entrusted specific sums of money to defendants, which defendants were to use for a specific purpose" and "defendants instead took the money entrusted to them" and used it for a different, unauthorized purpose).

Judge Laughrey rejected this same argument, concluding "Vogt's conversion claim arises from the independent duty not to appropriate another's funds, a duty that exists regardless of and independently of Vogt's life insurance contract with State Farm." 2017 WL 1498073, at *2 (W.D. Mo. Apr. 26, 2017). And other courts have likewise concluded unauthorized deductions from universal life policy accounts gives rise to an independent claim for conversion. *See Taylor v. Midland Nat'l Life Ins. Co.*, No. 16-cv-00140-SMR-HCA, 2016 WL 9454075, at *4-5 (S.D. Iowa July 29, 2016) ("[T]he duty not to convert one's property is independent of contract."); *see also Cook v. John Hancock Life Ins. Co. (U.S.A.)*, No. 7:12-CV-00455, 2015 WL 178108, at *20 (W.D. Va. Jan. 14, 2015) ("[T]he duty not to convert others' property is a common law duty owed by all, and would exist even in the absence of a contract.").

Likewise, State Farm's contention that Plaintiff must show improper intent by State Farm is also wrong. Rather, while the defendant's act of disposition of property must be knowing or intentional, "a wrongful intent is not necessary." *Taylor v. Forte Hotels Int'l*, 235 Cal. App. 3d 1119, 1124 (1991); *see Voris v. Lampert*, 7 Cal.5th 1141, 1150 (2019) ("[I]n California, conversion is a strict liability tort[;] . . . wrongful intent or motive" is not required.).

*Third*, State Farm's contention that Plaintiff has presented no evidence of an identifiable sum that was converted is also wrong. *See Weiss v. Marcus*, 51 Cal. App. 3d 590, 599 (1975) (holding that "it is

not necessary that each coin or bill be earmarked"). Mr. Witt has calculated damages for every class member to the penny, totaling $123,475,422.33 (Witt Dec., ¶ 10(d)), using a methodology that is beyond dispute (*see* Dkt. 142 at 10-17; Dkt. 173 at 22-29; Dkt. 182 at 8 n.5). This amount properly includes the interest that would have accrued on the wrongfully deducted funds. *See, e.g.*, *Myers v. Stephens*, 233 Cal. App. 2d 104, 116 (1965) ("[T]he value of the property converted at the time and place of conversion *with interest from that time*, is generally considered to be the appropriate measure of damages in a conversion action.") (emphasis added); *see also Vogt*, 2018 WL 4937330, at *11 (rejecting State Farm's argument that the inclusion of interest in a damages calculation meant the plaintiff had not identified the "corpus" that was converted, given that interest is a proper component of a damages award for conversion).

Nor has Mr. Witt calculated "two estimates" (Dkt. 191 at 29) of the damages. Instead, he calculated the exact amount of damages caused by State Farm's conversions, and offered a second exact calculation showing total damages if State Farm's setoff defense succeeds. Witt Dec., ¶ 10(e), ¶ 59 n.15. State Farm's setoff defense does not suggest, however, that the converted sum may be two different amounts; rather, it indicates only that State Farm has asserted a claim *against the specific amount it converted*.

Thus, State Farm is not entitled to summary judgment against the Class on the conversion claim.

## IV. State Farm Is Not Entitled to Summary Judgment on the Class's Request for Punitive Damages.

Nor is State Farm entitled to summary judgment on the Class's request for punitive damages. A reasonable jury could conclude State Farm acted with malice, fraud, or oppression when it converted funds from its policy owners' Account Values, concealed these conversions, and *continues to convert* their funds after having been repeatedly warned that it is without authorization to deduct the funds it is still taking. On the facts before the Court, a reasonable jury could conclude that State Farm's conscious disregard of the rights of its policy owners and concealment of its conduct from them warrants the imposition of punitive damages.

The parties agree punitive damages are recoverable in an action for conversion. *See* Dkt. 191 at 30; *see also Krusi v. Bear, Stearns & Co.*, 144 Cal. App. 3d 664, 678 (1983) (citing *Ferraro v. Pacific Fin. Corp.*, 8 Cal. App. 3d 339 (1970)); *Cyrus v. Haveson*, 65 Cal. App. 3d 306, 316 (1976); *Haigler v. Donnelly*, 18 Cal. 2d 674, 680 (1941). "If … the action is one in tort, exemplary damages may be

recovered upon a proper showing of malice, fraud or oppression even though the tort incidentally involves a breach of contract." *Schroeder v. Auto Driveaway Co.*, 11 Cal. 3d 908, 921 (1974). "'Malice' means conduct which is intended by the defendant to cause injury to the plaintiff *or* despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others." Cal. Civ. Code § 3294 (emphasis added). "'Oppression' means despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights." *Id.* "'Fraud' means an intentional misrepresentation, deceit, or concealment of a material fact known to the defendant with the intention on the part of the defendant of thereby depriving a person of property or legal rights or otherwise causing injury." *Id.* A reasonable jury could conclude that State Farm's conduct meets these standards.

*First*, every court that has analyzed whether State Farm's Form 94030 Policy permits State Farm to deduct COI charges derived from COI rates that incorporate unlisted factors has held that it does not. *See Vogt*, 2018 WL 1747336, at *4 ("no reasonable lay person would expect that State Farm was permitted to use any factor it wanted to calculate the cost of insurance"), *aff'd*, 963 F.3d at 763-64 ("a person of ordinary intelligence purchasing an insurance policy would not read the provision and understand that where the policy states that the COI fees will be calculated 'based on' listed mortality factors that the insurer would also be free to incorporate other, unlisted factors into this calculation");[14] *see also* Dkt. 77; Dkt. 122 at 1 ("State Farm's motion for summary judgment argued that the phrase 'based on' allows it to consider other factors when calculating COI rates, as long as it also considers the enumerated factors. This Court rejected that argument."). State Farm ignores these rulings and instead relies on *Norem* and *Thao* to justify its preferred interpretations of the Policy, even though neither case involved the Policy at issue here. *See* Dkt. 191 at 32 (citing *Norem* and *Thao*).[15] But State Farm's reliance on *Norem* or *Thao* is

---

[14] State Farm did not petition the United States Supreme Court to review the Eighth Circuit's interpretation of the Policy. *See* Case No. 20-1008 (U.S. Jan. 21, 2021) (petitioning for a writ of certiorari regarding propriety of class certification only). Thus, the Eighth Circuit's decision regarding Policy interpretation is final and will remain undisturbed regardless of whether State Farm is ultimately successful at the Supreme Court.

[15] Although State Farm currently relies on the Seventh Circuit decisions for the reasonableness of its interpretation, before those decisions were issued, State Farm knew its Policy did not authorize it to deduct profits and expenses as part of its COI charge. In particular, State Farm's actuaries understood that policy year, age, sex, and rate class are characteristics associated with an insured's mortality risk.

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO STATE FARM'S
MOTION FOR SUMMARY JUDGMENT
Case No. 3:18-cv-04954-CRB

indefensible in the face of decisions interpreting *this* Policy and distinguishing *Norem* and *Thao* to conclude that this Policy does not authorize State Farm to deduct COI charges derived from COI rates that incorporate unlisted factors. *See Vogt*, 2018 WL 1747336, at *5 ("*Norem* is distinguishable"); *see also* Dkt. 77 (distinguishing *Norem* and *Thao* from the Policy here). Moreover, just three months after State Farm began selling the Form 94030, a California federal court applying California law construed a universal life insurance policy with similar wording to the Policy here as prohibiting the consideration of unlisted COI factors. *See Rosenbaum v. Philadelphia Life Ins. Co.*, No. CV 93-0834 MRP, 1994 WL 17118392, at *1 (C.D. Cal. Mar. 1, 1994). Thus, State Farm cannot credibly claim it made a "good-faith mistake[]" by loading its COI rates with undisclosed profits and expenses or deny that it has lacked "notice" that doing so would violate its policy owners' rights because it has been told so multiple times in court orders, yet it has continued to convert policy owners' funds anyway. *See* Dkt. 191 at 33. On this

---

Witt Dec., Ex. E (Streily Tr.), 155:19-160:20, 196:21-197:23 (explaining that policy year, age, sex, and rate class are used to determine the expected mortality risk of an insured); *id.*, Ex. F (Phipps Tr.), 24:18-25:14 (explaining that duration, age, sex, and rate class are "mortality factors" used in "mortality tables"). State Farm does not—and could not—argue that profits and expenses are mortality related. *Id.*, Ex. E (Streily Tr.), 224:6-18 (admitting expenses and profits are not mortality related); *id.*, Ex. I (Holzbauer Tr.), 165:5-11 (confirming the COI is comprised of a "mortality component" and "the rest of the cost of insurance," which is expenses and profit). And, in internal correspondence, State Farm acknowledged that its older policy forms, including Form 94030, limited its right to alter the current monthly COI rates to mortality factors only. *See* Ex. 4 ("[P]rior to 2011 our UL forms indicated we would only consider mortality. Our UL forms now specify other anticipated experience factors can be considered to change COI's."); Ex. 5 █████████████████████████████████████████████████; Ex. 6 (explaining how policy versions after 2004 changed the "contract wording" to provide State Farm "the ability to change COI for reasons other than mortality shifts"); Ex. 7 (noting that ██████████████████████████████████████████████; Witt Dec., Ex. E (Streily Tr.), 250:7-15 (recognizing that previous policy forms, like the 94030, do not authorize changes in COI rates for reasons other than mortality); *id.*, Ex. L (Hendren Tr.), 64:17-22 (same). Furthermore, it is common in the insurance industry for universal life policy forms to explicitly identify the factors used to determine the COI rates; State Farm even did so for other policy versions. Witt Dec., ¶¶ 32-35; Witt Reb. Dec., ¶¶ 9-14; *compare* Witt Reb. Dec., O at pp. 7, 13 (non-Form 94030 policy stating "Monthly Cost of Insurance Rates . . . are set by Us based on investment earnings, mortality, expenses, persistency, capital and reserve requirements, taxes and profits.") *with* Witt Dec., Ex. B (Policy) at 10 (Form 94030 Policy states the "Monthly Cost of Insurance Rates" "for each policy year are based on the Insured's age on the Policy anniversary, sex, and applicable rate class."). Thus, even setting aside that several courts have since made clear that State Farm's conduct is contrary to the Policy, the jury could reasonably reject State Farm's contention that other evidence supposedly shows it acted in good faith and with a belief that it was complying with the Policy.

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO STATE FARM'S
MOTION FOR SUMMARY JUDGMENT
Case No. 3:18-cv-04954-CRB

record, a reasonable jury could determine that State Farm's conscious disregard of the rights of its policy owners by continuing to deduct unauthorized COI charges—after being repeatedly told by federal courts that those charges constitute conversions of its policy owners' funds—constitutes malice or oppression.

*Second*, to this day, State Farm continues to conceal and misrepresent these conversions to its policy owners. The undisputed evidence shows that State Farm did not share its mortality assumptions with policy owners. Witt Dec., Ex. B (Policy does not identify current rates or mortality assumptions); *id.*, Ex. C (annual statements do not specify those items either); Ex. 2 (nor do policy illustrations). Thus, no policy owner could have been "on notice that the COI was calculated 'based on' unlisted factors." Dkt. 77 at 6 (finding that State Farm does not offer "any reason to conclude that a policyholder would have been on notice that State Farm was considering unlisted variables in calculat[ing] the COI"). But State Farm did not simply fail to disclose to its policy owners the information necessary to uncover its wrongdoing, it actively misled them by issuing illustrations that describe the COI charge as ███████████████████████ ████████████████████████[16] Ex. 2. In this lawsuit, State Farm vigorously disputes that the "COI charge is a mortality charge," Dkt. 108 at 11, ████████████████████████████ in the illustrations it issued. Ex. 2. This evidence is more than sufficient for a reasonable jury to conclude State Farm intentionally misrepresented and concealed material facts known to it with intent to deprive policy owners of their funds.

*Third*, adding to the reprehensive nature of State Farm's conduct, it knows that it is not simply lining its pockets at the expense of policy owners, but is also reducing the number of in-force policies for which it will ultimately have to pay a death benefit—the very purpose of permanent life insurance.[17] *See, e.g.*,

---

[16] State Farm understood that using the term ████████████████" interchangeably with COI could sow confusion among policy owners. Ex. 8 ████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████ (emphasis added).

[17] State Farm designed the Policy to maximize its profits in the early years of the Policy, while in the later years, profit margins decrease commensurate with the risk State Farm will have to pay the death benefit. Ex. 9 (State Farm actuary observing, ███████████████████████████████ ████████████████████████████████████████; *see*

Ex. 10 (State Farm employee stating in 2007 email "10% of inforce policies have received a [underfunding] notice," which represents "31% of all notices sent"). The number of policy terminations confirms State Farm's scheme worked, as *over half* of the class is comprised of former policyholders. Witt Dec., ¶ 21; Ex. 11 (State Farm's Answers to Plaintiff's First Interrogs.) at No. 12 (showing that nearly all the class policies terminated for reasons other than death of the insured). Yet, this Policy was supposed to provide lifetime death benefits. Ex. 12 (State Farm brochure depicting a person in his twenties purchasing a life insurance policy and that policy then paying death benefits to his wife when he dies at age ninety); Ex. 13 (same); Witt Dec., Ex. B (Policy) at 1 (providing "whole life insurance"). And once policy owners lose their life insurance coverage, not only is State Farm off the hook for paying the death benefit, but the life insurance protection is not there when the insured's ▮▮▮▮▮▮ Ex. 14. The policy owner may then be uninsurable, or insurable only at great expense, due to intervening health conditions and advancing age. Accordingly, on this record,[18] a reasonable jury could find State Farm acted and continues to act with malice, fraud, or oppression because it deducts COI charges it knows are not authorized by the Policy and then conceals the conversions from its policy owners, even going so far as affirmatively misrepresenting its actions, so that it can secretly avoid paying policy owners their death benefits while keeping its ill-gotten gains.

State Farm's due process concerns are premature and unfounded. First, State Farm incredibly argues that it has had no opportunity to "conform its conduct" having "had no prior notice" that its unauthorized deductions violate the Policy and that it should be shielded from punitive damages because it is continuing to follow the supposed guidance of *Norem* and *Thao*, involving different policy contracts. *See*

---

*also Vogt*, 2018 WL 4937330, at \*5 ("An inference that State Farm recoups profits and expenses in the earlier years of the Policy and refrains from doing so later—when more policies have lapsed or been surrendered, and when actual mortality costs increase—does not indicate a flaw in the damages model; instead, it more likely indicates a calculated business decision."); Dkt. 122 at 12 (same). Hence, State Farm is well aware that its conduct is likely to generate policy terminations for reasons other than death, after it has already reaped profits from the sale of the Policy.

[18] Although in *Vogt* State Farm's motion for summary judgment relating to the request for punitive damages was granted because the plaintiff did not adduce sufficient evidence that "State Farm knew that it should not have considered non-mortality factors, including expenses, in setting COI rates" (Dkt. 320 (W.D. Mo. May 31, 2018)), the record before this Court contains distinct and more inculpatory proof. State Farm has—at a minimum—now known for several years from court decisions that its conduct was not authorized by the Policy, yet it continues to violate its policy owners' rights anyway.

Dkt. 191 at 34. As explained above, this argument strains credulity, considering multiple courts have told State Farm repeatedly that State Farm does not have the authorization it claims it does under the same 94030 Policy at issue here. That State Farm refuses to comply after multiple warnings does not raise any due process concern; quite to the contrary, it reinforces that State Farm should be punished with the aim of reforming its conduct.

State Farm's contention that punitive damages are not permissible on a class-wide basis also is wrong. State Farm will not be punished for any conduct directed to individuals who are strangers to this case, which was the due process concern in *Phillip Morris USA v. Williams*, 549 U.S. 346 (2007). In fact, the issue presented in *Williams* was whether a jury could base a punitive damages award "in part upon its desire to punish the defendant for harming persons who are not before the court (e.g., *victims whom the parties do not represent*)." *Id.* at 349 (emphasis added). In other words, the Supreme Court raised no constitutional barrier to an award penalizing the defendant for harming persons who were victimized by the defendant's conduct and who *are represented* by a party, as here. While punitive damages have not been commonly awarded in class actions, "[t]here is no reason that punitive damages could not be available in a class action where the underlying substantive law enables such damages—nothing in Rule 23 or related procedure doctrine dictates otherwise. Indeed, the Rules Enabling Act prohibits a procedural rule like Rule 23 from modifying any substantive right." 4 Newberg on Class Actions § 12:3 (5th ed.); *see also Iorio v. Allianz Life Ins. Co. of N. Am.*, No. 05 CV 633 JLS (CAB), 2009 WL 3415703, at *5 (S.D. Cal. Oct. 21, 2009) (rejecting the same argument that State Farm makes here and finding that class members are parties to the litigation and that any punitive damages award would go to the class and "not to strangers not before the court"). Further, while "due process does not permit courts, in the calculation of punitive damages, to adjudicate the merits of other parties' *hypothetical* claims, . . . [t]his does not mean . . . that the defendant's similar wrongful conduct toward others should not be considered in determining the amount of punitive damages." *Bullock v. Philip Morris USA, Inc.*, 198 Cal. App. 4th 543, 560 (2011) (internal quotations omitted); *accord Williams*, 549 U.S. at 357 ("we recognize that conduct that risks harm to many is likely more reprehensible than conduct that risks harm to only a few. And a jury consequently may take this fact into account in determining reprehensibility.").

The cases State Farm cites for its contention that unnamed class members are not "parties" to the lawsuit have nothing to do with the relevant question of whether punitive damages can be assessed relative to the defendant's conduct as it affected represented class members. *See Holmes v. Cont'l Can Co.*, 706 F.2d 1144 (11th Cir. 1983); *Durrett v. John Deere Co.*, 150 F.R.D. 555 (N.D. Tex. 1993) (both discussing the requirements of Rule 23(b)(3), not whether punitive damages could be assessed class-wide). And the lone case State Farm cites that actually does address this issue is inapposite. In *Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128 (2d Cir. 2015), the court held it was improper to allocate punitive damages to the class from the actual damages of only the named plaintiff. *Id.* at 149. But the jury will not be asked to award punitive damages to the Class in reliance only on damages awarded to the named Plaintiff. Instead, any punitive damages award would stem from actual damages awarded to the Class.

Accordingly, State Farm's motion for summary judgment relating to Plaintiff's request for punitive damages should be denied, and the issue of punitive damages should be submitted to the jury.

## CONCLUSION

For the foregoing reasons, this Court should deny State Farm's motion for summary judgment against the Class and enter partial summary judgment against State Farm and in favor of the Class as requested in Plaintiff's motion for partial summary judgment.

Dated: March 8, 2021        **GIRARD SHARP LLP**

By: /s/ *Daniel C. Girard*
    Daniel C. Girard (State Bar No. 114826)
    dgirard@girardsharp.com
    Jordan Elias (State Bar No. 228731)
    jelias@girardsharp.com
    601 California Street, Suite 1400
    San Francisco, California 94108
    Tel:    415-981-4800
    Fax:   415-981-4846

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Norman E. Siegel (admitted *pro hac vice*)
siegel@stuevesiegel.com
Lindsay Todd Perkins (admitted *pro hac vice*)
perkins@stuevesiegel.com
Ethan M. Lange (admitted *pro hac vice*)
lange@stuevesiegel.com
**STUEVE SIEGEL HANSON LLP**
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Tel: 816-714-7100
Fax: 816-714-7101

John J. Schirger (admitted *pro hac vice*)
jschirger@millerschirger.com
Matthew W. Lytle (admitted *pro hac vice*)
mlytle@millerschirger.com
Joseph M. Feierabend (admitted *pro hac vice*)
jfeierabend@millerschirger.com
**MILLER SCHIRGER, LLC**
4520 Main Street, Suite 1570
Kansas City, Missouri 64111
Tel: 816-561-6500
Fax: 816-561-6501

*Attorneys for Plaintiff Elizabeth A. Bally*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I hereby certify that on March 8, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notice of such filing to all registered users.

*/s/ Daniel C. Girard*
Daniel C. Girard