**GIRARD SHARP LLP**
Daniel C. Girard (State Bar No. 114826)
dgirard@girardsharp.com
Jordan Elias (State Bar No. 228731)
jelias@girardsharp.com
601 California Street, Suite 1400
San Francisco, California 94108
Tel:    415-981-4800
Fax:    415-981-4846

[Additional counsel appear on signature page]

*Attorneys for Plaintiff Elizabeth A. Bally*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| ELIZABETH A. BALLY, Individually and On Behalf Of All Others Similarly Situated,<br><br>　　　　　Plaintiff,<br><br>　vs.<br><br>STATE FARM LIFE INSURANCE COMPANY,<br><br>　　　　　Defendant. | Case No.: 3:18-cv-04954-CRB<br><br>*Assigned to the Hon. Charles R. Breyer*<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO STATE FARM'S MOTION TO EXCLUDE DECLARATION AND TESTIMONY OF SCOTT J. WITT**<br><br>Date:　　　　April 22, 2021<br>Time:　　　　10:00 a.m.<br>Courtroom:　　6<br>Judge:　　　Hon. Charles R. Breyer |

### REDACTED - FILED UNDER SEAL

1

**TABLE OF CONTENTS**

2   INTRODUCTION AND SUMMARY OF ARGUMENT ........................................................ 1

3   RELEVANT BACKGROUND ............................................................................................ 2

4      A.   Plaintiff's Claims.................................................................................................... 2

5      B.   Facts of the Case. .................................................................................................. 3

6      C.   Plaintiff's Expert. .................................................................................................. 4

7      D.   Mr. Witt's Opinions. ............................................................................................. 4

8      E.   Mr. Witt's Involvement in *Vogt* and Prior Testimony on Form 94030................ 5

9   LEGAL STANDARD.......................................................................................................... 6

10  ARGUMENT ...................................................................................................................... 7

11     A.   Mr. Witt's Methodology Fits Plaintiff's Theory of Liability.................................. 8

12        1.  Mr. Witt Appropriately Uses State Farm's Pricing Mortality Rates to Identify Non-

13            Mortality Loads in COI Rates. .................................................................... 8

14        2.  Mr. Witt's Methodology Accounts for Tobacco Usage Consistent with the Factual Record

15            and Prior Judicial Findings. ...................................................................... 10

16        3.  Mr. Witt's Methodology Accounts for Policy Year Consistent with the Factual Record and

17            Prior Judicial Findings. ............................................................................. 12

18        4.  Instances of Unloaded COI Rates Are Not Evidence of "Ill Fit." ..................... 14

19     B.   Mr. Witt's Methodology is Reliable. .................................................................. 15

20        1.  Mr. Witt's Methodology Meets Objective Criteria of Reliability. .................... 15

21        2.  Mr. Witt Applied His Experience and Expertise to the Facts of This Case....... 18

22        3.  Mr. Witt's Methodology Is Not Speculative..................................................... 20

23        4.  Mr. Witt's Assumptions Were Determined in Accordance with Undisputed Facts in the

24            Record. .................................................................................................... 22

25     C.   Mr. Witt Is Qualified to Present His Class-wide Calculation of Lost Account Values on a Life

26        Insurance Policy. ................................................................................................ 23

27     D.   Mr. Witt Is Qualified to Render Opinions on Industry Practice. ............................ 26

28

i

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

E.      The Probative Value of Mr. Witt's Testimony Is Not Substantially Outweighed By Any

Unfair Prejudice to State Farm. ................................................................................................... 27

PLAINTIFF'S OPPOSITION TO STATE FARM'S
MOTION TO EXCLUDE DECLARATION AND TESTIMONY OF SCOTT J. WITT
Case No. 3:18-cv-04954-CRB

1

**TABLE OF AUTHORITIES**

2

<u>Cases</u>

3

*Abaxis, Inc. v. Cepheid*,
   No. 10-CV-02840-LHK, 2012 WL 2979019 (N.D. Cal. July 19, 2012)..........................26

4

*Alaska Rent-A-Car, Inc. v. Avis Budget Group, Inc.*,
   738 F.3d 960 (9th Cir. 2013) ..........................................................................16, 20

5

6

*Bixby v. KBR, Inc.*,
   No. 3:09-CV-632-PK, 2012 WL 12952722 (D. Or. Aug. 29, 2012)................................23

7

*Coughlin v. Blair*,
   262 P.2d 305 (Cal. 1953) ............................................................................................20

8

9

*Daubert v. Merrell Dow Pharms., Inc.*,
   509 U.S. 579 (1993).........................................................................................6, 7

10

*David E. Watson, P.C. v. United States*,
   668 F.3d 1008 (8th Cir. 2012) ....................................................................................6

11

12

*DSU Med. Corp. v. JMS Co., Ltd.*,
   296 F. Supp. 2d 1140 (N.D. Cal. 2003) ....................................................................20

13

*Dura Automotive Sys. v. CTS Corp.*,
   285 F.3d 609 (7th Cir. 2002) ....................................................................................25

14

*Emblaze Ltd. v. Apple Inc.*,
   52 F. Supp. 3d 949 (N.D. Cal. 2014) ........................................................................7

15

16

*Estate of Barabin v. AstenJohnson, Inc.*,
   740 F.3d 457 (9th Cir. 2014) ....................................................................................16

17

*Hangarter v. Provident Life & Accident Ins. Co.*,
   373 F.3d 998 (9th Cir. 2004) ....................................................................................23

18

19

*Hemmings v. Tidyman's Inc.*,
   285 F.3d 1174 (9th Cir. 2002) ....................................................................................7

20

*Hopkins v. Dow Corning Corp.*,
   33 F.3d 1116 (9th Cir. 1994) ....................................................................................6

21

22

*In re Bextra & Celebrex Mktg. Sales Practices & Prod. Liab. Litig.*,
   524 F. Supp. 2d 1166 (N.D. Cal. 2007) ....................................................................7

23

24

*In re High-Tech Emp. Antitrust Litig.*,
   No. 11-CV-02509-LHK, 2014 WL 1351040 (N.D. Cal. Apr. 4, 2014) ........................7

25

*In re Silicone Gel Breasts Implants Prods. Liab. Litig.*,
   318 F. Supp. 2d 879 (C.D. Cal. 2004) ....................................................................27

26

*Kennedy v. Collagen Corp.*,
   161 F.3d 1226 (9th Cir. 1998) ....................................................................................7

27

28

PLAINTIFF'S OPPOSITION TO STATE FARM'S
MOTION TO EXCLUDE DECLARATION AND TESTIMONY OF SCOTT J. WITT
Case No. 3:18-cv-04954-CRB

*LifeWise Mstr. Funding v. Telebank*,
    374 F.3d 917 (10th Cir. 2004) ...................................................................................24

*Longest v. Green Tree Servicing LLC*,
    308 F.R.D. 310 (C.D. Cal. 2015) ...............................................................................24

*Murray v. S. Route Mar. SA*,
    870 F.3d 915 (9th Cir. 2017) ................................................................................15, 16

*MyFord Touch Consumer Litig.*,
    291 F. Supp. 3d 936 (N.D. Cal. 2018) ......................................................................24

*Otis v. Doctor's Assoc, Inc.*,
    1998 WL 673595 (N.D. Ill. Sept. 14, 1998) ..............................................................20

*PixArt Imaging, Inc. v. Avago Tech. Gen. IP (Singapore) Pte. Ltd.*,
    No. C 10–00544 JW, 2011 WL 5417090 (N. D. Cal. Oct. 27, 2011)..........................23

*Primiano v. Cook*,
    598 F.3d 558 (9th Cir. 2010) ...............................................................................7, 16

*San Diego Comic Conv. v. Dan Farr Prods.*, No. 14-cv-1865,
    2017 WL 4227000 (S.D. Cal. Sept. 22, 2017)............................................................27

*Scott v. Ross*,
    140 F.3d 1275 (9th Cir. 1998) ...................................................................................26

*Southland Sod Farms v. Stover Seed Co.*,
    108 F.3d 1134 (9th Cir. 1997) ...................................................................................25

*Sullivan v. Costco Wholesale Corp.*,
    No. 1:17CV-00959-LJO-EPG, 2018 WL 4057447 (E.D. Cal. Aug. 23, 2018)............23

*Thomas v. Newton Int'l Enters.*,
    42 F.3d 1266 (9th Cir. 1994) .....................................................................................23

*United States v. Flores*,
    901 F.3d 1150 (9th Cir. 2018) ......................................................................................6

*United States v. Garcia*,
    7 F.3d 885 (9th Cir. 1993) .........................................................................................23

*United States v. Hankey*,
    203 F.3d 1160 (9th Cir. 2000) ..............................................................................27, 28

*United States v. Valencia-Lopez*,
    971 F.3d 891 (9th Cir. 2020) .....................................................................................16

*Victorino v. FCA US LLC*,
    No. 16CV-1617-GPC(JLB), 2018 WL 2551312 (S.D. Cal. June 4, 2018) .................23

*Vogt v. State Farm Life Insurance Co.*, 963 F.3d 753 (8th Cir. 2020) .......................... passim

*Vogt v. State Farm Life Insurance Co.*,
    No. 2:16-cv-04170-NKL, 2018 WL 1747336 ......................................................13, 14

iv

PLAINTIFF'S OPPOSITION TO STATE FARM'S
MOTION TO EXCLUDE DECLARATION AND TESTIMONY OF SCOTT J. WITT
Case No. 3:18-cv-04954-CRB

*Vogt v. State Farm Life Insurance Co.*,
  No. 2:16-cv-04170-NKL, 2018 WL 4937330 ..................................................5, 10, 14, 17

*Vogt v. State Farm Life Insurance Co.*,
  No. 2:16-cv-04170-NKL, 2018 WL 4937069 (W.D. Mo. Oct. 11, 2018)......................5, 13

*Wolkowitz v. Lerner*,
  2008 WL 1885770 (C.D. Cal., Apr. 21, 2008) ..........................................................25, 26

<u>Rules</u>

Fed. R. Evid. 702 ........................................................................................... 6, 15, 17, 23

PLAINTIFF'S OPPOSITION TO STATE FARM'S
MOTION TO EXCLUDE DECLARATION AND TESTIMONY OF SCOTT J. WITT
Case No. 3:18-cv-04954-CRB

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**INTRODUCTION AND SUMMARY OF ARGUMENT**

Plaintiff Elizabeth A. Bally contends Defendant State Farm Life Insurance Company breached its "Form 94030" life insurance policies with California policy owners by assessing monthly charges exceeding those expressly authorized. The language of Form 94030 (the "Policy") authorizes State Farm to determine "Cost of Insurance Rates" ("COI rates") "for each policy year based on the Insured's age on the policy anniversary, sex, and applicable rate class" and those COI rates may only "be adjusted for projected changes in mortality." The basis for State Farm's liability to the California Class is straightforward: the Policy permits State Farm to use the identified mortality factors to determine its COI rates, but it does not permit State Farm to use other factors to inflate those rates.

State Farm did not honor its contractual promises. Instead, while State Farm first developed internal rates using the Policy-identified mortality factors (known as the "pricing mortality"), it then added unauthorized loads into the actual COI rates it used to calculate the "Cost of Insurance Charges" ("COI charges") deducted from each Policy owner's "Account Value" each month. Consistent with Plaintiff's theory of liability, her actuarial expert, Scott J. Witt, provided a methodology for calculating class-wide damages by removing the unauthorized loads included in the COI rates for each class member. Applying accepted actuarial methods and relying on State Farm's pricing documents for the Policy and the testimony of its own employee-witnesses, Mr. Witt identified the existence of non-mortality loads through the simple task of comparing State Farm's internal pricing mortality rates for Form 94030 (determined using the Policy-identified factors) with the loaded COI rates State Farm actually used. Keeping all other past policy activity as it actually occurred, Mr. Witt's methodology calculated the loss in Account Values that resulted from State Farm's use of those unauthorized loads.

In moving to exclude Mr. Witt's declaration and testimony, State Farm offers no real challenge to his methodology for recalculating policy Account Values using State Farm's transactional data and unloaded COI rates. Instead, State Farm primarily complains that Mr. Witt improperly used State Farm's own internal pricing mortality rates as the benchmark to identify unauthorized loads. These internal pricing mortality rates are indisputably differentiated by policy year but not by tobacco status. Yet State Farm claims Mr. Witt should have taken extra steps that State Farm itself never did, namely blending the policy years and un-blending tobacco status from the pricing mortality tables to create *new* tables of

1

unloaded rates. But this exercise would require Plaintiff's expert to ignore how State Farm actually used the Policy-identified factors to develop its pricing mortality rates and would further require adopting a dubious interpretation of the Policy that no court considering this COI language has accepted.

There is no basis to exclude Mr. Witt's expert opinions on this record. At most, State Farm's *Daubert* challenges go to the weight of his testimony, rather than the admissibility. State Farm's criticisms are also largely recycled from its motion to strike Mr. Witt's expert opinions at class certification. There, while the Court recognized recent Ninth Circuit case law indicated that striking expert testimony at the class certification stage is improper, it nevertheless considered State Farm's attacks of Mr. Witt's qualifications and actuarial judgment, and the fit and reliability of his model, and found those arguments "unconvincing." Dkt. 122 (order on motion to strike Mr. Witt and motion for class certification) at 1-13. And these are the very criticisms State Farm unsuccessfully levied against Mr. Witt in *Vogt v. State Farm Life Insurance Company*, No. 2:16-cv-04170-NKL in the Western District of Missouri ("*Vogt*"). State Farm's erroneous arguments were rejected before and should again be rejected now.

**RELEVANT BACKGROUND**

**A.  Plaintiff's Claims.**

The Policy at issue in this case is a universal life insurance policy providing both a death benefit and an investment or savings component called the "Account Value." Dkt. 205-2 ("Witt Trial Dec.") at ¶ 17. The calculation of the Account Value each month is formulaic and detailed in the terms of the Policy. *Id.* at ¶¶ 22, 52. Generally speaking, net premiums are deposited in the Account Value (after State Farm deducts a 5% premium charge off the top); the Account Value then accumulates Policy-provided interest and is subject to a Monthly Deduction comprised of a COI charge and a separate monthly expense charge fixed at $5.00. *Id.* at ¶¶ 22-28, 52. The monthly COI charges are calculated using COI rates that the Policy promises "for each policy year are based on the Insured's age on the policy anniversary, sex, and applicable rate class," and "[s]uch rates can be adjusted for projected changes in mortality." *Id.* at ¶ 27.

Plaintiff's claims are straightforward. She alleges State Farm breached the Policy by failing to determine COI rates using only the listed factors, and instead, inflated the COI charges deducted from

2

class members' Account Values by adding undisclosed loads unrelated to the listed factors in its COI rates. *See, e.g.*, Dkt. 1 at ¶¶ 24-42; Dkt. 142 at 8. These inflated rates and overcharges have resulted in lost Account Values to class members. *See, e.g.*, Dkt. 142 at 2.

### B. Facts of the Case.

There is no dispute that the factors identified in the Policy's COI rates provision—policy year, age, sex, and rate class—are commonly recognized in the life insurance context as "mortality factors" associated with assessing the mortality risk or expectation of insureds. *See* Dkt. 205-2 (Witt Trial Dec.), ¶¶ 30, 32, Ex. E (Streily Dep.), 64:14-65:4, 155:19-157:20, 159:14-160:20, 196:6-197:23, Ex. F (Phipps Dep.), 24:24-25:14. State Farm can, and did, develop rates using only the listed factors when it priced the Policy; they are known as the "pricing mortality" rates for the Policy. *See* Dkt. 205-2 (Witt Trial Dec.), ¶¶ 10, 30-36, Ex. E (Streily Dec.), 87:19-88:7, 149:7-152:2, 160:15-20, Ex. I (Holzbauer Dec.), 73:24-77:13, 89:18-93:10, 145:15-19, Ex. G (New Jersey Actuarial Memorandum for Form 94030), p. 5, Ex. H (South Carolina Actuarial Memorandum for Form 94030), p. 7, Ex. K (memorandum regarding 2002 "Change in Current Monthly Cost of Insurance Rates" for Form 94030); Dkt. 67-4 (*Vogt* summary judgment denial) at 10. After developing these pricing mortality rates using the listed factors, State Farm added undisclosed loads comprised of unlisted profit and expense factors unrelated to the identified mortality factors. Dkt. 63-3 (State Farm Amended Interrog. Answers at 24-25); *see also* Dkt. 63 (State Farm's Mem. in Supp. of Summary Judgment) at 7-8; Dkt. 205-2 (Witt Trial Dec.), ¶¶ 41-47, Ex. G (New Jersey Actuarial Memorandum), p. 5, Ex. H (South Carolina Actuarial Memorandum), p. 7, Ex. E (Streily Tr.), 144:20-24; 224:6-18 (admitting that "pricing mortality … was used to determine a cost of insurance rate, and that the cost of insurance rate was then loaded for expenses and profit," and that "expenses and profit" are not considered "to be mortality related"). All policy owners are subject to State Farm's uniform administration and determination of the same set of COI rates. *See* Dkt. 205-2 (Witt Trial Dec.), ¶ 33, Ex. E (Streily Tr.), 140:3-145:10, 146:17-147:5, 171:21-172:11, Ex. I (Holzbauer Tr.), 65:6-24; Dkt. 108-3 (Weinsier Dec.), ¶ 56 ("The New Jersey Actuarial Memorandum…describes State Farm's pricing approach. The pricing approach described in the New Jersey Actuarial Memorandum is the <u>same</u> approach used for any state, i.e., State Farm used a single approach to pricing, regardless of where a policy was sold.") (emphasis in original).

3

PLAINTIFF'S OPPOSITION TO STATE FARM'S
MOTION TO EXCLUDE DECLARATION AND TESTIMONY OF SCOTT J. WITT
Case No. 3:18-cv-04954-CRB

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**C.  Plaintiff's Expert.**

In support of her claims for relief, Plaintiff identifies Scott J. Witt as an actuarial expert. Mr. Witt is trained as an actuary. He maintains designations as a Fellow of the Society of Actuaries and a Member of the American Academy of Actuaries. He has degrees in statistics, mathematics, and computer science. He also has more than twenty-five years of experience as a life insurance actuary through which he has acquired comprehensive knowledge, experience, and expertise in many aspects of actuarial science and life insurance. His experience includes ten years at a large life insurance company and more than fifteen years as a fee-only insurance advisor. Through his work in those roles he has gained significant expertise in many aspects of life insurance, including the evaluation and analysis of mortality experience and risk; development of mortality rates; modeling performance of life insurance under changing policy scenarios, assumptions, and features; pricing and repricing of life insurance products; and the deconstruction, or reverse-engineering, of thousands of life insurance policies, including, in particular, components of policy account values and their underlying rates and charges.  Dkt. 205-2 (Witt Trial Dec.) at ¶¶ 2-7.

**D.  Mr. Witt's Opinions.**

Mr. Witt's opinions are directed at State Farm's pricing and determination of COI rates for Form 94030 and include identification and application of a methodology for calculation of lost Account Values resulting from State Farm's alleged wrongful conduct. *Id*. at ¶¶ 22-29, 52-56. His methodology involves mechanical application of the formula for calculation of Account Values as set forth by the terms of the Policy. *Id*. His opinions include confirmation of State Farm's pricing information, rate tables, and policyholder data necessary to employ his methodology. *See generally id.* He analyzed State Farm's documents and testimony and confirmed that it used the factors set forth in the COI rates provision of the Policy to determine the mortality rates used in pricing and repricing the COI rates for the Policy. *Id*. at ¶¶ 30-36. He further confirmed that State Farm loaded amounts in excess of those pricing mortality rates into its COI rates. *Id*. at ¶¶ 41-45. He then proposed and carried out the methodology for identifying the non-mortality loads added into COI rates, and calculated lost Account Values for every class member resulting from State Farm's unauthorized loading. *Id*. at ¶¶ 46-59. In simple terms, Mr. Witt's methodology keeps each policy owner's past policy activity unchanged and identifies for each class

4

member the loss in Account Value resulting from a recalculation of Account Values where the non-mortality loads included in COI rates have been removed. *Id.* at ¶ 51. His methodology identifies, line-by-line, the loss in Account Value to each class member that resulted from the inclusion of the undisclosed loads. *Id.* at ¶ 59; Ex. M.

### E.  Mr. Witt's Involvement in *Vogt* and Prior Testimony on Form 94030.

As the Court is aware, this is not the first time a class plaintiff has offered Mr. Witt as an expert in challenging State Farm's determination of COI rates for the Form 94030 policy. Mr. Witt also served as an expert on behalf of the plaintiff class in *Vogt*, where he offered the same opinions on State Farm's pricing and determination of COI rates for Form 94030 and presented to the jury his methodology for calculation of lost Account Values. *See, e.g.*, *id.* at ¶¶ 6, 11-13. He offered those opinions in *Vogt* through expert reports, three depositions, and trial testimony. Dkt. 182-1 ("Feierabend Dec.") at ¶¶ 2-7. At trial State Farm challenged Mr. Witt's opinions by robust cross-examination and through its own experts, including trial testimony from Dr. Ann Gron (an economist), David Weinsier (an actuary), and Alan Hendren (a State Farm employee-actuary and its corporate representative at trial). *Vogt*, Dkt. 362-365 (trial transcript).

Over State Farm's challenges, the jury awarded the Missouri class of Form 94030 policy owners in excess of $34 million in lost Account Value. *Id.*, Dkt. 360 (clerk's judgment). State Farm filed post-trial motions to decertify the class and for judgment as a matter of law and for a new trial. *Id.*, Dkt. 347, 373-374. Among its challenges in those motions, State Farm asserted that Mr. Witt failed "to prove non-speculative damages," "ignored important factors critical to the stated goal of unbundling profits and expenses from the monthly [COI] rates," and presented a methodology that was "fundamentally flawed" where it produced "higher" COI rates for some policy owners in certain instances. *Id.*, Dkt. 374 at 5. The district court denied State Farm's motions (*id.*, 2018 WL 4937330 (W.D. Mo. Oct. 11, 2018); 2018 WL 4937069 (Oct. 11, 2018)), and the Eighth Circuit subsequently affirmed the findings[1] of the district court and jury, including those concerning the opinions of Mr. Witt (*id.*, 963 F.3d 753 (8th Cir. 2020)).

---

[1] The Eighth Circuit reversed and remanded with respect to plaintiff Vogt's cross-appeal for application of pre-judgment interest. *Vogt*, 963 F.3d at 775-777.

1    At the outset of this case, the Court ordered that "applicable discovery and testimony obtained in

2  *Vogt v. State Farm Life Insurance Company* … may be used in this litigation." Dkt. 59. Thus, Mr. Witt's

3  prior reports and testimony as offered in *Vogt* were introduced in this case, including his proposed

4  methodology for calculating lost Account Values. On November 15, 2019, Plaintiff moved to certify a

5  class of California Form 94030 policy owners. Dkt. 93. With that motion, Plaintiff submitted for the

6  Court's consideration a declaration and report from Mr. Witt detailing State Farm's pricing of COI rates

7  for Form 94030 and proposing a damages methodology consistent with his approved methodology in

8  *Vogt*. Dkt. 93-2. State Farm opposed Plaintiff's motion and moved to strike Mr. Witt's opinions. Dkt.

9  108, 110. According to State Farm, Mr. Witt failed to adhere to rules of professional conduct governing

10  actuaries, sacrificed his own independence and professional judgment, and offered an unreliable

11  methodology that improperly incorporated "unpooled" and "tobacco-blended" mortality rates

12  inconsistent with Plaintiff's theory. Dkt. 110 at 7, 12-22. But the Court found that State Farm's arguments

13  did "not meaningfully undercut the reliability of Witt's model," and denied State Farm's motion to strike.

14  Dkt. 122 at 6-13. *See also Vogt*, 963 F.3d at 769-70 (rejecting same arguments).

## LEGAL STANDARD

16    The main purpose of *Daubert* exclusion is "to protect juries from being swayed by dubious

17  scientific testimony." *United States v. Flores*, 901 F.3d 1150, 1165 (9th Cir. 2018) (quoting *David E.*

18  *Watson, P.C. v. United States*, 668 F.3d 1008, 1015 (8th Cir. 2012) (emphasis removed)). A witness may

19  testify as an expert by knowledge, skill, experience, training, or education if his scientific, technical, or

20  other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact

21  in issue. *See* Fed. R. Evid. 702 (requiring that testimony be "based on sufficient facts or data" and be "the

22  product of reliable principles and methods," and that the expert "reliably appl[y] those principles and

23  methods to the facts of the case."). Rule 702 was intended to "relax[] the traditional barriers to opinion

24  testimony." *Hopkins v. Dow Corning Corp.*, 33 F.3d 1116, 1124 (9th Cir. 1994) (internal quotations

25  omitted) (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 588 (1993)). As such, "rejection

26  of expert testimony is the exception rather than the rule." Fed. R. Evid. 702 advisory committee notes

27  (2000).

28

1    "Only if the expert's opinion is so fundamentally unsupported that it can offer no assistance to
2    the jury must such testimony be excluded." *In re High-Tech Emp. Antitrust Litig.*, No. 11-CV-02509-
3    LHK, 2014 WL 1351040, at *22 (N.D. Cal. Apr. 4, 2014) (citation omitted). As this Court held,
4    "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden
5    of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *In re*
6    *Bextra & Celebrex Mktg. Sales Practices & Prod. Liab. Litig.*, 524 F. Supp. 2d 1166, 1183 (N.D. Cal.
7    2007) (quoting *Daubert*, 509 U.S. at 596). Thus, "[d]isputes as to the strength of an expert's credentials,
8    faults in his use of a particular methodology, or lack of textual authority for his opinion, go to the weight,
9    not the admissibility, of his testimony." *Kennedy v. Collagen Corp.*, 161 F.3d 1226, 1231 (9th Cir. 1998)
10   (citation and alterations omitted); *see also Hemmings v. Tidyman's Inc.*, 285 F.3d 1174, 1188 (9th Cir.
11   2002) (recognizing general rule that "objections to the inadequacies of a study are more appropriately
12   considered an objection going to the weight of the evidence rather than its admissibility.").

13          Hence, the district court "must be cautious not to overstep its gatekeeping role and weigh facts,
14   evaluate the correctness of conclusions, impose its own preferred methodology, or judge credibility,
15   including the credibility of one expert over another. These tasks are solely reserved for the fact finder."
16   *Emblaze Ltd. v. Apple Inc.*, 52 F. Supp. 3d 949, 954 (N.D. Cal. 2014). "Expert opinion testimony is
17   relevant if the knowledge underlying it has a valid connection to the pertinent inquiry. And it is reliable
18   if the knowledge underlying it has a reliable basis in the knowledge and experience of the relevant
19   discipline." *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010).

20                                            **ARGUMENT**

21          There can be no doubt that Mr. Witt is well-qualified and offers opinions and analysis supported
22   by his specialized knowledge and experience as a life insurance actuary. This has been demonstrated time
23   and again as State Farm has repeatedly challenged Mr. Witt's opinions in defense of claims on its Form
24   94030 policy. State Farm's failure to undermine his testimony is not from lack of effort. It has deposed
25   Mr. Witt six times and cross-examined him at trial. It has offered numerous experts to rebut his opinions
26   and challenged those opinions in federal district court and on appeal. State Farm's challenges to Mr. Witt
27   have consistently been rejected, and its renewed efforts to exclude Mr. Witt from testifying about the
28   class members' loss of Account Value in this case should again be rejected.

### A.  Mr. Witt's Methodology Fits Plaintiff's Theory of Liability.

State Farm contends there is a "fundamental disconnect" between Plaintiff's theory of liability and Mr. Witt's damages methodology because Mr. Witt uses State Farm's undisputed pricing mortality rates to identify the unauthorized load in each COI rate. State Farm argues Mr. Witt fails to isolate the effects of the breach asserted by Plaintiff because he uses pricing mortality rates that are "unpooled" (*i.e.*, account for policy year or duration) and "tobacco-blended." This argument is factually unsupported and rests on State Farm's flawed interpretation of the Policy language. Judge Laughrey rejected these arguments in *Vogt*, as did the Eighth Circuit Court of Appeals. Similarly in this case, the Court was not persuaded by the same arguments when it denied State Farm's motion to strike Mr. Witt's opinions at class certification. State Farm's *Daubert* challenge should again be rejected, as it mischaracterizes the straightforward theory of liability and departs from the undisputed factual record.

### 1.  Mr. Witt Appropriately Uses State Farm's Pricing Mortality Rates to Identify Non-Mortality Loads in COI Rates.

State Farm first argues that Mr. Witt improperly focuses his analysis on "mortality expectations" rather than the factors listed in the COI rates provision of the Policy. In other words, State Farm alleges its internal, projected mortality rates used in pricing the Policy do not comport with the Policy-identified factors and thus should not be used to identify the unauthorized loads. The flaws in this argument are two-fold: first, State Farm brazenly misstates Plaintiff's theory of liability and interpretation of the Policy, and second, it again dismisses the factual record of the case, including the clear testimony of State Farm's own employees and witnesses (testimony State Farm fails to acknowledge outside of the declaration offered by Mr. Hendren for purposes of this litigation). Thus, the challenges raised by State Farm again, "as a whole, miscast the evidence presented" (*Vogt*, 963 F.3d at 770) and in doing so "ask[] the Court to adopt an unreasonable interpretation" of evidence and testimony (Dkt. 122 at 8-9).

As to the first point, the relevant Policy language permits State Farm to determine COI rates "for each policy year based on the Insured's age on the policy anniversary, sex, and applicable rate class" and those COI rates may only "be adjusted for projected changes in mortality." Dkt. 205-2 (Witt Trial Dec.) at ¶ 27. Plaintiff alleges this provision authorizes State Farm "to determine Monthly Cost of Insurance Rates for each policy year using only the Insured's age, sex, applicable rate class, and projected changes in mortality." Dkt. 1 at ¶ 31. Plaintiff alleges the specified factors—policy year, age, sex, and rate class—

8

PLAINTIFF'S OPPOSITION TO STATE FARM'S
MOTION TO EXCLUDE DECLARATION AND TESTIMONY OF SCOTT J. WITT
Case No. 3:18-cv-04954-CRB

are factors commonly used "*to determine the mortality expectations*" of insureds; therefore, Plaintiff alleges "the parties agreed that mortality expectations determine" the COI rates "as confirmed by the additional provision that 'such rates can be adjusted for projected changes in mortality.'" *Id.* at ¶¶ 32-33 (emphasis added). Mr. Witt's testimony that those factors may not *equal* a mortality rate, but instead are *used to determine* a mortality rate (Dkt. 205-2 (Witt Trial Dec.) at ¶¶ 30-40), is fully consistent with Plaintiff's theory. *Vogt*, 963 F.3d at 761 ("These enumerated factors are so-called 'mortality factors' because they relate to a policyholder's mortality risk, which allows the insurer to determine the projected mortality estimate of a policyholder based on his specific circumstances."). Plaintiff thus maintains that where State Farm first determined a rate using the stated factors, but then added loads into those rates for other factors unrelated to those listed in the Policy, State Farm breached its terms.

On the second point, after mischaracterizing Plaintiff's theory to fit its defense narrative, State Farm tries to upend the factual record of the case. But State Farm cannot credibly criticize Mr. Witt for simply relying on State Farm's pricing documents and the testimony of its own employees about the process it engaged in to determine COI rates. Those employee-witnesses agreed with Plaintiff and Mr. Witt that the Policy-enumerated factors of policy year, age, sex, and rate class are commonly understood as "mortality factors" used to determine the expected mortality risk of insureds. *See* Dkt. 205-2 (Witt Trial Dec.), ¶¶ 30, 32, Ex. E (Streily Dep.), 64:14-65:4, 155:19-157:20, 159:14-160:20, 196:6-197:23, Ex. F (Phipps Dep.), 24:24-25:14. These employee-witnesses further admitted that, in connection with Form 94030, the expected mortality rates determined using the mortality factors enumerated in the Policy were the mortality rates it "embedded into the pricing or repricing of" the Form 94030. *See* Dkt. 205-2 (Witt Trial Dec.), ¶¶ 10, 30-36, Ex. E (Streily Dec.), 87:19-88:7, 149:7-152:2, 160:15-20, Ex. I (Holzbauer Dec.), 73:24-77:13, 89:18-93:10, 145:15-19, Ex. G (New Jersey Actuarial Memorandum for Form 94030), p. 5, Ex. H (South Carolina Actuarial Memorandum for Form 94030), p. 7, Ex. K (memorandum regarding 2002 "Change in Current Monthly Cost of Insurance Rates" for Form 94030); Dkt. 67-4 (*Vogt* summary judgment denial) at 10.

Relying on that testimony, Mr. Witt used State Farm's pricing mortality rates reflected in the actuarial memoranda and asset share workbooks for Form 94030 as State Farm's quantification of rates determined using the listed mortality factors. Dkt. 205-2 (Witt Trial Dec), ¶¶ 10, 30-36. Mr. Witt also

9

relied on representations and confirmation from State Farm's witnesses that its development of COI rates did not stop with its determination of the pricing mortality rates; instead, those rates were also "loaded for expense and profit margins" that were not related to the mortality factors identified in the Policy. Dkt. 63-3, (State Farm Amended Interrog. Answers at 24-25); *see also* Dkt. 63 (State Farm's Mem. in Supp. of Summary Judgment) at 7-8; Dkt. 205-2 (Witt Trial Dec.), ¶¶ 41-47, Ex. G (New Jersey Actuarial Memorandum), p. 5, Ex. H (South Carolina Actuarial Memorandum), p. 7, Ex. E (Streily Tr.), 144:20-24; 224:6-18 (admitting that "pricing mortality … was used to determine a cost of insurance rate, and that the cost of insurance rate was then loaded for expenses and profit," and that "expenses and profit" are not considered "to be mortality related").

Accordingly, where State Farm confirmed "time and time again" its determination of pricing mortality rates using the listed factors, Mr. Witt testified his "hands were tied" and it was essential that he follow the same process. Ex. 1, Transcript of Feb. 12, 2021 Deposition of Scott Witt ("Witt Tr.") at 145:1-146:22. In other words, any departure from the testimony of State Farm's witnesses would require Mr. Witt to substitute his own judgment for what State Farm actually did in setting COI rates. Because his damages methodology applies the pricing mortality rates confirmed by State Farm's witnesses and recalculates Account Values under a Policy-provided formula, the resulting damages calculation is not only *a* reasonable fit for measuring harm under Plaintiff's theory, but, as the Eighth Circuit recognized, this methodology "provide[s] *the most* reasonable basis for measuring harm that was incurred during the life of the policyholders." *Vogt*, 963 F.3d at 770 (emphasis added).

### 2. Mr. Witt's Methodology Accounts for Tobacco Usage Consistent with the Factual Record and Prior Judicial Findings.

State Farm's renewed argument that Mr. Witt should have created tobacco-distinct pricing mortality rates falls flat, as it again disregards the facts and rests on mischaracterization of Plaintiff's theory. This Court previously addressed whether State Farm's pricing mortality rates were "tobacco-distinct" or "tobacco-blended," and rightly recognized that "State Farm raised an identical argument regarding Form 94030" in *Vogt* where it was determined that "the State-Farm-produced mortality rates that Witt used '*undisputedly did not* distinguish between tobacco users and those who did not use tobacco.'" Dkt. 122 at 10 (quoting *Vogt*, 2018 WL 4937330, at *5 (emphasis added)). Even the declaration of State Farm employee Alan Hendren offered in support of State Farm's opposition to

Plaintiff's motion for summary judgment admits that the *mortality* rates for the Policy were, in fact, tobacco-blended. Dkt. 161 at ¶ 33.

Still, State Farm takes its argument one step further, implying that, even if the pricing mortality rates were tobacco-blended as a matter of fact, Mr. Witt was required to develop his own set of tobacco-distinct pricing mortality rates for purposes of calculating damages. Of course, this would have required Mr. Witt to disregard the undisputed facts establishing State Farm's use of tobacco-blended pricing mortality to set rates. Nevertheless, the Court also has already determined that the plain terms of the Policy do not require tobacco-distinct rates: "Just as in *Vogt*, the blended rates that Witt used *reflect the terms of Form 94030*, and his use of those rates comports with plaintiff's damages theory of COI charges beyond the terms of the Policy." Dkt. 122 at 10 (emphasis added). This conclusion is consistent with the Eighth Circuit's identical finding on this issue. *Vogt*, 963 F.3d. at 769 (stating that Mr. Witt did not "differentiate between tobacco and non-tobacco users, [but] there was no need for the damages models to take this mortality factor into account as this was not a mortality factor listed in the policy").

State Farm contests the Court's conclusion by repeating its argument that the reference to "applicable rate class" in the COI rates provision necessarily implies tobacco-distinct rates. Dkt. 170 at 2. This argument lacks support in the Policy, which defines "rate class" without regard to tobacco usage as "[t]he underwriting class of the person insured." Dkt. 93-4 (Policy) at 5. An insured's rate class can either be designated as "standard," as Ms. Bally's was (*id.* at 3-4), or alternatively, insureds may be designated "for rate classes other than standard" due to underlying health conditions (*id.* at 11). That was the case with Mr. Vogt who was given a "substandard rating" and designated in the "Table 4 Rate Class," even though he was not a tobacco user. *Vogt*, Dkt. 1-1 at 3-4 (June 15, 2016). State Farm has never argued that Mr. Witt's methodology fails to account for substandard ratings.

State Farm's additional argument referring to a *premium* discount it offers to non-tobacco users also fails to establish that State Farm is contractually required to establish tobacco-distinct *COI rates*. Dkt. 208 at 23. The *premium* credited to the Account Value and the *COI charge* debited each month are different things under the Policy. To the extent State Farm insinuates they are intended to mean the same thing in this context, it would make little sense to have identified them separately in the contract language it drafted. In any event, while it is true that State Farm generally charged non-tobacco policy owners

11

lower COI rates, no evidence suggests this decision stemmed from State Farm's consideration of underlying mortality differences associated with tobacco status. Rather, the pricing documents and witness testimony confirm that State Farm determined COI loads relative to a tobacco-blended pricing mortality rate—the same approach Mr. Witt used in his damage analysis. Thus, while perhaps reflective of an intent to provide a more competitive product for non-tobacco users, State Farm fails to show that this discount was in any way related to Policy-identified factors.[2] The record instead squarely supports Mr. Witt's methodology.

### 3. Mr. Witt's Methodology Accounts for Policy Year Consistent with the Factual Record and Prior Judicial Findings.

State Farm once again argues that Mr. Witt's methodology is inappropriate where it incorporates an "unpooled" pricing mortality rate. An "unpooled" pricing mortality rate, as reflected in State Farm's pricing documents, is one that differentiates rates by the elapsed time since an insured went through underwriting, while a "pooled" rate applies the same rate to policy owners of the same attained age regardless of "policy year." Dkt. 205-2 (Witt Trial Dec.) at ¶ 39. State Farm's position again runs counter to its own pricing documents and the testimony of its employees. *Id.* at ¶¶ 34-36, 39. Even in State Farm's latest salvo of filings, the declaration of its employee Alan Hendren admits that the *mortality* rates for the Policy were not pooled. Dkt. 161 at ¶ 33. The jury in *Vogt* made the same factual finding. Dkt. 122 at 11 ("When faced with this question of fact in Vogt, *the jury found that State Farm used the unpooled mortality rates* to calculate the ultimate COI charges."); *Vogt*, 963 F.3d at 768 ("Although time and again throughout this appeal State Farm reaffirms its reluctance to accept the jury's finding on this point, the fact remains that the jury concluded State Farm did not pool its mortality rates and any argument premised on pooling must fail"; and, "[a]s to State Farm's argument that the damages models were insufficient

---

[2] State Farm also attempts to gain traction in contesting Mr. Witt's use of tobacco-blended mortality rates by citing a partial quote from his recent deposition where he acknowledged asking counsel whether he was "missing something here" in his review of State Farm's mortality rates. Dkt. 208 at 24. State Farm implies this is an acknowledgment by Mr. Witt that he inappropriately cut short his investigation. But, the full quote (including the statement, "are there other versions of mortality that I'm not seeing") in response to a question about whether Mr. Witt followed up with counsel about the mortality rates he used is hardly indicative of a belief that he was missing information. If anything, it merely evidences his thorough analysis and follow-up to ensure he had all relevant materials. Witt Tr. at 122:19-123:13. And, as noted again herein, State Farm's witnesses have never disputed its exclusive use of a tobacco-blended pricing mortality rate for this Policy.

12

PLAINTIFF'S OPPOSITION TO STATE FARM'S
MOTION TO EXCLUDE DECLARATION AND TESTIMONY OF SCOTT J. WITT
Case No. 3:18-cv-04954-CRB

because they operated under the assumption that State Farm did not pool mortality rates . . . this is nothing more than an attempt to unwind the factual findings of the jury, which concluded that State Farm did not pool its policies when calculating the COI rates."); *Vogt*, 2018 WL 4937069, at *1, *3 (W.D. Mo. Oct. 11, 2018), *aff'd*, 963 F.3d 753 (8th Cir. 2020) ("That verdict necessarily rejected Defendant's argument that it pooled its mortality rates before loading expenses and profits," and "State Farm's argument fails because the jury found that it did not pool its mortality rates.").

Mr. Witt cannot be faulted for calculating loads relative to a mortality assumption that State Farm confirmed it used, particularly when this Court likewise noted that the Policy appears to incorporate "policy year" into the COI rates. *See* Dkt. 122 at 11 ("Form 94030 references 'policy year' in the provision describing the factors that go into the monthly COI charges, suggesting that Policy year was incorporated into the pricing scheme."); *see also Vogt*, 2018 WL 1747336, at *6 (finding "the Policy incorporates the duration of the policy as a factor affecting those rates"). While there is no dispute that State Farm in practice did not differentiate for policy year in the COI rates it charged, its breach of the Policy's COI rates provision is the subject of this lawsuit. And its decision to disregard policy year, ███████████████████████████████████████████████████████████████████████████████, does not disclose any flaw in Mr. Witt's opinions.[3] *See, e.g.*, Ex. 2 █████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ ████████████████████████.

---

[3] State Farm's argument that Mr. Witt's methodology would "penalize" longer-held policies with consistently higher COI rates also is demonstrably false. Mr. Witt's methodology merely removes non-mortality loads from past COI rates; it never increases those rates. To the extent State Farm suggests that Mr. Witt's rates would be implemented going forward, the Policy requires that, if State Farm changes its COI rates, it must do so consistent with its changes in projected mortality, which have undoubtedly improved significantly since State Farm's last repricing of the Policy in 2002. Furthermore, because under either party's interpretation State Farm retains the right to increase COI rates if its "projected changes in mortality" worsen, any implication that State Farm could or would do so only if it were required to accept Plaintiff's interpretation implies nothing more than retaliation.

PLAINTIFF'S OPPOSITION TO STATE FARM'S
MOTION TO EXCLUDE DECLARATION AND TESTIMONY OF SCOTT J. WITT
Case No. 3:18-cv-04954-CRB

#### 4.  Instances of Unloaded COI Rates Are Not Evidence of "Ill Fit."

State Farm's portrayal of Mr. Witt's methodology as selectively applying higher or lower COI rate scales reflects still another attempt to miscast the purpose of the methodology, which is simply to identify past damages by removing unauthorized loads from COI rates if and when they were present for each COI transaction. State Farm seeks to parlay its own business decision to load rates in earlier policy years, and to set some of its rates at or lower than its pricing mortality would justify in later years as policies lapse or surrender, as some kind of oversight in Mr. Witt's methodology. But, its argument that later duration, unloaded COI rates in Mr. Witt's calculation show a flaw in his damage methodology has already been rejected by both this Court and in *Vogt*: "The fact that the rates that State Farm actually charged were not always higher than the mortality rates that Plaintiffs' expert calculated does not mean that Plaintiff's model does not adequately capture the non-mortality component of the charge"; to the contrary, the "inference that State Farm recoups profits and expenses in the earlier years of the Policy and refrains from doing so later—when more policies have lapsed or been surrendered, and when actual mortality costs increase—does not indicate a flaw in the damages model; instead, it more likely indicates a calculated business decision.'" Dkt. 122 at 12 (quoting *Vogt*, 2018 WL 4937330, at *4-5). For this reason, the Court held that "[t]he possibility that certain Class members may have been undercharged at certain points according to Witt's model does not negatively impact its reliability." *Id.*[4]

---

[4] There is another fundamental reason that this argument is meritless. █████████████████████

███████████████████████ Ex. 3, Apr. 4, 2001 Memorandum re: UL COI Reduction. █████████

█████████████████████████████████████████

█████████████████████████████████████████ This confirms that the methodology appropriately tracks the COI rates that State Farm knew would be less than repricing mortality in later policy years (likely when its actual projected mortality costs had decreased further). *See id.* ███████████

███).

1

2

3

For the foregoing reasons, Mr. Witt's determination of COI loads relative to State Farm's pricing mortality rates for the Policy is consistent with the factual record,[5] Plaintiff's claims, and this Court's prior legal findings. State Farm's "fit" arguments are without merit and should again be rejected.

4

### B.  Mr. Witt's Methodology is Reliable.

5

6

7

8

9

10

11

12

13

14

15

Mr. Witt's methodology mechanically applies a formula for Account Value calculation set forth in the Policy itself. The assumptions input into his methodology are derived solely from those used in pricing the Policy as confirmed by State Farm's employee-witnesses. And this methodology incorporates individual transactional data provided by State Farm. In other words, the methodology, assumptions, and inputs are readily verifiable. The fact that both Mr. Witt and State Farm's own experts have carried out the methodology for over a hundred thousand policies across two cases, and the fact that it has been subject to extensive analysis by State Farm's experts, further demonstrate it is subject to testing and is verifiable. State Farm does not challenge the mechanics of this application, but instead only challenges the pricing mortality rates assumed by Mr. Witt (who provides a sufficient basis for its application, as discussed above). The Court found Mr. Witt's proposed methodology sufficiently reliable at class certification, and State Farm has failed to demonstrate any basis to depart from that finding.

16

### 1.  Mr. Witt's Methodology Meets Objective Criteria of Reliability.

17

18

19

20

21

22

23

24

25

A qualified expert may testify where "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702. Four factors that "may bear on" a reliability analysis include: "(1) whether the theory can be and has been tested, (2) whether the theory has been peer reviewed and published, (3) what the theory's known or potential error rate is, and (4) whether the theory enjoys general acceptance in the applicable scientific community." *Murray v. S. Route Mar. SA*, 870 F.3d 915, 922 (9th Cir. 2017). These factors are not equally applicable in every case and a court may ignore factors "that are not reasonable measures of

26

27

28

---

[5] Moreover, as Plaintiff argues in moving for summary judgment, State Farm is precluded from rearguing facts of the case necessarily determined by the *Vogt* jury in awarding lost Account Values consistent with Mr. Witt's methodology, which included a determination that State Farm priced tobacco-blended, unpooled mortality rates. Dkt. 142 at 13.

15

PLAINTIFF'S OPPOSITION TO STATE FARM'S
MOTION TO EXCLUDE DECLARATION AND TESTIMONY OF SCOTT J. WITT
Case No. 3:18-cv-04954-CRB

1   reliability in a particular case." *Id.* "The reliability inquiry is a flexible one, and the district court has

2   broad latitude to determine what factors in *Daubert*, if any, are relevant to the reliability determination."

3   *United States v. Valencia-Lopez*, 971 F.3d 891, 898 (9th Cir. 2020) (quoting *Estate of Barabin v.*

4   *AstenJohnson, Inc.*, 740 F.3d 457, 463 (9th Cir. 2014) (en banc) (internal quotations omitted)). Thus, the

5   district court "also has broad latitude in determining the appropriate form of the inquiry." *Id.* Expert

6   opinion testimony is "reliable if the knowledge underlying it has a reliable basis in the knowledge and

7   experience of the relevant discipline." *Alaska Rent-A-Car, Inc. v. Avis Budget Group, Inc.*, 738 F.3d 960,

8   969 (9th Cir. 2013) (quoting *Primiano*, 598 F.3d at 565). "Basically, the judge is supposed to screen the

9   jury from unreliable nonsense opinions…The district court is not tasked with deciding whether the expert

10  is right or wrong, just whether his testimony has substance such that it would be helpful to a jury." *Id.*

11          Here, "[t]he subject of Witt's testimony is technical, not scientific, and is highly specific to the

12  insurance policy here. This calls for a more particularized analysis of reliability than rote application of

13  the *Daubert* factors." Dkt. 122 at 7 (order denying motion to strike Witt's opinions at class certification).

14  Because the subject of his testimony is highly specific to the Policy, the mechanics of Mr. Witt's

15  methodology are dictated entirely by policy language. That is, the Policy sets out, step-by-step and in

16  plain terms, how Account Values are calculated on a monthly basis. Dkt. 205-2 (Witt Trial Dec.) at ¶ 52.

17  This fact is confirmed by State Farm's own actuarial expert offered in *Vogt* and again here. *See* Dkt. 108-

18  3 (Weinsier Dec.) at ¶¶ 13.L, 28-29, 43, 13.C ("Each of the charges that impacts Ms. Bally's account

19  value is documented and described in the Policy"; "the components underlying the account value are

20  defined in the Contract"; "Policy mechanics are defined in the Contract and perform consistently with a

21  typical UL design"; "the roll forward of the account value features comparable inflows and outflows as

22  described.") Mr. Witt's damages methodology is simply a recalculation of those Account Values

23  consistent with the Policy-provided formula, with the lone difference being that he recalculates COI

24  charges after removal of the unauthorized loads from the COI rates. Dkt. 205-2 (Witt Trial Dec.) at ¶¶

25  48-59. At bottom, Mr. Witt's process is little more than arithmetic, using his expertise to precisely

26  replicate the Policy mechanics. Consequently, Mr. Witt's testimony that there is no "controlling standard"

27  he would point to aside from the Policy itself, or the assumptions State Farm confirmed it used, does

28  nothing to undercut his methodology. Nor does his testimony that he does "not accept[] the type of

16

engagements" that would require him to apply some kind of separate standard for a damages calculation render unreliable his calculation of lost Account Values in this case.[6]

Quite frankly, it is nonsensical for State Farm to assert that a formula that State Farm drafted into the Policy, submitted to insurance regulators, and which is consistent with the type of Account Value and COI rate calculations common in the life insurance industry as a whole, is incapable of testing and verification or requires testing against some additional, objective source of reliability. Indeed, while State Farm has consistently challenged Mr. Witt's assumptions input into that methodology (*e.g.*, "unpooled" rates, "tobacco-blended" rates), its experts have repeatedly failed to criticize the mechanics of his calculation, despite having run his methodology class-wide during two federal cases. For purposes of challenging Mr. Witt's opinions at trial in *Vogt*, State Farm offered an expert, Dr. Anne Gron, who "'checked' the calculations" in the workbooks produced by Mr. Witt and "reported no concerns about them." *Vogt*, 2018 WL 4937330, at *12. Again here, State Farm's expert, Dr. Lauren Stiroh, confirmed that she was able to "apply Mr. Witt's . . . formulas" to all "accounts owned by the proposed class members." Dkt. 109-4 at ¶ 22; Dkt. 197-3 at n. 145 (she submitted "SAS code files" with her class certification report "which replicated Mr. Witt's Excel-based model . . . in the SAS programming environment and applied it to the entire class"). Dr. Stiroh did so before Mr. Witt ever performed his methodology class-wide in this case, and, like Dr. Gron, her reports do not and cannot offer any critique of the mechanics of Mr. Witt's calculation. He performed the sort of calculation that insurance companies engage in every day when calculating the Account Values reflected in a policy owner's annual statements. In this context, subjecting a formula set forth in an insurance policy to peer review or publication is neither necessary nor reflective of practice outside the courtroom. *See* Fed. R. Evid. 702 advisory committee's notes (2000). Mr. Witt's opinions are well grounded in his knowledge and experience as an actuary. State Farm's motion to exclude on the basis of a purported failure to meet objective reliability criteria should be denied.

---

[6] State Farm also misattributes a quote to Mr. Witt that his methodology "was created solely for purposes of litigation." In reality, that quote comes from defense counsel's questioning. Moreover, during this line of questioning, Mr. Witt acknowledged that he "developed a straightforward methodology that identified the lost account value at a particular point in time," that "logic" was the "most important ingredient" he used, and that his methodology merely "substitutes . . . rates back into the . . . exact formula that is specified in the contractual language." Witt Tr. at 88:2-90:9.

### 2.  Mr. Witt Applied His Experience and Expertise to the Facts of This Case.

Resurfacing another argument made at class certification and in *Vogt*, State Farm claims Mr. Witt has not exercised his own actuarial judgment with respect to his opinions. It contends Mr. Witt has set aside his expertise and "blindly" followed the direction of counsel. Dkt. 208 at 22. State Farm again relies on a few out-of-context quotes from Mr. Witt's testimony pertaining to the amount of actuarial judgment necessary to decipher State Farm's pricing and determination of COI rates. Dkt. 208 at 20-21. At the outset, Mr. Witt's challenged declaration clearly states that he has applied judgment consistent with his area of expertise in rendering his opinions. *See* Dkt. 205-2 (Witt Trial Dec.) at ¶¶ 7-8, 10. Moreover, State Farm fails to credibly argue that Mr. Witt sacrificed his own judgment at Plaintiff's instruction. Simply because State Farm's pricing documents and witness testimony are so clear-cut that "not much actuarial judgment" is required to determine the non-mortality related loads State Farm added to its COI rates does not disclose any flaw in Mr. Witt's approach. It just means liability is clear. Again, it is *State Farm's* witnesses who have confirmed: the policy-identified COI rate factors of age, sex, rate class, and duration are "mortality factors" used to determine an expected mortality rate for an insured (*see id.* at ¶ 30); a "mortality assumption" determined using the policy-enumerated mortality factors is synonymous with the expected mortality rate State Farm "embedded into the pricing" of Form 94030 (*see id.* at ¶ 32); the pricing mortality rates used in determining COI rates are identified in State Farm's actuarial memoranda and asset share workbooks for Form 94030 (*id.* at ¶¶ 33-36); State Farm developed COI rates by using pricing mortality rates that were then "loaded for expenses and profit margins" (*id.* at ¶ 43); and such "loads" are not "mortality related" (*id.* at ¶ 44). In light of these admissions, Witt testified:

> [G]iven the testimony and the documentation that was provided by State Farm, it was more of just using what was provided. Any judgment was simply – or any actuarial expertise was simply recognizing and understanding the language and then using that. I didn't have to develop a table, a mortality table, or anything of that nature.

Dkt. 112-2 at 25:2-13. In other words, there was no need for Mr. Witt to hypothesize about the pricing assumptions for Form 94030 or how State Farm actually determined COI rates, because the evidence provided by State Farm on these points was not in dispute.

State Farm's attempts to contort Mr. Witt's most recent deposition testimony to imply he did not perform any actuarial review or analysis grossly misstate his testimony. For instance, that he did not have

to engage in an "actuarial exercise" "to ascertain how State Farm translated the mortality experience tables into cost of insurance rates" because it was laid out in the pricing memorandum and State Farm's testimony, or his statements that "there wasn't a lot of actuarial expertise or judgment required," fail to show that he applied no judgment or expertise whatsoever, as State Farm wrongly claims. Dkt. 208 at 21; Witt Tr. 71:22-23. Confronted with a similar argument from State Farm at class certification that relied on a similar mischaracterization of a few out-of-context quotes from Mr. Witt, the Court found State Farm's argument "an unfair characterization" of Witt's testimony. Dkt. 122 at 8. The Court explained:

> Witt did not say that his report required no actuarial judgment; he said "not much." That alone is enough to end the argument, but Bally also offers a far more plausible explanation of the statement: Witt relied on State Farm's own pricing documents and witness testimony, so he did not have to formulate his own pricing assumptions for the Policy, thus significantly reducing the amount of actuarial judgment he might otherwise need to exercise to draw his conclusions. . . . State Farm asks the Court to adopt an unreasonable interpretation of Witt's statement.

*Id.* at 8-9. Nothing has changed since State Farm sought to exclude Mr. Witt's report on these grounds at class certification. His opinions about State Farm's pricing of COI rates and his methodology, developed since his involvement in the *Vogt* case, remain the same. That State Farm misstates testimony to claim Mr. Witt has disowned his area of expertise in rendering his opinions is not a proper basis for exclusion.

State Farm's further allegation that Mr. Witt's approach conflicts with his experience as an actuary is also the result of selective presentation of out-of-concept excerpts of his testimony. For instance, when Mr. Witt testified that in his experience there were "many factors that went into pricing" a policy *as a whole*, this does not mean he would agree that those factors must be specifically priced into policies through undisclosed loads in COI rates. Witt Tr. at 43:12-25. Indeed, Mr. Witt provided rebuttal to State Farm's claims that it was common in the industry to determine COI rates using any number of factors, and stated that in his experience, having reviewed thousands of life insurance policies in his role as an insurance advisor, it was customary for insurance companies (including State Farm itself) to draft COI rate provisions that: expressly set forth all the factors on which the insurer intended to rely in determining COI rates; explicitly state that any listed factors are not exhaustive; and/or state whether the rates will be merely be "assigned" or will "vary by" certain characteristics of the insured. *See* Dkt. 67 at 15 (citing Ex. 1 (Witt Dec.), ¶¶ 32-35); *see also* 205-4 (Witt Rebuttal Dec.), ¶¶ 9-14.

19

Thus, testimony regarding Mr. Witt's experience with how insurance companies *typically* determine COI rates and charges does not undermine his opinions about what State Farm did with this particular policy. Mr. Witt has conducted an independent investigation of the data and materials provided to him. He is aware of the standard of practice regarding "non-guaranteed charges," including COI rates, requiring that "an actuary should consider relevant policy provisions and applicable law." *Id*. at ¶ 16. That is exactly what he did here, and his reliance on the historical decisions of State Farm's actuaries only reinforces the reliability of his opinions.

### 3. Mr. Witt's Methodology Is Not Speculative.

State Farm next argues that Mr. Witt fails to address "the economic circumstances that would have existed 'but for' the alleged contractual breach, causing his model to be impermissibly speculative." Dkt. 208 at 22-23. It further contends Mr. Witt failed to analyze whether unloaded COI rates could be viable from a profitability perspective and whether they would satisfy regulatory or actuarial standards. But State Farm overcomplicates a straightforward breach and theory of recovery. The cases it cites involving disputes outside of the insurance context and involving lost-profits analysis dependent on market circumstances merely highlight the disconnect between State Farm's contentions and the facts of this case. For example, State Farm cites *DSU Med. Corp. v. JMS Co., Ltd.*, 296 F. Supp. 2d 1140 (N.D. Cal. 2003), a case evaluating expert testimony of lost profits in the context of patent infringement, and *Otis v. Doctor's Assoc, Inc.*, 1998 WL 673595 (N.D. Ill. Sept. 14, 1998), a case involving a lost-profits analysis in the context of a fraudulent inducement claim regarding a fast-food chicken franchise. Such cases provide no support for the proposition that, in calculating past lost Account Values resulting from breach of an insurance policy, an expert must consider whether the wrongdoer's profit and expense goals would be undermined if it had to pay a portion of that money back.

"Damages are awarded in an action for breach of contract to give the injured party the benefit of his bargain and insofar as possible to place him in the same position he would have been in had the promisor performed the contract." *Coughlin v. Blair*, 262 P.2d 305, 314 (Cal. 1953). In other words, the proper measure of damages compares the value of the contract where "other things remained the same but the breach had not occurred." *Alaska Rent-A-Car, Inc.*, 738 F.3d at 968. That is exactly what Mr. Witt did. In his own words:

20

PLAINTIFF'S OPPOSITION TO STATE FARM'S
MOTION TO EXCLUDE DECLARATION AND TESTIMONY OF SCOTT J. WITT
Case No. 3:18-cv-04954-CRB

> My methodology keeps all other past policy activity unchanged, and I recalculate Account Values and COI charges using COI rates where non-mortality loads in excess of pricing and repricing mortality have been removed . . . . There is nothing speculative about [my] proposed methodology for calculating lost Account Values attributable to the non-mortality loads because it addresses only past losses in Account Value resulting from State Farm's alleged wrongful conduct. My methodology relies on past policy experience calculated retrospectively from a fixed point in time -- the present date for current in-force policies, and the date of termination for previously terminated policies.

Dkt. 205-2 at ¶¶ 50, 58. Keeping all other past policy activity and transactions as they actually occurred and removing the non-mortality loads is the most reasonable way of isolating lost Account Values resulting from State Farm's addition of non-mortality loads and "provide[s] *the most reasonable basis* for measuring harm" in a case of this nature. *Vogt*, 963 F.3d at 770 (emphasis added).

The lost-profit scenarios State Farm points to are a far cry from the present case. In a breach of contract case alleging past overcharges through automatic deductions, there is no need to look beyond what was charged and what should have been charged. The charges were actually levied against class members. And the appropriate charges are readily calculable. It is thus appropriate to compare the Account Value using State Farm's loaded COI rates to what the Account Value would have been absent the overcharges—*i.e.*, what Mr. Witt did.

It is State Farm's proffered "but-for" considerations that err by deviating from a world "in which other things remained the same" but for the breach, and requiring speculation as to how State Farm would or could have changed its behavior if required to comply with the terms of the Policy. In essence, State Farm nonsensically critiques Mr. Witt's opinions as speculative for failing to speculate. State Farm's expert Dr. Stiroh even says Mr. Witt should have considered a "but-for" world where Form 94030 did not exist. Dkt. 197-3 (Stiroh Report) at ¶¶ 17, 22 ████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████.

Regarding State Farm's further contention that Mr. Witt's opinions are speculative because they fail to consider whether the unloaded COI rates would satisfy applicable regulatory or actuarial standards, including illustration testing (Dkt. 208 at 31), Mr. Witt previously testified his methodology is "not a pricing exercise." Witt Tr. at 27:1-11. He has not proposed any kind of prospective COI rate change. He

21

PLAINTIFF'S OPPOSITION TO STATE FARM'S
MOTION TO EXCLUDE DECLARATION AND TESTIMONY OF SCOTT J. WITT
Case No. 3:18-cv-04954-CRB

simply proposes a methodology for quantifying lost Account Values resulting from State Farm's past wrongful conduct, and State Farm's critique is irrelevant to the task of calculating past lost Account Values. Moreover, if rates compliant with State Farm's contractual language would not have passed regulatory muster (a process to which Policy owners are not privy), the problem is with State Farm's drafting. That would provide no basis to permit State Farm to re-write the Policy or charge owners loaded COI charges so that it can earn larger profits through COI. Nor is it a basis to exclude Mr. Witt's opinions.

### 4. Mr. Witt's Assumptions Were Determined in Accordance with Undisputed Facts in the Record.

For its argument that Mr. Witt "relie[d] on assumptions provided to him by counsel and ignore[d] undisputed record facts," State Farm again attempts to portray Mr. Witt as having "uncritically relied on counsel's instructions to use State Farm's mortality tables as the sole basis for the alternative rate." Dkt. 208 at 24. It again criticizes Mr. Witt's use of the "unpooled," "tobacco-blended" pricing mortality rates confirmed by State Farm's employees. And it again misstates testimony. For instance, it argues that Mr. Witt testified "that he was not the 'one to decide' to rely solely on mortality experience numbers" and instead was directed to do so. But here again, the transcript reveals his testimony as stating "my use of this specific mortality table was entirely based on State Farm's documents and testimony." *Id.*; Witt Tr. 102:12-20. State Farm also again cites Mr. Witt's admissions that he followed up with counsel to see if he was missing any materials as supposed proof that he incorporated a faulty assumption. Dkt. 208 at 24. But the inaccuracy of these allegations is self-evident in the context of the entirety of his opinions through numerous declarations and depositions. None of State Farm's out-of-context snippets of testimony undermine Mr. Witt's independent analysis or demonstrate he relied on assumptions dictated by counsel. Thus, State Farm's cases for the proposition that experts should not "blindly accept[]" assumptions from counsel, and its cases excluding testimony for failure to verify underlying data or assumptions, are inapplicable. *Id.* Mr. Witt appropriately verified data and assumptions and reached his own conclusions regarding State Farm's documents and testimony. In the end, Mr. Witt's "hands were tied," not by counsel, but by the "mortality tables that [were] indicated repeatedly by State Farm." Witt Tr. at 146:10-22.

PLAINTIFF'S OPPOSITION TO STATE FARM'S
MOTION TO EXCLUDE DECLARATION AND TESTIMONY OF SCOTT J. WITT
Case No. 3:18-cv-04954-CRB

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**C.  Mr. Witt Is Qualified to Present His Class-wide Calculation of Lost Account Values on a Life Insurance Policy.**

State Farm's challenge to Mr. Witt's qualifications lacks any merit. A witness can qualify as an expert on the basis of "knowledge, skill, experience, training, or education," Fed. R. Evid. 702, and this rule "contemplates a broad conception of expert qualifications." *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1015 (9th Cir. 2004) (emphasis omitted) (quoting *Thomas v. Newton Int'l Enters.*, 42 F.3d 1266, 1269 (9th Cir. 1994)). "The threshold for qualification is low for purposes of admissibility; minimal foundation of knowledge, skill, and experience suffices." *Victorino v. FCA US LLC*, No. 16CV-1617-GPC(JLB), 2018 WL 2551312, at *4 (S.D. Cal. June 4, 2018) (quoting *PixArt Imaging, Inc. v. Avago Tech. Gen. IP (Singapore) Pte. Ltd.*, No. C 10–00544 JW, 2011 WL 5417090, at *4 (N. D. Cal. Oct. 27, 2011). Hence to be qualified, "[a]n expert does not need to possess official credentials or particularized expertise in the specific area of the dispute." *Sullivan v. Costco Wholesale Corp.*, No. 1:17CV-00959-LJO-EPG, 2018 WL 4057447, at *3 (E.D. Cal. Aug. 23, 2018) (citing *United States v. Garcia*, 7 F.3d 885, 889-90 (9th Cir. 1993)); *see also Bixby v. KBR, Inc.*, No. 3:09-CV-632-PK, 2012 WL 12952722, at *2 (D. Or. Aug. 29, 2012) (expert does not have to be "the best-qualified expert in the area" to qualify under Rule 702) (citation omitted).

Mr. Witt's comprehensive experience, knowledge, and expertise in actuarial science and life insurance, includes: universal life insurance products; pricing and valuation of life insurance products; pricing and analysis of underlying assumptions used in the development of life insurance products; analysis of risks associated with life insurance products; analysis of mortality assumptions, experience, and tables, as well as the rates used to assess monthly charges on life insurance products; work on experience studies, valuation, marketing (or competition), corporate modeling, and life insurance product pricing; evaluation and analysis of mortality experience and risk; development of mortality rate scales or tables; evaluation and analysis of policy interest rates; evaluation and setting of reserves, and ensuring compliance with statutory regulations regarding reserves; modeling performance of life insurance under changing policy scenarios, assumptions, and features; illustration testing, including lapse-support and self-support testing; pricing and repricing of life insurance and other products, including the review and analysis of pricing and repricing efforts; and deconstructing or reverse-engineering life insurance policies, in particular the cash value components of permanent policies and

23

their underlying rates and charges. Dkt. 205-2 at ¶¶ 3-5. On the other hand, State Farm's expert, Dr. Stiroh—though an economist—cannot claim to "have analyzed thousands of different life insurance policies, including universal life insurance policies with features like those related to the product at issue in this case," as Mr. Witt has. *Id.* at ¶ 5.

Contrary to State Farm's contentions, there is no requirement that a calculation of past damages in any context can come only from an economist. Dkt. 208 at 26-29. An expert with 25 years of experience as an insurance actuary is qualified to render the opinions and carry out the Account Value calculations required for a damages analysis here. State Farm's references to testimony about Mr. Witt's "economics training" and whether he has modeled damages for a class litigation other than in the cost of insurance context are likewise beside the point. Mr. Witt's experience and training render him uniquely qualified to perform Account Value calculations in the life insurance context, including in this case.

State Farm further attempts to disqualify Mr. Witt on the basis of his statement that he considers himself a "damages calculation expert." Dkt. 208 at 26. But, that Mr. Witt considers himself a "damages calculation expert" in this particular context is not grounds to exclude his testimony, particularly where his background and experience independently qualify him. State Farm's observation that it is "rare for a classwide damages expert to lack economics training" does not justify disqualifying Mr. Witt here. *Id.* at 27. State Farm cites *Longest v. Green Tree Servicing LLC*, 308 F.R.D. 310 (C.D. Cal. 2015) for the proposition that "courts routinely rely on expert economist reports." Dkt. 208 at 27. But the court in that case denied class certification because the plaintiff failed to provide an expert report at all; it made no finding that damages calculation must be performed by economists. *Longest*, 308 F.R.D. at 333. State Farm also cites *MyFord Touch Consumer Litig.*, 291 F. Supp. 3d 936 (N.D. Cal. 2018), but only as an *example* of a case where a report from an economist was offered. Dkt. 208 at 27. The relevant question is whether Mr. Witt is qualified in the context of this specific case. For this reason, State Farm's reliance on *LifeWise Mstr. Funding v. Telebank*, 374 F.3d 917 (10th Cir. 2004), is similarly misplaced. *See id*. There, the testimony from the proffered expert revealed he had an "utter lack of familiarity, knowledge, or experience with" the damages analysis offered in that case. *LifeWise Mstr. Funding*, 374 F.3d at 928. Mr. Witt, by contrast, has the requisite familiarity, knowledge, and experience to calculate Account Values on life insurance policies.

1   State Farm further demands that Mr. Witt be disqualified on the purported ground that "he did

2   not even perform the basic computational work that forms the heart of his model." Dkt. 208 at 35. This

3   again is a mischaracterization of his testimony. As is evident from his numerous declarations and

4   deposition testimony, Mr. Witt's design of the mechanical application of his methodology to

5   accommodate the appropriate transactional data and rate table inputs dates back to his involvement in the

6   *Vogt* case. In calculating damages in *Vogt*, the specific platform he used to apply his methodology was

7   Excel. Witt Tr. 233:23-25. While in *Vogt* Mr. Witt used Excel to run his methodology for calculating lost

8   Account Values class-wide, in this case he used the same statistical software introduced by State Farm

9   in *Vogt*, and employed by Dr. Stiroh at class certification. Dkt. 197-3 at n. 145. Although containing the

10  exact same data categories, the size of the policy-level data provided by State Farm for its California

11  policy owners in this case was significantly (four times) larger than the dataset in *Vogt*, and Mr. Witt

12  determined that such a large dataset was more efficiently managed using SAS instead of Excel, which

13  likely would have required hundreds of individual Excel workbooks to carry out his calculations. Dkt.

14  205-4 at ¶ 30. Mr. Witt has confirmed that the formulas and functions for the mechanical application of

15  the methodology here were composed in a manner to ensure compatibility with SAS. *Id.* at ¶ 31. He also

16  validated the results of the SAS program with testing against certain large data samples in Excel, which

17  were included in his work papers produced to State Farm. *Id.* at ¶ 31, n. 6. As is demonstrated by Dr.

18  Stiroh's own report, these formulas were identifiable from the SAS code Mr. Witt provided with his work

19  papers, as were any differences between the SAS code and Excel formulas previously used to demonstrate

20  his methodology. *See* Dkt. 197-3 *generally*.

21  State Farm balks at Mr. Witt's consultation with Dr. Melvin Ott for assistance in running his

22  methodology through SAS. Dkt. 208 at 27. But there is nothing about consulting with an expert to

23  perform certain data administration tasks at Mr. Witt's direction that would disqualify Mr. Witt as an

24  expert for purposes of the damages computation here. Testifying experts are free to engage outside help

25  in forming their opinions, so long as these consultants are not exercising their own professional judgment

26  "beyond the expert's ken." *Wolkowitz v. Lerner*, 2008 WL 1885770, at *4 (C.D. Cal., Apr. 21, 2008)

27  (quoting *Dura Automotive Sys. v. CTS Corp.*, 285 F.3d 609 (7th Cir. 2002)). That an expert's opinion is

28  "based on data collected by others is immaterial." *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d

25

PLAINTIFF'S OPPOSITION TO STATE FARM'S
MOTION TO EXCLUDE DECLARATION AND TESTIMONY OF SCOTT J. WITT
Case No. 3:18-cv-04954-CRB

1134, 1142 (9th Cir. 1997). In addition, "an expert may collaborate and converse with colleagues before reaching his or her opinions." *Wolkowitz*, 2008 WL 1885770, at *4 (citing *Scott v. Ross*, 140 F.3d 1275, 1286 (9th Cir. 1998)).

As Mr. Witt's deposition testimony demonstrates, Dr. Ott did not, on his own, "do the necessary calculations." Dkt. 208 at 27. Rather, Dr. Ott only assisted Mr. Witt in transferring his Excel coding into the "less unwieldy" SAS software. Witt Tr. at 19:13-20:5; 20:13-16. Once Dr. Stiroh provided her SAS coding, Dr. Ott "recreated a SAS data set" from her code and made several "minor modifications" at Mr. Witt's direction. *Id*. at 209:23-210:6; 211:3-25; 212:10-12; 217:10. Though State Farm frames Dr. Ott's role as one of computation, in truth this was data administration. *Id*. at 237:22-238:12. Once he was able to compile the State Farm-provided data into a SAS data set, it was Mr. Witt who "figured out what changes [he] wanted to implement" in Excel, "[a]nd then instructed Mr. Ott . . . to implement those changes [in the SAS code]." *Id*. at 239:1-5. Once Dr. Ott's work was complete within the SAS data set, Mr. Witt verified through additional testing that "more than 100,000 lines of account value calculations matched each other to the penny from [Mr. Witt's original] Excel model to the SAS output" as a means to "satisfy himself that Mr. Ott . . . had faithfully reproduced what [Mr. Witt] intended to be reproduced in this transition from Excel to SAS." *Id*. at 242:23-243:2. Put simply, entirely at Mr. Witt's direction, Dr. Ott transferred Mr. Witt's Excel model and its output into SAS, and his work was entirely subject to Mr. Witt's direction and verification. State Farm had the opportunity at deposition to inquire and satisfy itself as to Mr. Witt's working knowledge of the SAS coding provided with his work papers as well as to probe Mr. Witt's testimony about his own "expertise in computer modeling" in the insurance context— but it made no such inquiry. *Id*. at 72:9-14.

**D.  Mr. Witt Is Qualified to Render Opinions on Industry Practice.**

State Farm again misrepresents Mr. Witt's testimony and contends that, as a "damages expert," Mr. Witt's assertion that insurance companies typically determine COI rates consistent with what the policy language allows should be excluded because it is "beyond any relevant area of his proffered expertise[.]" Dkt. 208 at 28. But Mr. Witt need not be an expert in policy interpretation or life insurance industry custom (though he is) to testify as to the customary language employed in universal life insurance policies by insurers. *See, e.g.*, *Abaxis, Inc. v. Cepheid*, No. 10-CV-02840-LHK, 2012 WL

26

2979019, at *3 (N.D. Cal. July 19, 2012) ("Rule 702 imposes no requirement that experts have personal experience in an area to offer admissible testimony relating to that area."); *In re Silicone Gel Breasts Implants Prods. Liab. Litig.*, 318 F. Supp. 2d 879, 889 (C.D. Cal. 2004) ("A court abuses its discretion when it excludes expert testimony solely on the ground that the witness's qualifications are not sufficiently specific if the witness is generally qualified.") (citation omitted). As a longtime actuary and fee-only insurance advisory who has reviewed "thousands of life insurance policies," Mr. Witt's rebuttal testimony as to what insurance companies typically include in their COI rate determination provisions falls directly within his "proffered expertise." Dkt. 205-4 (Witt Rebuttal Dec.) at ¶¶ 8-9. And though State Farm appears to rest its argument on Mr. Witt's alleged failure to provide an exhaustive list or industry-wide survey of all universal life policies he has reviewed that include broader language than Form 94030, Mr. Witt need not do so. His experience with thousands of policies is enough to inform his selection of appropriate examples in the industry.

Therefore, State Farm's reliance on *San Diego Comic Convention v. Dan Farr Prods.*, No. 14-cv-1865, 2017 WL 4227000, at *7 (S.D. Cal. Sept. 22, 2017) does not help its argument. Here, Mr. Witt's knowledge of what insurance rate provisions typically contain was not derived from the examples he provided, and thus it is immaterial that a "couple" of those policy examples were furnished by counsel. Witt Tr. at 224:20-25. His expert opinions derive from his review of "thousands of life insurance policies" throughout his 25 years as an actuary and fee-only insurance advisor. Dkt. 205-4 (Witt Rebuttal Dec.) at ¶ 9. In *San Diego Comic Convention*, on the other hand, of the 2,300 pages reviewed by the expert in forming his opinions, over 1,800 were provided by counsel, which tended to show that nearly all the material he used to formulate his opinion was "biased" and narrow in scope.

**E.  The Probative Value of Mr. Witt's Testimony Is Not Substantially Outweighed By Any Unfair Prejudice to State Farm.**

State Farm finally argues that Mr. Witt's testimony should be excluded because any probative value is substantially outweighed by its unfair prejudicial effect. Yet Rule 403's scope is narrow, and its application for any reason must be "cautious and sparing." *United States v. Hankey*, 203 F.3d 1160, 1172 (9th Cir. 2000) (internal quotation marks and citation omitted). Thus, it is improper to exclude probative evidence simply because it has a prejudicial effect upon a litigant's case. Indeed, "'[r]elevant evidence is inherently prejudicial.'" *Id.* (citation omitted). It is "only unfair prejudice, substantially outweighing

27

probative value, which permits exclusion of relevant matter[s] under Rule 403." *Id.* (citation omitted). The proper function of Rule 403 "is limited to excluding matter[s] of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect." *Id.* (citation omitted).

As demonstrated herein, there is no merit to State Farm's claim of flaws in Mr. Witt's opinions and methodology. And State Farm's contention that Mr. Witt abandoned his own judgment for Plaintiff's theory is premised on mischaracterizations of his testimony. While Mr. Witt calculates lost Account Values consistent with Plaintiff's interpretation of the Policy—that State Farm may not include loads for unlisted factors—his conclusions about what State Farm did and how he would carry out a damages calculation are the result of his own independent judgment.

For the foregoing reasons, State Farm's motion should be denied.

Dated: March 29, 2021

**GIRARD SHARP LLP**

By: /s/ *Daniel C. Girard*
Daniel C. Girard (State Bar No. 114826)
dgirard@girardsharp.com
Jordan Elias (State Bar No. 228731)
jelias@girardsharp.com
601 California Street, Suite 1400
San Francisco, California 94108
Tel:    415-981-4800
Fax:    415-981-4846

Norman E. Siegel (admitted *pro hac vice*)
siegel@stuevesiegel.com
Lindsay Todd Perkins (admitted *pro hac vice*)
perkins@stuevesiegel.com
Ethan M. Lange (admitted *pro hac vice*)
lange@stuevesiegel.com
**STUEVE SIEGEL HANSON LLP**
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Tel: 816-714-7100
Fax: 816-714-7101

John J. Schirger (admitted *pro hac vice*)
jschirger@millerschirger.com
Matthew W. Lytle (admitted *pro hac vice*)
mlytle@millerschirger.com
Joseph M. Feierabend (admitted *pro hac vice*)
jfeierabend@millerschirger.com
**MILLER SCHIRGER, LLC**
4520 Main Street, Suite 1570
Kansas City, Missouri 64111
Tel: 816-561-6500
Fax: 816-561-6501

*Attorneys for Plaintiff Elizabeth A. Bally*

---

29

PLAINTIFF'S OPPOSITION TO STATE FARM'S
MOTION TO EXCLUDE DECLARATION AND TESTIMONY OF SCOTT J. WITT
Case No. 3:18-cv-04954-CRB

**CERTIFICATE OF SERVICE**

I hereby certify that on March 29, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notice of such filing to all registered users.

/s/ Daniel C. Girard
Daniel C. Girard

PLAINTIFF'S OPPOSITION TO STATE FARM'S
MOTION TO EXCLUDE DECLARATION AND TESTIMONY OF SCOTT J. WITT
Case No. 3:18-cv-04954-CRB