1
2
3
4
5
6
7

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

8

ELIZABETH A. BALLY,

Case No. 18-cv-04954-CRB

9

Plaintiff,

10

v.

**ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**

11

STATE FARM LIFE INSURANCE COMPANY,

Re: Dkts. 142 and 191

12

Defendant.

13

Elizabeth Bally has brought suit against State Farm Life Insurance Company on behalf of a

14

class of policyholders.  See Complaint (Dkt. 1).  Bally claims that State Farm improperly

15

considered profit, expenses, and other non-mortality factors in calculating the cost of insurance

16

rates in class members' policies.  See id. ¶¶ 37–40.  Bally also claims that State Farm's inclusion

17

of expense charges within its cost of insurance rates breached a contractual provision that set the

18

"monthly expense charge" for class members' policies at $5.00.  See id. ¶ 41.  Bally thus argues

19

that State Farm "impermissibly inflates" cost of insurance rates, resulting in a windfall to it and a

20

loss to policyholders.  See id. ¶¶ 39–40.  Bally also brings a related claim for conversion, and

21

seeks punitive damages.  See id. ¶¶ 69–77.

22

Now pending is Bally's motion for partial summary judgment on behalf of the class, see

23

Class Mot. for Summary Judgment (Dkt. 142), and State Farm's second motion for summary

24

judgment, see State Farm Second Mot. for Summary Judgment (Dkt. 191).  The Court held a

25

hearing on the parties' cross-motions on April 1, 2021, see Motion Hearing (Dkt. 213); Transcript

26

(Dkt. 217), and now resolves both motions.[1]

27

28

---

[1] Following the hearing, State Farm filed an Administrative Motion to Stay Consideration of

# I. BACKGROUND

This lawsuit turns in large part on the interpretation of a single provision in State Farm's Form 94030 life insurance policy, entitled "Monthly Cost of Insurance Rates" (the "Monthly COI Rates provision"). See Complaint ¶¶ 11–29; Policy (Dkt. 63-2) at 10. The operative language of the provision is: "These rates for each policy year are based on the Insured's age on the policy anniversary, sex, and applicable rate class." Id. The Court has already determined that the phrase "based on" connotes exclusivity. See Order Denying Mot. for Summary Judgment at 14. The main issue now is what the remainder of the provision means, and particularly what policyholders would understand goes into an "applicable rate class."

## A. The Policy

Bally purchased a flexible premium adjustable insurance policy on Form 94030 from State Farm on April 8, 1994, on behalf of her daughter. See Complaint ¶¶ 11, 47. State Farm offered the Policy to customers in California from January 1, 1994 to June 30, 2004. See Mot. for Class Cert. at 3. During that time, an estimated 86,000 Californians purchased the Policy. See Order Granting Class Cert. at 14.

The Policy provides life insurance benefits through "a savings, or interest-bearing component that is identified . . . as the 'Account Value.'" Complaint ¶ 19. "The money that makes up the Account Value is the property of the policy owner and is held in trust by [State Farm]." Id. ¶ 21. The Account Value is equal to "95% of the initial premium less the monthly deduction for the first policy month," and thereafter:

> The Account Value on any deduction date after the policy date is the
> Account Value on the prior deduction date:

---

Motions for Summary Judgment Pending Resolution of State Farm's Forthcoming Motion to Decertify the Class ("Admin. Mot.") (dkt. 220). Bally opposed that Motion. See Bally Opp. to Admin. Mot. (dkt. 221). The Court DENIES the Administrative Motion. Because the Court has already certified a class in this case, State Farm is not at risk of one-way intervention. See Admin. Mot. at 4; Diva Limousine v. Uber Techs., 392 F. Supp. 3d 1074, 1095 (N.D. Cal. 2019) (explaining that the rule protects defendants from "'members of a class not yet certified [who would] wait for the court's ruling on summary judgment and either opt in to a favorable ruling or avoid being bound by an unfavorable one.'" (quoting Villa v. San Francisco Forty-Niners, 104 F. Supp. 3d 1017, 1021 (N.D. Cal. 2015)). State Farm and the class will both be bound by the Court's rulings herein. If, sometime later, the Court determines that class treatment is not appropriate, and decertifies the class, State Farm will be no worse off than if it had successfully defeated class certification in the first place.

(1)  plus 95% of any premium received since the prior deduction date,
(2)  less the deduction for the cost of insurance for any increase in the
     Basic Amount and the monthly charges for any riders that became
     effective since the prior deduction date,
(3)  less any withdrawals since the prior deduction date,
(4)  <u>less the current monthly deduction,</u>
(5)  plus any dividend paid and added to the account value on the current
     deduction date, and
(6)  plus any interest accrued since the prior deduction date.

<u>See</u> Policy at 9 (emphasis added); Complaint ¶ 22.

The "monthly deduction," operation four above, contains the two monthly charges that the parties ask the Court to consider here. <u>See</u> Policy at 9. "Each [monthly] deduction includes: (1) the cost of insurance, (2) the monthly charges for any riders, and (3) the monthly expense charge." Policy at 9; Complaint ¶ 26. The Policy does not define the term "monthly expense charge," but sets the amount for that charge at a flat $5.00. <u>See</u> Policy at 3 ("The monthly expense charge is $5.00."); Complaint ¶ 27.

The Policy sets forth the process by which State Farm sets the cost of insurance rates, explaining:

> <u>Monthly Cost of Insurance Rates.</u> These rates for each policy year are based on the Insured's age on the policy anniversary, sex, and applicable rate class. A rate class will be determined for the Initial Basic Amount and for each increase. The rates shown on page 4 are the maximum monthly cost of insurance rates for the Initial Basic Amount. Maximum monthly cost of insurance rates will be provided for each increase in the Basic Amount. We can charge rates lower than those shown. Such rates can be adjusted for projected changes in mortality but cannot exceed the maximum monthly cost of insurance rates. Such adjustments cannot be made more than once a calendar year.

Policy at 10.[2] Further, the Policy defines "rate class" as "[t]he underwriting class of the person insured." <u>Id.</u> at 5.

In sum, the Policy authorizes State Farm to take a monthly deduction from the policyholders' Account Value. The three components of the monthly deduction are (1) the cost of insurance, (2) applicable rider charges, and (3) the monthly expense charge. State Farm calculates the cost of insurance using the Monthly COI Rates provision. And the monthly cost of insurance

---

[2] The Policy executed by Bally indicates that the maximum Monthly Cost of Insurance Rate for a 29-year-old person in the "Standard Rate Class-Female Non-Tobacco"(the category Bally qualified for) was ".1101." <u>Id.</u> at 4.

3

rate is based on each individual insured's age, sex, and applicable rate class.

### B. Procedural History

#### 1. Complaint

Bally brought this suit on behalf of a class composed of "[a]ll persons who own or owned a universal life insurance policy issued by State Farm on Form 94030 in the State of California whose policy was in-force on or after January 1, 2002 and who was subject to at least one monthly deduction." See Order Granting Class Cert. at 4–5. Bally, on behalf of the class, asserts breach of the Monthly COI Rates provision (Count I), breach of the "monthly expense charge" provision (Count II), and conversion under California law (Count III). See Complaint ¶¶ 57–82 . The class also seeks compensatory damages, punitive damages, declaratory and injunctive relief. See id.

#### 2. State Farm's previous motion for summary judgment

Nearly two years ago, State Farm unsuccessfully moved for summary judgment as to all of Bally's claims. See Order Denying Mot. for Summary Judgment (Dkt. 77) at 1–2. State Farm argued that the Policy, by its use of the phrase "based on" in the Monthly COI Rates provision, permits State Farm to consider factors beyond the three listed factors when calculating monthly cost of insurance rates. See id. at 3. State Farm also argued that Bally's complaint was time-barred, and that Bally could not state a claim for conversion under California law because an "overcharge" cannot constitute conversion. See id. at 3, 7. The Court denied the motion. See id.

First, the Court held that State Farm was not entitled to summary judgment based on its statute of limitations defense. See id. at 5–6. Given the evidence before it, the Court held that there was "no basis" to conclude that Bally "or any policyholder" was "on notice that the COI was calculated 'based on' unlisted factors," and that Bally was "not on constructive notice" because she had "no duty . . . to make an inquiry." Id. at 6.

Second, the Court held that State Farm was not entitled to summary judgment based on its "overcharge" theory because Bally had not alleged that she was overcharged. See id. at 7. The Account Value was Bally's property, and by alleging that State Farm deducted more than the Policy authorized or "transferred funds that it should not have," Bally had alleged conversion under California law. See id.

Third, and most relevant here, the Court held that State Farm was not entitled to summary judgment based on its theory that the Policy permits State Farm to consider unlisted factors when calculating the cost of insurance. See id. at 7–14. The Court applied California contract law and found that the "key phrase" in the Policy, "based on," was ambiguous. See id. at 8–9. State Farm argued that "based on" is a non-exclusive term, while Bally argued that "based on" connotes exclusivity. State Farm First Mot. for Summary Judgment at 14. The Court held that neither the "ordinary usage" of the words nor the Policy's context resolves the ambiguity (id. at 9–10), denying State Farm's argument that Bally's interpretation was unreasonable because it would prohibit State Farm from profiting under the Policy. See id. at 12–14.

In so holding, the Court found that State Farm did "not explain why a reasonable policyholder would conclude that State Farm must make a profit from the COI, specifically, rather than the Policy as a whole." Id. at 12–13. The Court also noted that "the [P]olicy offers State Farm other ways to make money." Id. Therefore, the Court found the phrase "based on" ambiguous, interpreted it in favor of the insured, and held that State Farm could only consider the enumerated factors (age, sex, and applicable rate class) in applying the Monthly COI Rates provision. See id. at 13. The Court denied State Farm's motion because it could not "conclude . . . as a matter of law [that] State Farm complied with the terms of the policy when it calculated the COI it deduced from policyholders' accounts." See id. at 14 (internal citation omitted).

### 3. Bally's motion for class certification

In April of 2020, the Court granted Bally's motion for class certification. See Order Granting Class Cert. (Dkt. 122). In support of its motion for class certification, Bally offered an expert report from actuary Scott J. Witt (Dkt. 93-2). Bally asserted that the report would "reliably calculate the allegedly improper charges for each Policy using State Farm's own documents and data." Order Granting Class Cert. at 3. In other words, pursuant to Bally's theory of liability— that State Farm developed "mortality rates" based on "age, sex, rate class, and policy year," but then "loaded" those rates with expense and profit charges—the model used the mortality rates to isolate the allegedly excessive cost of insurance loads and to calculate the damages for each policyholder. See id. at 3. State Farm moved to strike the report. Id. at 6. In granting class

certification, the Court conducted a preliminary Daubert analysis of the Witt report and found Witt reliable. See id. at 7–13. The Court found that the standardized Policy presented common issues of fact, even though policyholders had unique interactions with State Farm sales agents during the sign-up process. Id. at 15–16. Using the preponderance of the evidence standard, id. at 5, the Court certified the class as requested under Rule 23(b)(3), and certified the class as to Count IV only under Rule 23(b)(2), id. at 21.

### 4. Bally's motion for partial summary judgment and State Farm's second motion to strike

The class moved for partial summary judgment on October 26, 2020. See Class Mot. for Summary Judgment. In its motion, Bally argues that the Court's prior rulings entitle the class to summary judgment on (1) its breach of contract claim based on the Monthly COI Rates provision (Count I); (2) its conversion claim (Count III); (3) the class's request for declaratory judgment (Count IV); and (4) State Farm's statute of limitations defense. Id. at 1–2.[3] Bally did not move for summary judgment on Count II, the breach of contract claim based on the monthly expense charge. See generally Class Mot. for Summary Judgment.

In response, on January 27, 2021, State Farm filed its second motion to strike, requesting (1) that the Court strike portions of Bally's reply relating to "a new request for summary judgment on quantum, or amount of damages"; (2) that the Court strike the new expert report (Dkt. 173-2) (the "Witt Report") introduced in Bally's reply; (3) that the Court strike any portions of Bally's reply relying on or referencing the Witt Report; and (4) that the Court postpone consideration of summary judgment and grant State Farm relief under Rule 56(d). See State Farm Second Mot. to Strike (Dkt. 181) at 1–3. The Court DENIES State Farm's second motion to strike as MOOT because this Order resolves Bally's Motion for Partial Summary Judgment without relying on the

---

[3] The class also argues that the damages award levied against State Farm in Vogt requires this Court to award the class damages under the same methodology approved in that case. See Class Mot. for Summary Judgment at 11–15; Vogt v. State Farm Life Ins. Co., 963 F.3d 753, 763–64 (8th Cir. 2020). Additionally, the class argues that it prevails on State Farm's affirmative "setoff" defense, based on months when State Farm charged class members less than the amount authorized by the policy. See id. at 17–18. The Court does not consider these arguments here because they are better addressed in connection with State Farm's third motion to strike. The Court will adjudicate State Farm's third motion to strike at a later date.

United States District Court
Northern District of California

content that State Farm seeks to strike.

### 5. State Farm's second motion for summary judgment

State Farm filed its second motion for summary judgment on February 24, 2021. In that motion, State Farm argues that it should prevail on (1) both breach of contract claims (Counts I and II); (2) the conversion claim (Count III); and (3) the punitive damages issue. State Farm Second Mot. for Summary Judgment at 14–26, 26–30, 30–35.[4]

This Order resolves the cross-motions for summary judgment.

## II. LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Cattrett, 477 U.S. 317, 323 (1986). A genuine issue of fact is one that could reasonably be resolved in favor of either party. A dispute is "material" only if it could affect the outcome of the suit under the governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248–49 (1986).

"A moving party without the ultimate burden of persuasion at trial—usually, but not always, a defendant—has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment." Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000) (citing 10A Charles Alan Wright, Arthur R. Miller and Mary Kay Kane, Federal Practice and Procedure § 2727 (3d ed. 1998)). "In order to carry its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." Id. (citing High Tech Gays v. Defense Indus. Sec. Clearance Office, 895 F.2d 563, 574 (9th Cir.1990). "In order to carry its ultimate burden of persuasion on the motion, the moving party must persuade the

---

[4] State Farm also filed a third motion to strike, in which it argues for the exclusion of the opinion and methodology of Scott J. Witt, Bally's damages expert, contained at Dkt. 204-5 (the "Witt Rebuttal Report"). See State Farm Third Mot. to Strike (Dkt. 208) at 1. This Order does not resolve that motion.

court that there is no genuine issue of material fact." Id. (internal citation omitted). "If a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything." Id. at 1103 (internal citation omitted). If, however, a moving party carries its burden of production, the nonmoving party must produce evidence to support its claim or defense. See id. If the nonmoving party fails to produce enough evidence to create a genuine issue of material fact, the moving party wins the motion for summary judgment. See id. But if the nonmoving party produces enough evidence to create a genuine issue of material fact, the nonmoving party defeats the motion. See id.

## III. DISCUSSION

This Order discusses (A) Bally's two breach of contract claims, (B) Bally's conversion claim, and (C) State Farm's statute of limitations defense.[5]

### A. Breach of Contract Claims

The Court concludes that the Monthly COI Rates provision unambiguously permits State Farm to consider non-mortality factors in calculating the "applicable rate class" that State Farm later uses as one of three factors in determining an individual policyholders' monthly cost of insurance rate. See Policy at 10. Bally's contrary reading is not based in the text. See Bally Mot. for Partial Summary Judgment at 7–8. Nor is there evidence that any policyholders actually understood the Monthly COI Rates provision as Bally urges. State Farm's rate development process, during which it considered mortality factors as well as non-mortality factors, occurred two years before State Farm began marketing the Form 94030 policy, or selling it to any individual policyholder. See State Farm Second Mot. for Summary Judgment at 9 (citing Hendren Decl. ¶¶ 2, 5, 9–10, 15). To hold that the Monthly COI Rates provision prohibited State Farm from incorporating non-mortality factors into the years-earlier rate development process would "impose a liability on the insurer which it has not assumed." See Suarez v. Life Ins. Co. of North America, 206 Cal. App. 3d 1396, 1403 (1988); Foad Consulting Group, Inc. v. Azzalino, 270 F.3d 821, 831 (9th Cir. 2001). State Farm did not breach the contract with respect to the Monthly COI

---

[5] The Court does not rule on declaratory judgment at this time.

Rates provision.

However, the Court concludes that State Farm <u>does not prevail</u> in its motion for summary judgment as to Count II, based on the $5.00 "monthly expense charge." <u>See</u> Policy at 3. At best, it is ambiguous whether the Policy's identification of a $5.00 monthly expense charge works as a cap on monthly expenses, or whether State Farm may nonetheless charge policyholders for additional, unidentified monthly expenses. The evidence in the record does not resolve any ambiguity and, therefore, the Court does not enter judgment in State Farm's favor as to this second breach of contract claim.

The Court's full reasoning follows.

### 1. The Court's denial of State Farm's first motion for summary judgment does not preclude relief for State Farm here

As a preliminary matter, the Court must address the import of its previous summary judgment ruling. The "crux of the dispute" when State Farm filed its first motion for summary judgment was the meaning of the term "based on" in the context of the Monthly COI Rates provision. <u>Id.</u> at 8.[6] At that stage in the proceedings, to prevail, State Farm had to "demonstrate that the Policy [was] unambiguous in permitting consideration of unlisted factors." <u>Id.</u> State Farm argued that the words "based on," in the context of the Monthly COI Rates provision, connoted non-exclusivity. <u>See</u> State Farm First Mot. for Summary Judgment (Dkt. 63) at 15 (quoting <u>Scheenstra v. California Dairies, Inc.</u>, 213 Cal. App. 4th 370, 401 (2013)). The Court denied State Farm's motion, finding that "based on" was ambiguous in that provision because neither dictionary definitions nor "common usage" of the words established the meaning of the phrase. Order Denying Mot. for Summary Judgment at 8–10. The Court resolved the ambiguity in favor of the insured, and the case advanced. <u>See id.</u>

State Farm's argument in that motion is noteworthy. State Farm argued that it was unreasonable to interpret "based on" as connoting exclusivity because to do so would "prohibit

---

[6] Relatedly, the primary issue in <u>Vogt</u>, about which the parties have written a great deal, was the meaning of the phrase "based on." <u>See</u> <u>Vogt v. State Farm Life Ins. Co.</u>, 963 F.3d 753, 763–64 (8th Cir. 2020). Neither the district court nor the Eighth Circuit in <u>Vogt</u> meaningfully considered the meaning of the phrase "applicable rate class." <u>See id.</u>; <u>see also</u> <u>Vogt v. State Farm Life Ins. Co.</u>, 2018 WL 1955425, at *6 (W.D. Mo. Apr. 10, 2018).

State Farm from considering actuarially necessary variables in determining the non-guaranteed rates prior to Policy." State Farm First Mot. for Summary Judgment at 15–19. The Court rejected that argument, finding that "the [P]olicy offers State Farm other ways [besides the Monthly COI Rates provision] to make money," and that "the terms of the insurance policy at issue are so dense, a lay person would not understand that State Farm expected to derive profit from the COI." Id. Thus, the Court held that State Farm could consider only age, sex, and applicable rate class in determining each individual insured's monthly cost of insurance. Id. at 14. However, the Court did not interpret the phrase "applicable rate class" as part of its analysis.

Therefore, contrary to Bally's arguments, the Court's prior order did not "necessarily reject[]" State Farm's position here. See Bally Opp. at 1, 11–12. If the Policy allows State Farm to consider non-mortality factors in developing its "applicable rate class[es]," then no breach of the Monthly COI Rates provision occurred.

### 2. Contract Interpretation Law

Because this Court sits in diversity, the applicable substantive law is the law of California. 28 U.S.C. § 1332(d). Under California law, "[i]nterpretation of an insurance policy is a question of law and follows the general rules of contract interpretation." MacKinnon v. Truck Ins. Exch., 31 Cal. 4th 635, 647 (2003), as modified on denial of reh'g (Sept. 17, 2003). The goal of such interpretation is to "give effect to the 'mutual intention' of the parties." Id. (citing Cal. Civ. Code § 1636); see also Montrose Chemical Corp. v. Admiral Ins. Co., 10 Cal. 4th 645, 666 (1995). "Such intent is to be inferred, if possible, solely from the written provisions of the contract." MacKinnon, 31 Cal. 4th at 647 (citing Cal. Civ. Code § 1639). Thus, to interpret an insurance policy, courts first look to the "plain meaning" of the policy language. California Pac. Homes, Inc. v. Scottsdale Ins. Co., 70 Cal. App. 4th 1187, 1191–92 (1999). In assessing "plain meaning," courts interpret contractual provisions in their "ordinary and popular sense," unless "used by the parties in a technical sense or a special meaning is given to them by usage." Id. at 648 (internal citation and quotation omitted). "A policy provision will be considered ambiguous when it is capable of two or more constructions, both of which are reasonable." Waller v. Truck Ins. Exchange, Inc., 11 Cal. 4th 1, 18 (1995) (internal citation omitted). But language in a contract

10

must be interpreted as a whole and should not be interpreted as "ambiguous in the abstract." MacKinnon, 31 Cal. 4th at 648.

If a court finds a policy's text ambiguous, the provision is to be interpreted in the sense in which the promisor (insurer) reasonably believed at the time of making it that the promisee (insured) would have understood it. California Pac. Homes, Inc., 70 Cal. App. 4th at 1192 (citing Cal. Civ. Code, § 1649). The aim of courts' interpretive work is "to protect the objectively reasonable expectations of the insured." Id. To do so, courts look at the parties' extrinsic evidence. AIU Ins. Co. v. Superior Court, 51 Cal.3d 807, 823 (1990); Shell Oil Co. v. Winterthur Swiss Ins. Co., 12 Cal. App. 4th 715, 737 (1993). "[I]f a party's extrinsic evidence creates the possibility of ambiguity, a court may not rely on the text of the contract alone to determine the intent of the parties." Foad Consulting Grp., Inc. v. Azzalino, 270 F.3d 821, 828 (9th Cir. 2001).

Importantly, an insurance policy "should be read as a layman would read it and not as it might be analyzed by an attorney or an insurance expert." Crane v. State Farm Fire & Cas. Co., 5 Cal. 3d 112, 115 (1971). At the conclusion of all this analysis, if a court finds that both parties are equally responsible for causing the ambiguity, the provision will be construed in favor of the insured. California Pac. Homes, Inc., 70 Cal. App. 4th at 1192 (citing Montrose Chemical, 10 Cal. 4th at 667).

### 3. Breach of Contract – Monthly COI Rates Provision

The Court turns to Bally's first breach of contract claim, which is based on the Monthly COI Rates provision in the Policy. See Complaint ¶ 61 (alleging that State Farm determines monthly cost of insurance rates "inconsistent with the terms of the [Policy].").

#### a. Issue

State Farm argues that the plain text of the Monthly COI Rates provision governs. See State Farm Second Mot. for Summary Judgment at 17–25.[7] Under State Farm's reading, "the

---

[7] State Farm also offers several forms of extrinsic evidence to support its reading of this provision. See State Farm Second Mot. for Summary Judgment at 17–21. Bally opposes the Court's consideration of such evidence. See Bally Opp. at 20–25. The Court will not assess this evidence with respect to the Monthly COI Rates provision because it need not—the text unambiguously supports State Farm's interpretation. See MacKinnon, 31 Cal. 4th at 647.

relevant language . . . explains to each policyholder that the Insured's [cost of insurance] rate . . . will be 'based on' his or her individual characteristics . . . as determined for the Insured through the underwriting process." Id.  What the provision does not do, according to State Farm, is bind the insurer to a particular process it must follow in developing its underlying rates.  See id. at 21.  Additionally, because state regulators require California insurers to incorporate their operating expenses, capital reserve, and profits, among other things, into the cost of insurance rates in policies like the one at issue, State Farm submits that Bally's reading of the Policy makes no sense from a "regulatory and solvency perspective."  See id. at 23–24 (citing Reynolds Decl. at 29–30; Hudson Decl. ¶¶ 20, 103–06; Hendren Decl. ¶¶ 15, 24–36).  Moreover, according to State Farm, Bally has not offered any evidence to show that a single policyholder understood, or that an objective policyholder would have understood, the at-issue language to restrict State Farm in its rate development process.  See id. at 25.  Therefore, State Farm argues that it is entitled to summary judgment on the class's first breach of contract claim.

Bally responds first that the Court "already rejected" State Farm's arguments when it denied the insurer's first motion for summary judgment.  See Bally Opp. at 11.[8]  Bally next argues that the text governs and unambiguously supports her interpretation.  See id. at 14.  To this point, she argues that State Farm's reading of the Policy is "inconsistent with the plain language as a layperson would understand it" and, therefore, is unreasonable.  See id. at 14.  Bally maintains that a layperson reading the Monthly COI Rates provision would understand that the cost of insurance represents nothing more than the mortality-related "cost" State Farm incurred in insuring the policyholder.  See id. at 19 ("[a] reasonable policy owner would thus understand they have assumed risks related to State Farm's 'projected changes in mortality,' but there is no indication in the Policy's plain language that the policy owner is assuming risks stemming from State Farm's expenses, profitability, or any other unlisted factors included in the COI rates").  In other words, because "the COI rates provision does not say [that] the identified factors are merely used to select predetermined, loaded COI rates" for the insured, the provision restricts how State Farm may

---

[8] As explained above, the Court disagrees.

12

develop its rates in the first instance.  See id. at 14.[9]  Bally further argues that this case presents

materially similar issues to those in Vogt v. State Farm Life Ins. Co., 963 F.3d 753, 763–64 (8th

Cir. 2020), a challenge to State Farm's Form 94030 universal life insurance policy under Missouri

law.  See id. at 15–18.  Bally asserts that the court in Vogt "necessarily rejected [State Farm's]

interpretation [advanced herein] in concluding the COI rates provision could reasonably be read as

prohibiting State Farm from using unlisted factors when determining the COI rates."  Id. at 16.[10]

According to Bally, this Court should reach the same result.  Ultimately, Bally argues that State

Farm's interpretation is absurd because it would allow "consideration of unlisted factors" in any

universal life insurance policy.  Id. at 23 (citing Norem v. Lincoln Benefit Life Co., 737 F.3d

1145, 1150 (7th Cir. 2013)).  For all these reasons, Bally argues that she is entitled to summary

judgment on the first breach of contract claim.

### b.    Analysis

Bally is correct that the Policy's text controls, but she is incorrect that the text can

reasonably be read in her favor.  The Monthly COI Rates provision is not a promise to

policyholders about how State Farm will conduct its underlying rate-making process.  The

provision only promises policyholders how State Farm will assign them a cost of insurance rate—

by using three factors, one of which is applicable rate class.  There is no evidence that State Farm

did not keep that promise.  See State Farm Second Mot. for Summary Judgment at 19 ("Plaintiff

does not (and cannot) dispute that this process was used to select the cost of insurance rate for

each Insured, nor does she contend that State Farm ever charged more than the maximum cost of

insurance rate for any Insured.").

---

[9] Bally points, in particular, to two pieces of evidence: first, a universal life insurance policy
previously drafted by State Farm but using different language, and second, evidence of State
Farm's communications with customers wherein State Farm referred to cost of insurance charges
using particular language.  See id. (citing Witt Rebuttal Declaration (Dkt. 205-3) ¶ 10; see also id.
at 14 (citing Dkt. 204-6).  Bally introduces the second life insurance policy to suggest that State
Farm knew how to speak clearly about cost of insurance rates but chose not to.  The Court does
not consider this evidence because the text controls; even so, that the contract "could be clearer"
does not create an ambiguity, see Erickson v. Aetna Health Plans of Cal., Inc., 71 Cal. App. 4th
646, 658 (1999), nor speak to how a reasonable layperson reads the Policy.
[10] For the reasons discussed above, the Court does not agree with Bally's view of the district court
and appellate decisions in Vogt on this point. See Vogt, 963 F.3d at 763–64; Vogt, 2018 WL
1955425, at *6.

The Court's analysis begins with the "plain meaning" of the Monthly COI Rates provision. See California Pac. Homes, Inc., 70 Cal. App. 4th at 1191–92. The text governs if it is "clear and explicit" and "does not involve an absurdity." See Cal. Civ. Code §1638. In analyzing the text, courts are to consider the context of the contract as a whole and should not make "a fortress out of the dictionary." See Russian Hill Improvement Assn. v. Board of Permit Appeals, 66 Cal. 2d 34, 42 (1967) (internal citation and quotation omitted). The Monthly COI Rates provision states:

> Monthly Cost of Insurance Rates. These rates for each policy year are based on the Insured's age on the policy anniversary, sex, and applicable rate class. A rate class will be determined for the Initial Basic Amount and for each increase. The rates shown on page 4 are the maximum monthly cost of insurance rates for the Initial Basic Amount. Maximum monthly cost of insurance rates will be provided for each increase in the Basic Amount. We can charge rates lower than those shown. Such rates can be adjusted for projected changes in mortality but cannot exceed the maximum monthly cost of insurance rates. Such adjustments cannot be made more than once a calendar year.

Policy at 10.

This provision promises that an individual policyholder's monthly cost of insurance rate, which State Farm will deduct from that policyholder's Account Value as part of a "monthly deduction," will be based on age, sex, and applicable rate class. Id. In addition, the Policy defines "rate class" as "[t]he underwriting class of the person insured." Policy at 5; see California Pac. Homes, Inc., 70 Cal. App. 4th at 1191–92. State Farm advances two arguments as to why this language settles the matter. First, because the definition of "rate class" expressly encompasses the term "underwriting," the phrase "based on . . . an insured's applicable rate class" would put a reasonable policyholder on notice that the Monthly COI Rates provision speaks to the underwriting process. See Policy at 5; State Farm Second Mot. for Summary Judgment at 18 ("An individual has no 'applicable rate class' until he or she undergo[es] the underwriting process."). Second, because the provision points to a chart of maximum rates (see Policy at 4) that itself is organized by age, sex, and already-developed rate classes, the provision can only reasonably be read to "refer[] to the process of selecting an individual's rates from previously established rates" rather than to the process of developing rates in the first instance. See State Farm Second Mot. for Summary Judgment at 18.

The Court agrees with State Farm. Bally fails to persuade the Court that a layperson could

14

review the Policy, and the table of maximum rates, and thereafter reasonably conclude that State

Farm was bound for each policy year to develop its cost of insurance rates in a specific manner,

given that the Policy reflects that the applicable rate classes had already been developed. The

provision makes no promises about how the "applicable rate class" will be developed, and

certainly never promises that those rates will only be developed using mortality factors. Bally

suggests that because the provision states that cost of insurance rates "can be adjusted for

projected changes in mortality," the provision means that State Farm may only consider

"mortality" factors in the setting of cost of insurance rates. See Bally Opp. at 16. Were this the

only sentence before the Court, Bally's interpretation might be reasonable. But Bally's focus on

the phrase "adjusted for projected changes in mortality" ignores the larger context of the Policy.

Moreover, as a matter of common sense, it is unreasonable for anyone to believe that "mortality

factors" are the only input into the rate development process, because age, sex, and all other

"mortality factors" have to be numerically translated for State Farm to arrive at a cost of insurance

rate expressed in dollars.

Accordingly, State Farm's motion for summary judgment is GRANTED and the class's

motion for summary judgment is DENIED as to the first breach of contract claim (Count I).

### 4. Breach of Contract – Monthly Expense Charge

The Court next turns to Bally's second breach of contract claim, which is based on the

monthly expense charge in the Policy. See Bally Opp. at 26–27; State Farm Reply at 17;

Complaint at 12. State Farm moves for summary judgment on this claim, see State Farm Notice

of Second Mot. for Summary Judgment (dkt. 191) at 1, while Bally does not, see generally Class

Mot. for Summary Judgment. Bally alleges that—regardless of whether State Farm would

otherwise be permitted to include expenses in its calculation of applicable rate classes (and

therefore the cost of insurance rates)—by identifying a $5 monthly expense charge, State Farm

implicitly promised policyholders that State Farm would only deduct from their Account Values

five dollars per month in expenses, and State Farm breached that promise by charging

policyholders for additional, unidentified expenses in connection with the cost of insurance rate.

See Complaint ¶¶ 66, 67.

### a. Issue

State Farm argues that the Policy did not say "what factors were used in deciding on th[e] amount [of the monthly expense charge], nor d[id] it say that the charge captures all expenses incurred in supporting the Policy." <u>See</u> State Farm Reply at 17. Thus, according to State Farm, for the Court to hold against the insurer on this issue, it would have to "impermissibly . . . rewrite the Policy." <u>See</u> <u>id.</u>[11]

Bally responds that a reasonable consumer would have understood that, when State Farm specified that "[t]he monthly expense charge is $5.00," the total of all fixed, monthly expenses collected under the Policy would not exceed $5.00. <u>See</u> Bally Opp. to State Farm Second Mot. for Summary Judgment at 26–27 (citing Policy at 3, 9). In other words, a reasonable person would "expect an insurance policy with separately identified charges to be a full disclosure of those charges the insurer will assess without the policy owner's further consent." <u>Id.</u> at 19.

### b. Analysis

The Court looks to the plain text of the Policy and to the extrinsic evidence submitted by State Farm in analyzing this provision.

### i. Plain Text

The Policy does not define the term "monthly expense charge," nor does it explain the basis for the charge.[12] <u>See</u> Policy at 3. Nothing in the dictionary definition or common usage of "monthly," "expense," or "charge" clarifies whether a policyholder should understand such a charge as a cap on all monthly expenses, or merely a demarcated charge for some expenses that does not preclude State Farm from deducting other fixed, monthly expense charges under the

---

[11] State Farm also argues that "if Count I fails, Count II fails as well." State Farm Reply at 17. Not so. Bally can succeed on the second claim (that the monthly expense charge is an independent promise that State Farm will not charge policyholders for any additional, unidentified expenses elsewhere in the Policy) even if she does not succeed on the first (that the language of the Monthly COI Rates provision itself prevents State Farm from including expenses, and profits, in its cost of insurance rates).

[12] Even counsel for State Farm, at oral argument, was somewhat vague in explaining what the $5.00 monthly expense charge covers. <u>See</u> Transcript of April 1, 2021 Hearing (Dkt. 217) at 69:18 ("it's a fee"); <u>id.</u> at 69:20–21 ("[T]hink of it as stamps."); <u>id.</u> at 69:22–23 ("its origin, I think, is in covering costs that are not buried depending on who the policyholder is."); <u>id.</u> at 71:5–6 ("It's an expense charge that goes into the rate structure."). This was not a clear articulation of the purpose of the monthly expense charge nor whether/how it is distinct from the expenses collected under the Policy's cost of insurance rate.

contract. Certainly, the generic use of the word "expense" does not make clear to consumers what kind of expenses (e.g., regulatory, salaries, administrative, etc.) State Farm collects through this charge, nor does it limit the expenses at issue. Had State Farm called it something else— something generic but unrelated to expenses, like a $5.00 "monthly fee," or something relating to expenses but limited in scope, like a $5.00 "monthly stamp expense charge"—State Farm would be on firmer footing. Because State Farm called it a "monthly expense charge," policyholders could reasonably understand it to cover all monthly expenses. Words matter, and State Farm is the party that chose the words.

Indeed, one court has found that the use of this same phrase left insurance customers to assume that the express monthly charge applied to all "expenses" covered under the contract. See Bezich v. The Lincoln Nat'l Life Ins. Co., No. 02CO1-0906-PL-73 (Ind. Cir. Ct. Jan. 14, 2013) (overturned on other grounds) ¶ 13.[13] In addition, the district court in Vogt concluded that State Farm breached the monthly expense charge by charging policyholders not only the five dollars a month in expenses identified in the monthly expense charge, but "additional, unspecified expenses that were factored into the COI rates." See Vogt, No. 16-cv-04170-NKL (W.D. Mo. June 2, 2018), dkt. 335 (Order on Summary Judgment) ("As a matter of law, this violated the language in the Policy stating that the expense charge would be $5.00 each month.").

The context here is also significant. In addition to the monthly expense charge, this Policy specifically identifies a 5% processing charge on each premium payment, the imposition of "surrender charges" when one terminates her policy, and a charge for each rider added to a policy. See Policy at 4, 5, 9, 10. This enumerated list of charges was what caused the Court to earlier determine that "it would not be unreasonable for a policyholder to conclude that State Farm was making a profit from the Policy without necessarily concluding that it was also doing so from the COI calculation." See Order Denying State Farm Mot. for Summary Judgment at 13. Moreover,

---

[13] State Farm argues that Bezich is irrelevant because it involved "materially different policy language." See State Farm Reply at 17 n.8 (citing No. 02CO1-0906-PL-73 ¶ 9, 13). But the policy in Bezich was similar to Policy here. If anything, the insurer's drafting in Bezich was more specific than State Farm's drafting here. See Bezich, No. 02CO1-0906-PL-73 ¶ 9, 13 (listing a $6.00 monthly expense charge in a section entitled "Selected Expense Charges"). And the court in Bezich still found the expense charge ambiguous as a whole. See id.

a $5.00 monthly charge—or $60.00 a year—is not so low a sum that a reasonable policyholder would understand it to be inadequate to cover all of State Farm's expenses. This is particularly true in light of the Policy's separate 5% charge on premium payments. While a policyholder might think it odd for State Farm to charge a flat, one-size-fits-all $60 a year for expenses for all policies, big and small, the 5% premium charge means that State Farm will charge policyholders more money when dealing with bigger policies, and less money when dealing with smaller policies. That seems a more logical business model.

The class's interpretation, that "[t]he monthly expense charge is $5.00" means that policyholders will not be charged any more than five dollars a month in expenses, is therefore entirely reasonable, and possibly the only reasonable reading. See Policy at 3. State Farm argues, though, that the monthly expense charge merely identifies a $5.00 "monthly expense charge" for certain expenses, and does not preclude the collection of additional expenses elsewhere. State Farm Reply at 17. Assuming for the sake of argument that this interpretation is also reasonable, and that the text is therefore ambiguous, the Court looks next to the extrinsic evidence.

### ii. Extrinsic Evidence

The extrinsic evidence submitted by State Farm does not resolve any ambiguity in the text. To begin, the Court will only consider evidence that bears on what a reasonable policyholder would understand at the time of contracting. See California Pac. Homes, Inc., 70 Cal. App. 4th at 1192.[14] Evidence of State Farm's regulatory compliance or of industry custom is irrelevant. See State Farm Second Mot. for Summary Judgment at 19–21. However, evidence of representations made by State Farm's agents and employees to customers during the sales process is relevant. See

---

[14] State Farm submits that all of its evidence (including evidence of industry custom and regulatory compliance) supports a reasonable belief on its behalf that "policyholders accurately understood the Policy." See id. at 18–19. But the idea behind interpreting a policy "in the sense in which the promisor believed, at the time of making it, that the promisee understood it" is to "protect[] not the subjective beliefs of the insurer but, rather, 'the objectively reasonable expectations of the insured.'" Bank of the West v. Superior Court, 2 Cal. 4th 1254, 1264–65 (1992). Moreover, State Farm submits no evidence that policyholders knew of industry custom or State Farm's regulatory compliance or, more importantly, that any such knowledge informed policyholders' understanding of the monthly expense charge. Put another way, it would not be reasonable for State Farm to believe that policyholders understood the monthly expense provision based on industry custom or regulatory compliance.

id. at 18–19 (citing Dahlen Decl. (Dkt. 198-3); Lopez Decl. (Dkt. 194)). State Farm argues that its agents "explained the [Policy's] . . . key features and charges," the underwriting process, and State Farm's "solvency considerations" to consumers during the sales process. See id. at 18–19, 24.

But State Farm's declarations do not help it. First, the declarations are contradictory. They show, on the one hand, that some prospective customers—those who asked—were informed that State Farm factored business expenses into development of the cost of insurance rates. See Dahlen Decl. ¶ 8 ("When customers asked me about the purpose of the cost of insurance charge, I would explain to them that the cost of insurance charges . . . provided needed revenues so that the company would be able to cover [its] expenses and other needs so that it could run the business and meet its obligations under the Policy."). On the other hand, the evidence also shows that many policyholders were not informed about the nature of the cost of insurance charge at the time of contracting. See Lopez Decl. ¶ 10 ("[C]ustomers shopping for life insurance do not regularly ask . . . about the COI charge in the initial sales meeting . . . it is more common for the COI charge to be discussed with customers after receipt of the first annual notice."). This contradictory evidence cannot establish that a reasonable policyholder would understand the Policy in the manner that State Farm suggests.

Second, in any event, State Farm's key witness, Reginald Dahlen, cannot speak to the understanding of the entire class because his responsibilities are only regional and, as such, his testimony does not capture what all class members were told during the sales process. See Dahlen Decl. ¶ 1; Transcript of April 1, 2021 Hearing at ¶ 21:1–19; see also Order Granting Class Cert. at 19–20 (finding individualized questions of proof did not predominate). Third, even if Mr. Dahlen did sit in on sales conversations with each of the class members here—which State Farm does not begin to argue—it is not clear that he explained to them the interplay between the "monthly expense charge" and the cost of insurance rate. That is, while he may have informed customers in his region, when they asked, that the cost of insurance rate was designed, in part, "to cover the company's operating expenses," there is no evidence that he explained how the monthly expense charge worked, or whether the expenses collected through the cost of insurance were different from those collected through the monthly expense charge. See Dahlen Decl. ¶ 8. Fourth,

Dahlen's testimony goes to the subjective understanding of certain customers, not what a "reasonable policyholder" would understand from the Policy and all accompanying exhibits and appendices.[15]

The Court's focus is on the "objectively reasonable expectations of the insured." See California Pac. Homes, Inc., 70 Cal. App. 4th at 1192. State Farm's evidence does not meaningfully address that concern. After reviewing the extrinsic evidence, the "monthly expense charge" is at best ambiguous. The Court in such circumstances is to construe the provision in favor of the insured. See id. ("Should [interpreting the ambiguous provision in the sense the insurer believed the insured would have understood it] fail to resolve the ambiguity[,] the provision must be construed against the party who caused the ambiguity to exist in an effort to protect the objectively reasonable expectations of the insured. Finally, if the ambiguity cannot be resolved by that means[,] the provision must be construed against the insurer.") (citing Montrose Chemical, 10 Cal. 4th at 667).

Accordingly, the Court DENIES State Farm's motion for summary judgment with respect to the second breach of contract claim (Claim II).

### B.    Conversion

The Court next turns to Bally's third claim, which asserts that State Farm's conduct in connection with the cost of insurance rates constitutes conversion under California law. See Complaint ¶¶ 70, 71 (alleging that the class "had a property interest in the funds [State Farm] deducted from their Account Values in excess of the amounts permitted by the terms of the Policies" and that State Farm "intentionally and substantially interfered with that property interest," "misappropriat[ing] or misappl[ying] specific funds . . . without authorization or consent and in hostility to the rights of" the class.).

#### 1.    Issue

State Farm argues that it is entitled to summary judgment on the conversion claim for four

---

[15] Moreover, the Policy was, by its express terms, "fully integrated." See Policy at 11 ("The Policy is the entire contract."). The integrated nature of the contract supports Bally's argument that a reasonable layperson would rely on the plain language of the Policy rather than the representations of sales agents.

United States District Court
Northern District of California

reasons: (1) the Policy authorized the monthly cost of insurance charge; (2) Bally does not allege the violation of an independent tort duty, which is required to establish conversion; (3) Bally has not alleged that State Farm's alleged wrongdoing was "intentional"; and (4) Bally has not established an "identifiable sum of money" converted. See State Farm Second Mot. for Summary Judgment at 26–30. The thrust of State Farm's argument is that the conversion claim fails because it "rel[ies] on the same alleged facts" and "seek[s] the same damages . . . already claimed in [Bally's] companion contract cause of action." See id. at 27 (citing Env't Furniture, Inc. v. Bina, Case No. CV 09-7978 PSG, 2010 WL 5060381, at *3 (C.D. Cal. Dec. 6, 2010) (internal quotation omitted). In other words, because Bally has "fail[ed] to provide any evidence that rises beyond the mere breach of a contract[,]" she has not established conversion. See id. (citing Elrich v. Menezes, 21 Cal. 4th 543, 553–54 (1999)).

Bally responds that State Farm did have "an independent duty in tort not to take more of policy owners' money than it was authorized to take." Bally Opp. at 27–29 (citing Expedited Packages, LLC v. Beavex Inc., Case No. CV 15-00721 MMM, 2015 WL 13357436, at *3 (C.D. Cal. Sept. 10, 2015), and Textainer Equip. Mgmt. (U.S.) Ltd. v. TRS Inc., Case No. C 07-01519 WHA, 2007 WL 1795695, at *3 (N.D. Cal. June 20, 2007). Additionally, she argues that policyholders had an independent "property interest" in their Account Values that exists outside of the breach of contract claim. See id. Bally also argues that she need not allege "improper intent" because, in California, "conversion is a strict liability tort." See id. (internal citation omitted).

### 2. Analysis

California courts follow the economic loss rule, which generally holds that a person may not recover in tort for a breach of contract. See Stop Loss Ins. Brokers, Inc. v. Brown & Toland Med. Grp., 143 Cal. App. 4th 1036, 1041 (2006) (internal citation and quotation omitted). This is true "except when the actions that constitute the breach violate a social policy that merits the imposition of tort remedies." Id. In other words, a breach of contract becomes tortious "only when it also violates a duty independent of contract law." Erlich v. Menezes, 21 Cal. 4th 543, 551 (1999)). The mere negligent breach of a contract is not an "independent" tort. See id. at 552; Taylor v. Forte Hotels Int'l, 235 Cal. App. 3d 1119, 1124 (1991) ("Because the act must be

knowingly done, 'neither negligence, active or passive, nor a breach of contract, even though it result in injury to, or loss of, specific property, constitutes a conversion.'"). Id.

For this reason, in California, breaches of insurance contracts are typically only found to have a tortious element when the implied covenant of good faith and fair dealing is breached. See id. at 552–53. The breach of the implied covenant "involves something beyond breach of the contractual duty itself . . . [it] implies unfair dealing rather than mistaken judgment." Careau & Co. v. Sec. Pac. Bus. Credit, Inc., 222 Cal. App. 3d 1371, 1394 (1990). In the context of an insurance contract, the covenant requires an insurer to "act fairly and in good faith in discharging its contractual responsibilities." Id. (citing California Shoppers, Inc. v. Royal Globe Ins. Co., 175 Cal. App. 3d 1, 54 (1985)). Thus, to prevail on her conversion claim, Bally must show not "an honest mistake, bad judgment or negligence but rather . . . a conscious and deliberate act" which deprived Bally of her bargained-for rights under the contract. See id. Bally has not done so.

Under the Policy, policyholders are the owners of their Account Value. See Policy at 5. There is no doubt that they have a possessory interest in the funds at stake. But the Account Value, held in trust by State Farm on behalf of policyholders, is still a creature of contract: it does not exist independently of the Policy. Even if State Farm breached the Policy by taking more expenses from the Account Value than it promised to, this would not, alone, establish conversion.

State Farm submits evidence that its agents discussed with some policyholders the mechanics of the cost of insurance charge and that it told some customers that solvency was a factor in developing its rates. See Dahlen Decl. ¶¶ 6–7, 14, 19; Lopez Decl. ¶¶ 6–9, 11–12. Additionally, State Farm submits evidence that it complied with industry custom and regulatory guidance in issuing the Policy. See Hendren ¶¶ 6, 10, 17, 19–26; Reynolds at 5; Hudson ¶¶ 72–73, 82. Further, State Farm credibly asserts that it genuinely believed its interpretation of the Policy was valid. See State Farm Second Mot. for Summary Judgment at 32 (citing Norem, 737 F.3d at 1147; Mai Nhia Thao v. Midland Nat. Life Ins. Co., 549 F. App'x 534, 538 (7th Cir. 2013)). The Court is thus persuaded that there was no intentional wrongdoing by State Farm.

Bally cites two cases applying California law for the proposition that State Farm owed her an "independent duty" outside of the four corners of the Policy that entitles her to relief here. See

Expedited Packages, 2015 WL 13357436, at *3; Textainer Equip. Mgmt. (U.S.) Ltd., 2007 WL 1795695, at *3.[16] But these cases do not, without more, salvage Bally's conversion claim. In Textainer, where the evidence showed that the defendant had sold certain container units (property belonging to plaintiff under the contract) to a third-party, the court found that the plaintiff's claim for conversion survived the defendant's motion to dismiss because there had been some level of "fraud and dishonesty" on behalf of the defendant. 2007 WL1795695, at *4–5 ("Textainer had no reason to enter into a contract believing that defendants would sell the containers and then conceal their actions."). Likewise, in Expedited Packages, where a group of plaintiffs agreed to sell defendant their Arizona and Northern California routing business, the defendant allegedly failed to comply with the agreement and, thereafter, "continued to service and bill plaintiffs' customer, [but] refused to pay plaintiffs the amount owed under the parties' agreement." Id. at *1–2. The district court granted the defendant's motion to dismiss without prejudice and found the economic loss doctrine did not bar plaintiff's conversion claim. See id. at *3. Here, unlike in Textainer and Expedited Packages, Bally has not demonstrated that State Farm engaged in any actual "fraud or dishonesty." Her tort claim essentially amounts to one for mere "negligent breach of contract." See Erlich, 21 Cal. 4th at 551.

Accordingly, the Court GRANTS State Farm's motion for summary judgment and DENIES the class's motion for summary judgment with respect to the conversion claim (Count III).[17]

## C.    Statute of Limitations Defense

Finally, the Court turns to State Farm's statute of limitations defense.

---

[16] Bally's other authority on this point either presents different factual scenarios or applies the law of different states, and is, therefore, inapposite. See Schulz v. Cisco Webex, LLC, Case No. 13-cv-04987-BLF, 2014 WL 2115168, at *6 (N.D. Cal. May 20, 2014) (denying a negligence claim based on the same facts as a breach of contract claim); Schneider v. Bank of Am. N.A., Case No. S-11-2953 LKK,WL 2118327, at *13 (E.D. Cal. May 21, 2014), (resolving a mortgage dispute around the misuse of funds in an escrow account, not an insurance contract); Taylor v. Midland Nat'l Life Ins. Co., Case No. 4:16-cv-00140-SMR-HCA, 2016 WL 9454075, at *4–5 (S.D. Iowa July 29, 2016) (applying Iowa and Virginia law); Cook v. John Hancock Life Ins. Co., Case No. 7:12-cv-00455, 2015 WL 178108, at *20 (W.D. Va. Jan. 14, 2015) (applying Virginia law).
[17] Because Bally's conversion claim fails, her demand for punitive damages necessarily fails as well. See Mason v. Mercury Cas. Co., 64 Cal. App. 3d 471, 474–75 (1976). The Court therefore GRANTS summary judgment to State Farm with respect to punitive damages.

### 1. Issue

State Farm argues that because policyholders were given both constructive and actual notice of the cost of insurance charge (and its inclusion of business expenses) more than four years before Bally filed suit, California's statute of limitations bars the class's breach of contract claims. See State Farm Opp. at 31–33 ("State Farm's annual notices provided detailed summaries of cost of insurance charges and advised policyholders to 'consider requesting more detailed information about [their] [policies] to understand how it may perform in the future.'"); id. (citing Dahlen Decl. ¶ 6; Lopez Decl. ¶¶ 10–11) ("face-to-face agency process gave customers extensive opportunities to ask questions about how the Policy functioned and how any charges would be determined.") (constructive notice); id. (citing Dahlen Decl. ¶¶ 14, 19) ("State Farm agents described the cost of insurance rate and charges, and explained that one function of the cost of insurance charge . . . is to . . . recover expenses.") (actual notice).  Additionally, State Farm argues that each class member had, and failed to fulfill, a "duty" to read through the Policy and related documents which, according to State Farm, gave ample notice of the expenses included in the monthly cost of insurance rates.  See id. at 33–34.[18]

Bally counters, first, by arguing that the Court already decided the statute of limitations issue in her favor when it found at class certification that policyholders were given neither actual nor constructive notice of their claims.  See Bally Mot. for Partial Summary Judgment at 9–10; Bally Reply at 19–20; Bally Opp. to Mot. for Class Cert. (Dkt. 108) at 4–5, 7–18.  Second, with respect to State Farm's "duty" argument, she argues the class had "'no duty . . . to make an inquiry' whether State Farm was surreptitiously loading its COI rates with expenses and profits not disclosed in the Policy."  See Bally Reply at 20.  Third, she pushes back against State Farm's

---

[18] State Farm also briefly presses a due process argument.  See id. at 33.  Essentially, State Farm argues that if the Court had granted summary judgment for the class on the statute of limitations issue at the class certification stage, the Court would have violated State Farm's due process rights, because State Farm would have missed an "opportunity to be heard" and to "present every available defense."  See id. (internal citations and quotation omitted).  But the Court did not grant summary judgment in favor of the class at class certification.  All that the Court said regarding the statute of limitations then was that, based on the evidence then provided, there was "nothing to indicate that individual statute-of-limitations issues would predominate so as to make class certification impractical or inappropriate."  See Order Granting Class Cert. at 20 (citing Vogt, 2018 WL 1955425, at *6).

claim that Bally cannot "make a classwide summary judgment showing" on the issue of notice, taking the position that State Farm "must prove its own defense." See Bally Reply at 21 n.8 (citing State Farm Opp. at 32–33). Bally further argues that State Farm's evidence does not show that a reasonable policyholder would have been "'on notice that State Farm was considering unlisted variables in calculation [of] the COI.'" Id. at 20 (citing Order Denying Mot. for Summary Judgment at 6).

### 2.    Analysis

The statute of limitations for breach of contract in California is four years. Cal. Code Civ. Proc. § 337(1). Under the "discovery rule," accrual of a cause of action is tolled until "the plaintiff discovers or should have discovered [through reasonable diligence] all facts essential to his cause of action." Apr. Enterprises, Inc. v. KTTV, 147 Cal. App. 3d 805, 826 (1983) (quoting Leaf v. City of San Mateo, 104 Cal. App. 3d 398, 407 (1980)). Therefore, to qualify for tolling, a plaintiff whose complaint is time-barred on its face must plead facts to show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence. See Grisham v. Philip Morris U.S.A., Inc., 40 Cal.4th 623 (2007).[19]

This Court has twice held there was no basis to conclude that any class members had actual or constructive notice that State Farm calculated the monthly cost of insurance rate "based on" unlisted factors. See Order Denying State Farm Mot. for Summary Judgment at 6; also Order Granting Class Cert. at 19. The Court also previously held that the class had no duty to make an inquiry as to whether expenses were included in the cost of insurance calculation. See Order

---

[19] State Farm references Fox v. Ethicon Endo-Surgery, Inc., 35 Cal. 4th 797, 808 (2005), in arguing that California has "specific burden shifting rules" that place the burden on Bally to produce evidence of class members' lack of understanding of the Policy. See State Farm Opp. at 32, 34. All that Fox adds to Grisham is that, "[i]n assessing the sufficiency of the allegations of delayed discovery, the court places the burden on the plaintiff to 'show diligence'; 'conclusory allegations will not withstand demurrer.'" Id.; see also Plumlee v. Pfizer, Inc., 664 F. App'x 651, 653 (9th Cir. 2016); NBCUniversal Media, LLC v. Super. Ct., 225 Cal. App. 4th 1222, 1232 (2014). But the time for a demurrer has come and gone, and Bally did adequately allege diligence in the complaint. See, e.g., Complaint ¶ 43 ("The nature of Defendant's conduct is such that Plaintiff and each member of the Class would be unaware that Defendant was engaging in wrongdoing. . . ."); id. ¶ 45 ("Plaintiff did not discover, and exercising reasonable diligence could not have discovered, the facts establishing Defendant's breaches or the harm caused thereby. Plaintiff did not learn of Defendant's breaches of the Policy supporting her claim until approximately July 2018, when she engaged counsel.").

1  Denying State Farm Mot. for Summary Judgment at 6.  Today, although State Farm has submitted

2  new evidence in support of its defense, the Court concludes the same.

3      Contrary to State Farm's assertions, for the purposes of summary judgment, Bally need not

4  submit evidence to refute a defense that State Farm has failed to establish.  See Devereaux v.

5  Abbey, 263 F.3d 1070, 1076 (9th Cir. 2001) ("point[ing] out that there is an absence of evidence"

6  is all that is required for a plaintiff to prevail at summary judgment on defendant's affirmative

7  defense).  Moreover, class members had no duty to inquire into the calculations behind State

8  Farm's cost of insurance rates because, as explained above, a reasonable policyholder could

9  understand that the cost of insurance rate here did not include expenses.  See Baker v. Beech

10  Aircraft Corp., 39 Cal. App. 3d 315, 321–22 (Ct. App. 1974).  Given this showing and the state of

11  the law, the burden falls on State Farm to produce evidence to support its defense.  See id.

12      So the Court turns to State Farm's evidence.  State Farm submits, as it did at the class

13  certification stage, that its annual notices "provided detailed summaries of cost of insurance

14  charges" such that policyholders were on actual notice that the cost of insurance included

15  expenses.  See State Farm Opp. at 33.  This is incorrect.  The annual notices disclosed the

16  applicable cost of insurance charge to a customer for a given year, but they presented the cost of

17  insurance rate in a lump sum with no breakdown of inputs, much less a line item listing expenses.

18  See, e.g., Dkt. 63-12 (Bally Annual Notices) at 2.  State Farm also argues that members of the

19  class were on constructive notice because the notices "advised policyholders to 'consider

20  requesting more detailed information about your Policy to understand how it may perform in the

21  future.'"  See State Farm Opp. at 33 (citing Dkt. 63-11 at 5).  But meek advice to "consider"

22  requesting "more detailed information" about the Policy and its future "perform[ance]"

23  communicates nothing about the cost of insurance rates specifically.  Nor would such language

24  cause a reasonable policyholder to conclude that those rates incorporated State Farm's business

25  expenses.[20]  The annual notices sent to policyholders did not constitute actual or constructive

26

27  ───────────────
   [20] For this reason, too, State Farm's argument that the class "is presumed to have read [the Policy

28  documents] and to understand [their] contents" is unavailing.  See State Farm Opp. at 34 (internal
   citation omitted).

notice. Nor did the newly submitted evidence regarding the sales process. See Dahlen Decl. ¶ 6; Lopez Decl. ¶¶ 10–11. Such evidence is insufficient for all of the reasons explained above.

In summary, class members failed to discover any breach of contract, not because of a lack of diligence, but because the Policy was at best ambiguously drafted and because the nature of the harm was such that it was not obvious to policyholders. State Farm's extrinsic evidence does not show that State Farm ever put policyholders on notice.

Accordingly, the Court GRANTS Bally's motion for summary judgment with respect to State Farm's statute of limitations defense.

## IV.    CONCLUSION

For the foregoing reasons, the Court DENIES the class's motion for summary judgment on the breach of contract claim based on the Monthly COI Rates provision (Count I) and on the claim for conversion (Count III). The Court GRANTS State Farm's motion for summary judgment with respect to these same claims. The Court GRANTS summary judgment to the class on State Farm's statute of limitations defense. And the Court DENIES State Farm's motion on the breach of contract claim based on the monthly expense charge (Count II).

In the normal course, the Court would expect the class to file a motion for partial summary judgment on Count II in response to this Order. Consistent with Olean Wholesale Grocery Coop., Inc. v. Bumblebee Foods, LLC, __ F.3d __, 2021 WL 1257845 (9th Cir. Apr. 6, 2021), and in light of the Court's rulings here, any such motion must be accompanied by a damages model demonstrating what recovery would follow should the class prevail on Count II.[21] The class must demonstrate how damages could be calculated on a classwide basis. At that point, the Court will determine if class treatment remains appropriate. The Court will not entertain a separate motion to decertify before the Class has submitted a damages model in connection with any subsequent

//

//

//

_____

[21] The class's damages model up until this point has been based in large part on the theory that State Farm breached the Monthly COI Rates provision under Count I.

motion for partial summary judgment on Count II.

**IT IS SO ORDERED.**

Dated: April __28__, 2021.



CHARLES R. BREYER
United States District Judge