**GIRARD SHARP LLP**
Daniel C. Girard (State Bar No. 114826)
dgirard@girardsharp.com
Jordan Elias (State Bar No. 228731)
jelias@girardsharp.com
601 California Street, Suite 1400
San Francisco, California 94108
Tel:   415-981-4800
Fax:   415-981-4846

[Additional counsel appear on signature page]

*Attorneys for Plaintiff Elizabeth A. Bally*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| ELIZABETH A. BALLY, Individually and On Behalf Of All Others Similarly Situated,<br><br>       Plaintiff,<br><br>   vs.<br><br>STATE FARM LIFE INSURANCE COMPANY,<br><br>       Defendant. | Case No.: 3:18-cv-04954-CRB<br><br>*Assigned to the Hon. Charles R. Breyer*<br><br>**PLAINTIFF ELIZABETH BALLY'S MOTION FOR LEAVE TO FILE A MOTION FOR RECONSIDERATION OF ORDER ON PARTIES' CROSS-MOTIONS FOR SUMMARY JUDGMENT ON COUNT I OF PLAINTIFF'S COMPLAINT** |

Pursuant to Civil Local Rule 7-9(b)(3), Plaintiff Elizabeth Bally respectfully seeks leave to file a motion for reconsideration of the portion of the Court's order denying Plaintiff's motion for summary judgment in favor of the Class for State Farm's breach of the Policy's cost of insurance ("COI") rates provision at Count I of the Complaint and granting State Farm's motion for summary judgment on that claim, Dkt. 222 (the "Order"). Plaintiff brings this motion shortly after the Court issued its Order, and thus has shown reasonable diligence in seeking leave to file her motion for reconsideration. *See* Civ. L.R. 7-9(b). Plaintiff respectfully submits the motion is warranted because the Court's interpretation of the Policy's COI rates provision was premised on a "manifest failure" to consider undisputed material facts that were presented to the Court in the parties' briefing of this issue. *See* Civ. L.R. 7-9(b)(3). Those facts would have justified a ruling in Plaintiffs' favor.

## ARGUMENT

For summary judgment, the issue on Count I is whether State Farm has shown, as a matter of law, that it is authorized to deduct profits and expenses from policy owners' Policy Account Values by using unlisted, non-mortality factors in determining the policy owners' COI rates. Overcharges drain a policy owner's Account Value, and over time, can even result in the policy owner losing what was expected to be whole life insurance purchased for the security of their family. To calculate the COI charge, the Policy sets out a formula (Dkt. 205 at 5) and promises State Farm will use COI "rates for each policy year [that] are based on the Insured's age on the policy anniversary, sex, and applicable rate class," and State Farm may adjust COI rates for "projected changes in mortality." *See* Order at 3. Prior to selling the Policy, State Farm developed two sets of rates. First, it developed pricing mortality rates—a set of rates for each policy year based on the insured's age, sex, and applicable rate class (for simplicity here, these are referred to as the "Pricing Mortality Rates"). Dkt. 205 at 5.[1] The Pricing Mortality Rates reflect each insured's mortality risk as priced into the Policy for each policy year based on the insured's age, sex, and applicable rate class (as either standard or substandard). *See id.* (citing Nov. 12, 2020 Declaration and Report of Scott J. Witt ("Witt Dec."), ¶¶ 10, 30-37; *id.* at Ex. E (Streily Tr.), 87:19-

---

[1] Plaintiff cites to the record developed and filed on State Farm's second motion for summary judgment.

1
PLAINTIFF'S MOTION FOR LEAVE TO FILE A MOTION FOR RECONSIDERATION OF ORDER ON THE PARTIES' CROSS-MOTIONS FOR SUMMARY JUDGMENT ON COUNT I OF PLAINTIFF'S COMPLAINT
Case No. 3:18-cv-04954-CRB

88:7, 149:7-152:2, 160:15-20; *id.* at Ex. I (Holzbauer Tr.[2]), 73:24-77:13, 89:18-93:10, 145:15-19; *id.* at Ex. G (New Jersey Actuarial Memorandum for Form 94030), p. 5; *id.* at Ex. H (South Carolina Actuarial Memorandum for Form 94030), p. 7; *id.* at Ex. K (memorandum regarding 2002 "Change in Current Monthly Cost of Insurance Rates" for Form 94030); Dkt. 67-4 (*Vogt* summary judgment denial) at 10); Dkt. 212 at 11. Then, State Farm developed a second set of rates by loading the Pricing Mortality Rates with expenses and profit margins and "pooling" them to eliminate variation by policy year. Dkt. 205 at 5-6; Dkt. 212 at 12-13. State Farm used these loaded rates as the COI rates for calculating the COI charges taken from policy owners' Account Values.

In its August 19, 2019, order denying State Farm's first motion for summary judgment, the Court held that, under California law, the Policy does "not unambiguously permit [State Farm] to consider other, unlisted, factors" in "calculat[ing the] COI" rates and rejected State Farm's argument that it "can consider separate and unrelated information like State Farm's profit, investment earnings, and capital requirements" in setting the rates. Dkt. 77 at 10-12. In its recent Order, the Court reaffirmed its prior interpretation of the Policy. *See* Order at 2, 5, 9-10. The Court nevertheless held, however, that the Policy "unambiguously permits State Farm to consider non-mortality factors in calculating the 'applicable rate class,'" *id.* at 8, and that the Policy only promises "how State Farm will assign [policy owners] a cost of insurance rate [from predetermined rates] using [the] three factors." *Id.* at 8, 13. Respectfully, this interpretation was premised on a failure to consider the undisputed evidence that the insured's "applicable rate class" is a mortality factor.

### A.    It is undisputed that "applicable rate class" is a mortality factor.

There is no dispute that the Policy's "applicable rate class" factor is itself a mortality factor and that State Farm used the insured's applicable rate class, either standard or substandard, along with the other listed mortality factors, to determine State Farm's unloaded Pricing Mortality Rates. State Farm did not argue otherwise. Nor could it, given the undisputed evidence and argument to the contrary, including that:

---

[2] Mr. Holzbauer testified for State Farm as its Rule 30(b)(6) witness as to State Farm's pricing of Form 94030. Witt Dec., Ex. I (Holzbauer Tr.), 24:6-13.

- State Farm's actuarial and designated representative witnesses admitted that *all* the listed factors, *including applicable rate class*, are mortality factors that State Farm used to determine mortality risk and the Pricing Mortality Rates. *See* Witt Dec., Ex. E (Streily Tr.) at 155:19-160:20 (*e.g.*, *id*. at 157:14-20 ("Rate class would be after the insured has gone through the underwriting process, we will assign them a rate class based on their health situation);" *id*. at 159:14-24 (Q: "So would you agree that insured age, sex and rate class are characteristics that can all be used to assess the mortality risk associated with an insured?" A: "***Yes, I think those are characteristics that companies could use to determine the mortality risk of any individual person.***" (emphasis added)); Ex. F (Phipps Tr.) at 25:3-7 (testifying that "rate class" is a "mortality factor").

- Plaintiff has repeatedly pled and argued that each of the listed factors is a mortality factor State Farm used to determine the mortality risk for each insured, *e.g.*, Dkt. 67 at 3, 17-18; Dkt. 142 at 4; Dkt. 205 at 5, and State Farm has never disputed that basic fact. Indeed, at the hearing on the parties' cross-motions for summary judgment, State Farm's counsel repeatedly described "applicable rate class" as a mortality factor that is determined from an insured's health characteristics, which, indisputably, impacts the insured's mortality risk and thus State Farm's mortality expectations for that insured. 4/1/21 Hr'g Tr. at 22:11-14 ("Underwriting is where the customer goes through a health evaluation . . . as to their health characteristics that will determine their rate class."); *id*. at 23:4-6 (underwriters "look[] at . . . the health characteristics of each insured and then they determine the rate class, and that becomes the applicable rate class"); *id*. at 24:16-20 (stating State Farm's rate classes are determined from factors that impact an insured's health).

- State Farm's witnesses agree that loads for expenses and profits are *not* related to the mortality factors identified in the Policy, including applicable rate class. Witt Dec., Ex. E (Streily Tr.), 224:16-18 ("I would not consider expenses and profit to be mortality related"); *id.* at Ex. I (Holzbauer Tr.), 165:5-8 ("The margin [in COI] would be the difference between the mortality component and the rest of the cost of insurance."). Thus, consistent with State

Farm's interpretation of the term, a reasonable policy owner could understand that applicable rate class is a mortality factor used in determining a mortality rate for the insured.

There is nothing inherent in the phrase "applicable rate class" that suggests loading for profits and expenses. To the contrary, in other heavily contested litigation, both the Eighth Circuit and the district court in *Vogt* concluded that the listed factors are *all* mortality factors from which State Farm did, in fact, generate the Pricing Mortality Rates. *See, e.g.*, *Vogt v. State Farm Life Ins. Co.*, 963 F.3d 753, 761 (8th Cir. 2020) ("These enumerated factors [the Insured's age on the policy anniversary, sex, and applicable rate class] are so-called 'mortality factors' because they relate to a policyholder's mortality risk, which allows the insurer to determine the projected mortality estimate of a policyholder based on his specific circumstances."), *cert. denied sub nom.*, No. 20-1008, 2021 WL 1521013 (U.S. Apr. 19, 2021); *Vogt*, 2018 WL 1747336, at *2 (W.D. Mo. Apr. 10, 2018) (stating age, sex, and rate class are mortality factors, and that conversely, "[t]he parties agree that expenses and profits are not mortality factors, meaning that they do not bear on the life expectancy of an insured").[3] Even if the Court disagreed with these conclusions, it should have taken the contrary understanding by other jurists as proof of ambiguity and denied State Farm's motion on that basis. *See* 2 Couch on Ins. § 21:14 ("The fact that courts of several jurisdictions have arrived at different constructions as to the meaning of the words in a policy provision, and in some instances have taken almost opposite views, is some indication that the terms are ambiguous.").

In reaching its interpretation, the Court appeared to give considerable weight to State Farm's contention that the Policy defines "rate class" as "[t]he underwriting class of the person insured." Order at 3, 12, 14. Notably, however, not even State Farm argued that an insured would understand "rate class" or "underwriting" to convey that State Farm was including expenses and profits in determining the COI rates. Nor did State Farm ever argue that this definition was revealing when it litigated the *Vogt* case to trial. State Farm did not even refer to the definition of "rate class" in the appeal of that case where it was seeking to reverse a $34 million judgment. *See, e.g.*, *Vogt*, 2019 WL 413071 (C.A.8) (Op. Br. on Appeal); *Vogt*, 2019 WL 2453514 (C.A.8) (Reply). It is incongruous that the Court's current

---

[3] The Court's conclusion that its present interpretation is the only reasonable one necessarily renders these other courts' interpretations unreasonable.

interpretation would be obvious to a layperson, but not to State Farm's lawyers, particularly when State Farm did *not*, in practice, use the "applicable rate class" factor to load expenses and profits into COI rates. Instead, it added those expenses and profits to the Pricing Mortality Rates to determine the COI rates, only after using the mortality factors expressed in the Policy, including applicable rate class, to set the Pricing Mortality Rates free of expenses and profits. Because the uncontested record shows that the underwriting process is simply a means to assess an insured's relevant health characteristics to determine the insured's health risk and thus his or her applicable rate class, a reasonable layperson would *not* infer that the "underwriting process" includes loading of expenses and profits. *See* Order at 14.

Further, while the Court determined that "it is unreasonable for anyone to believe that 'mortality factors' are the only input into the rate development process" because those mortality factors have to be "numerically translated for State Farm to arrive at a cost of insurance rate expressed in dollars," Order at 15, respectfully, this conclusion did not consider that the Policy itself sets out a mathematical formula for arriving at a COI charge "expressed in dollars" using the Account Value and COI rate. *See* Dkt. 77 at 2. And, State Farm's actuaries concede that the "mortality factors" listed in the Policy (policy year, age, sex, and rate class) can, in fact, be translated into rates (and were translated into the Pricing Mortality Rates) that can be expressed in dollars. See Witt Dec., Ex. E (Streily Tr.), 178:5-181:13.

### B. With the Policy's "applicable rate class" factor properly construed as a mortality factor, Plaintiff's interpretation of the Policy is reasonable.

Correcting for the fact that applicable rate class does not imply loading for expenses and profits, the Policy read as a whole strongly suggests Plaintiff's interpretation is at least reasonable. For instance, the Policy says nothing about expenses and profits being included in the COI rates, but does refer to the COI rates as rates that can be adjusted "for projected changes in mortality." Order at 3. The Court agreed that language is, at least, consistent with Plaintiff's interpretation: by listing *only* mortality factors, including applicable rate class, that could only be adjusted for projected changes in mortality, State Farm at least implied the determination of actual mortality rates; it did not imply that State Farm would select from loaded COI rates. *Id.* at 15.

In addition, as the Court has noted, the Policy contains other revenue sources and unrestricted charges that policy owners could assume include State Farm's expenses and profits—including the

monthly expense charge, the charges for riders, the premium expense charge, and the interest spread. *See* Dkt. 77 at 13 ("Given these other expenses, most notably the 5% premium deduction, it would not be unreasonable for a policyholder to conclude that State Farm was making a profit from the Policy without necessarily concluding that it was also doing so from the COI calculation."); *accord* Order at 17-18. Indeed, the Court's interpretation that the Policy's monthly expense charge precludes State Farm from deducting expenses through the COI charge further supports Bally's interpretation. Order at 18. That is, a layperson could reasonably conclude that by limiting itself to deducting a flat $5 a month for expenses, along with the 5% premium expense charge, State Farm was not also loading hidden expenses *or profits* into the COI charge.

Unlike the Policy's fixed $5 and 5% expense charges, the Policy promises to use a precise, mathematical formula for calculating the COI charge—again, without reference to expenses and profits. Policy owners would expect a similar level of precision in the COI rate so they could compare how the rates are calculated in this Policy with other, competing policies. At minimum, they would expect State Farm to get authorization to deduct profits and expenses before taking it directly from their Account Value. Thus, in a Policy with multiple, unbundled charges, a reasonable layperson could reasonably conclude that a "cost" of insurance charge calculated using rates determined with mortality factors that could also only be adjusted for changes in "mortality," was intended to be a mortality charge. Plaintiff's interpretation is therefore at least reasonable. Judges across the country have certainly thought so, and the fact that the Court rested its Order on a novel interpretation of the phrase "applicable rate class" only re-enforces the ambiguity here.

The Court's reliance on the fact that the COI rates were generated before the Policy was sold also rests on an incomplete view of the record. *See* Order at 14-15. As noted, State Farm developed both Pricing Mortality Rates and loaded COI rates *before* the Policy was sold. If the issue in the case was *which* set of rates State Farm should have "assigned" to each insured, nothing in the Policy unambiguously suggests State Farm was free to use the loaded rates, particularly when the Policy promises that the rates are based on mortality factors and can only be adjusted for projected changes in mortality. Only the Pricing Mortality Rates meet that definition without inferring that State Farm was

free to consider other factors in determining the rates.[4] Indeed, *only* the Pricing Mortality Rates vary by policy year; as State Farm admits, its loaded COI rates are "pooled" and therefore do not vary by policy year as the Policy requires. *See* Dkt. 122 at 11 ("Form 94030 references 'policy year' in the provision describing the factors that go into the monthly COI charges, suggesting that Policy year was incorporated into the pricing scheme."); *see also Vogt*, 2018 WL 1747336, at *6 (finding "the Policy incorporates the duration of the policy as a factor affecting those rates"). Furthermore, that State Farm's rate-development process preceded the sale of the Policy only reinforces the fact that State Farm could have, but chose not to, draft the Policy in a way that unambiguously identified precisely what it includes in the COI rates.

No one suggests that the Policy here is a model of clarity. But State Farm was obligated to express its intentions without ambiguity to avoid an interpretation favoring the insured. And these overcharges have had serious impact on the insureds. The struggle to interpret the Policy should be viewed by the Court as a sign of ambiguity, which, at minimum, justifies denying summary judgment to State Farm if not granting it to Plaintiff.

*     *     *

For the foregoing reasons, Plaintiff respectfully requests leave to file a motion for reconsideration of this Court's Order on the parties' cross-motions for summary judgment on Count I of the Complaint.

---

[4] The Court also referenced the table of maximum rates. Order at 14-15. But a reasonable policy owner could have concluded that this limitation was intended to place a cap on the amount by which State Farm could permissibly increase rates going forward for changes in expected mortality, as the Policy permits. It does not unambiguously show that State Farm was permitted to assign the loaded COI rates instead of the Pricing Mortality Rates where both sets of rates were "previously established," and both are "organized by age, sex, and already-developed rate classes." *See* Order at 14.

| | | |
|---|---|---|
| 1 | Dated: May 12, 2021 | **GIRARD SHARP LLP** |
| 2 | | |
| 3 | | By: /s/ *Daniel C. Girard* |
| | | Daniel C. Girard (State Bar No. 114826) |
| 4 | | dgirard@girardsharp.com |
| 5 | | Jordan Elias (State Bar No. 228731) |
| | | jelias@girardsharp.com |
| 6 | | 601 California Street, Suite 1400 |
| 7 | | San Francisco, California 94108 |
| | | Tel:     415-981-4800 |
| 8 | | Fax:    415-981-4846 |
| 9 | | Norman E. Siegel (admitted *pro hac vice*) |
| 10 | | siegel@stuevesiegel.com |
| | | Lindsay Todd Perkins (admitted *pro hac vice*) |
| 11 | | perkins@stuevesiegel.com |
| 12 | | Ethan M. Lange (admitted *pro hac vice*) |
| | | lange@stuevesiegel.com |
| 13 | | **STUEVE SIEGEL HANSON LLP** |
| 14 | | 460 Nichols Road, Suite 200 |
| | | Kansas City, Missouri 64112 |
| 15 | | Tel: 816-714-7100 |
| 16 | | Fax: 816-714-7101 |
| | | John J. Schirger (admitted *pro hac vice*) |
| 17 | | jschirger@millerschirger.com |
| 18 | | Matthew W. Lytle (admitted *pro hac vice*) |
| | | mlytle@millerschirger.com |
| 19 | | Joseph M. Feierabend (admitted *pro hac vice*) |
| 20 | | jfeierabend@millerschirger.com |
| | | **MILLER SCHIRGER, LLC** |
| 21 | | 4520 Main Street, Suite 1570 |
| 22 | | Kansas City, Missouri 64111 |
| | | Tel: 816-561-6500 |
| 23 | | Fax: 816-561-6501 |
| 24 | | *Attorneys for Plaintiff Elizabeth A. Bally* |

**CERTIFICATE OF SERVICE**

I hereby certify that on May 12, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notice of such filing to all registered users.

/s/ Daniel C. Girard
Daniel C. Girard